UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 07-4460, 07-4461, 08-1122

———————

GENE R. ROMERO; JAMES T. BEVER; ROGER T. BOYD**;
RICHARD A. CARRIER; PAUL R. COBB; CRAIG K. CREASE;
SYLVIA CREWS-KELLY; DWIGHT ENGLISH; DOUGLAS F. GAFNER, II*;
RONALD W. HARPER; MICHAEL P. KEARNEY; THOMAS A. KEARNEY;
LARRY H. LANKFORD, SR.; DAVID C. LAWSON; NATHAN R.
LITTLEJOHN, II; REBECCA R. MASLOWSKI; CRAIG A. MILLISON;
JAMES E. MOOREHEAD; CHRISTOPHER L. PERKINS;
RICHARD E. PETERSON; JAMES P. PILCHAK; PAULA REINERIO**;
PAUL L. SHIRLEY; DONALD L. TRGOVICH; RICHARD S. WANDNER;
TIMOTHY WEISMAN; ANTHONY T. WIKTOR; JOHN W. WITTMAN;
RALPH J. WOLVERTON;

Appellants No. 07-4460

v.

ALLSTATE INSURANCE COMPANY; EDWARD M. LIDDY, In His Capacity
as President, Chairman and Chief Executive Officer of the Allstate Corporation
and Allstate Insurance Company; THE ALLSTATE CORPORATION

(D.C. Civil No. 01-cv-03894)

———————

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
v.
ALLSTATE INSURANCE COMPANY
(D.C. Civil No. 01-cv-07042)

**FILED**

AUG 1 2 2009

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

*Pursuant to Fed. R. App. Proc. 43 [12/18/08]
**(Amended per Clerk Order dated 6/24/2008)

———————

GENE ROMERO; JAMES T. BEVER; ROGER T. BOYD;
RICHARD A. CARRIER; PAUL R. COBB; CRAIG K. CREASE;
SYLVIA CREWS-KELLY; DWIGHT F. ENGLISH; DOUGLAS F. GAFNER, II*;
RONALD W. HARPER; MICHAEL P. KEARNEY; THOMAS A. KEARNEY;
LARRY H. LANKFORD, SR.; DAVID C. LAWSON; NATHAN R.
LITTLEJOHN, II; REBECCA R. MASLOWSKI; CRAIG A. MILLISON;
JAMES E. MOOREHEAD; EDWARD T. MURRAY, III; CAROLYN L. PENZO;
CHRISTOPHER L. PERKINS; RICHARD E. PETERSON; JAMES P. PILCHAK;
PAULA REINERIO; PAULA M. SCHOTT; DONALD L. TRGOVICH;
RICHARD S. WANDNER; TIMOTHY WEISMAN; ERNIE P. WENDT;
ANTHONY T. WIKTOR; JOHN W. WITTMAN; RALPH J. WOLVERTON,

Appellants No. 07-4461

v.

THE ALLSTATE CORPORATION; ALLSTATE INSURANCE COMPANY;
AGENTS PENSION PLAN; ADMINISTRATIVE COMMITTEE,
In its capacity as Administrator of the Agents Pension Plan

*Pursuant to Fed. R. App. Proc. 43 [12/18/08]

(D.C. Civil No. 01-cv-06764)

———————————

GENE R. ROMERO; JAMES T. BEVER; RICHARD A. CARRIER; PAUL R.
COBB; CRAIG K. CREASE; SYLVIA CREWS-KELLY; DWIGHT ENGLISH;
DOUGLAS F. GAFNER, II*; RONALD W. HARPER; MICHAEL P. KEARNEY;
THOMAS A. KEARNEY; LARRY H. LANKFORD, SR.; DAVID C. LAWSON;
NATHAN R. LITTLEJOHN, II; REBECCA R. MASLOWSKI; CRAIG A. MILLISON;
JAMES E. MOOREHEAD; CHRISTOPHER L. PERKINS; RICHARD E. PETERSON;
JAMES P. PILCHAK; PAUL L. SHIRLEY; DONALD L. TRGOVICH;
RICHARD S. WANDNER; TIMOTHY WEISMAN; ANTHONY T. WIKTOR;
JOHN W. WITTMAN; RALPH J. WOLVERTON;

*Pursuant to Fed. R. App. Proc. 43 [12/18/08]

2

v.

EDWARD M. LIDDY, In His Capacity as President, Chairman and
Chief Executive Officer of the Allstate Corporation and
Allstate Insurance Company; ALLSTATE INSURANCE COMPANY;
THE ALLSTATE CORPORATION

(D.C. Civil No. 01-cv-03894)

————

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Appellant No. 08-1122

v.

ALLSTATE INSURANCE COMPANY

(D.C. Civil No. 01-cv-07042)

————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Nos. 01-cv-03894
01-cv-07042
01-cv-06764)
District Judge: Honorable John P. Fullam

————

Argued March 23, 2009

Before: RENDELL, AMBRO, and JORDAN, Circuit Judges.

————

3

## JUDGMENT

This cause came on to be heard on the record from the United States District Court for the Eastern District of Pennsylvania and was argued on March 23, 2009.  On consideration whereof, it is now hereby

ORDERED and ADJUDGED by this Court that the Order of the District Court entered on June 20, 2007, be and the same is hereby VACATED and this matter is REMANDED for further proceedings.  All of the above in accordance with the Opinion of this Court.   Each party to bear its own costs.

ATTEST:

/s/Marcia M. Waldron
Clerk

Dated: July 29, 2009

Certified as a true copy and issued in lieu of a formal mandate on August 12, 2009

Teste: *Marcia M. Waldron*
**Clerk, U.S. Court of Appeals for the Third Circuit**

4

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 07-4460, 07-4461, 08-1122

_____

GENE R. ROMERO; JAMES T. BEVER; ROGER T. BOYD**;
RICHARD A. CARRIER; PAUL R. COBB; CRAIG K. CREASE;
SYLVIA CREWS-KELLY; DWIGHT ENGLISH; DOUGLAS F. GAFNER, II*;
RONALD W. HARPER; MICHAEL P. KEARNEY; THOMAS A. KEARNEY;
LARRY H. LANKFORD, SR.; DAVID C. LAWSON; NATHAN R.
LITTLEJOHN, II; REBECCA R. MASLOWSKI; CRAIG A. MILLISON;
JAMES E. MOOREHEAD; CHRISTOPHER L. PERKINS;
RICHARD E. PETERSON; JAMES P. PILCHAK; PAULA REINERIO**;
PAUL L. SHIRLEY; DONALD L. TRGOVICH; RICHARD S. WANDNER;
TIMOTHY WEISMAN; ANTHONY T. WIKTOR; JOHN W. WITTMAN;
RALPH J. WOLVERTON;

Appellants No. 07-4460

v.

ALLSTATE INSURANCE COMPANY; EDWARD M. LIDDY, In His Capacity
as President, Chairman and Chief Executive Officer of the Allstate Corporation
and Allstate Insurance Company; THE ALLSTATE CORPORATION

(D.C. Civil No. 01-cv-03894)

_____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
v.
ALLSTATE INSURANCE COMPANY
(D.C. Civil No. 01-cv-07042)

**FILED**

AUG 1 2 2009

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

*Pursuant to Fed. R. App. Proc. 43 [12/18/08]
**(Amended per Clerk Order dated 6/24/2008)

_____

GENE ROMERO; JAMES T. BEVER; ROGER T. BOYD;
RICHARD A. CARRIER; PAUL R. COBB; CRAIG K. CREASE;
SYLVIA CREWS-KELLY; DWIGHT F. ENGLISH; DOUGLAS F. GAFNER, II*;
RONALD W. HARPER; MICHAEL P. KEARNEY; THOMAS A. KEARNEY;
LARRY H. LANKFORD, SR.; DAVID C. LAWSON;  NATHAN R.
LITTLEJOHN, II; REBECCA R. MASLOWSKI; CRAIG A. MILLISON;
JAMES E. MOOREHEAD; EDWARD T. MURRAY, III; CAROLYN L. PENZO;
CHRISTOPHER L. PERKINS; RICHARD E. PETERSON; JAMES P. PILCHAK;
PAULA REINERIO; PAULA M. SCHOTT; DONALD L. TRGOVICH;
RICHARD S. WANDNER; TIMOTHY WEISMAN; ERNIE P. WENDT;
ANTHONY T. WIKTOR; JOHN W. WITTMAN; RALPH J. WOLVERTON;

Appellants No. 07-4461

v.

THE ALLSTATE CORPORATION; ALLSTATE INSURANCE COMPANY;
AGENTS PENSION PLAN; ADMINISTRATIVE COMMITTEE,
In its capacity as Administrator of the Agents Pension Plan

*Pursuant to Fed. R. App. Proc. 43 [12/18/08]

(D.C. Civil No. 01-cv-06764)

———————————

GENE R. ROMERO; JAMES T. BEVER; RICHARD A. CARRIER; PAUL R.
COBB; CRAIG K. CREASE; SYLVIA CREWS-KELLY; DWIGHT ENGLISH;
DOUGLAS F. GAFNER, II*; RONALD W. HARPER; MICHAEL P. KEARNEY;
THOMAS A. KEARNEY; LARRY H. LANKFORD, SR.; DAVID C. LAWSON;
NATHAN R. LITTLEJOHN, II; REBECCA R. MASLOWSKI; CRAIG A. MILLISON;
JAMES E. MOOREHEAD; CHRISTOPHER L. PERKINS; RICHARD E. PETERSON;
JAMES P. PILCHAK; PAUL L. SHIRLEY; DONALD L. TRGOVICH;
RICHARD S. WANDNER; TIMOTHY WEISMAN; ANTHONY T. WIKTOR;
JOHN W. WITTMAN; RALPH J. WOLVERTON;

*Pursuant to Fed. R. App. Proc. 43 [12/18/08]

*(continued)*

v.

EDWARD M. LIDDY, In His Capacity as President, Chairman and
Chief Executive Officer of the Allstate Corporation and
Allstate Insurance Company; ALLSTATE INSURANCE COMPANY;
THE ALLSTATE CORPORATION

(D.C. Civil No. 01-cv-03894)

———

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Appellant No. 08-1122

v.

ALLSTATE INSURANCE COMPANY

(D.C. Civil No. 01-cv-07042)

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Nos. 01-cv-03894
01-cv-07042
01-cv-06764)
District Judge: Honorable John P. Fullam

———

Argued March 23, 2009

Before: RENDELL, AMBRO, and JORDAN, Circuit Judges.

(Opinion Filed: July 29, 2009)

3

Peter Buscemi, Esq.     **[ARGUED]**
Michael J. Wilson, Esq.
Paul Anton Zevnik, Esq.
Morgan, Lewis & Bockius
Suite 800 North
1111 Pennsylvania Avenue, N.W.
Washington, DC   20004

Daniel Wolf, Esq.   [07-4461]
Room PH2
1220 N Street, N.W.
Washington, DC   20005

Michael D. Lieder, Esq.
Sprenger & Lang
1400 Eye Street, N.W., Suite 500
Washington, DC   20005

Thomas W. Osborne, Esq.
Mary Ellen Signorille, Esq.
American Association of Retired Persons
601 E Street, N.W.
Washington, DC  20049
 *Counsel for Plaintiffs-Appellants*
 *Gene R. Romero; James T. Bever; Roger T. Boyd;*
 *Richard A. Carrier; Paul R. Cobb; Craig K. Crease;*
 *Sylvia Crews-Kelly; Dwight English;*
 *Douglas F. Gafner, II (pursuant to Rule 43);*
 *Ronald W. Harper; Michael P. Kearney;*
 *Thomas A. Kearney; Larry H. Lankford, Sr.;*
 *David C. Lawson; Nathan R. Littlejohn, II;*
 *Rebecca R. Maslowski; Craig A. Millison;*
 *James E. Moorehead; Christopher L. Perkins;*
 *Richard E. Peterson; James P. Pilchak;*
 *Paula Reinerio; Paul L. Shirley; Donald L. Trgovich;*
 *Richard S. Wandner; Timothy Weisman;*
 *Anthony T. Wiktor; John W. Wittman;*
 *Ralph J. Wolverton; Edward T. Murray;*
 *Carolyn L. Penzo; Paula M. Schott;*
 *Ernie P. Wendt.*

4

Paul D. Ramshaw, Esq.    **[ARGUED]**
Equal Employment Opportunity Commission
Room 5SW18K
131 M Street, N.E.
Washington, DC   20507
   *Counsel for Plaintiff-Appellee*
   *Equal Employment Opportunity Commission*


Stephanie K. Deiger, Esq.
Daniel V. Johns, Esq.
John B. Langel, Esq.
Ballard, Spahr, Andrews & Ingersoll
1735 Market Steet, 51st Floor
Philadelphia, PA   19103

Richard C. Godfrey, Esq.   **[ARGUED]**
Catherine L. Fitzpatrick, Esq.
Elizabeth A. Larsen, Esq.
Sallie G. Smylie, Esq.
Peter A. Bellacosa, Esq.
Kirkland & Ellis
300 North LaSallle Street, Suite 2400
Chicago, IL   60654

Katherine M. Katchen, Esq.
Akin, Gump, Strauss, Hauer & Feld
Two Commerce Square, Suite 4100
2001 Market Street
Philadelphia, PA   19103


*(Continued)*

5

Donald R. Livingston, Esq.
Nathan J. Oleson, Esq.
Akin, Gump, Strauss, Hauer & Feld
Suite 400
1333 New Hampshire Avenue, N.W.
Washington, DC  20036
    *Counsel for Defendants-Appellees*
    *Edward M. Liddy, in his capacity as President,*
    *Chairman and Chief Executive Officer of the*
    *Allstate Corporation and Allstate Insurance Company;*
    *Allstate Insurance Company*;
    *Agents Pension Plan;*
    *Administrative Committee, in its capacity*
    *as Administrator of the Agents Pension Plan*

Rae T. Vann, Esq.
Equal Employment Advisory Council
Norris, Tysse, Lampley & Lakis
Suite 400
1501 M Street, N.W.
Washington, DC  20005
    *Counsel for Amici-Appellees*
    *Equal Employment Advisory Council;*
    *Chamber of Commerce of the United States*

---

## OPINION OF THE COURT

---

PER CURIAM.

The plaintiffs in these three cases – which we shall refer to as *Romero I*,

*Romero II*, and *EEOC* – allege that they were harmed by Allstate's transition from a

6

system where insurance agents were company employees to a system where the agents were independent contractors, and by Allstate's alteration of its employee retirement plan.[1] After many years of litigation, the District Court granted Allstate's dispositive motions in a two-page order. The order is conclusory in tone and content and simply fails to do justice to the myriad issues before the court. This has made our ability to carry out our review function difficult, indeed. We will vacate the order and remand the cases to the District Court. Given what we perceive to be the disinclination of the District Court to give full consideration to the procedural and substantive nuances of those cases, we will direct that the matter be reassigned.

## I. Background[2]

In the course of Allstate's transition from an employee-agent program to an independent-contractor program, in 2000, all employee agents operating under the earlier

---

[1] In *Romero I* (07-4460), the plaintiffs make claims for age discrimination and retaliation under the Age Discrimination in Employment Act, claims of interference under ERISA § 510, common law claims for breach of contract and fiduciary duty, claims related to the signing of the release, and claims related to the District Court's handling of the litigation.

In *Romero II* (07-4461), the plaintiffs allege violations of ERISA § 204(g)(2), which prohibits plan amendments that reduce or eliminate already-accrued benefits, and seek equitable relief for Allstate's alleged breach of fiduciary duty under ERISA § 404.

In *EEOC* (08-1122), the agency claims that Allstate retaliated against the plaintiffs in violation of the ADEA. The District Court consolidated *Romero I* and *EEOC* in 2002.

[2] Because we write here only for the parties, we will not fully describe the factual background or procedural history of these three cases.

agreements known as R830 and R1500 contracts were terminated. They were given four post-termination options, the first three of which involved the signing of a release that barred future claims against Allstate. Under the options that required the signing of the release, each employee would: 1) become an independent contractor; or 2) become an independent contractor temporarily and then sell the book of business to an Allstate-approved buyer; or 3) leave Allstate and receive a full year's salary as severance pay. The fourth option, and the only one that did not require signing of the release, was to receive 13 weeks' salary as severance. Virtually all of the eligible employee agents took one of the first three options and signed the release. All of the current plaintiffs signed the release.[3]

In 1991, before the conversion to an all-independent-contractor workforce, Allstate retroactively amended its pension plan. Allstate says that it made these amendments in response to the Tax Reform Act of 1986, which required companies to adopt benefits formulas that did not discriminate in favor of highly compensated employees. The amendments included changes to the way Allstate calculated early retirement benefits. In 1994, Allstate re-adopted its 1991 plan amendments, some of which were the subject of litigation at that time in *Scott v. Admin. Comm. of the Allstate Agents Pension Plan*, No.

---

[3] One of the original plaintiffs, Douglas Gafner, did not sign the release. The parties advised us at oral argument that Mr. Gafner's estate had settled its claims with Allstate. (Mar. 23, 2009, Oral Arg. Tr. 15.) Therefore, all of the remaining plaintiffs are signers of the release.

93-1419, 1995 WL 661096 (M.D. Fla. Sept. 15, 1995), and adopted a new amendment changing eligibility for early retirement benefits.

The three cases on appeal were filed in 2001. Over the course of the subsequent eight years, there have been numerous motions to dismiss, motions for summary judgment, motions to compel, and motions for reconsideration, as well as a 2004 declaratory judgment that the releases were voidable, and an appeal to our court and a remand to the District Court in *Romero II*.

On March 21, 2007, after the plaintiffs had asked Chief Judge Bartle to reassign the cases because of the District Court's ongoing failure to act on pending motions, the District Court entered an order stating its intent to grant Allstate's outstanding motions (for dismissal in *Romero II* and for summary judgment in *Romero I/EEOC*) based on several other cases that the court said had already considered and ruled on the transactions at issue, *Isbell v. Allstate Ins. Co.*, 418 F.3d 788 (7th Cir. 2005),[4] *Scott v. Admin. Comm.*

---

[4] In *Isbell*, two former Allstate employee agents alleged violations of the ADEA, Title VII, the ADA, and ERISA, as well as retaliation and unlawful termination claims. One of the plaintiffs, Schneider, had signed the release; the other, Isbell, had not. The United States Court of Appeals for the Seventh Circuit held that there had been no unlawful retaliation under the ADEA, ADA, Title VII, or ERISA, and that Allstate had not unlawfully discriminated against the terminated employee agents in violation of the ADEA. The court also held that Allstate had not violated ERISA when it eliminated the employee agents' positions for a legitimate, nondiscriminatory reason, and that the release was "an effective affirmative defense" to claims raised under the statutes and doctrines named in it. 418 F.3d at 797.

*of the Allstate Agents Pension Plan*, 113 F.3d 1193 (11th Cir. 1997),[5] and *Swain v.*
*Allstate Ins. Co.*, No. 96-0998 (S.D. Fla. Jan. 22, 1999).[6] The court also advised the
parties that it was rethinking its 2004 ruling that the releases were voidable, and believed
it was in error and should be vacated. It gave the parties 20 days to file additional
memoranda. The plaintiffs responded to the District Court's order, arguing, in part, that
the releases were part of an illegal scheme, that their execution was not knowing or
voluntary, and that they were unconscionable. The plaintiffs also protested that they had
not had the opportunity for discovery beyond a brief period of class discovery.

On June 20, 2007, the District Court issued an order granting Allstate's motion to
dismiss in *Romero II* and its motion for summary judgment in *Romero I/EEOC*. The
court said that "for the reasons stated in" *Scott* and *Swain*, the amendments to Allstate's
pension plan at issue in *Romero II* were validly adopted and effective. It also stated that

---

[5] In *Scott*, the United States Court of Appeals for the Eleventh Circuit dealt with amendments to Allstate's retirement plan made in November of 1991. The plaintiffs alleged that Allstate had failed to comply with ERISA § 204(h)'s notice provisions when it retroactively amended its plan to comply with the Tax Reform Act of 1986, and that therefore the amendments were ineffective. The court concluded that ERISA's notice requirement was satisfied and that the plan amendments adopted on November 15, 1991, could be retroactive to January 1, 1989. 113 F.3d at 1201.

[6] The *Swain* plaintiffs also objected to Allstate's pension plan amendments. The United States District Court for the Southern District of Florida held that *Scott* barred the plaintiffs' claims as to retroactivity, because the same claim could have been brought in *Scott* and the interests of the *Scott* and *Swain* plaintiffs were so closely aligned that the *Scott* plaintiffs were virtual representatives of the *Swain* plaintiffs. The court allowed claims that Allstate had made misrepresentations to the plaintiffs to go forward. (Joint App. 5525-27.)

10

*Isbell* "warrants the conclusion that plaintiffs' claims of ERISA violations, age

discrimination, and retaliation must fail." (Joint App. 13.) The court ordered that, "[t]o

the extent that this Court's Order of March 3 [sic], 2004 declared that the releases were

voidable, that decision was in error and is hereby vacated. Alternatively, the validity of

the releases has become moot." (Joint App. 13.) The order gave the parties 20 days to

submit "any issues that must be resolved before the case-files are closed." (Joint App.

14.) The parties submitted additional papers. The District Court did not issue a final

judgment.[7] The plaintiffs filed a notice of appeal on November 26, 2007.

---

[7] The parties dispute whether we have jurisdiction over these appeals, since the District
Court never issued a separate final judgment. The plaintiffs argue that we do have
jurisdiction, because the District Court's order left no issue unresolved and was therefore
final. Allstate argues that we do not have jurisdiction because the court did not comply
with Fed. R. Civ. P. 58, which requires that judgment be entered in a separate document.
While we find it puzzling that the District Court did not enter a separate judgment, it is
apparent that the court left no issues unresolved: it granted or denied all of the
outstanding motions before it, and the parties proceeded as if judgment had been entered,
complying with all deadlines. The plaintiffs waited more than 150 days after the District
Court's order was entered in the docket before considering judgment to be entered and
filing their notice of appeal, in compliance with Fed. R. App. P. 4(a)(1)(A) and
4(a)(7)(A)(ii). Thus, we have jurisdiction pursuant to 28 U.S.C. § 1291. *See Alvord-
Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1006 n.8 (3d Cir. 1994) (noting that the
"district court's failure to enter judgment in accordance with the dictates of Rule 58
appears to stem from oversight" and therefore "common-sense" application of the Rules
of Civil Procedure, as encouraged by the Supreme Court in *Bankers Trust Co. v. Mallis*,
435 U.S. 381, 385-86 (1978), warranted exercise of appellate jurisdiction).

## II. Discussion[8]

The plaintiffs in these cases raise numerous ways in which the District Court's opinion and conduct of the proceedings fell short, including, but not limited to, its failure to explain why *Scott*, *Swain*, and *Isbell* should be given res judicata or collateral estoppel effect, or controlling weight, here (especially since *Scott* and *Swain* did not consider the anti-cutback amendments); why the plaintiffs are not entitled to the discovery they requested; why the ADEA claims are controlled by *Isbell*; and how the court resolved the counts which were not reached in its opinion. We do not seek to address all of these issues here: indeed, the lack of explication by the District Court renders our review function as to these aspects of the cases nearly impossible. In this opinion, we focus on the release signed by all of the current plaintiffs. If the release is valid, it bars the claims of the plaintiffs in *Romero I*, Count II of *Romero II*, and *EEOC*.[9] The plaintiffs, however,

---

[8] We review a district court's grant of motions to dismiss and motions for summary judgment de novo. *See, e.g.*, *Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir. 2007); *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007).

[9] The EEOC focuses its argument on those Allstate employees who did not sign the release, a group the EEOC calls "the holdouts." It claims that the holdouts' refusal to sign the release is protected activity under the ADEA, either as protected participation activity (it argues that the refusal to sign could be interpreted as a threat to sue) or as protected opposition conduct. The EEOC contends that Allstate's refusal to allow the holdouts to become independent contractor agents is an adverse action, and that the option to convert to independent contractor status was a privilege of the employee agents' employment. Allstate contests the EEOC's claim that the holdouts' refusal to sign the release was protected activity, and argues that the offer of independent contractor status for the terminated employee agents was not an incident of employment, but rather part of the consideration for the signing of the release. Because there are no holdouts among the current plaintiffs, we need not address these issues.

12

did not have sufficient discovery into the facts surrounding the signing of the releases, or sufficient time to produce it, given the court's about-face in 2007, and there is insufficient evidence in the record, let alone in the reasoning provided by the court, as to whether the releases were signed knowingly or voluntarily, or were unconscionable. If the releases are not valid, then the District Court needs to address a number of issues, namely the merits of all the claims in *Romero II* and the common law claims of breach of contract and breach of fiduciary duty in *Romero I*, that it must consider in the first instance. We will remand to the District Court for further discovery into the validity of the releases.

It is arguable that, even if the releases are not valid, the ERISA § 510 claims and the ADEA claims of discrimination and retaliation were properly dismissed because of the plaintiffs' failure to adduce evidence showing a dispute as to a genuine issue of material fact on those issues. However, it is difficult on the record before us to determine whether discovery on these claims was sufficient. We will therefore remand to the District Court for further consideration of these claims. In so doing, we charge the District Court with reviewing the discovery requests and determining whether the plaintiffs were afforded sufficient opportunity for discovery on the ERISA § 510 and the ADEA discrimination and retaliation claims. If not, the District Court should permit

---

The EEOC also raises, briefly, an argument that Allstate engaged in what the EEOC terms "preemptive" retaliation against the signers of the release. (*EEOC* Br. at 26-28.) It argues that the signers were injured by being required to sign the releases. We will not address the EEOC's preemptive retaliation argument in this opinion. Rather, we will return the cases to the District Court for further review of the validity of the releases.

13

further discovery as necessary.

## A. The Release

The release that the plaintiffs signed is very broad.  We reproduce the waiver

language here:

> In return for the consideration that I am receiving under the Program, I hereby release, waive, and forever discharge Allstate Insurance Company . . . from any and all liability, actions, charges, causes of action, demands, damages, entitlements or claims for relief or remuneration of any kind whatsoever, whether known or unknown, or whether previously asserted or unasserted, stated or unstated, arising out of, connected with, or related to, my employment and/or the termination of my employment and my R830 or R1500 Agent Agreement with Allstate, or my transition to independent contractor status, including, but not limited to, all matters in law, in equity, in contract, or in tort, or pursuant to statute, including any claim for age or other types of discrimination prohibited under the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, the Employee Retirement Income Security Act ("ERISA"), the Illinois Human Rights Act, and the West Virginia Human Rights Act as those acts have been amended, or any other federal, state, or local law or ordinance or the common law.  I further agree that if any claim is made in my behalf with respect to any matter released and waived above, I hereby waive any rights I may have with respect thereto and agree not to take any payments or other benefits from such claim.  I understand that this release and waiver does not apply to any future claims that may arise after I sign this Release or to any benefits to which I am entitled in accordance with any Allstate plan subject to ERISA by virtue of my employment with Allstate prior to my employment termination date.

(Joint App. 2352.)  The release also includes an acknowledgment for signers:

14

I acknowledge that:

> (a) I have read this Release, and I understand its legal and binding effect. I am acting voluntarily and of my own free will in executing this Release.

> (b) I have had the opportunity to seek, and I was advised in writing to seek the advice of an attorney prior to signing this release. . . .

> (c) I was given at least 45 days to consider the terms of the Program, including this Release, before signing it. I understand that I may make an election under the Program before forty-five (45) days, but I am under no obligation to do so.

(Joint App. 2352.)

The release also includes a revocation period:

> I understand that if I sign this Release, I can change my mind and revoke it within seven days after signing it. I understand that the Release and Waiver set forth in the first paragraph and the consideration available under the Program above will not be effective until after this seven-day period has expired. . . . I understand that a decision to revoke or rescind within such period should be submitted in writing to my Human Resource Manager. If I do not revoke within the seven-day period discussed above . . ., then the Release will become fully effective.

(Joint App. 2352.)

## 1. The District Court's Decisions Regarding the Release

In March of 2004, the District Court found that the release was voidable "at the option of the employee-agent" because the Older Workers Benefit Protection Act ("OWBPA") says that no waiver agreement can prohibit an individual from filing a

15

charge of discrimination with the EEOC. *See* 29 U.S.C. § 626; 29 C.F.R. § 1625.22(I)(2) ("[N]o waiver agreement may include any provision prohibiting any individual from . . . filing a charge or complaint, including a challenge to the validity of the waiver agreement, with the EEOC.") The District Court issued a declaratory judgment allowing each plaintiff who signed the release to tender back[10] the benefits he had received in order to void the release.

In December of 2005, Allstate filed a motion for summary judgment in *Romero I/EEOC*, arguing, in part, that the release was valid. Allstate cited *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 797 (7th Cir. 2005), a case in which two former Allstate employee agents, one of whom signed the release and one of whom did not, alleged retaliation, discrimination, and unlawful termination in connection with Allstate's transition to the independent contractor program. The United States Court of Appeals for the Seventh Circuit held that the release was valid and found no discrimination or retaliation under the ADEA, the ADA, Title VII, or ERISA. In its *Romero I/EEOC* summary judgment motion, Allstate also argued that the District Court's reasoning that the charge-filing ban in the release made it voidable was contrary to our decision in *Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 290 (3d Cir. 2003), in which we upheld the validity of a release despite the fact that it contained a charge-filing ban. In *Wastak*, we held that 29

---

[10] After the District Court issued its declaratory judgment, the plaintiffs filed a motion for reconsideration, arguing that the tender-back requirement was inappropriate. They raise this argument on appeal, but we need not address that issue here.

16

U.S.C. § 626(f)(4) made it unlawful to enforce a ban on filing an EEOC charge, but that the statute contained no language to suggest that "the mere presence of that contractual language would void an otherwise knowing and voluntary waiver." *Id.* The District Court cited *Isbell* in its June 20, 2007, order granting Allstate's dispositive motions and vacating its previous order that the releases were voidable.

## 2. The Parties' Arguments About the Release

From the start of the litigation, the plaintiffs have argued that the releases are invalid. On appeal, they argue that genuine issues of material fact exist as to whether the plaintiffs signed the releases knowingly and voluntarily. The plaintiffs allege that Allstate refused to negotiate the release and exerted extreme economic pressure, made misrepresentations about the independent contractor program, and did not comply with disclosure requirements under the OWBPA. The plaintiffs also contend that the release is part of an illegal scheme, and that it is unconscionable both procedurally and substantively because the release is so favorable to Allstate.

Plaintiffs argue, further, that they did not have sufficient discovery into the facts surrounding the signing of the releases. From March of 2004 to December of 2005, they had proceeded under the District Court's declaratory judgment that the release was voidable. With Allstate's motion for summary judgment, the release was at issue again. The plaintiffs filed a motion to deny or stay the summary judgment motion so that they could conduct merits discovery, and they filed a Rule 56(f) affidavit that described the

17

brief period that the District Court had allowed for "class discovery" in 2002 and 2003, the plaintiffs' multiple document requests, and the motions to compel discovery that the District Court had denied without resolving the underlying disputes. The court did not rule on the motion to stay.

Allstate counters that discovery was not limited to class issues, and points to its production of three Fed. R. Civ. P. Rule 30(b)(6) witnesses and 126,000 pages of documents produced, (including 68,000 pages from the *Isbell* litigation). It argues that not only was discovery sufficient, but that the release is valid: the plaintiffs are well-educated, experienced businesspeople whose work involved parsing contract language; they had almost six months to consider signing the release and a week after signing in which to revoke; they were encouraged to consult attorneys before signing; they received ample consideration in exchange for their assent; and they expressly represented that they signed the releases voluntarily and of their own free will.

### 3. Why the Release is Potentially Dispositive

If the release is valid, it bars the plaintiffs' claims in *Romero I*, where the plaintiffs allege violations of the ADEA and ERISA, as well as common law claims of breach of contract and breach of fiduciary duty. It would also bar the claims in *EEOC* that Allstate retaliated against the plaintiffs in violation of the ADEA. All of these claims are covered by the broad language of the release, which specifically mentions both those statutes and common law claims. It also bars the plaintiffs' claims in Count II of *Romero II*, where

18

the plaintiffs claim violations of ERISA § 404, which provides an equitable remedy for a breach of fiduciary duty claim.[11]

We believe the District Court should reexamine the validity of the release, after allowing further discovery into the facts surrounding the signing of the releases. The plaintiffs had a relatively short period of class discovery, and approximately half of the documents Allstate produced were documents from the *Isbell* litigation. While *Isbell* is certainly relevant to the plaintiffs' cases here, the plaintiffs are entitled to discovery that is responsive to their requests related to the specific release-related issues the plaintiffs raised with the District Court in their response to its March 21, 2007, Order: that the releases were part of an illegal scheme; that they were not signed knowingly or voluntarily; and that they were unconscionable.

If, after discovery and briefing on these issues, the District Court determines that the releases are valid, then the claims in *Romero I*, Count II of *Romero II*, and *EEOC* are barred. If, however, the District Court determines that the releases are not valid, the District Court needs to address all of the underlying claims and issues that it did not

---

[11] Counts I and III of *Romero II* deal with the plaintiffs' claims that Allstate's amendment of its retirement plan violates the anti-cutback provisions of ERISA § 204(g). The language of the release is very broad and covers ERISA claims, other than those claims to "any benefits to which I am entitled in accordance with any Allstate plan subject to ERISA by virtue of my employment with Allstate prior to my employment termination date." (Joint App. 2352.) We do not decide whether Counts I and III of *Romero II* fit within this exception. Rather, if the release is valid, the District Court must consider on remand whether the claims in Counts I and III of *Romero II* are claims for benefits to which the plaintiffs were entitled in accordance with any Allstate ERISA plan.