**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GENE R. ROMERO, *ET AL.*** ) | |
| ) | |
| **Plaintiffs** ) | **Civil Action No. 01-CV-3894 (RLB)** |
| ) | |
| **v.** ) | **CLASS ACTION** |
| ) | |
| **ALLSTATE INSURANCE COMPANY, *ET AL.*** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

In their Motion for Leave to File and Serve Their Second Amended Complaint (Docket No. 201), plaintiffs provide no explanation why the Court should permit an amended complaint more than nine years into the case after extensive dispositive motion practice and an appeal have occurred, let alone an amended pleading that essentially re-writes the complaint as if plaintiffs were drafting from scratch. Nor do plaintiffs provide any details on precisely how or why they propose to amend their complaint, instead minimizing the nature and scope of the amendments as mere "clarifications," "amplifications," and "corrections."[1]

Upon receipt of plaintiffs' proposed Second Amended Complaint, it was immediately apparent to Allstate that plaintiffs were making substantial revisions to their complaint, not mere "clarifications," "amplifications," and "corrections," as advertised in the motion. Because plaintiffs provided no identification of the proposed amendments in their motion or supporting

---

[1]    In their motion for leave to amend, plaintiffs also seek leave to "substitute" Joseph L. Benoit for deceased plaintiff Douglas F. Gafner "to act as the representative of the class and proposed ADEA subclass whose claims are not subject to the Release." (Pl. Mem. at 3.) Allstate opposes the proposed "substitution." There is no need for such a representative because the putative subclass of non-release signers would fail to meet the numerosity requirement for a Rule 23 certification. Leave to amend need not be granted when, as here, the proposed amendment is futile. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

1

memorandum, Allstate requested that plaintiffs provide a red-line of the proposed Second Amended Complaint, so that Allstate and the Court could identify the extent of the amendments and additions in plaintiffs' 65-page proposed complaint.  Red-lining, of course, is a customary word processing tool widely used just for that purpose.

Over a week later, plaintiffs furnished the red-lined version attached hereto as Exhibit A. The red-line confirms the vast scope of plaintiffs' changes.   In reality, what plaintiffs are requesting is a re-do of a nearly decade-old case, by adding an entirely new claim under the ADEA, claims of alleged "misrepresentations," and countless amended allegations, the importance of each of which is obscured by the sheer number of amendments made.  Based upon the red-line, the proposed second amended complaint would add at least 15 new paragraphs, and change over 75 percent of the 189 paragraphs from the first amended complaint.  Even then, the full extent of plaintiffs' proposed amendments is not clear from the red-line plaintiffs furnished to Allstate.  For example, there is no red-lining in the caption for Count IV (page 67 of the red-line)—an omission that misleadingly makes it seem that the caption of this Count in plaintiffs' original pleading was:

**Discriminatory Termination and Retaliation
In Violation of 29 U.S.C. § 623(a) and (d)
(Disparate Treatment and Disparate Impact)**

But in fact, Count IV in plaintiffs' previous complaint was captioned:

**Discriminatory Termination and Retaliation (Disparate Treatment)
In Violation Of Section 623 Of The ADEA**

Given that plaintiffs now seek to add a claim for Disparate Impact in their proposed amended complaint, it is disturbing that the red-lined version plaintiffs prepared incorporates a new caption—"Disparate Treatment and "Disparate Impact"—without any red-line or indicia of it being new.  Whether there are additional inaccuracies in plaintiffs' red-lined version could only

be ascertained by a line-by-line comparison of current and proposed complaints, which Allstate believes neither it nor this Court should be required to undertake. It is plaintiffs' burden under Rule 15(a) to demonstrate that leave to amend should be granted, not Allstate's or the Court's burden to decipher hundreds or thousands of changes in a 77-page red-line.

Thus, plaintiffs at a minimum should be required to precisely identify each change they propose to make to their complaint, what they are attempting to accomplish with the change, and why justice requires the change in this nearly decade-old case.[2]  Otherwise, plaintiffs have not met their burden under Rule 15(a) and leave to amend should be denied. If the Court is inclined to consider the motion without plaintiffs providing such information, the motion should be denied because plaintiffs unreasonably delayed in seeking leave to amend their complaint, and Allstate will be prejudiced by the amendments.

## PROCEDURAL HISTORY

Plaintiffs filed their original complaint in this action on August 1, 2001. Two months later, on October 18, 2001, plaintiffs filed their first amended complaint, which has served as the operative complaint ever since and was the basis for extensive (a) dispositive motion practice under FED. R. CIV. P. 12(b)(6) and 56; (b) class certification proceedings under FED. R. CIV. P. 23; and (c) written discovery and party depositions under FED. R. CIV. P. 30, 34, and 36. With regard to discovery, Allstate turned over more than 126,000 pages of documents starting in October 2002, responded to 179 requests for admission, and produced five witnesses to testify pursuant to plaintiffs' 30(b)(6) notices, four depositions occurring in January 2003, and one

---

[2]      One of plaintiffs' new allegations is that, as a result of the termination of their employment contracts, some agents "have taken their own lives." (Pls.' Proposed Sec. Am. Compl. ("Proposed SAC") ¶¶ 10, 119.) This allegation should not be permitted, as it is plainly inapplicable to the current named plaintiffs, is inflammatory, and serves no purpose other than to prejudice Allstate.

deposition occurring in October 2003.   And Allstate took the depositions of all 29 named plaintiffs concerning the allegations of their first amended complaint.

From the start of discovery in April 2002 through the date the district court entered summary judgment in Allstate's favor in June 2007, plaintiffs were actively engaged in motion practice, including filing three dispositive motions:   Motion For Judgment On The Pleadings Against All Defendants On Count I (7/26/02, Docket No. 52),   Motion for Partial Summary Judgment As To Liability (5/2/03, Docket No. 88), and Motion for Partial Summary Judgment As To Counts I and IV (5/23/03, Docket No. 93). Plaintiffs also filed two Motions to Compel Discovery (6/27/03, Docket No. 102; 6/29/06, Docket No. 162), and a Motion for Reconsideration (4/15/04, Docket No. 136).   Yet, at no time during this five-year period did the plaintiffs ever file a motion seeking leave to amend their complaint.   This is noteworthy, and alone justifies denial of plaintiffs' current motion to amend, for at least two reasons.

*First*, during this five-year period, the Supreme Court decided the case of *Smith v. City of Jackson*, 544 U.S. 228, 233-40 (2005), where the Court resolved a previous conflict among the Circuits and held that disparate impact was a cognizable theory of discrimination under the ADEA.   Plaintiffs did not include a disparate impact claim in their original and first amended complaints recognizing that "prior to *Smith*, disparate impact claims were not recognized under the ADEA in this District." (Romero Notice of Supplemental Authority (Docket No. 144) at 2.) In April 2005, one month after the Supreme Court decided *Smith*, plaintiffs filed the opinion as supplemental authority in further support of their argument that they had viable claims under the ADEA.   Yet, plaintiffs failed at that time to seek leave to amend their complaint to add a claim they originally believed was not available under the ADEA.   They failed to do so then, and should not be permitted to do so now.

*Second,* plaintiffs' new allegations apparently are based on documents and deposition discovery that plaintiffs obtained in late 2002 and early 2003. Nowhere do plaintiffs explain why, if their amendments are necessary additions to their existing 75-page complaint, they failed to assert them earlier, when the case was actively being litigated in the district court.

## ARGUMENT

Rule 15(a) provides that "when a party moves to amend, leave shall be freely granted when justice so requires." This Court has previously held, however, that "[w]hile this is undoubtedly a liberal standard, it is not automatic. Leave to amend may be denied on the basis of undue delay, bad faith, or prejudice to the opposing party." *Solfanelli v. Mainwaring*, No. 91-6249, 1992 WL 328829, at *1 (E.D. Pa. Oct. 28, 1992) (Buckwalter, J.) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). *See also Estate of Oliva ex rel. McHugh v. New Jersey*, No. 09-2082, 2010 WL 1757297, at *12 (3d Cir. May 4, 2010) ("[A] district court may exercise its discretion to deny leave to amend a complaint in situations in which the plaintiff has delayed seeking leave to amend if the delay 'is undue, motivated by bad faith, or prejudicial to the opposing party.'") (quoting *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008)). Plaintiffs' present motion—brought more than nine years after the start of this litigation—fails to meet these standards and should be denied. It is apparent from the face of the proposed second amended complaint that (1) justice does not require that such a substantially revised complaint be permitted, and (2) defendants would be prejudiced and the case delayed by allowing such indiscriminate and unexplained revisions to the complaint. We focus here on certain discrete aspects of plaintiffs' proposed hundreds of amendments, which illustrate why plaintiffs' motion should be denied.

I.     **LEAVE TO AMEND SHOULD BE DENIED BECAUSE PLAINTIFFS' UNDUE DELAY IS EXCESSIVE AND WITHOUT JUSTIFICATION.**

Although their burden, plaintiffs have given no justification for their delay in seeking to amend their complaint with allegations plaintiffs have known for years. Courts routinely deny a plaintiff's motion for leave to amend where, as here, the party failed to provide any justification for the excessive delay in seeking relief. *See, e.g., USX Corp. v. Barnhart*, 395 F.3d 161, 168 (3d Cir. 2004) (denying motion to amend because "Appellants offer no [justifiable] excuse for failing to include these assignments in their original complaint").

A.     <u>**Plaintiffs Unreasonably Delayed In Seeking To Amend The Complaint.**</u>

Plaintiffs conclusorily assert in their motion that "there has been no 'truly undue or unexplained delay'" in seeking to amend their complaint. (Pl. Mem. at 5.) Not so. Plaintiffs became aware of the majority of the additional allegations they seek to include in late 2002 or early 2003. For example:

- Plaintiffs assert new allegations regarding Allstate Assistant Vice President Barry Hutton's involvement with developing and implementing the Preparing for the Future Program. (Proposed SAC ¶¶ 73-74.) Mr. Hutton was deposed in *January 2003*.

- Plaintiffs assert new allegations describing the portion of the Preparing for the Future Group Reorganization Program that allowed existing independent contractor exclusive agents to sell their economic interest in the books of business and terminate their agency agreements. (*Id.* ¶ 76.) Allstate produced documents describing this feature of the Preparing for the Future Group Reorganization Program in *October 2002*.

- Plaintiffs assert new allegations regarding Allstate's re-hire policy. (*Id.* ¶¶ 113-16.) Allstate produced documents regarding the re-hire policy in *January 2003* and plaintiffs took the deposition of Karleen Zuzich, the officer who developed the re-hire policy, in *January 2003*.

- Plaintiffs assert new allegations regarding the "Acknowledgement of Understanding" provided to employee agents. (*Id.* ¶ 97.) Plaintiffs themselves had knowledge of the Acknowledgement of Understanding prior to filing their lawsuit, and in any event, Allstate produced documents regarding the Acknowledgement of Understanding in *October 2002*.

- Plaintiffs assert new allegations regarding Allstate's Agent Transition Severance Plan. (*Id.* ¶ 100.) Plaintiffs themselves had knowledge of the Allstate's Agent Transition Severance Plan, and in any event, Allstate produced documents regarding the Agent Transition Severance Plan in *October & November 2002.*

Although their burden, nowhere do plaintiffs explain why they did not seek to add these allegations earlier. *See Gaston v. Exelon Corp.,* 247 F.R.D. 75, 86 (E.D. Pa. 2007) (finding that it is plaintiff's burden to "explain[] the reasons for their delay in seeking the amendment").

Plaintiffs' new disparate impact theory of relief has also been known to plaintiffs since March 2005 when the Supreme Court found disparate impact to be a cognizable claim under the ADEA in *Smith v. City of Jackson.* 544 U.S. at 233-40. Indeed, promptly after the Supreme Court decided *Smith v. City of Jackson,* plaintiffs brought the opinion to the attention of the district court in a Notice of Supplemental Authority filed April 11, 2005. (Docket No. 144 at 1-2.) Notably, however, plaintiffs did not then seek to amend their complaint to assert a disparate impact claim under the ADEA. Instead, they alleged that their "allegations in the First Amended Complaint are broad enough to give rise to claims under both disparate treatment and disparate impact theories." (*Id.* at 2 n.1.) Allstate promptly disagreed with plaintiffs' position, asserting that plaintiffs had "neither pled nor supported a claim for disparate impact." (Docket No. 145 at 1.) Although plaintiffs knew Allstate disputed that plaintiffs had in fact asserted a disparate impact claim in their complaint, plaintiffs still did not attempt to resolve this dispute or address the issue squarely by seeking leave to amend their complaint to include a disparate impact claim. Instead, they stood idly by.

In *Rizzo v. PPL Service Corp.,* No. 03-5779, 2005 WL 1397217 (E.D. Pa. June 10 2005), plaintiffs sought leave to amend their complaint to include a disparate impact claim *one month* after the Supreme Court's opinion in *Smith v. City of Jackson.* The Court denied plaintiffs' motion, finding that plaintiffs had unduly delayed and offered no legitimate reason for their one-

month delay in seeking leave: "once *Smith* was issued on March 30, 2005, a plaintiff would not have had to deal with any ambiguity and could have filed a disparate impact claim under the ADEA. These Plaintiffs simply failed to request leave to amend their complaint in a prompt manner and have not presented any reason for that delay." *Id.* at *4. Here, plaintiffs' delay is measured in years, not the single month that was sufficient for the Court in *Rizzo* to deny leave to amend.

Plaintiffs' argument that "Allstate has known for several years" of plaintiffs' disparate impact claim (Pl. Mem. at 2) misses the mark as a legal matter. Under Rule 8, plaintiffs' *complaint* "must provide a defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 499 (3d Cir. 1997). In *Krouse,* plaintiff argued that he had viable claims of disability discrimination and failure to accommodate under the ADA, based on references to failure to accommodate in the background section of the complaint. The Third Circuit refused to hear those claims, holding "Although a complaint's allegations are to be construed favorably to the pleader, we will not read causes of action into a complaint when they are not present." *Id.* at 499 n.1 (citation omitted).

Plaintiffs' argument that Allstate has "been on notice" of plaintiffs' disparate impact claim is incorrect in any event. The disparate impact claim plaintiffs alluded to in April 2005 is *not* the same disparate impact claim that they are attempting to assert now. In April 2005, plaintiffs articulated that the basis for their unasserted disparate impact claim was that "over 90% of the employee agents subject to the [Preparing for the Future Group Reorganization Program] were age forty and older." (Docket No. 144 at 2.) Plaintiff elucidated their disparate impact theory in their opposition to Allstate's summary judgment brief (at pp. 30-40), as follows:

> Here, there can be little question that the Program had a disparate impact on employee agents over the age of forty. Allstate "limit[ed]" or "classif[ied]" its

> employees by deciding to have one function previously performed by employees, acting as sales agents, performed exclusively by persons classified as so-called "independent contractors." 29 U.S.C. 623(a)(2).

In other words, plaintiffs framed their disparate impact claim as one challenging Allstate's decision to terminate its employee agent programs in favor of its independent contractor agency program. Yet, plaintiffs' proposed Second Amended Complaint includes allegations that Allstate engaged in unspecified policies or practices that resulted in a disproportionate number of agents over the age of 40 deciding to sever their relationship with Allstate several years *after* the Preparing for the Future Group Reorganization Program. Specifically, plaintiffs allege that:

> Allstate understood and expected that a much larger percentage of the ADEA collective action members than other class members who continued the relationship beyond June 30, 2000 would discontinue the relationship within a few years because of their unwillingness to remain in Allstate's service without benefits, or that Allstate itself would sever the relationship within a few years after the Mass Termination Program based on pretexts created through its onerous and discriminatory actions against them.

(Proposed SAC ¶ 176.) This is decidedly not the same disparate impact claim that plaintiffs have described, but not pled, previously, which, at best, was a challenge to Allstate's decision to terminate employee agent contracts, ***not*** to actions or decisions made by Allstate years later.

These years of missed opportunities are fatal to plaintiffs' present motion. "[W]hen a movant has had previous opportunities to amend a complaint" but failed to timely do so, the Third Circuit has routinely upheld lower court decisions denying motions for leave to amend. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273-74 (3d Cir. 2001) (denying motion for leave to amend because "the factual information on which the proposed amendment relied was known almost two-and-a-half years before plaintiffs sought leave to amend"). Courts have denied motions for leave to amend based on far shorter delays than present here. *See, e.g.*, *USX Corp.*, 395 F.3d at 169 (delay of three years unreasonable); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (three year lapse between filing of complaint and proposed

amendment was "unreasonable" delay where plaintiff had "numerous opportunities" to amend); *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 924 (3d Cir. 1990) (finding that plaintiff's delay of four months after receiving certain information was important in determining that plaintiff's delay was undue); *Local Union 30, United Union of Roofers, Waterproofers and Allied Workers v. D.A. Nolt, Inc.*, No. 01-5344, 2008 WL 2502135, at *3 (E.D. Pa. June 23, 2008) (finding a two-year delay unreasonable); *Meyers v. Schuylkill County Prison*, No. 04-1123, 2006 WL 1094550, at *1 (M.D. Pa. April 25, 2006) (delay of twenty-two months unreasonable).

Moreover, although this case has been the subject of an appeal, plaintiffs are not automatically granted a clean slate and unlimited leave to amend their complaint and add new claims and allegations. To the contrary, courts repeatedly have denied motions for leave to amend complaints after cases have been remanded by an appellate court for further proceedings when—just as here—the plaintiff had the opportunity to amend the complaint before the appeal. For instance, in *Commonwealth of Pennsylvania v. Local 542, Int'l Union of Operating Eng'rs*, 569 F. Supp. 582 (E.D. Pa. 1983), a case that had been remanded for further proceedings by the Supreme Court, the district court denied plaintiffs' leave to amend their complaint to add additional theories of liability eleven years into the case. *Id.* at 586, 589. The court noted that "[l]ate motions to assert additional theories of liability are not favored where the plaintiff had adequate knowledge at the outset of the litigation to plead and litigate those theories and the undue delay results in unfair prejudice to defendants." *Id.* at 589. *See also Merican, Inc. v. Caterpillar Tractor Co.*, 596 F. Supp. 697, 705-06 (E.D. Pa. 1984) (denying motion for leave to amend complaint after case was remanded for further proceedings where newly-asserted claim was available to plaintiff in the years before the appeal); *Robert Billet Promotions, Inc. v. IMI Cornelius, Inc.*, No. 95-1376, 1997 WL 827063, at *2 (E.D. Pa. Nov. 19, 1997) (same).

Plaintiffs knew about the new allegations they seek to include and their new disparate impact theory years before the appeal. Their effort to amend now is too late.

B.  **Plaintiffs Fail To Explain Why They Waited Years To Amend The Complaint.**

Plaintiffs' failure to explain their undue delay constitutes a separate and distinct reason to deny plaintiffs' motion. "[T]he question of undue delay requires [a court to] focus on the movant's reasons for not amending sooner." *Cureton*, 252 F.3d at 273. It is plaintiffs' burden to "explain[] the reasons for their delay in seeking the amendment." *Gaston*, 247 F.R.D. at 86. Plaintiffs here have not satisfied their burden. The conclusory five-page brief in support of plaintiffs' motion provides no justification for plaintiffs' significant delay. *See Solfanelli*, 1992 WL 328829, at *1 (Buckwalter, J.) ("Plaintiff's failure to explain his failure to plead these matters earlier is a basis for denying plaintiff's motion.").

In *Solfanelli*, plaintiff sought to amend its complaint to include new facts learned during discovery. However, "[n]owhere in plaintiff's motion does he offer an explanation of how or when this information became known to him." *Id.* Concluding that the plaintiff learned of these new facts "at the latest" ten months before filing its motion and offered "no explanation for the delay in moving to amend his complaint," this Court denied the plaintiff's motion. *Id.* Similarly, here, plaintiffs provide no "change in facts or law to justify the plaintiffs' delay in moving to amend," *McKenna v. City of Phila.*, 511 F. Supp. 2d 518, 528 (E.D. Pa. 2007), or give this Court any other explanation for the many years they waited to present the instant motion.

This Court recently faced a similar situation in *Goldfish Shipping, S.A. v. HSH Nordbank AG*, and observed:

> [Goldfish] seems to argue that it simply did not think, earlier in the litigation, that it was necessary to advance its current theories of recovery or to allege the new facts that it sets forth, because it did not realize that the old theories were infirm or that the additional facts were important. . . . Under these circumstances,

> Goldfish should not be permitted a 'do-over' to assert new legal theories and permutations of its prior claims that it could have asserted much earlier. . . . [P]ermitting Goldfish another chance to state claims on the same body of facts and law would certainly subvert the very important interests of judicial economy and finality.

623 F. Supp. 2d 635, 640-41 (E.D. Pa. 2009). As in *Goldfish Shipping*, plaintiffs' current motion seeks permission for a do-over to asset new allegations and claims known to them for years. The motion should be denied.

## II.   THE PROPOSED AMENDMENTS ARE PREJUDICIAL TO THE ALLSTATE DEFENDANTS.

Although plaintiffs' undue delay is alone sufficient cause to deny the motion, the prejudice the amendments would cause Allstate is yet another reason plaintiffs' motion should be denied. *Gaston*, 247 F.R.D. at 85-86; *Goldfish Shipping*, 623 F. Supp. 2d at 641 n.6. Courts in this Circuit have recognized that "the longer the moving party delays in seeking leave to amend, the more likely it is that the nonmoving party has suffered prejudice in some way." *Transp. Workers Union of Phila., Local 234 v. S.E. Pa. Transp. Auth.*, 137 F.R.D. 220, 224-25 (E.D. Pa. 1991) (quoting *Merican*, 596 F. Supp. at 705). *See also White v. SKF Aerospace, Inc.*, 768 F. Supp. 498, 502 (E.D. Pa. 1991) ("In assessing prejudice to defendant, the passage of time since the events which gave rise to this action is important."). In determining whether prejudice to the non-moving party exists, courts have "considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273.

Plaintiffs' new allegations will undoubtedly result in additional discovery and cost. For one thing, plaintiffs seek to assert vague allegations that Allstate made "misrepresentations about the Release and the consequences of signing or not signing it." (Proposed SAC ¶ 12.) Allstate already has taken the depositions of all named plaintiffs, during which Allstate explored what

plaintiffs relied on in deciding which option to select in the Preparing for the Future Group Reorganization Program and whether to sign the release. At the time Allstate deposed these plaintiffs, their complaint did not assert that Allstate had made misrepresentations to plaintiffs. If plaintiffs are allowed to add these new conclusory allegations, Allstate will be required to re-take all of these depositions to inquire into each individual plaintiff's misrepresentation claims with respect to the release. *See Breiner v. Litwhiler*, 245 F. Supp. 2d 614, 624 (M.D. Pa. 2003) (finding prejudice to defendant where amended complaint included conclusory and broad assertions that would require additional discovery); *Sweeney v. St. Joseph's Hosp.*, 769 F. Supp. 747, 749 (M.D. Pa. 1991) (holding that the wholesale addition of new factual allegations "one-and-one-half years after the original complaint was filed" prejudiced the defendant). Likewise, plaintiffs' new theory of disparate impact also will require additional discovery of the plaintiffs. That is because plaintiffs' new, previously unasserted theory apparently focuses on events and actions occurring years *after* the Preparing for the Future program and possibly even *after* Allstate took plaintiffs' depositions.

**Conclusion**

When the Court of Appeals for the Third Circuit remanded this case, it did not direct or anticipate a complete re-do of plaintiffs' claims. Rather, the Court remanded this case to allow the parties an opportunity to engage in "further discovery into the validity of the releases." *Romero, et al. v. Allstate Ins. Co., et al.*, 344 Fed. Appx. 785, 790 (3d Cir. 2009). That, and that alone, should be the focus of the parties' efforts. Plaintiffs' attempt to file a new complaint asserting countless new allegations, conclusory assertions of misrepresentations by Allstate, and a new theory of liability should not be permitted, and their Motion for Leave to File and Serve Their Second Amended Complaint should be denied.

Dated: May 21, 2010

> /s/ Katherine M. Katchen
> Katherine M. Katchen (I.D. No. 80395)
> AKIN GUMP STRAUSS HAUER & FELD LLP
> Two Commerce Square
> 2001 Market Street, Suite 4100
> Philadelphia, PA 19103
> (215) 965-1200
> (215) 965-1210 (fax)
>
> Richard C. Godfrey, P.C.
> Sallie G. Smylie, P.C.
> KIRKLAND & ELLIS LLP
> 300 N. LaSalle
> Chicago, IL 60654
> (312) 862-2000
> (312) 862-2200 (fax)
>
> Donald R. Livingston
> Nathan J. Oleson
> AKIN GUMP STRAUSS HAUER & FELD LLP
> 1333 New Hampshire Ave., N.W.
> Washington, D.C. 20036

14

(202) 887-4000
(202) 887-4288 (fax)

*Attorneys for Allstate Defendants*

John B. Langel
BALLARD, SPAHR, ANDREWS & INGERSOLL
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500
(215) 864-8999 (fax)

*Attorney for Defendant Edward M. Liddy*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing Defendants' Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint was served on May 21, 2010, by court's Electronic Case Filing system and by electronic mail on all counsel of record.

/s/ Katherine M. Katchen
Katherine M. Katchen