## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENE R. ROMERO, *et al.*, <br> Plaintiffs, | : <br> : <br> : | |
| v. | : <br> : | Civil Action No.: 01-CV-3894 (RLB) |
| ALLSTATE INSURANCE COMPANY, *et al.*, <br> Defendants. | : <br> : <br> : <br> : | CLASS ACTION |

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br> Plaintiff, | : <br> : <br> : | Civil Action No.: 01-CV-7042 <br> (Consolidated with 01-CV-3894) |
| v. | : <br> : | |
| ALLSTATE INSURANCE COMPANY, <br> Defendants. | : <br> : <br> : | |

| | | |
|---|---|---|
| GENE R. ROMERO, et al., <br> Plaintiffs, | : <br> : <br> : | Civil Action No.: 01-CV-6764 |
| v. | : <br> : | CLASS ACTION |
| THE ALLSTATE CORPORATION, et al., <br> Defendants. | : <br> : <br> : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DOCUMENTS RELATED TO THE RELEASE IN ACCORDANCE WITH THE COURT'S APRIL 7, 2010 CASE MANAGEMENT ORDER

**FILED UNDER SEAL PURSUANT TO ORDER DATED SEPTEMBER 26, 2002**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND ................................................................................................2

    A.    Allstate Forced Its Employees To Sign The Release As Part Of The Mass
       Termination Program ..................................................................................2

    B.    Documents Concerning The Drafting, Execution, Construction, And
       Validity Of The Release Are Crucial To This Consolidated Litigation.....................4

    C.    Allstate's Productions To Date Have Been Inadequate And Have Failed To
       Include Electronic Documents ................................................................5

    D.    The Third Circuit Has Expressly Authorized Plaintiffs To Take Discovery
       Concerning The Release ................................................................6

    E.    Despite The Third Circuit's Opinion, Allstate Has Objected To Producing
       All Relevant And Responsive Documents Concerning The Release ....................6

    F.    Allstate Has Refused To Withdraw Or Explain Its Improper Objections And
       Continues To Refuse To Produce Documents ...........................................7

III.   ARGUMENT ................................................................................................9

    A.    The Court Should Overrule Allstate's Objections To Discovery Directed At
       Specific Challenges To The Validity Of The Release ............................10

        1.   Allstate Should Be Compelled To Produce Documents Concerning
            The Drafting, Construction, Implementation, And Consequences Of
            The Release ................................................................10

        2.   Allstate Should Be Compelled To Produce Documents Concerning
            Plaintiffs' Allegations That The Release Failed To Comply With The
            OWBPA ................................................................12

        3.   Allstate Should Be Compelled To Produce Documents Concerning
            Plaintiffs' Allegations That The Release Was Not Executed
            Voluntarily. ................................................................13

        4.   Allstate Should Be Compelled To Produce Documents Relevant To
            Plaintiffs' Allegations That The Release Was Not Executed
            Knowingly. ................................................................15

        5.   Allstate Should Be Compelled To Produce Documents Relevant To
            Plaintiffs' Allegations That The Release Was Retaliatory...........................19

        6.   Allstate Should Be Compelled To Produce Documents Relevant To
            Plaintiffs' Allegations That The Release Lacked Consideration .................20

        7.   Allstate Should Be Compelled To Produce Documents Concerning
            Plaintiffs' Contention That The Release Was Part And Parcel Of An
            Illegal Scheme ................................................................21

    B.    Allstate Should Be Compelled To Search For And Produce Electronic
       Documents................................................................22

1.      Allstate Should Be Required To Produce Electronic Documents.................23

2.      Allstate Should Be Required To Produce Documents In The Format Requested By Plaintiffs ..............................................................................25

IV.    CONCLUSION ............................................................................................................27

# TABLE OF AUTHORITIES

## CASES

*Aguilar v. Immigration and Customs Enforcement Division*, 255 F.R.D. 350 (S.D.N.Y. 2008)..................................................................................................................23, 26

*Bowman v. America Medical System, Inc.*, No. 96-7871, 1998 WL. 721079 (E.D. Pa. Oct. 9, 1998).........................................................................................................................23

*Cenveo Corp. v. S. Graphic System*, No. 08-5521, 2009 WL. 4042898 (D. Minn. Nov. 18, 2009).........................................................................................................................26

*EEOC v. Allstate Insurance Co.*, 458 F. Supp. 2d 980 (E.D. Mo. 2006).....................................16

*Ferruggia v. Sharp Electronics Corp.*, No. 05-5992, 2009 WL 1704262 (D.N.J. June 18, 2009).........................................................................................................................13

*Griffin-El v. Beard*, No. 06-2719, 2009 WL 678700 (E.D. Pa. March 16, 2009).........................10

*Hagenbuch v. 3B6 Sistemi Elettronici Industrialia S.R.L.*, No. 04-3109, 2006 WL. 665005 (N.D. Ill. March 8, 2006) ........................................................................................26

*Haring v. Eckerd Corp.*, No. 01-3988, 2002 WL 32348343 (E.D. Pa. May 16, 2002) ...............10

*Hartger v. IBM Corp.*, No. 04-CV-2124, 2005 WL 2095774 (N.D. Tex. Aug. 31, 2005)...........12

*Howell v. Maytag*, 168 F.R.D. 502 (M.D. Pa. 1996)..................................................................23

*Josephs v. Harris Corp.*, 677 F.2d 985 (3d Cir. 1982)...............................................................9

*Kruchowski v. Weyerhaeuser Corp.*, 446 F.3d 1090 (10th Cir. 2006)........................................12

*Medmarc Casualty Insurance Co. v. Arrow International, Inc.*, No. 01-CV-2394, 2002 WL. 1870452 (E.D. Pa. July 29, 2002) ...........................................................................10

*Momah v. Albert Einstein Medical Ctr.*, 164 F.R.D. 412 (E.D. Pa. 1996)..................................9

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) ........................................................9

*Orrell v. Motorcarparts of America, Inc.*, No. 06-CV-418-R, 2007 WL. 4287750 (W.D.N.C. Dec. 5, 2007) .........................................................................................................23

*Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998) ..........................................................12

*In re Payment Card Interch. Fee & Merchant Discount*, No. MD 05-1720, 2007 WL 121426 (E.D.N.Y. Jan. 12, 2007) ................................................................................................ 26

*In re Priceline.com Inc. Sec. Litigation*, 233 F.R.D. 88 (D.Conn. 2005) .............................. 26, 27

*Ruehl v. Viacom, Inc.*, 500 F.3d 375 (3d Cir. 2007) ..................................................... 12

*Smithkline Beecham Corp. v. Apotex Corp.*, No. 99-cv-4304, 2006 WL. 279073 (E.D. Pa. Jan. 31, 2006) ......................................................................................................... 10

*Stabilus v. Haynsworth, Baldwin, Johnson & Greaves, P.A.*, 144 F.R.D. 258 (E.D. Pa. 1992) ... 10

*Suhy v.  AlliedSignal*, 44 F. Supp. 2d 432 (D. Conn. 1999) ............................................. 12

*Thomforde v. IBM Corp.*, 406 F.3d 500 (8th Cir. 2005) ................................................ 12

*United States v. Koch Industrial, Inc.*, 197 F.R.D. 463 (N.D. Okl. 1998) ................................ 24

*In re Verisign, Inc. Sec. Litigation*, 2004 WL 2445243 (N.D. Cal. March 10, 2004) ........... 26, 27

*W.E. Aubuchon Co., Inc. v. Benefirst, LLC*, 245 F.R.D. 38 (D. Mass. 2007) .............................. 27

*William A. Gross Construction Associates, Inc. v. America Manufacturers Mutual Insurance Co.*, 256 F.R.D. 134 (S.D.N.Y. 2009) ........................................................................ 24

*Williams v. Sprint/United Management Co.*, 230 F.R.D. 640 (D. Kan. 2005) ............................ 26

*Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003) ........................................ 23

## FEDERAL STATUTES AND RULES OF CIVIL PROCEDURE

29 U.S.C. § 626(f)(1) .................................................................................................... 4

Fed. R. Civ. P. 26 *et seq* ........................................................................................ 9, 17

Fed. R. Civ. P. 34 *et seq* ............................................................................ 9, 23, 25, 76

Fed. R. Evid. 803 ........................................................................................................ 24

## I.  **INTRODUCTION**

The United States Court of Appeals for the Third Circuit held that Plaintiffs are entitled to seek and obtain further discovery concerning the General Release and Waiver Agreement (the "Release") that Defendants Edward M. Liddy, Allstate Insurance Company, and The Allstate Corporation (collectively, "Allstate") illegally caused Plaintiffs, and over 6,200 other employee agents, to sign as part of Allstate's Mass Termination Program.  As the Third Circuit recognized, documents relating to the Release are crucial to this litigation.  Although Allstate contends that the Release bars Plaintiffs' claims, Plaintiffs intend to demonstrate that the Release is invalid for multiple reasons and was a critical part of Allstate's illegal scheme to discriminate and retaliate against Plaintiffs and to slash employee benefit costs.[1]

Consistent with the Third Circuit's directive, Plaintiffs and the EEOC served narrow and focused document requests in this consolidated action concerning the Release.  Instead of complying with the Third Circuit's directive, Allstate responded by asserting boilerplate and non-specific objections to each and every document request,[2] and has refused to explain the basis behind these objections.  Ignoring its discovery obligations, Allstate has:

(a)     expressly refused to produce *any* documents responsive to 22 Document Requests—Requests Nos. 7, 8, 16-18, 21, 23, 25-36, 43-45—on the basis that such Requests seek irrelevant information unrelated to the Release;

(b)     confirmed that it will not withdraw its improper objections to 4 Document Requests—Requests Nos. 12, 13, 15, and 19—and thereby indicated that it is

---

[1]     *See* Pl. Am. Compl., attached as Ex. A to the Declaration of Michael Lieder ("Lieder Decl."), at ¶¶ 132-143.

[2]     The specific subjects of the document requests include:  the drafting, interpretation, implementation and effect of the Release (Request Nos. 1-6); the refusal of employees to sign the Release and the consequences of such a refusal (Request Nos. 7-8); the Release's non-compliance with the disclosure requirements of the Older Worker Benefits Protection Act (Request Nos. 9-14); the lack of voluntariness of the Release, its unconscionability, and the duress placed on employees, as well as the misrepresentations concerning the Release (Request Nos. 15-32); the retaliatory nature of the Release (Request Nos. 33-36); the absence of consideration for the Release (Request Nos. 37-42); and the central role of the Release in an illegal plan (Request Nos. 43-45).  (*See* Pl. Document Requests, attached as Ex. C to Lieder Decl.).

withholding documents on the basis of those objections, including that such Requests seek information unrelated to the Release;

(c)    refused to confirm whether it is withholding documents responsive to 14 Document Requests—Requests Nos. 1-4, 5, 6, 9, 10, 24, and 38-42—on the basis of its various objections, including relevance; and

(d)    refused to confirm that it will produce electronic documents, and, without stating the basis for its objection, has expressly refused to produce any electronic documents in the standard format requested by Plaintiffs.

Because each of these Requests is narrowly tailored and seeks relevant documents that are essential for Plaintiffs to establish the invalidity, unenforceability, and/or inapplicability of the Release, Allstate should be compelled to produce all responsive documents—including e-mail and other electronically-stored information in the format requested by Plaintiffs—within 30 days.  Put simply, Allstate should not be permitted to continue to prevent Plaintiffs from getting the discovery that the Third Circuit has mandated and that Plaintiffs need to pursue their claims.

## II.    <u>BACKGROUND</u>

### A.    Allstate Forced Its Employees To Sign The Release As Part Of The Mass Termination Program.

In November 1999, Allstate had over 13,000 "captive" insurance agents in the United States who could sell and service only Allstate-authorized insurance and financial services products.  (Pl. Am. Compl., Ex. A, at ¶¶ 1, 72)).  More than 6,000 of Allstate's "captive" insurance agents were employee agents, as opposed to so-called "independent contractors," with standardized employee contracts which permitted termination only for "good cause."  (*Id.* at ¶¶ 55, 61, 62, 72, 168-183).  These standardized "R830" and "R1500" contracts created an employment relationship that entitled Allstate's employee agents, including Plaintiffs, to a broad and comprehensive package of employee benefits, including a pension plan, a defined contribution plan, comprehensive medical

insurance, dental insurance, long-term disability insurance, and life insurance. (*Id.* at ¶¶ 57, 104, 145-157).[3]

As part of an effort to eliminate the payment of benefits to employee agents and to weed out older employee agents, Allstate designed what it called the "Preparing for the Future" Group Reorganization Program (the "Mass Termination Program"). (*Id.* at ¶¶ 73-77, 99). Through the Mass Termination Program, Allstate terminated its employment relationship with all employee agents in the United States, except for those agents spared by state laws such as West Virginia and Montana. (*Id.* at ¶¶ 71-72). No part of the Program was subject to negotiation. (*Id.* at ¶¶ 78-82, 141).

Recognizing that its Mass Termination Program was illegal and violated its agents' rights (*Id.* at ¶¶ 3-5, 70-77), Allstate coerced, pressured, and misled them into signing a Release that "release[d], waive[d], and forever discharge[d] Allstate ... from any and all liability, actions, charges ... or claims for relief or remuneration of any kind whatsoever ... arising out of ... the termination of my employment . . . or my transition to independent contractor status." (*Id.* at ¶ 78).

Allstate gave any employee agent who signed the Release three alternatives: (1) continue in the service of Allstate as a so-called "independent contractor"; (2) leave Allstate after selling his or her book of business; or (3) leave Allstate in exchange for a severance package payable over two years. (*Id.* at ¶ 79). By contrast, employee agents who did not sign the Release were eligible for a severance payment equal to a maximum of 13 weeks of pay, and lost their substantial investments in their books of business, the prospect of pursuing their careers as licensed insurance agents, and

---

[3]      Most employee agents had to invest large amounts of their own money in their agencies and books of business, to recruit family members to work for minimal or no pay, and to work long hours themselves. (*Id.* at ¶¶ 60, 64, 82-86). To recoup their investments, therefore, employees had to remain with Allstate so that they could continue to earn commissions upon the renewal of policies they sold and, eventually, the retirement benefits promised by the company. (*Id.*).

much of their promised employee benefits. (*Id.* at ¶¶ 79, 82-91).  Nearly all of Allstate's employees signed the Release and took one of the first three options. (*Id.* at ¶ 80).

**B.**  **Documents Concerning The Drafting, Execution, Construction, And Validity Of The Release Are Crucial To This Consolidated Litigation.**

On August 1, 2001, Plaintiffs filed a class action lawsuit against Allstate ("*Romero I*") arising out of the illegal Mass Termination Program and Release.  They asserted claims for age discrimination and retaliation under the Age Discrimination and Employment Act ("ADEA"), interference with employment and retaliation under the Employee Retirement Income Security Act ("ERISA"), breach of contract, and breach of fiduciary duty.  (Pl. Am. Compl., Ex. A).  Plaintiffs also seek a declaratory judgment that the Release is invalid because:

(1)  it was executed under duress (*id.* ¶ 138);

(2)  it was not executed knowingly and voluntarily, in part because of a series of misrepresentations by Allstate (*id.* ¶ 138); [4]

(3)  there was no valid consideration for the Release (*id.* ¶ 139);

(4)  Allstate violated public policy in conditioning continued service on execution of the Release (*id.* ¶ 140);

(5)  it was procedurally and substantively unconscionable (*id.* ¶ 141);

(6)  Allstate retaliated against non-Release-signers and threatened retaliation against other agents (*id.* ¶ 142);

(7)  Allstate violated the disclosure requirements of the Older Worker Benefits Protection Act ("OWBPA"), 29 U.S.C. § 626(f)(1) (*id.* ¶ 143); and

(8)  the Release was part and parcel, and in furtherance of, Allstate's unlawful scheme to interfere with the statutory and contractual rights of its employee agents. [5]

---

[4]  *See* Pl. April 10, 2007 Cons. Mem., Doc. No. 178 (filed under seal), attached hereto as Ex. B to Lieder Decl., at 2-3.  As discussed below, the Third Circuit has expressly held that Plaintiffs are entitled to discovery as to all release-related issues raised in this document. *Romero*, 344 Fed. Appx. at 793 (holding that Plaintiffs may take discovery on all issues raised "in their response to [the Court's] March 21, 2007 Order").

[5]  This argument also was raised in Plaintiffs' response to Judge Fullam's March 21, 2007 Order. (Pl. April 10, 2007 Cons. Mem. (filed under seal), Ex. B, at 2-3).

Shortly after the filing of *Romero I*, Plaintiffs brought a separate action against Allstate ("*Romero II*"), alleging that Allstate violated the "anti-cutback" and fiduciary-duty provisions of ERISA. (Pl. Am. Compl., Doc. No. 76).   As in *Romero I*, Allstate has asserted the validity of the Release as an affirmative defense to Plaintiffs' claims. (Def. Answer, Doc. No. 82, at Second Aff. Defense).

Finally, on December 27, 2001, the EEOC brought a third action against Allstate ("*EEOC*") for retaliating against all employee agents—through the Mass Termination Program and the Release—in violation of the ADEA and other federal employment statutes.   The EEOC asserts that the Release was invalid because Allstate conditioned an incident of employment—the right to continue to work as an Allstate agent—on the sacrifice of the right to engage in protected activity, and, like the Plaintiffs, seeks a declaratory judgment that the Release is invalid under the ADEA. (EEOC Compl., Doc. No. 2, at 5-7).   *Romero I* and *EEOC* were consolidated in 2002.

## C.   Allstate's Productions To Date Have Been Inadequate And Have Failed To Include Electronic Documents.

Since the inception of discovery in these cases, Plaintiffs have sought electronic documents in electronic form. (*See* Pl. April 24, 2002 First Doc. Req., attached as Ex. G to Lieder Decl., at ¶¶ B(1), B(3), B(4)).   With one exception,[6] Allstate has failed to produce any documents in electronic form, much less with the metadata intact, even though such documents clearly existed at one time. (*See* Lieder Decl., at ¶ 2).   In fact, Allstate has recently refused to advise Plaintiffs whether it has retained its electronic documents and has incorrectly suggested that its document retention and production obligations have somehow changed during the pendency of this case. (*See* Def. June 17, 2010 Letter, attached as Ex F to Lieder Decl.).

---

[6]      While Allstate has produced certain emails in "hard copy" format, it has not produced the corresponding electronic versions.  However, in response to Plaintiffs' April 2002 document requests, Allstate did produce documents in computer-readable form that provide some of the identifying information about employee agents whose employment was terminated as a result of the Mass Termination Program.

**D.    The Third Circuit Has Expressly Authorized Plaintiffs To Take Discovery Concerning The Release.**

On appeal, the Third Circuit ordered "further discovery into the facts surrounding the signing of the releases." *Romero v. Allstate Ins. Co.,* 344 Fed. Appx. 785, 793 (3d Cir. 2009).

The Third Circuit reasoned that Allstate's productions to date had been inadequate, and emphasized that "approximately half of the documents Allstate produced were documents" from a separate action. *Id.* The Third Circuit then stated that "the plaintiffs are entitled to discovery . . . related to the specific release-related issues the plaintiffs raised with the District Court in their response to its March 21, 2007, Order," including that "the releases were part of an illegal scheme; that they were not signed knowingly or voluntarily; and that they were unconscionable." *Id.*

**E.    Despite The Third Circuit's Opinion, Allstate Has Objected To Producing All Relevant And Responsive Documents Concerning The Release.**

Consistent with the Third Circuit's mandate, Plaintiffs served Release-related document requests on March 5, 2010. (Pl. Doc. Requests, attached hereto as Ex. C to Lieder Decl.). Each of Plaintiffs' document requests is grouped into concise and specific categories relating to the drafting, implementation, and validity of the Release:

- Request Nos. 1-6 seek documents related to the drafting, interpretation, implementation, and effect of the Release;

- Request Nos. 7-8 seek documents related to the refusal of employees to sign the Release, the consequences of such a refusal, and the general applicability of the Release;

- Request Nos. 9-14 seek documents concerning the Release's non-compliance with OWBPA;

- Request Nos. 15-32 seek documents related to the duress that Plaintiffs were placed under to sign the Release, thereby making its execution involuntary, the Release's unconscionability, and the misrepresentations concerning the consequences of signing the Release;

- Request Nos. 33-36 seek documents related to the retaliatory nature of the Release;

- Request Nos. 37-42 seek documents related to the absence of consideration for the Release; and

- Request Nos. 43-45 seek documents concerning the illegality of the Release.

(*Id.*).  Plaintiffs requested that Allstate produce electronic documents responsive to each Request, and to do so in "'native' format, together with all associated metadata." (*Id.* at Gen. Ins., at A(7)-8)).

On April 7, 2010, this Court entered a Case Management Order, which required Allstate to start producing documents responsive to Plaintiffs' document requests on a rolling basis within 30 days after the entry of the Order—that is, by May 7, 2010.  The Order also required the parties:   (a) to engage in a "prompt and good faith effort to meet and confer" concerning any objections to discovery requests; and (b) to file "appropriate motions" within 30 days from the service of objections.  (April 7, 2010 Case Management Order, Doc. No. 199).

Despite the Third Circuit's direction and the focused nature of Plaintiffs' document requests, Allstate asserted boilerplate relevance and other objections to each and every document request. Allstate refused to produce *any* documents for nearly half of Plaintiffs' document requests, and objected to producing electronic documents in the format specified by Plaintiffs—that is, in native format with accompanying metadata.  (*See* Def. May 11, 2010 Responses To Pl. Doc. Req., attached hereto as Ex. D to Lieder Decl., at No. 7-8, 16, 21, 23, 26-36, 43-44, 45).

**F.    Allstate Has Refused To Withdraw Or Explain Its Improper Objections And Continues To Refuse To Produce Documents.**

In an effort to resolve the parties' differences without the necessity of Court intervention, Plaintiffs proposed a meet-and-confer conference, during which Plaintiffs exhaustively explained the relevance of each and every document request to Plaintiffs' allegations concerning the validity, enforceability, and applicability of the Release.  (Lieder Decl., at ¶ 4).  Plaintiffs additionally

requested that Allstate identify what electronic searches, if any, it had conducted to date, and what electronic searches it intended to conduct for responsive electronic documents. (*Id.*).

By contrast, Allstate was not prepared to explain with specificity the factual basis behind its objections to Plaintiffs' document requests. Allstate committed to produce all responsive documents to only five Requests (No. 11, 14, 20, 22, 37), and affirmatively stated that it would not produce any documents responsive to seven Requests (Nos. 18, 30-32, 43-45) because they purportedly seek irrelevant information unrelated to the Release. Allstate promised to provide written confirmation by May 28, 2010 as to whether it would clarify or reevaluate its objections to the remaining Requests.

Allstate did not respond until June 17, 2010, more than two weeks after its deadline.[7] More troublingly, Allstate confirmed that:

- Despite the Third Circuit's mandate, it will not produce any documents related to Plaintiffs' theory that the Release was part of an illegal scheme;

- It will not produce *any* documents responsive to 22 Requests (Nos. 7, 8, 16-18, 21, 23, 25-26, 28-36, 43-45), on the ground that such requests seek irrelevant information unrelated to the validity of the Release;

- It has refused to withdraw its improper objections to 4 Requests (Nos. 12, 13, 15 and 19), and has simply refused to confirm whether it is withholding documents responsive to 14 Requests (Nos. 1-4, 5, 6, 9, 10, 24, and 38-42) on the basis of those same objections, including relevance;

- It will not produce documents in the electronic format requested by Plaintiffs, because Allstate mistakenly believes that it need not comply with the current Federal Rules of Civil Procedure and that its document "retention and production obligations relating to this case" have somehow changed since 2001; and

- Allstate will not identify the searches, if any, it conducted to identify documents potentially responsive to Plaintiffs' earlier document requests.

(Def. June 17, 2010 Letter, attached as Ex. E, at 1-2).

---

[7]     In light of Allstate's delay, Plaintiffs agreed not to file a motion to compel on June 14, 2010.  Plaintiffs also agreed to enter into a stipulation extending the time to file such a motion until June 25, 2010.  (June 15, 2010 Order, Doc. No. 213).

Because Allstate has failed to withdraw or clarify any of its improper objections, Plaintiffs

were compelled to file the instant motion. As described below, Allstate should be required to

produce *all* responsive documents, including electronic documents with metadata, to each of

Plaintiffs' document requests within 30 days.[8]

## III.   **ARGUMENT**

A party is entitled to "obtain discovery regarding any nonprivileged matter that is *relevant*

to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). It is axiomatic that

relevance is "construed broadly to encompass any matter that bears on, or that reasonably could

lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund,*

*Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Rule 34 requires a party to produce all responsive documents, including e-mail and other

electronically-stored information, to a document request. Fed. R. Civ. P. 34(a). The party resisting

discovery has the affirmative obligation to "show specifically" how the information requested "is

not relevant or how each question is overly broad, burdensome or oppressive." *Josephs v. Harris*

*Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) (internal quotes and citation omitted); *Momah v. Albert*

*Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996). "Boilerplate" objections that merely

recite that a document request is irrelevant or overbroad, burdensome, or oppressive fail to satisfy

this obligation. *See, e.g., Griffin-El v. Beard*, No. 06-2719, 2009 WL 678700, at *9 (E.D. Pa.

March 16, 2009); *Smithkline Beecham Corp. v. Apotex Corp.*, No. 99-cv-4304, 2006 WL 279073, at

*2 (E.D. Pa. Jan. 31, 2006); *Haring v. Eckerd Corp.*, No. 01-3988, 2002 WL 32348343, at *1 (E.D.

Pa. May 16, 2002).

---

[8]         In an effort to reach an accord on the form of production, and in direct response to Allstate's request, Plaintiffs advised Allstate that the production of "native" files was not necessary with the exception of excel documents. In an effort to compromise, Plaintiffs instead requested that the documents be produced in Tagged Image File Format (TIFF) with the associated extracted text and certain metadata fields. (*See* Pl. June 9, 2010 Email, Ex. F). As described below, Allstate should be compelled to produce electronic documents in this standard format.

Here, Allstate has asserted boilerplate objections on the basis that such requests seek irrelevant information unrelated to the Release. As this Court has repeatedly held, however, "[r]elevancy should be broadly construed at the discovery state of litigation." *Medmarc Cas. Ins. Co. v. Arrow Int'l, Inc.*, No. 01-CV-2394, 2002 WL 1870452, at *2 (E.D. Pa. July 29, 2002). Thus, where there is any doubt over the relevance of a document request, the broad and liberal scope of discovery—as prescribed by Rule 26(b)(2)—demands that the court compel the production of documents responsive to that request. *See, e.g., Stabilus v. Haynsworth, Baldwin, Johnson & Greaves, P.A.*, 144 F.R.D. 258, 265 (E.D. Pa. 1992).[9]

Applying these well-settled standards, this Court should overrule Allstate's objections and require Allstate to: (a) search for, collect, and, produce all documents, including e-mail and other electronic documents, responsive to Plaintiffs' document requests within 30 days; and (b) to produce electronic documents in the format specified in Plaintiffs' document requests and subsequent correspondence—that is, in single-page "TIFF" images with a separate metadata file.

**A.    The Court Should Overrule Allstate's Objections To Discovery Directed At Specific Challenges To The Validity Of The Release.**

**1.    Allstate Should Be Compelled To Produce Documents Concerning The Drafting, Construction, Implementation, And Consequences Of The Release.**

Plaintiffs' first six document requests seek essential background information concerning the Release, including the manner by which the Release was drafted (Request No.1), how Allstate interpreted the language of the Release (Request No. 2), whether employee agents complained about the Release (Request No. 3), comments provided by management about the review and approval of the Release (Request No. 4), electronic documents concerning the Release (Request No.

---

[9]    Allstate also repeatedly objects to the requests on the ground that they were "the same, in its terms and substance," as requests served in Plaintiffs' Second and/or Third Set of Requests for Production of Documents. At a minimum, Allstate did not produce any documents in electronic format in response to either of those sets of requests, which were served years ago. (Lieder Decl., at ¶ 2). Accordingly, this objection is frivolous.

5), and all versions of documents that were provided to employee agents concerning the Release (Request No. 6). This is essential background information for all of Plaintiffs' contentions that the Release is invalid. Absent this essential information, Plaintiffs will be deprived of the opportunity to prove its challenges to the validity of the Release, including that Allstate's management knew the Release was illegal and invalid when it implemented the Mass Termination Program. (Pl. Am. Compl., Ex. A, at ¶¶ 138-143).

Despite the fundamental nature of this information, Allstate has asserted boilerplate objections to each of these Requests, including that the Requests seek irrelevant information, and has suggested that it intends to withhold documents on the basis of these objections. (Def. Obj., Ex. D, at No. 1-6). This is improper. Because each of these Requests is narrowly tailored to obtain relevant documents about the nature and validity of the Release, Allstate should be compelled to produce all documents responsive to these Requests.

Likewise, Document Requests Nos. 7 and 8 seek information about employee agents who refused to sign the Release, including the number of employees who refused to sign the Release and the consequences—financial and otherwise—of that refusal. (Pl. Doc. Req., Ex. C, at Nos. 7-8). This information concerning "holdouts" is crucial to the retaliation theory and for Plaintiffs to demonstrate the success of Allstate's illegal plan to cause agent employees to sign the Release unknowingly and involuntarily. Although Allstate contends—without more—that Document Requests Nos. 7 and 8 seek information "not related to the validity of the Release," it offers nothing in support of this conclusory assertion. (Def. Obj., Ex. D, at No. 7-8). Allstate's objections should be overruled.

2.   **Allstate Should Be Compelled To Produce Documents Concerning Plaintiffs' Allegations That The Release Failed To Comply With The OWBPA.**

Plaintiffs contend that the Release is invalid and unenforceable on the ground that employee agents subject to the Mass Termination Program did not receive accurate information that Allstate was required to provide under the OWBPA.  (Pl. Am. Compl., Ex. A, at ¶ 143).  This includes information about the ages and job classifications of its employee agents in West Virginia and Canada and others who were not subject to the Mass Termination Program, and of employee agents in Montana who were subject to the Mass Termination Program.[10]  (*Id.*).

The OWBPA provides a "strict, unqualified statutory stricture on waivers," and incorporates no qualifications or exceptions to the specific duties imposed on employers who seek releases of claims arising under the ADEA.  *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 381-82 (3d Cir. 2007) (quoting *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998) (noting that Congress "delineated these duties with precision and without qualification" and that "[c]ourts cannot with ease presume ratification of that which Congress forbids")); *see also Kruchowski v. Weyerhaeuser Corp.*, 446 F.3d 1090, 1092 (10th Cir. 2006); *Thomforde v. IBM Corp.*, 406 F.3d 500, 503 (8th Cir. 2005).  "Substantial compliance" with these informational requirements is not enough.  *Hartger v. IBM Corp.*, No. 04-CV-2124, 2005 WL 2095774, at *2 (N.D. Tex. Aug. 31, 2005); *Suhy v. AlliedSignal*, 44 F. Supp. 2d 432, 436 (D. Conn. 1999); *see also Ferruggia v. Sharp Electronics Corp.*, No. 05-5992, 2009 WL 1704262 *3 (D.N.J. June 18, 2009).

Document Request Nos. 9-14 are designed to obtain discovery directed to the critical issue of whether Allstate strictly complied with the informational requirements of OWBPA:

---

[10]   Plaintiffs also intend to show that the Release violated the OWBPA because it was not written in a manner calculated to be understood by the employee agents who were expected to sign it.  Among other things, the Release states that employee agents were waiving their unwaivable right to file charges with the EEOC, *see EEOC v. Lockheed Martin Corp.*, 444 F. Supp. 2d 414, 420-22 (D. Md. 2006), and suggests that they were waiving the protected right to file a lawsuit challenging the validity and enforceability of the Release under the OWBPA.

- Request No. 9 seeks documents relating to Allstate's purported compliance "with the OWBPA in drafting the Release and designing, adopting, and implementing the Mass Termination Program";

- Request No. 10 seeks drafts of documents relating to the OWBPA waiver information provided to employee agents subject to the Mass Termination Program;

- Request No. 11 seeks documents used to prepare such OWBPA waiver information;

- Requests No. 12 and 13 seek documents relating to whether employee agents in Montana, West Virginia, or Canada were "eligible" or "selected" for the Mass Termination Program; and

- Request No. 14 seeks documents relating to how Allstate classified the "decisional unit" from which agents were eligible and selected (or not eligible and not selected) for the Mass Termination Program.

Although Allstate has indicated that it will produce all documents responsive to Document Request Nos. 11 and 14, it has yet to do so. Furthermore, Allstate has asserted a boilerplate irrelevance objection to the remaining Requests, and, based upon this objection, has refused to commit to producing all documents responsive to those Requests. (Def. Obj., Ex. D, at No. 9, 10, 12, 13). Because these Requests seek documents that are clearly relevant to the validity of the Release, the Court should overrule Allstate's objections to Request Nos. 9, 10, 12, and 13, and compel Allstate to produce all documents responsive to each of these Requests in accordance with the Third Circuit's directive.

### 3. Allstate Should Be Compelled To Produce Documents Concerning Plaintiffs' Allegations That The Release Was Not Executed Voluntarily.

Allstate has refused to produce documents responsive to Request Nos. 7, 15, 16 and 17 on the purported grounds that these Requests are "not reasonably calculated to lead to the discovery of admissible evidence" and/or seek "information not related to the validity of the Release." (Def. Obj., Ex. D, at Nos. 7, 15, 16, and 17).[11] These objections are meritless.

---

[11] Although Allstate has withdrawn its irrelevance and temporal objections to Requests No. 15 and 17, it continues to maintain, without explanation, that these requests seek information unrelated to the validity and enforceability of the Release. (Def. June 17, 2010 Letter, Ex. E, at 2). As described *infra*, these objections lack merit.

As the Third Circuit held, Plaintiffs are entitled to discovery of all issues relating to whether the Release was executed "voluntarily," including whether Allstate refused to negotiate the terms of the Release and exerted "extreme economic pressure" on employee agents subject to the Mass Termination Program. *Romero*, 344 Fed. Appx. at 792-93. As Plaintiffs have alleged, Allstate understood that virtually all of the employees subject to the Mass Termination Program would effectively have no option but to sign the Release due to the extreme economic pressures they faced if they did not do so, including the loss of their ability to recoup financial investments through future commissions, the loss of pension and other retirement benefits, and the effect of restrictions contained in various "non-compete" and confidentiality provisions. (Pl. Am. Compl., Ex. A, at ¶¶ 82-91, 138).

Document Requests Nos. 7, 15, 16 and 17 are each designed to obtain information concerning the financial pressure and other economic consequences—indeed, the duress—placed upon Plaintiffs to sign the Release:

- Request No. 15 seeks documents relating to the financial investments that employee agents were forced to make in their Allstate agencies over a period of a decade or more to build a book of business;

- Request No. 16 seeks documents concerning the economic significance of renewal commissions and pension and other benefits that Allstate provided to its employee agents; and

- Requests No. 7 and 17 seek documents concerning the consequences of refusing to sign the Release and Allstate's projection that all (or virtually all) employee agents subject to the Mass Termination Program would sign the Release.

As required by the Third Circuit's broad mandate, Allstate should be compelled to produce all documents responsive to each of these Requests.

**4.    Allstate Should Be Compelled To Produce Documents Relevant To Plaintiffs' Allegations That The Release Was Not Executed Knowingly.**

As the Third Circuit recognized, Plaintiffs have alleged that they did not sign the Release knowingly and voluntarily, in part because Allstate "made misrepresentations about the independent contractor program." 344 Fed. Appx. at 792. The Third Circuit then held that Plaintiffs were entitled to discovery to show that the Release was "not signed knowingly or voluntarily." *Id.* at 793.

Although Allstate has objected to producing all responsive documents to Document Requests Nos. 18-32, each of these Requests is designed to obtain discovery directed at the very types of misrepresentations that Plaintiffs content will show the Release was not "knowingly" executed. Accordingly, Allstate's objections should be overruled.

**Request Nos. 18-21.**  During the Mass Termination Program, Allstate failed to inform Plaintiffs that, if they did not sign the Release, only the restrictions in their standardized employment contracts would apply, not the additional restrictions imposed upon agents who signed the Release. (Am. Compl., Ex. A, at ¶¶ 87-91; Pl. April 10, 2007 Cons. Mem. (filed under seal), Ex. B, at 3). Allstate therefore misled agents into signing the Release.

Although Allstate has objected to Requests Nos. 18 through 21 on the ground of irrelevance (Def. Obj., Ex. D, at Nos. 18-21), each of these Requests is designed to obtain documents related to the failure to inform employee agents about the lesser restrictions if they refused to sign the Release:

- Request Nos. 18 and 19 seek documents relating "to the interpretation or enforcement of the non-compete, confidentiality, or exclusive work provisions" of the pre-Mass Termination Agreement standard contracts (R830 and R1500 Contracts), as well as documents concerning the "confidentiality and non-compete provisions of the Agent Transition Plan," which, contrary to Allstate's representations, were more restrictive than those in the standard contracts. (Pl. Am. Compl., Ex. A, at ¶¶ 89-91);[12]

---

[12]    Allstate objects generally that the Request is "vague [and] ambiguous," but has never asserted—and, indeed, cannot assert—that it does not understand what is meant by the contracts' "non-compete, confidentiality, or exclusive work provisions."

- Request No. 20 seeks information concerning Allstate's representation that former agent employees could never use customer lists. (*Id.*);

- Request No. 21 relates to Allstate's representation that Allstate would treat attempts by former agents to contact Allstate customers as solicitation, which was inconsistent with the terms of the standard contracts, discouraged agents from considering alternative employment, and will show the Release was not "knowingly" executed. (*Id.* at ¶ 90).

Clearly, each category of document is directly relevant to Plaintiffs' contention that Allstate misrepresented the consequences of not signing the Release, and Allstate should be required to produce all responsive documents to these Requests.

**Request Nos. 22 and 23**.  Allstate represented to employee agents during the period between November 1999 and June 2000 that if they ceased working for Allstate as agents, they were eligible for other employment at Allstate.  This was false, because after signing the Release, employee agents who sought other positions learned that Allstate had adopted a policy—the rehiring moratorium—barring them from rehire for a period of one to two years.  (Pl. Am. Compl., Ex. A, at ¶¶ 101-103; Pl. April 10, 2007 Cons. Mem. (filed under seal), Ex. B, at 3).

Although Allstate is willing to produce documents responsive to Request No. 22, which seeks documents concerning the representations, it has improperly refused to produce documents responsive to Request No. 23, which seeks documents concerning its adoption of the rehiring moratorium in 2000.  These documents are relevant.  *See, e.g., EEOC v. Allstate Insurance Co.*, 458 F. Supp. 2d 980, 992 (E.D. Mo. 2006) (challenging hiring moratorium as creating an illegal disparate impact against former employee agents age 40 or older).  Allstate should be required to produce the requested documents.[13]

---

[13]     During the May 26, 2010 meet-and-confer, Allstate suggested that document discovery was unnecessary because Plaintiffs conducted a Rule 30(b)(6) deposition concerning the adoption of the rehiring moratorium policy in early 2003 during the three-month period devoted to "class" discovery.  The fact that the deposition occurred should not preclude Plaintiffs from discovering relevant documents to which the Third Circuit has said Plaintiffs are entitled.  Fed. R. Civ. P. 26(d)(2)(A) ("methods of discovery may be used in any sequence").

**Request Nos. 24-26.**  Allstate represented to employee agents during the period between November 1999 and June 2000 that it was not contemplating any reductions or changes in commission rates after June 30, 2000.  This representation reassured agents that it was safe to sign the Release and continue to serve Allstate as a so-called "independent contractor" under the R3001 contract.  However, this representation was false, because Allstate was contemplating reductions in commission rates while it was telling employee agents it was not, and then actually implemented such reductions.  (Pl. Cons. April 10, 2007 Cons. Mem. (filed under seal), Ex. B, at 3).

Contrary to Allstate's objection that Document Requests Nos. 24-26 seek information "not related to the validity of the Release" (Def. Obj, Ex. D, at Nos. 25-27), these Requests are narrowly tailored to obtain such information.  They seek documents concerning Allstate's implementation of the planned reductions and slashing of commission rates, despite its statements that it would not do so.[14]  Because such misrepresentations are relevant to whether Plaintiffs and other employee agents "knowingly" signed the Release, the requested documents are relevant to demonstrate that the Release is invalid and unenforceable.

**Request Nos. 27-32.**  Allstate made representations about performance standards that would apply to so-called "independent contractor" agents, but intentionally omitted the material fact that Allstate intended to "weed out" a significant percentage of "low-performing" agents based on these same standards.  (Pl. Cons. April 10, 2007 Cons. Mem. (filed under seal), Ex. B, at 3.  In other words, Allstate failed to inform agent employees that, after signing the Release and sacrificing their rights, they would go from a contract terminable only "for cause" to one in which the substantive

---

[14]     Although Allstate has produced few documents on this issue to date, those documents—which were produced many years ago—demonstrate that Allstate was contemplating reductions in commission rates while telling agents that it was not.  (*See* July 12-13, 1999 Presentation To Board Of Directors (filed under seal), attached hereto as Ex. I to Lieder Decl.; September 27, 1999 Presentation (filed under seal), attached as Ex. J to Lieder Decl.).  In light of the foregoing, Plaintiffs have reason to believe that many additional responsive documents exist but have not yet been produced.  Allstate has not produced any of the documents in which its plans to cut commission rates were developed or any discussions among top managers concerning the contemplated reductions, and of course, no electronic documents concerning its plans have been produced.

and procedural protections afforded to employee agents no longer existed.  Full disclosure about

Allstate's plans would have deterred employee agents from signing the Release and continuing in

Allstate's service, and failure to disclose made the execution of the Release "unknowing."

Notwithstanding Allstate's flat-out refusal to produce any documents responsive to

Document Request Nos. 27-32 (Def. Obj, Ex. D, at Nos. 27-32), each of these Requests seeks

documents related to this fundamental misrepresentation by omission:

- Request No. 27 seeks documents relating to the representations themselves—that Allstate informed agents when introducing the Mass Termination Program that, if they continued as agents under the R3001 contract, they would be expected to achieve certain business results, but failed to mention its plans to eliminate "low-performing" agents;

- Request No. 28 asks for documents relating to Allstate's plans or proposals made prior to June 30, 2000 to eliminate "low-performing" agents once the reorganization was complete, including documents collected, considered and analyzed in devising those plans;[15]

- Request No. 29 seeks documents relating to programs to terminate agents perceived as "low-performing" since June 30, 2000, and cites one document evidencing the implementation of such a program by late 2001.  (*See* Dec. 13, 2001 Memorandum, attached hereto as Ex. L to Lieder Decl., at CP01247-48);

- Request Nos. 30-32 seek the data with which to show that agent terminations on supposed performance grounds have mushroomed since June 30, 2000, as planned by Allstate but as unmentioned by Allstate to Plaintiffs and other employee agents when they signed the Release.

Allstate was unable to explain the factual bases for its objections as part of the meet-and-

confer process.  Because these Requests seek relevant information concerning  Plaintiffs' theory

that Allstate made misrepresentations relevant to the consequences of signing the Release, Allstate

should be compelled to produce all documents responsive to these Requests pursuant to the Third

Circuit's directive.

---

[15]     Again, Allstate already has produced at least one document evidencing the existence of plans to eliminate "low-performing" agents.  (*See* August 9, 1999 Presentation (filed under seal), attached as Ex. K to Lieder Decl.)  That presentation, however, undoubtedly does not exist in isolation.

**5.    Allstate Should Be Compelled To Produce Documents Relevant To Plaintiffs' Allegations That The Release Was Retaliatory.**

Allstate has objected to Document Request Nos. 33-36 on the basis that they seek irrelevant information "not related to the validity of the Release." (Def. Obj., Ex. D, at No. 33-36). Allstate's objections lack merit.

Each of these Requests seeks relevant information concerning Allstate's policies and actions from October 1, 1990, when it ceased hiring new employee agents, to November 10, 1999, when it began implementing the Mass Termination Program in an effort to force existing employee agents to sign the Release or leave the company:

- Request No. 33 seeks documents that reflect the requirements—including whether Allstate had required a release—for an employee agent to convert to the R3001 contract, which purported to reclassify employee agents as "independent contractors," and the criteria and standards used in approving conversion requests;

- Request No. 34 requests documents relating to efforts by Allstate to solicit or induce its employee-agents to convert to the R3001 contract;

- Request No. 35 requests documents that reflect on a monthly basis the number of employee-agents who sought to convert to the R3001 contract and the number rejected;

- Request No. 36 requests documents which show on a monthly basis the number of employee-agents with whom Allstate and its managers discussed converting to the R3001 contract, but who decided not to convert.

The requested documents are essential for Plaintiffs to establish that the Release was a form of illegal retaliation. By seeking documents that show that employees were entitled to, and did, convert to so-called "independent contractor" status *without* signing a release *prior* to the Mass Termination Program, Plaintiffs and the EEOC will demonstrate that the Release is invalid because: (1) Allstate's attempt to condition the right to switch to "independent contractor" status by signing the Release and thereby relinquish ADEA and other statutory claims was an unlawful policy of retaliation for engaging in protected activity; (2) Allstate's statements that employee agents could not convert to the R3001 contract unless agents signed the Release—the only means to remain as an

Allstate sales agent—amounted to unlawful threats of retaliation; and (3) there was no adequate consideration for the Release, because Allstate was offering a right—that is, the right for employee agents to continue in the service of Allstate and do the exact same job, albeit as a so-called "independent contractor"—to which they were already entitled.   (Am. Compl., Ex. A, at ¶¶ 69-81, 140).   Because Document Request Nos. 33-36 are narrowly tailored and seek relevant information, Allstate should be compelled to produce all documents responsive to each of these Requests in accordance with the Third Circuit's directive.

**6.**     **Allstate Should Be Compelled To Produce Documents Relevant To Plaintiffs' Allegations That The Release Lacked Consideration.**

Plaintiffs contend that the Release is invalid and unenforceable on the ground that employee agents subject to the Mass Termination Program did not receive adequate consideration in exchange for signing the Release. (*Id.* at ¶ 139).   Request Nos. 37-42 are each designed to obtain essential discovery to prove that contrary to Allstate's arguments, employee agents who signed the Release did not receive consideration for the Release—that is, they did not receive payments or alleged "benefits" in excess of the amount to which they were already entitled.[16]

Although Allstate has indicated that it will produce documents responsive to Document Request Nos. 37-42, it has agreed to do so subject to a number of undefined and boilerplate "General Objections" and to other equally meritless objections, including an objection "to the use of the phrase Mass Termination Program." (Def. Obj., Ex. D, at Nos. 37-42).   To date, Allstate has yet to confirm whether or not it intends to withhold any documents on the basis of these objections.[17]

---

[16]     For instance, these requests seek documents relating to the circumstances under which the company allowed employee agents to sell their agencies or books of business prior to November 1999 (Request Nos. 37-38); documents relating to whether the company "forgave" the "travel advance" provided to certain employee agents (or any other alleged financial or other obligations) (Request Nos. 37, 41, and 42); and documents relating to the "conversion bonus" and "conversion allowance" paid to employee agents who converted to the Exclusive Agent program, whether prior to November 1999 or as part of the Mass Termination Program and only after signing the Release (Request Nos. 39-40).

[17]     Allstate failed to address these Requests in its June 17, 2010 letter, which was supposed to clarify its objections.   (Def. June 17, 2010 Letter, Ex. E).

- 20 -

Because these Requests clearly seek relevant documents and because Allstate has not defined its

objections with the requisite specificity under Rule 34, Allstate should be compelled to produce all

documents responsive to each of these Requests.

> **7.    Allstate Should Be Compelled To Produce Documents Concerning Plaintiffs' Contention That The Release Was Part And Parcel Of An Illegal Scheme.**

Allstate has refused to produce any documents responsive to Document Request Nos. 43-45

on the ground that they are "not related to the validity of Release." (Def. Obj., Ex. D, at Nos. 43-

45). This objection is frivolous.

As the Third Circuit recognized, Plaintiffs contend that the Release is invalid because it was

"part [and parcel] of an illegal scheme." *Romero*, 344 Fed. Appx. at 792. Notwithstanding

Allstate's contention that the part and parcel doctrine is limited to antitrust cases and otherwise

inapplicable as a matter of law, the Third Circuit made clear that Plaintiffs are entitled to discovery

directed to show that "the releases were part of an illegal scheme." *Id.* at 793.

This mandate must be effectuated. Indeed, the limited discovery produced to date suggests

that Allstate knew that its actions were legally improper. In July 1999, Allstate management

informed its Board of Directors █████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████ By

forcing, pressuring, and misleading its employees to sign the Release, Allstate believed itself

insulated from liability for a scheme it very well knew to be illegal, not to mention for a breach of

the agents' employment contracts. (*Id.*).

Plaintiffs are entitled to explore this theory.  As permitted by the Third Circuit, Document

Request Nos. 43-45 seek documents necessary to show that Allstate knew that the Mass

Termination Program was illegal, and, therefore, demanded that its employees execute the Release:

- Request No. 43 seeks reports or similar documents prepared for Allstate's Board of Directors or key management personnel between January 1, 1998 and June 30, 2000, about any reorganization or RIF of employee agents, "including whether any such program was or might be retaliatory, unlawful, or otherwise prohibited by statute, ordinance, regulation, or common law";

- Request No. 44 seeks documents collected, analyzed, or considered between January 1, 1998 and November 10, 1999, the date the Mass Termination Program was announced, regarding whether the employee agent contracts could be terminated only for "cause" and/or in compliance with Allstate's rules and procedures;

- Request No. 45 seeks documents relating to meetings of the team (led by Barry Hutton) charged with designing and implementing the Mass Termination Program and the Release, including agendas, notes, and summaries or reports of those meetings.

Because these Requests seek documents that are clearly relevant to Plaintiffs' contention

that the Release was an integral part of an illegal scheme, Allstate's objections should be overruled,

and Allstate should be compelled to produce all documents responsive to these Requests pursuant to

the Third Circuit's directive.

**B.     Allstate Should Be Compelled To Search For And Produce Electronic Documents.**

To date, Allstate has not produced any electronic documents in response to Plaintiffs'

document requests, and has expressly informed Plaintiffs that it will not produce documents in the

reasonable format specified by Plaintiffs in their document requests and subsequent

correspondence—that is, in single-page "TIFF" images with a separate file for specific metadata.

Consistent with Rule 34, Allstate should be compelled to immediately produce all electronic

documents in the requested format.

1.    **Allstate Should Be Required To Produce Electronic Documents**.

Rule 34 requires a party to produce "documents or electronically stored information" in response to document requests. Fed. R. Civ. 34(a)(1)(A).  It is well-settled that the duty to preserve and produce responsive documents has always encompassed "electronic communications and documents, such as emails, or documents created by computer, such as invoices." *Orrell v. Motorcarparts of Am., Inc.*, No. 06-CV-418-R, 2007 WL 4287750, at *6 (W.D.N.C. Dec. 5, 2007); *see also* Fed. R. Civ. P. 34(b)(2)(D); *Aguilar v. Immigration and Customs Enforcement Div.*, 255 F.R.D. 350, 357 (S.D.N.Y. 2008); *Zubulake v. UBS Warburg, LLC,* 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003); Sedona Principles (Second Edition): *Best Practices Recommendations and Principles for Addressing Electronic Document Production*, Principle 1 (Sedona Conf. Working Group Series 2007); 8B Charles Wright, Arthur Miller & Richard Marcus, *Fed. Prac. & Proc. Civ.* § 2218 (3d ed. 2009) (1970 amendments to Rule 34 "clearly allowed discovery of information even though the information was in a computer").[18]

Consistent with Rule 34, Plaintiffs have requested electronic documents with respect to each document request.  Plaintiffs defined the term "documents" to cover "electronic mail and other electronic information," and instructed Allstate to search all electronic sources for documents.  (Pl. Document Requests, Ex. C, at Definition 6; *id.* at General Instructions, A(7)-(8)).  Plaintiffs even provided Allstate with a preliminary list of custodians and search terms.  (*Id.* at Specific Definition

---

[18]    Allstate has suggested that this duty did not exist when this case was originally filed in 2001.  This is simply untrue.  Allstate had the "affirmative duty to preserve relevant evidence" at all times prior to and during the course of the litigation.  *Howell v. Maytag*, 168 F.R.D. 502, 505 (M.D. Pa. 1996); *Bowman v. Am. Med. Sys., Inc.*, No. 96-7871, 1998 WL 721079, at *3 (E.D. Pa. Oct. 9, 1998).  This duty extended to electronic evidence, which has fallen within the scope of Rule 34's definition of "document" since at least 1970.  Fed. R. Civ. P. 34(a) (defining "document" to include "data compilations"); Fed. R. Evid. 803, 1972 proposed rule advisory committee note (noting that "data compilation" includes, "but is by no means limited to, electronic computer storage"); *United States v. Koch Indus., Inc.*, 197 F.R.D. 463, 484 (N.D. Okl. 1998) (requiring production of electronic documents).

No. 7 (custodians); *id.* at Request No. 5 (search terms)).  As a matter of well-settled law, Allstate

must search for, collect, and produce relevant electronic documents from those custodians.[19]

To date, Allstate has produced virtually ***no*** documents in electronic format in response to

document requests propounded by Plaintiffs and the EEOC.  (Lieder Decl., at ¶¶ 2, 9).   Indeed,

although Allstate has generically objected to the Requests on the ground that Allstate has "already

produced responsive documents,"[20] it nevertheless refuses to identify what electronic searches had

been conducted in the past, and, if so, what was searched, the manner of the searches, what

custodians were searched, and the date ranges for those searches.  (*Id.*; Def. June 17, 2010 Letter,

Ex E, at 2).  Allstate also has refused to confirm that it will search for and produce electronic

documents for the instant Requests—much less the databases and custodians it will search, as well

as the specific search terms Allstate will use.  (*Id.*).[21]

Because Plaintiffs' document requests properly seek electronic documents, Allstate should

be compelled to do what it should have been doing throughout the course of this nearly decade-old

consolidated action—(1) conduct electronic searches for all relevant information from the "Key

Person[s]" identified in Plaintiffs' document requests, using the search terms identified in Plaintiffs'

Document Request No. 5; (2) confer with Plaintiffs concerning the identification of additional

---

[19]      Despite numerous requests during the May 26, 2010 meet and confer, Allstate has refused to confirm that it will search for and produce electronic documents with respect to the instant document requests—much less what search terms they are prepared to run, the custodians they are prepared to search, and the types of databases they will search. Allstate's disregard for its electronic discovery obligation is troubling. *See, e.g.*, *William A. Gross Constr. Assocs, Inc. v. Am. Mfrs. Mut. Ins. Co.,* 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("Electronic discovery requires coopertaion between opposing counsel and transparency in all aspects of preservation and production of ESI . . . It is time that the Bar – even those lawyers who did not come of age in the computer era – understand this.").

[20]      Allstate has asserted some variation of this objection to each of the Requests for which Allstate has agreed to produce some volume of documents.  (*See* Def. Obj., Ex. D, at 1-6, 9-15, 19, 20, 22, 24, 37-42).

[21]      During the May 26, 2010 meet-and-confer, Allstate preliminarily indicated that it was willing to use some but not all of the search terms contained in Document Request No. 5.  It agreed that it would consider the search terms further and identify in a subsequent letter which terms it was willing to use in its searches. (Lieder Decl., at ¶ 5).  The June 17, 2010 letter, however, ignores the topic entirely, indicating that Allstate has now retreated and is unwilling to use any search terms for electronic documents. (*Id.* at ¶ 8; June 17, 2010 Letter, Ex. E).

relevant custodians and search terms, what searches Allstate conducted in the past, and the scope

and manner of any prior searches, so that Plaintiffs receive all relevant documents concerning the

Release in accordance with the Third Circuit's mandate; and (3) confirm that it has preserved all

relevant electronic documents, including e-mail, since the time when it reasonably anticipated

litigation.[22]

### 2. Allstate Should Be Required To Produce Documents In The Format Requested By Plaintiffs.

Under Rule 34, a party may identify the form in which electronically-stored information

must be produced. Fed. R. Civ. P. 34(b)(1)(C). Although the responding party may lodge an

objection to "a requested form for producing electronically stored information," the responding

party "***must state*** the form or forms it intends to use." Fed. R. Civ. P. 34(b)(2)(D) (emphasis

added).

Applying these rules, courts have routinely required a responding party to produce electronic

documents with all accompanying metadata when such a format is specified. *See, e.g., Aguilar*, 255

F.R.D. at 360; *In re Payment Card Interch. Fee & Merchant Discount*, No. MD 05-1720, 2007 WL

121426, at *4 (E.D.N.Y. Jan. 12, 2007); *In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 88, 91

(D.Conn. 2005); *In re Verisign, Inc. Sec. Litig.*, No. 02-02270, 2004 WL 2445243, at *2 (N.D. Cal.

March 10, 2004); *see also Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 652 (D. Kan.

2005) (holding as a general rule that "producing party should produce the electronic documents

with their metadata intact," and has burden of demonstrating that such a request is objectionable).[23]

---

[22]     At a minimum, the Court should compel Allstate to investigate the relevant electronically-stored information it possesses and to engage in a meaningful dialogue with Plaintiffs so that the parties can agree upon search terms, custodians, date restrictions, and the format of Allstate's production of electronically-stored information.

[23]     Metadata is hidden data that is part of the original electronic document and can only be seen when the electronic document is viewed in its original format.  It includes "hidden text, formatting codes, formulae, and other information associated with the file," including important information about the creation date of the document, whether the document was modified, who received the document, and other hidden fields that are only visible to the user

Consistent with Rule 34, Plaintiffs have requested that Allstate produce each electronic document with "all associated meta-data," and have provided specific requirements as to the format of that production ("TIFF" images) and the content of that metadata, including essential information about the author, the date of creation, the date of modification, and the recipient of the document. (Pl. Doc. Req., Ex. C, at Gen. Inst. Nos. 7-8; Pl. June 9, 2010 E-mail, Ex. F).  Although Allstate has objected to this request on the ground that it is unduly burdensome (Def. Obj., Ex. D, at Gen. Obj. R), Allstate has not provided any basis for this objection, and has not complied with its obligation to identify the form it intends to use.  Fed. R. Civ. P. 34(b)(2)(D).  Nor has Allstate provided any reason why it cannot comply with this request, particularly when Allstate has yet to make a production of electronic documents in response to Plaintiffs' new document requests.  As a matter of law, Allstate should be required to produce documents in the format specified by Plaintiffs. *See, e.g., Cenveo Corp. v. S. Graphic Sys.,* No. 08-5521, 2009 WL 4042898, at *2 (D. Minn. Nov. 18, 2009) (requiring responding party to produce electronic documents in requested format in part because it "failed to object to producing the documents in their native format and failed to state the form or forms it intended to use"); *In re Priceline.com, Inc.,* 233 F.R.D. at 91 (requiring production in TIFF format with corresponding searchable metadata databases).

In its June 18, 2010 letter, Allstate raised for the first time its remarkable position that it need not produce documents in the specified format, with metadata, because Allstate is not bound "by the provisions of the Federal Rules of Civil Procedure as they may exist today." (June 17, 2010 Letter, Ex. E, at 2).  This is a red herring.  Plaintiffs' document requests were served in March 2010—that is, years after even the most recent amendments to Rule 34.  Moreover, Allstate has not provided any basis as to why it would not be "just and practicable" to apply the current version of Rule 34 to this dispute over document requests that were served more than three years after the

---

viewing the native file.  Sedona Principles (Second Ed.), at Comment 12.a; *Aguilar,* 255 F.R.D. at 354-55; *Hagenbuch v. 3B6 Sistemi Elettronici Industrialia S.R.L.,* No. 04-3109, 2006 WL 665005, at *3 (N.D. Ill. March 8, 2006).

promulgation of that Rule. *See* Supreme Court Order 6-20 (2006 amendments to Rule 34 "shall take effect on December 1, 2006, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending"); *W.E. Aubuchon Co., Inc. v. Benefirst, LLC*, 245 F.R.D. 38, 42 (D. Mass. 2007) (applying 2006 amendments pertaining to electronic discovery to dispute arising before passage of amendments). Accordingly, Allstate should be required to produce electronic documents in the format and with the metadata requested by Plaintiffs.

Finally, even if the current version of Rule 34 were not applicable (and it is), Allstate still would have the obligation to produce metadata under the version of Rule 34 that existed when this consolidated action was filed. In 2001, Allstate still was required to produce documents, including electronic documents, as they "are kept in the usual course of business." Fed. R. Civ. P. 34(b) (2000). This included the production of electronic documents with metadata. *In re Verisign, Inc. Sec. Litig.*, 2004 WL 2445243, at *2 (requiring party to produce electronic documents with metadata under pre-2006 version of Rule 34(b)); *Williams*, 230 F.R.D. at 652. Because Allstate has always been obligated to preserve and produce electronic documents with metadata, it cannot now refuse to do so.[24]

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court compel Allstate to produce all responsive documents to each of Plaintiffs' Document Requests within 30 days in accordance with the Plaintiffs' proposed Order.

---

[24] Allstate's suggestion that it is not bound by preservation and production obligations in the current Federal Rules of Civil Procedure raises serious questions about whether it has preserved electronic documents with metadata since the filing of this case. If Allstate has failed to do so, it must disclose that fact immediately.

Dated: June 25, 2010                        Respectfully submitted,


                                            /s/ Brian M. Ercole
Michael D. Lieder (*admitted pro hac*)      Coleen M. Meehan (ID No. 39765)
SPRENGER & LANG, PLLC                       John V. Gorman (ID No. 80631)
1400 Eye St., N.W.                          Brian M. Ercole (ID No. 91591)
Washington D.C.  20005                      MORGAN, LEWIS & BOCKIUS LLP
Telephone:  (202) 265-8010                  1701 Market Street
Facsimile:  (202) 332-6652                  Philadelphia, PA  19103
                                            Telephone: (215) 963-5000
                                            Facsimile:  (215) 963-5001


Paul Anton Zevnik (ID No. 140986)           Thomas W. Osborne (admitted *pro hac vice*)
Michael J. Wilson (admitted *pro hac vice*) Mary Ellen Signorille (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP                 AARP Foundation Litigation
1111 Pennsylvania Avenue, N.W.              601 E Street, N.W.
Washington, D.C.  20004                     Washington, D.C.  20049
Telephone: (202) 739-3000                   Telephone:  (202) 434-2060
Facsimile: (202) 739-3001                   Facsimile:  (202) 824-0955

*Counsel for Plaintiffs and the Class*


C. Felix Miller, Senior Trial Attorney
U.S. Equal Employment Opportunity Commission
St. Louis District Office
Robert A. Young Federal Building
1122 Spruce, Room 8-100
St. Louis, Missouri  63101
Telephone:  (314) 539-7949

*Counsel for the EEOC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2010, a true and correct copy of the redacted version of Plaintiffs' Motion To Compel Documents Related To The Release In Accordance With The Court's April 7, 2010 Case Management Order ("Plaintiffs' Motion To Compel"), Plaintiffs' Memorandum Of Law In Support Of Plaintiffs' Motion To Compel ("Plaintiffs' Memorandum Of Law"), and all exhibits and declarations thereto, was served via ECF on all counsel of record.  An unredacted version of Plaintiffs' Motion To Compel, Plaintiffs' Memorandum Of Law, and exhibits and declarations thereto, was served via electronic mail on all counsel of record.

Date:  June 25, 2010

/s/ Brian M. Ercole
Brian M. Ercole