# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENE R. ROMERO, et al. | : |
|     Plaintiffs, | : CIVIL ACTION |
| v. | : |
| ALLSTATE INSURANCE COMPANY, et al., | : NO. 01-3894 |
|     Defendants. | : |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                                November 9, 2010

Currently pending before the Court is the Motion by Defendant Edward M. Liddy to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Motion is denied.

## I. FACTUAL BACKGROUND[1]

The core of Plaintiffs' putative class action, which has been pending since August 1, 2001, alleges that Defendants Allstate Insurance Company and The Allstate Corporation (collectively "Allstate") had originally employed a substantial number of insurance sales agents with the promise that they would have a "guaranteed income" and lifetime "financial security" through a compensation package that included a pension, profit sharing, and other employee benefit plans. (Sec. Am. Compl. ¶ 1.) In the 1990s, Allstate sought to get out from under the financial burden of this promise by attempting to persuade these employee agents to convert to independent contractor

---

[1] The factual history set forth herein is taken verbatim from this Court's October 21, 2010 Memorandum and Order with respect to Plaintiffs' Motion to Compel. Romero v. Allstate Ins. Co., No. CIV.A.01-3894, 2010 WL 4138693 (E.D. Pa. Oct. 21, 2010).

status, under the pretext that this status would give them more "entrepreneurial freedom" and a capacity for greater earning power. (Id. ¶ 2.) When only a few of the employee agents voluntarily relinquished their benefits, Allstate's President and Chief Executive Officer, Edward M. Liddy, announced, in November 1999, that Allstate was instituting a "group reorganization program," under which approximately 6,300 employee agents would have their employment contracts terminated by June 30, 2000. (Id. ¶ 3.) These employee agents would be permitted to remain with Allstate as independent contractors only if they signed a release waiving their statutory and common law rights (the "Mass Termination Program"). (Id.) Allstate also imposed a moratorium on rehiring the employee agents to fill sales and customer service positions for the company. (Id.) This Mass Termination Program, either intentionally or in effect, allowed Allstate to replace older employee agents with younger hires. (Id. ¶ 6.) To further evade legal accountability, Allstate presented the employee agents with a choice: (a) sign a prepared General Release and Waiver Agreement ("Release") that waived the employee agents' right to challenge the legality of Allstate's conduct, and be permitted to either remain with Allstate as an independent contractor or leave Allstate and receive certain specified payments; or (b) not sign the Release and have their long-term relationship with Allstate severed entirely with none of the specified payments. (Id. ¶ 11.) Given these limited alternatives, over ninety-nine percent of the 6,300 employee agents signed the Release. (Id. ¶¶ 11-12.)

Several hundred of these employee agents, however, subsequently put Allstate on notice of allegations of class-wide age discrimination and/or retaliation by filing timely charges with the Equal Employment Opportunity Commission ("EEOC") and equivalent state agencies. (Id. ¶ 20.) The EEOC issued a ruling in which it characterized Allstate's conduct as "threats, coercion, and intimidation" and concluded that the Release was in violation of the ADEA. (Id. ¶ 12.) In light of the EEOC's finding, Plaintiffs initiated the action in federal court on August 1, 2001, against

Allstate and Edward Liddy. On October 18, 2001, Plaintiffs filed their First Amended Complaint, which set forth seven Counts, as follows: (1) a declaratory judgment deeming the Release invalid under Section 510 of the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1140, the Age Discrimination in Employment Act, 29 U.S.C. § 623, and common law; (2) individual and class claims of interference with employment and retaliation in violation of Section 510 of ERISA with respect to the Plaintiffs' attainment and receipt of pensions and benefits under various employee benefit plans; (3) individual and class claims for retaliation in violation of Section 510 of ERISA; (4) "Discriminatory Termination and Retaliation in Violation of 29 U.S.C. § 623(a) and (d)" for both individuals and the class; (5) individual and class claims for breach of the R830 contract, which governed the employment relationship between Allstate and a subclass of Plaintiffs; (6) individual and class claims for breach of the R1500 contract, which governed the employment relationship between Allstate and a different subclass of Plaintiffs; and (7) individual and class claims for breach of fiduciary duty. (Am. Compl. ¶¶ 132-189.)

Discovery began in April 2002 and, over the course of the next several years, the parties engaged in extensive motion practice, including the filing of cross-motions for summary judgment and the debate over class certification issues. On March 30, 2004, the Honorable John P. Fullam, of the United States District Court for the Eastern District of Pennsylvania, entered a Declaratory Judgment holding, in part, that the Releases signed by the employee agents were voidable so long as the employee agents tendered back all benefits received in connection with signing those Releases (the "tender back" requirement). Romero v. Allstate Ins. Co., Nos. CIV.A.01-3894, 01-6764, 01-7042, 2004 WL 692231, at *3-4 (E.D. Pa. Mar. 30, 2004). On June 20, 2007, however, Judge Fullam determined that he erred in his 2004 Declaratory Judgment and, as a result, vacated that decision. Romero v. Allstate Ins. Co., Nos. CIV.A.01-3894, 01-6764, 01-7042, 2007 WL 1811197, at *1 (E.D. Pa. Jun. 20, 2007). He further granted summary judgment in Allstate's favor on the

3

entirety of Plaintiffs' Amended Complaint. Id.

On November 26, 2007, Plaintiffs appealed this ruling to the United States Court of Appeals for the Third Circuit. Reviewing the history of this case, the Third Circuit noted that Plaintiff had not received the benefit of full discovery as to issues regarding the validity of the Releases, and remarked that these issues were dispositive as to the rest of Plaintiffs' claims. Romero v. Allstate Ins. Co., 344 Fed. Appx. 785, 793 (3d Cir. 2009) ("The plaintiffs had a relatively short period of class discovery, and . . . are entitled to discovery that is responsive to their requests related to the specific release-related issues the plaintiffs raised with the district court in their response to its March 21, 2007 Order."). The court went on to order that the district court allow additional discovery and briefing, fully address whether the Releases are valid, and if necessary, decide all of the underlying claims and issues. Id. at 794.

On January 29, 2010, after remand from the Court of Appeals, this case was reassigned to the docket of the undersigned. In accordance with this remand, the Court entered a new Case Management Order, dated April 7, 2010, setting forth both discovery and motion deadlines. Plaintiffs then filed a Motion to Amend the Complaint. On July 28, 2010, this Court permitted the filing of a Second Amended Complaint, which made three distinct changes, including: (1) the substitution of Joseph L. Benoit for "holdout" plaintiff Douglas F. Gafner, Sr., who is now deceased and whose claims against Defendants were settled on a confidential basis while the matter was on appeal; (2) clarification that Plaintiffs assert a disparate impact claim under the ADEA insofar as they have alleged that over ninety percent of the employee agents subject to the Mass Termination Program were age forty or older as of November 16, 1999; and (3) amplification and correction of certain factual averments to specifically include allegations that Defendants made misrepresentations to induce Plaintiffs and other employee agents to sign the Release. Romero v. Allstate Ins. Co., No. CIV.A.01-3894, 2010 WL 2996963 (E.D. Pa. July 28, 2010).

4

On August 27, 2010, Defendant Edward M. Liddy filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs responded on September 13, 2010 and Defendant Liddy submitted a Reply Brief on October 4, 2010. Having reviewed the parties' briefs, the Court now turns to the merits of that Motion.

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. It emphasized that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Following the basic precepts of Twombly, the Supreme Court, in the subsequent case of Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937 (2009), enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim. First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (adopting Iqbal's standards).

Notwithstanding the foregoing, nothing in Twombly or Iqbal has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review. Arner v. PGT Trucking, Inc., No. CIV.A.09-565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. CIV.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. Jul. 15, 2008). Federal Rule of Civil Procedure 8 still requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. FED. R. CIV. P. 8; Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

### III. DISCUSSION

Defendant Liddy's Motion to Dismiss asserts that the two claims against him in the Second Amended Complaint – (a) interference with employment and retaliation in violation of Section 510 of ERISA, 29 U.S.C. § 1140, on behalf of all Plaintiffs and (b) retaliation in violation of Section 510 of ERISA, 29 U.S.C. § 1140, on behalf of the holdout Plaintiffs – are not cognizable because the Third Circuit does not recognize a Section 510 ERISA claim against an individual in his or her capacity as a corporate officer. Plaintiffs, on the other hand, offer a two-fold response. First, they claim that Defendant's argument is barred by the law of the case doctrine since the Honorable John P. Fullam previously issued a Memorandum and Order rejecting the identical contention. Second,

6

they assert that the argument itself has no merit because an individual corporate officer may be held liable under Section 510 for actions taken with the specific intent to interfere with ERISA rights and the attainment of pension and other employee benefits. The Court considers each responsive argument individually.

### A. Whether Plaintiff's Motion is Barred by the Law of the Case Doctrine

Plaintiffs first contend that the Court should decline to reconsider Judge Fullam's previous decision rejecting Defendant Liddy's legal argument that he cannot be liable under Section 510 of ERISA. This Court, however, finds that the law of the case doctrine does not apply to the present Motion.

The law of the case doctrine states that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." United States v. Hoffecker, 530 F.3d 137, 165 (3d Cir. 2008) (quotations omitted). The doctrine protects "traditional ideals such as finality, judicial economy and jurisprudential integrity." United States v. Parmelee, 262 Fed. Appx. 416, 419 (3d Cir.) (quotations omitted), cert denied, 128 S. Ct. 2890 (2008). Law of the case rules apply to subsequent rulings by different judges in same case. Casey v. Planned Parenthood of Se. Pa., 14 F.3d 848, 856 n.11 (3d Cir. 1994). "The law of the case doctrine [however,] only precludes relitigation of issues that the parties had a full and fair opportunity to litigate." Speeney v. Rutgers, The State Univ., 369 Fed. Appx. 357, 360 (3d Cir. 2010). Further, it "precludes review of only those legal issues that the prior court actually decided, either expressly or by implication." Yurcic v. Purdue Pharma, L.P., 343 F. Supp. 2d 386, 390-91 (M.D. Pa. 2004) (citing Southco, Inc. v. Kanebridge Corp., 324 F.3d 190, 194 (3d Cir. 2003)). "It does not restrict the power of the court, but rather governs its exercise of discretion." Id. (citing In

re City of Phila. Litig., 158 F.3d 711, 718 (3d Cir. 1998)).[2]

In the present matter, Defendant Liddy filed a Motion, in November of 2001, to Dismiss for Lack of Personal Jurisdiction. On February 28, 2002, Judge Fullam issued a Memorandum and Order that, in part, denied that Motion without prejudice. Specifically, Judge Fullam found:

> With respect to the Motion of individual defendant Edward M. Liddy to dismiss for lack of personal jurisdiction, plaintiffs argue that, since the ERISA statute provides for nationwide service of process, and since Mr. Liddy has not challenged the adequacy of service of process, this Court may properly assert personal jurisdiction over him. The defendant argues that, since Mr. Liddy cannot be held personally liable under ERISA, the nationwide service of process argument under ERISA is of no avail. I do not believe the factual record is sufficiently complete to enable the Court to reach a definitive conclusion as to possible personal liability of Mr. Liddy. I do, however, conclude that Mr. Liddy's "contacts" with Pennsylvania, specifically related to the events which give rise to plaintiffs' claims, suffice to support the exercise of personal jurisdiction over him. In addition to repeated instances of correspondence sent to plaintiffs in Pennsylvania, Mr. Liddy organized, attended, and was the principal speaker at a meeting of Pennsylvania plaintiffs, in furtherance of the very activities which plaintiffs contend violated the ERISA statute. Whether his activities sufficed to support the imposition of personal liability is an issue which should be decided by a motion for summary judgment, not on a jurisdictional motion. There is plainly no due process impediment to the exercise of "long-arm" jurisdiction.

(Order, No. CIV.A.01-3894, at 2-3 (Feb. 28, 2002).) Plaintiffs now argue that by ruling that the *factual* record was not sufficiently developed to determine Liddy's liability under Section 510, Judge Fullam implicitly rejected the *legal* argument that a corporate officer cannot be personally liable for his own violations of Section 510.

While Plaintiffs' contention is not wholly illogical, the Court declines to find, on this record, that Judge Fullam previously decided – either implicitly or explicitly – the legal issue of whether a

---

[2] Notably, the law of the case doctrine does not preclude reconsideration of previously decided issues in "extraordinary circumstances," such as where (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice. In re City of Philadelphia Litig., 158 F.3d at 718.

corporate officer can be held individually liable under Section 510 of ERISA. Defendant Liddy's Motion was styled as one seeking dismissal on the grounds of personal jurisdiction. Having had his attention focused on that issue, Judge Fullam appropriately side-stepped the question of individual liability under ERISA and/or the need to use ERISA's provision for nationwide service, and determined only that the exercise of personal jurisdiction was appropriate given Liddy's "contacts" with Pennsylvania. Although Judge Fullam tangentially addressed Liddy's personal liability under ERISA and spoke in terms of the "factual record" being insufficient to decide that issue, this Court declines to make the broad leap to construe the ruling as making an implicit finding that the *legal* theory lodged by Plaintiffs against Liddy was valid. In short, Judge Fullam's February 28, 2002 Order was a determination of grounds for personal jurisdiction and nothing more. Accordingly, the law of the case doctrine does not apply to foreclose Defendant Liddy's current Motion.

> B. **Whether an Individual Corporation Officer May Be Liable Under Section 510 of ERISA**

Alternately, Plaintiffs argue that Defendant Liddy may be held liable under Section 510 for actions taken with the specific intent to interfere with ERISA rights and the attainment of pension and other employee benefits. Upon review of the pertinent jurisprudence, the Court agrees with Plaintiffs and declines to dismiss the Second Amended Complaint as against Defendant Liddy.

"'Section 510 [of ERISA] was enacted by Congress primarily to prevent employers from discharging or harassing their employees in order to keep them from obtaining ERISA protected benefits.'" Narodetsky v. Cardone Indus., No. CIV.A.09-4734, 2010 WL 678288, at *5 (E.D. Pa. Feb. 24, 2010) (quoting Battoni v. IBEW Local Union No. 102 Employee Pension Plan, 569 F. Supp. 2d 480, 494 (D.N.J. 2008)) (further citations omitted). This provision states, in pertinent part:

> It shall be unlawful for *any person* to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he

> is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140 (emphasis added). As defined by the statute, the term "person" means "*an individual*, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9) (emphasis added). To prevail in a claim under Section 510, the plaintiff must put forth a showing that the employer made a conscious decision to interfere in the employee's attainment of ERISA benefits. Stout v. Bethlehem Steel Corp., 957 F. Supp. 673, 693 (E.D. Pa. 1997). An employee may use either direct or circumstantial evidence to establish the employer's intent in the interference claim. DiFederico v. Rolm Co., 201 F.3d 200, 205 (3d Cir. 2000).

Defendant Liddy contends that Section 510 claim against him is not viable pursuant to the Third Circuit case of Solomon v. Klein, 770 F.2d 352 (3d Cir. 1985). In that matter, the court confronted the issue of whether, under Section 515 of ERISA, "the holder of 50 percent of the stock of a company who was also the president and chief executive officer [could] be held personally liable for unpaid amounts due a retirement fund pursuant to a collective bargaining agreement between the corporation and the union," without resort to a piercing the corporate veil theory. Id. at 353. The plaintiffs' theory was that the defendant officer should be held liable "simply because he managed and directed all of the corporation's financial, production, other business activities, and acted for the corporation in all matters related to employee benefit plan funds, including payroll audits, calculation of contributions, making payments to the employee benefit funds, signing checks, paying the bills and dealing on behalf of the corporation directly with the employment benefit plans." Id. The Third Circuit found that "[t]here is no indication that Congress intended to expose

corporate officers to liability for their employers' violations of ERISA; in fact the exclusion of corporate officers from the extensive enumeration of persons points in the opposite direction." Id. at 354. Defendant Liddy now interprets this case as holding that "corporate officers acting in their professional capacities are excluded from the definition of 'person,' and therefore are not liable to suit under ERISA." (Def. Liddy's Mot. Dismiss 3.)

Defendant's reasoning, however, focuses too narrowly on Solomon's definition of the word "person" under ERISA, while disregarding the circumstances and context in which the court defined that word. The Solomon court confronted the limited issue of whether a corporate officer or large stockholder, solely by reason of his or her position, could be liable under Section 515 of ERISA, 29 U.S.C. § 1145, which governs "employers" obligated to make contributions to a multiemployer plan. Solomon, 770 F.2d at 353-54. The court noted that although the term "employer" was defined as "any person acting directly as an employer," the definition of "person" did not include a corporate officer. Id. at 354. In so reasoning, however, the court clearly limited this definition to the situation where a plaintiff was seeking to disregard the corporate structure and impose liability on the corporate officer as an "employer" solely for the corporation's violations of its own ERISA obligations. Id. at 354 ("In the limited confines of this case, therefore, . . . all that we are required to determine is whether under concepts of statutory construction of ERISA we should conclude that Congress intended that corporate officers or large stockholders could be held liable for a corporation's violation of ERISA."). Solomon's progeny subsequently echoed not its definition of the word "person," but rather the overriding principle that a corporate officer could not be held liable for his or her employer's ERISA violations by sole virtue of his or her position within the company. See, e.g., Trustees of the Nat'l Elevator Indus. Pension v. Lutyk, 332 F.3d 188, 192 n.4 (3d Cir. 2003) (noting, in the context of a suit against a sole shareholder for a corporation's failure

to make contributions, that the holding in Solomon that a corporate shareholder or officer is not an "employer," as that term is defined for purposes of ERISA, is "an interpretation that has achieved nearly universal acceptance in the other federal circuits."); Central. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1109 (3d Cir. 1996) ("This court has held that there is no indication that Congress intended to hold corporate officers liable for a corporation's failure to contribute to benefit funds when there is no basis for piercing the corporate veil.").[3]

By contrast, this case is brought under Section 510 of ERISA, which directly applies to "*any*

---

[3] The cases cited by Defendant in his Motion have likewise emphasized the same principle from Solomon. See, e.g., Plumbers' Pension Fund, Local 130 v. Niedrich, 891 F.2d 1297, 1299-1300 (7th Cir. 1994) ("[C]ourts have unanimously held, as the court held in this case, that unless the corporation is acting for and an alter ego of the individual or there exist facts that warrant piercing the corporate veil, the individual will not be held liable for the corporation's obligations under ERISA."); Sasso v. Cervoni, 985 F.2d 49, 51 (2d Cir. 1993) ("[A] corporate officer's role in a company's failure to make such contributions is not automatically participation in a breach of fiduciary duties."); Scarbrough v. Perez, 870 F.2d 1079, 1084 (6th Cir. 1989) ("[I]n the absence of a clear directive from Congress, we have no warrant to say that a corporate employer which withdraws from a multi-employer plan is to be treated, for withdrawal liability purposes, as indistinguishable from the individual or individuals behind the corporation."); Rockney v. Blohorn, 877 F.2d 637, 641-42 (8th Cir. 1989) ("There is no indication in the legislative history that Congress intended to expose corporate officers to liability for the corporation's violation of ERISA. The exclusion of 'corporate officers' from the extensive enumerations of those included in the definition of persons points in the opposite direction."); Massachusetts Laborers' Health and Welfare Fund v. Starrett Paving Corp., 845 F.2d 23, 25 (1st Cir. 1988) (holding that although sole shareholder's corporation "may have been 'obligated' to make the contributions, [sole shareholder] personally was not"); International B'hd. of Painters and Allied Trades Union v. George A. Kracher, Inc., 856 F.2d 1546, 1550 (D.C. Cir. 1988) ("We are unable to equate these statements of congressional purpose with an indication of congressional intent to hold corporate owners and officers liable for corporate failure to remit contributions owing to employee pension plans."); Operating Eng'rs Pension Trust v. Reed, 726 F.2d 513, 515 (9th Cir. 1984) (declining to find officer, shareholder, and manager liable for corporate ERISA violations due solely to his role and position in the company); Laborers Combined Funds of W. Pa. v. Ruscitto, 848 F. Supp. 598, 600 n.1 (W.D. Pa. 1994) (noting that "[i]n addition to the Third Circuit, six other courts of appeals have ruled that an individual is not liable for corporate ERISA obligations *solely* by virtue of his or her role as officer, shareholder or manager"); Connors v. Martinage, 41 Pa. D. & C. 3d 302, 307 (1986) ("The federal law, ERISA, has been interpreted so as *not* to impose on officers, individual liability for delinquent corporate obligations. Under ERISA, the definition of 'employer' does *not* include corporate officers.").

person" – as opposed to "an employer" – who individually and affirmatively discharges, disciplines, or otherwise discriminates against a plan participant for exercising any ERISA right. 29 U.S.C. § 1140 (emphasis added); see also 60A AM. JUR. PENSIONS § 344 (2010) ("Because it imposes liability on *any person* who interferes with rights to which an employee is entitled under a benefit plan . . . the provision applies to an individual, a corporation, or a fiduciary.") (emphasis added). Quite contrary to the overriding concerns in Solomon and its progeny, the inclusion of corporate officers in the definition of "any person" does not disregard the corporate structure and expose such individuals to liability for their employer's violations of ERISA or for ERISA contributions owed by the corporation. Rather, it imposes liability only where a plaintiff can prove that the corporate officer individually and affirmatively acted with specific intent to interfere with the plaintiff's ERISA rights. See Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 522 (3d Cir. 1997) (holding that to establish a prima facie case under Section 510, a plaintiff must demonstrate: "(1) prohibited employer conduct; (2) taken for the purpose of interfering; (3) with the attainment of any right to which the employee may become entitled") (quoting Gavalik v. Continental Can Co., 812 F.2d 834, 852 (3d Cir. 1987)).

Although the issue has yet to be explicitly addressed by the Third Circuit, federal district courts both within and outside of the Third Circuit have repeatedly found that a Section 510 claim can proceed against an individual corporate officer based on his or her own actions. For example, in Narodetsky v. Cardone Indus., No. CIV.A.09-4734, 2010 WL 678288 (E.D. Pa. Feb. 24, 2010), the plaintiff brought, in part, a Section 510 claim against both his corporate employer and several individual defendants, alleging that they wrongfully terminated him for purposes of interfering with his medical benefits. Id. at *1. The court found that the complaint adequately stated a claim against the company's acting director of human resources, human resources representative, and plant

manager for violation of Section 510. Id. at *6. In doing so, the court implicitly recognized that the individual defendants could be legally liable on a Section 510 claim. Id.

Similarly, in Simons v. Midwest Tel. Sales & Serv., Inc., 433 F. Supp. 2d 1007 (D. Minn. 2006), the plaintiff sought to hold the president of her employer liable under Section 510 of ERISA, claiming that he fired her solely for her complaint regarding matching contributions to her ERISA plan account. Id. at 1012-13. The court acknowledged that the plaintiff was not seeking to pierce the corporate veil and hold the defendant president liable for the defendant corporation's ERISA violations; rather she was seeking to hold the president personally liable for his own actions. Id. at 1012. Declining to grant summary judgment on this claim, the court recognized that Section 510 is "directed at the 'person' who fires an employee in retaliation for exercising a right under an employee benefit plan . . . [and] [u]nder ERISA, a 'person' can be an individual." Id. at 1013. As a result, the court found that the plaintiff could maintain her ERISA § 510 claim against the defendant president. Id.

The United States District Court for the Southern District of New York, in Maguire v. Level Sights, Inc., No. CIV.A.03-2294, 2004 WL 1621187 (S.D.N.Y. July 19, 2004), likewise found that a Section 510 suit against an individual could proceed. The court acknowledged that "an individual cannot be held 'liable for corporate ERISA obligations solely by virtue of his [or her] role as officer, shareholder, or manager.'" Id. at *1 (quoting Sasso, 985 F.2d at 50). The plaintiffs in that case, however, sought to recover against the president and largest shareholder of the corporate employer because she intended to interfere with the plaintiffs' benefits in violation of Section 510 of ERISA. Id. at *1-2. Although the court declined to allow the claim to proceed because the complaint made no allegations that the defendant president discriminated against or took any adverse employment action against any particular group of employees, it affirmatively recognized that "[l]iability under

[Section 510] . . . is not limited to employers. It applies equally to an individual whose conduct directly alters, in a fundamental way, the employer-employee relationship so as to interfere with pension rights." Id. at *2.

Other federal district courts have followed suit. See, e.g., Warner v. Buck Creek Nursery, Inc., 149 F. Supp. 2d 246, 258 (W.D. Va. 2001) (declining to dismiss Section 510 ERISA claim against director of defendant corporation, noting that he was an "individual" and consequently a "person" within the meaning of the statute); Valentine v. Carlisle Leasing Int'l Co., No. CIV.A.97-1406, 1998 WL 690877, at *6 (N.D.N.Y. Sept. 30, 1998) ("Nothing in Section 510 restricts its scope to employers, as defendants argue. Rather, a proper interpretation of the statute is one that extends its application to any person who has the ability to affect a plaintiff's employment relationship."); Blake v. H-2A and H-2B Voluntary Employees' Beneficiary Ass'n, 952 F. Supp. 927, 933 (D. Conn. 1997) ("[S]ection 510 may apply to defendants other than employers. The statute by its very terms applies to 'persons,' which is defined by ERISA. Had Congress intended to limit the applicability of section 510 to 'employers,' a term also defined by ERISA, 29 U.S.C.A. § 1002(5), it could have done so as it has in other discrimination statutes."); Welsh v. Quabbin Timber Inc., 943 F. Supp. 98, 109-12 (D. Mass. 1996) (implicitly acknowledging legal validity of Section 510 claim against president of employer corporation for discrimination with intent to deprive plaintiff of ERISA benefits); Tobin v. General Elec. Co., No. CIV.A.95-4003, 1995 WL 603155, at *3-4 (E.D. Pa. Oct. 6, 1995) (declining to dismiss Section 510 claim against defendant CEO of General Electric where factual allegations, if proven, would subject him to Section 510 liability); Boesl v. Suburban Trust & Sav. Bank, 642 F. Supp. 1503, 1513-14 (N.D. Ill. 1986) ("A plain reading of § 1140 [Section 510 of ERISA] reveals that it imposes liability on any 'person' that interferes with rights to which an employee is entitled under a benefit plan, whether that 'person' is

15

an individual, a corporation, or a fiduciary.").[4]

In light of the foregoing jurisprudence, the Court finds that Plaintiffs' claim against Defendant Liddy for Section 510 is a legally viable allegation. The plain language of the statute imposes liability against "any person" who violates its provisions, including an individual such as Defendant Liddy. Contrary to Defendant's contentions, Plaintiffs do not seek to hold Defendant Liddy responsible solely for violations by Defendant Allstate, but rather for his own personal actions with respect to the Mass Termination Program.

Moreover, the Second Amended Complaint adequately pleads the requisite facts and elements of Section 510 claim. It alleges that Defendant Liddy was crucial to both the creation and implementation of the Mass Termination Program and the related Release. (Sec. Am. Compl. ¶¶ 3, 73-74.) Liddy also purportedly made misrepresentations in order to promote this program. (Id. ¶ 78.) The Second Amended Complaint goes on to assert that "in discharging each of the class members and in imposing a moratorium on rehiring them, Allstate *and Liddy* acted with the specific intent of interfering with the attainment of rights to which class members were entitled or may have become entitled under the Plans." (Id. ¶ 164 (emphasis added).) Taking such allegations as true – as the Court is required to do on a Rule 12(b)(6) Motion – the facts, if proven, would state an actionable claim against Defendant Liddy for violation of Section 510. Accordingly, the Court declines to dismiss Plaintiffs' claim against him.

An appropriate Order follows.

---

[4] Notably, Defendant cites no cases that either implicitly or explicitly hold that a corporate officer cannot be liable for a violation of Section 510 of ERISA.