## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENE R. ROMERO, et al., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 01-3894 |
| | : | |
| | : | CONSOLIDATED WITH |
| ALLSTATE INSURANCE COMPANY, | : | |
| et al., | : | NO. 01-6764 |
| Defendants. | : | NO. 01-7042 |

## MEMORANDUM

BUCKWALTER, S.J.                                                    November 10, 2015

Currently pending before the Court are: (1) the Motion by Defendants Allstate Insurance Company, the Allstate Corporation, Agents Pension Plan, and the Administrative Committee (collectively "Defendants" or "Allstate") to Dismiss certain claims alleged in the Plaintiffs' Third Amended Complaint and the Harris and McLaughlin Intervenor Complaints; and (2) the Partial Motion of Defendant Edward M. Liddy ("Liddy") to Dismiss Plaintiffs' Third Amended Complaint and the Harris and McLaughlin Intervenor Complaints. For the following reasons, the Motions are granted.

## I.      FACTUAL BACKGROUND

### A.      Underlying Facts

The underlying facts are well known to the parties and were summarized in great detail in the Court's Memorandum Opinion dated February 27, 2014. In lieu of rehashing the complicated and convoluted history of this matter, the Court incorporates by reference the recitation of facts set forth in that previous Memorandum. See Romero v. Allstate Ins. Co., 1 F. Supp. 3d 319

(E.D. Pa. 2014).

By way of brief review, this case revolves around Allstate's announcement and implementation of its Preparing for the Future Group Reorganization Program ("the Program"). Prior to November 1999, the majority of Allstate's captive agency force acted as employee agents, under either an R830 or an R1500 contract, and was entitled to a wide range of company-sponsored health, welfare, and retirement benefits. On November 10, 1999, Allstate announced the Program by noting that, as part of a new business model, it was reorganizing its entire captive agency force into a single exclusive agency independent contractor program. With few exceptions, Allstate terminated the employment contracts of the 6,200-plus R830 and R1500 employee agents effective no later than June 30, 2000. While the Program applied to all agents regardless of age, productivity, or performance, approximately ninety percent of the R830/R1500 agents were over forty years of age.

In connection with the termination of the R830 and R1500 employment contracts, Allstate offered the agents working under those contracts four options. The first three options were conditioned upon the agents' agreement to execute a release of claims, while the fourth option was not. The first "release-based" option was the "EA Option." According to the Program Information Booklet, this option would allow the agent to enter into an R3001C or R3001S Agreement, thereby converting the agent from an employee to an Exclusive Agent ("EA") independent contractor. The agent would then be entitled to all of the benefits and requirements of that contract, including increased renewal commissions, a conversion bonus, earlier transferability in the agent's book of business, debt forgiveness, and reimbursement for moving expenses if necessary. The R3001 contract, however, did not entitle agents to the same

2

employee benefits.

The second option was the "Sale Option." This option also permitted an agent to enter into an R3001C/S Agreement with Allstate, thus converting the agent to an EA independent contractor. In turn, the agent would receive a "conversion bonus" and Allstate would forgive any advances owed, assume certain lease and advertising obligations the agent incurred as an employee agent, and permit the agent, after thirty days' service as an EA, to sell his or her book of business written while an R830 or R1500 agent. This option also required the agent to sign a release.

The third option was the "Enhanced Severance Option." Under this option, Allstate would pay the agent "enhanced" severance equal to one year's pay based on the greater of 1997 or 1998 total compensation, forgive debt and/or expenses that Allstate had advanced to the agent, and relieve the agent of certain lease and advertising obligations incurred as an R830 or R1500 agent. This option was unavailable unless the agent signed a release.

The final option was the "Base Severance Option." If an agent elected this option, then Allstate paid him or her up to thirteen weeks of pay. The agent electing this option did not need to enter into a release, although he/she was subject to certain additional non-compete and non-solicitation obligations. Notably, Allstate had determined that agents affected by the Program were ineligible for the pre-existing severance or post-termination pay plans because they were not terminated for any of the reasons set forth in those plans. Allstate also took the position that the pre-existing severance/post-termination pay plans were inapplicable because they did not apply to group reorganization programs.

The release required by the first three options (the "Release") was three pages long,

including a signature page.  The Release and Waiver Provision stated:

> In return for the consideration that I am receiving under the Program, I hereby release, waive, and forever discharge Allstate Insurance Company, its agents, parent, subsidiaries, affiliates, employees, officers, shareholders, successors, assigns, benefits plans, plan administrators, representatives, trustees and plan agents ("Allstate"), from any and all liability, actions, charges, causes of action, demands, damages, entitlements or claims for relief or remuneration of any kind whatsoever, whether known or unknown, or whether previously asserted or unasserted, stated or unstated, arising out of, connected with, or related to, my employment and/or the termination of my employment and my R830 or R1500 Agent Agreement with Allstate, or my transition to independent contractor status, including, but not limited to, all matters in law, in equity, in contract, or in tort, or pursuant to statute, including any claim for age or other types of discrimination prohibited under the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, the Employee Retirement Income Security Act ("ERISA"), the Illinois Human Rights Act, and the West Virginia Human Rights Act as those acts have been amended, or any other federal, state, or local law or ordinance or the common law.  I further agree that if any claim is made in my behalf with respect to any matter released and waived above, I hereby waive any rights I may have with respect thereto and agree not to take any payments or other benefits from such claim. I understand that this release and waiver does not apply to any future claims that may arise after I sign this Release or to any benefits to which I am entitled in accordance with any Allstate plan subject to ERISA by virtue of my employment with Allstate prior to my employment termination date.

(Allstate's Mot. Summ. J. on the Validity of the Release, Heinz Decl., Nos. Civ.A.01-3894, 01-6764, Ex. 186 ("Release"), at ARI 004101.)

### B.   Procedural Background

Several employee agents subject to this Program brought age discrimination charges against Allstate with the Equal Employment Opportunity Commission ("EEOC").  On August 1, 2001, thirty-two employee agents (the "Romero Plaintiffs")  filed a complaint against Allstate in connection with the Program.  The Romero Plaintiffs filed their First Amended Complaint on October 18, 2001, and their Second Amended Complaint on July 28, 2010.  On February 27, 2014, this Court ruled on the parties' cross-motions for summary judgment regarding the validity

of the Release and held that a genuine issue of fact remained as to whether the Release was knowingly and voluntarily signed. Thereafter, following denial of class certification on issues regarding the validity of the Release, the Court determined that the statute of limitations for the non-named Plaintiffs had resumed running and that they were required to file an action in order to pursue their claims.

On February 26, 2015, the original Romero Plaintiffs moved for leave to file a Third Amended Complaint in order to add 368 former employee agents who signed the Release as part of the Program. The following day, the same 368 agents filed their own complaint, but did not move to intervene. See Abell v. Allstate Ins. Co., No. Civ.A.15-1049. Shortly thereafter, thirty other Release-signers filed two separate complaints containing identical factual and legal allegations as the Third Amended Complaint, and subsequently moved to intervene in the Romero litigation. See McLauglin v. Allstate Ins. Co., No. Civ.A.15-1017 ("McLaughlin Compl."), Harris v. Allstate Ins. Co., No. Civ.A.15-1190 ("Harris Compl."). All of these complaints allege (1) invalidity as to the Release signed by each Plaintiff and Intervenor; (2) violation of section 510 of ERISA; (3) violation of the ADEA; (4) breach of contract; and (5) breach of fiduciary duty. On April 21, 2015, the Court granted both Plaintiffs' Motion to File a Third Amended Complaint adding the new Plaintiffs and the two Motions to Intervene.

On July 28, 2015, Defendants Allstate and Liddy filed Motions to Dismiss the Romero Plaintiffs' Third Amended Complaint and the Harris and McLaughlin Defendants' Intervenor Complaints. All Plaintiffs submitted a response on August 27, 2015, and on September 21, 2015, Allstate and Liddy filed Reply Briefs. The Motions are now ripe for judicial consideration.

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.  "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of

6

complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting <u>Twombly</u>, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static.  <u>Spence v. Brownsville Area Sch. Dist.</u>, No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations.  <u>Phillips</u>, 515 F.3d at 233.  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  <u>Buck v. Hampton Twp. Sch. Dist.</u>, 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  <u>Pinkerton v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

### A.   <u>Whether the Court Should Dismiss All State Law Claims Because Plaintiffs[1] Have Ratified the Release as a Matter of Law</u>

Defendants first allege that each Plaintiff and Intervenor in this case has failed to return—or even offer to return—the consideration they each received in exchange for signing the Release.  By neglecting to do so, Plaintiffs have purportedly ratified the Release, thereby waiving their state law breach-of-contract and breach-of-fiduciary duty claims.  In response, Plaintiffs and Intervenors assert that this argument fails for two reasons.  Primarily, they contend that Defendants have waived this ratification defense by failing to raise it as a basis for the Third

---

[1] For ease of discussion, the Court will refer to the Plaintiffs in the Third Amended Complaint, as well as the Plaintiffs in the <u>Harris</u> and <u>McLaughlin</u> Intervenor Complaints, as "Plaintiffs."

Circuit to affirm summary judgment as to Plaintiffs' state law claims. Alternatively, they

contend that even absent waiver, the tender-back rule does not bar Plaintiffs' claims in this case.

The Court addresses each argument separately.

### 1.   Waiver

Plaintiffs first aver that, under clear Third Circuit jurisprudence, a "contention that could

have been but was not raised on a prior appeal" is waived and may not be revisited by the district

court on remand. (Pls.' Resp. Opp'n Mot. Dismiss 7 (quoting Skretvedt v. E.I. DuPont De

Nemours, 372 F.3d 193, 202–03 (3d Cir. 2004).) Yet, when this case was last before the Third

Circuit on Plaintiffs' appeal from the entry of summary judgment for Defendants on the entirety

of Plaintiffs' claims, Defendants had the opportunity to raise the ratification argument they now

make, but failed to do so. That failure, according to Plaintiffs, constitutes a waiver of the

argument and precludes Defendants from raising it again.

The tortured and confusing procedural history of this case, however, does not lend itself

to such a finding of waiver. In March 2004, the Honorable John P. Fullam entered a declaratory

judgment holding that the Releases were voidable, and allowed Plaintiffs to revoke the Release

in exchange for tendering back all consideration received by them for the Release. Plaintiffs

immediately filed a motion for reconsideration of this ruling and, during the pendency of that

motion, Allstate filed a motion for summary judgment on the merits of all of Plaintiffs'

underlying claims. Several years later, on January 16, 2007, Judge Fullam denied Plaintiffs'

motion for reconsideration. Thereafter, on June 20, 2007, Judge Fullam granted Allstate's

motion for summary judgment as follows:

> By memorandum and order dated March 21, 2007, I notified the parties as to my
> tentative conclusions as to the ultimate merit of these related cases, and invited

counsel to submit briefs before issuing a final ruling.  I have considered the supplemental submissions of the parties, and now hold that:

1.      For the reasons stated in the decision of the Eleventh Circuit Court of Appeals in <u>Scott v. Administrative Comm. of the Allstate Agents Pension Plan</u>, 113 F.3d 1193 (11th Cir. 1997), and the later decision of the United States District Court for the Southern District of Florida in <u>Swain v. Allstate Ins. Co.</u> (No. 96-0998) (Jan. 22, 1999), the questioned amendments to the Allstate Pension Plan were validly adopted and became effective.

2.      The decision of the Seventh Circuit Court of Appeals in <u>Isbell v. Allstate Ins. Co.</u>, 418 F.3d 788 (7th Cir. 2005), warrants the conclusion that plaintiffs' claims of ERISA violations, age discrimination, and retaliation must fail.

3.      To the extent that this Court's Order of March 3, 2004 declared that the releases were voidable, that decision was in error and is hereby VACATED. Alternatively, the validity of the releases has become moot.  Thus, the decision of the Court of Appeals in <u>Jakimas v. Hoffmann-LaRoche</u>, 2007 WL 1394484 (3d Cir. May 14, 2007), does not affect my ruling.

4.      The following Motions are GRANTED:
        a.      Defendants' Motions for Summary Judgment (Document Nos. 148 and 150 in 01-3894);
        b.      Plaintiffs' Motions for Leave to File (Document Nos. 166 and 179 in 01-3894);
        c.      Defendants' Motion to Dismiss (Document No. 29 in 01-6764);
        d.      Defendants' Motion for Summary Judgment (Document No. 42 in 01-7042).

5.      The following Motions are DENIED:
        a.      Defendants' Motion for Attorney Fees (Document No. 21 in 01-6764);
        b.      Plaintiffs' Motion for Reconsideration of Dismissal of Employee Definition Amendment Claim (Document No. 31 in 01-6764).

6.      All other pending motions are DISMISSED AS MOOT.

7.      Counsel may submit within 20 days of the date of this Order any issues that must be resolved before the case-files are closed.

(Docket No. 183.)  Notably, Judge Fullam never issued a ruling on ratification, but

merely—without explanation—vacated his previous decision on the voidability of the Releases

and remarked that the decision was "moot" in light of his dismissal of the entire case on the merits.

Thereafter, Plaintiffs, not Defendants, filed an appeal from the summary judgment ruling. The issues before the Court were the precise issues affirmatively ruled upon by the District Court.  As appellees, Defendants did not separately raise the issue of ratification, particularly since it was not the subject of the decision on appeal.  In fact, when Plaintiffs presented the ratification issue on appeal, the Third Circuit declined to consider it noting that, "[a]fter the District Court issued its declaratory judgment, the plaintiffs filed a motion for reconsideration, arguing that the tender-back requirement was inappropriate.  They raise this argument on appeal, but we need not address that issue here."  Romero v. Allstate Ins. Co., 344 F. App'x 785, 792 n.10 (3d Cir. 2009).

While a district court's failure to consider an issue below does not necessarily preclude the appellate court from addressing it on appeal, it is only appropriate for te appellate court to do so "when the factual record is developed and issues provide purely legal questions, upon which an appellate court exercises plenary review."  Hudson United Bank v. LiTenda Mortgage Corp., 142 F.3d 151, 159 (3d Cir. 1998).  In situations "[w]hen  the resolution of an issue requires the exercise of discretion or fact finding . . ., it is inappropriate and unwise for an appellate court to step in."  Id.  In this case, with the issue of ratification being neither decided by the District Court nor not crucial to a determination by the Third Circuit, Defendants properly did not present the question on appeal.  Accordingly, the Court declines to find that Defendants' failure to raise the ratification issue on appeal to the Third Circuit constituted a waiver of that issue which would preclude its consideration at this juncture.

2.      **Whether the Tender-Back Rule Bars Plaintiffs' State Law Claims**

The parties next dispute whether Plaintiffs' failure to tender back the consideration they received for the Releases they signed now constitutes a ratification of the Release and bars the state law claims in the Third Amended Complaint.  Under the applicable states' common laws, "[t]he doctrine of contractual ratification is the enforcement of a promise to perform all or part of an antecedent contract of the promisor, previously voidable to him, but not avoided prior to the making of the promise."  Wamsley v. Champlin Refining & Chems., Inc., 11 F.3d 534, 538 (5th Cir. 1993) (citing Restatement (Second) of Contracts § 85 (1981)).  "The theory of ratification is that a promise can be enforced even though the underlying contract is voidable if it is ratified by the promisor."  Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 782 (3d Cir. 2007).  "This means that the promisor has the power to avoid the contract or to ratify it by making a new one." Id.

"Tender back is a related concept, which provides that if the promisor does not return the consideration received under the contract this is effectively ratification."  Id.  Under the tender-back requirement, "one who seeks to avoid the effect of a release must first return or tender the consideration paid him in connection with his execution of the release." 66 Am. Jur. 2d Release § 57 (2d ed. 1973); see also Nocito v. Lannuitti, 167 A.2d 262, 262 (Pa. 1961) (failure to tender back consideration after fraud is discovered constitutes waiver of the fraud and an affirmance of the contract); Hess v. Evans, 31 A.2d 347, 349 (Pa. Super. Ct. 1981) (holding that if appellant sought to disavow a contract, he had a duty to return the money to defendant, and his use of the money effected a ratification of the release); Katz v. Aetna Cas. & Sur. Co., No. Civ.A.89-4421, 1993 WL 8749 at *2 (E.D. Pa. Jan. 11, 1993) ("equitable remedy of rescission and the legal

remedy of damages are inconsistent and mutually exclusive").  "The principle that a release can

be rescinded only upon a tender of any consideration received is not a peculiarity of [any

particular state law]; it is a general principle of contract law."  Fleming v. U.S. Postal Serv. AMF

O'Hare, 27 F.3d 259, 260 (7th Cir. 1994) (citing 12 Williston on Contracts § 14.60 (Walter H.B.

Jaeger ed., 3d ed. 1970 and cases from multiple jurisdictions).

      According to the Restatement, the determination of what constitutes a reasonable time to

tender back consideration before a party is deemed to have ratified a contract is informed by the

following factors:

> (a) the extent to which the delay enabled or might have enabled the party with the
> power of avoidance to speculate at the other party's risk;
> (b) the extent to which the delay resulted or might have resulted in justifiable reliance
> by the other party or by third persons;
> (c) the extent to which the ground for avoidance was the result of any fault by either
> party; and
> (d) the extent to which the other party's conduct contributed to the delay.

Restatement (Second) Contracts § 381(3) (1981).  Indeed, the Restatement advises, in light of the

foregoing, that "what time is reasonable depends on all the circumstances, including the extent to

which the delay was or was likely to be prejudicial to the other party or to third persons."  Id.

cmt. a.  Nonetheless, it remains well established under federal law that a plaintiff's failure to

return the consideration received for a release does not constitute ratification of the release as to

ADEA or ERISA claims.  Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426–27 (1998); Long

v. Sears Roebuck & Co., 105 .3d 1529 (3d Cir. 1997).  Underlying this principle are the notions

that federal statutes are remedial and plaintiffs should not be deterred from bringing meritorious

claims.  Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 784 (3d Cir. 2007).

      In light of this jurisprudence, the only question at issue is whether Plaintiffs in this case

have ratified the Release with respect to their *state* law claims by failing to tender back the consideration received.  As this Court previously found, Plaintiffs clearly received consideration for signing the Release, which included some or all of the following: opportunity to become an independent contract with Allstate, conversion bonuses, vested interests in books of business previously wholly owned by Allstate, forgiveness of outstanding office expense allowance advancements, and enhanced severance payments.  While Plaintiffs seek to rescind that Release on multiple state law grounds and bring claims that are otherwise encompassed by the Release, they have not returned the consideration, and thus have obtained the benefit of two remedies. The Releases were signed by June 2000 and, within months of their being signed, many Plaintiffs had filed EEOC charges challenging the Release.  Yet, fifteen years later, there has been neither a tender of consideration nor an offer to immediately return all, or at least some, of the consideration received for signing the Release.  Allstate, in turn, has spent years litigating the state law claims having never received either the benefit of the bargain under the Release or the consideration it paid for that bargain.  Under the factors set forth in the Restatement and basic principles of state contract law, the Court must find that Plaintiff's failure to tender back the consideration received in exchange for signing the Release now constitutes a ratification of that Release as it respects the state law claims of breach of contract and breach of fiduciary duty.

In an effort to avoid dismissal of their state law claims, Plaintiffs set forth several arguments in opposition.  First, they claim that the "tender back-ratification" rule is inapplicable to certain of Plaintiffs' challenges to the Release, including the part and parcel theory and the equitable doctrines of unclean hands and unconscionability, and thus cannot bar the state law claims.  Second, they contend considerations of equity counsel against dismissing Plaintiffs'

claims pursuant to the tender-back rule.  The Court finds no merit to either point.

      **a.**      **Whether the Tender-Back/Ratification Rules Bar All of Plaintiffs' State Law Challenges to the Release**

Plaintiffs primary challenge to the application of ratification contends that although a Release that is "voidable"—such as one obtained through fraud or duress—is subject to the tender-back and ratification rules, a Release that is "void" is not subject to the tender-back and ratification rules.  They go on to note that, among their other defenses to the Release, they challenge it (1) as part and parcel of an illegal transaction; (2) as barred under the equitable doctrine of unclean hands; and (3) as unconscionable.  Under all of these defenses, the Release would be deemed void, not voidable, thereby meaning that the tender-back and ratification rules would not operate to bar Plaintiffs' challenges.

Plaintiffs are correct that "[a] claim that a contract is voidable does not challenge the existence or prima facie validity of the underlying agreement, but charges that inequitable conduct associated with the formation or performance of the agreement renders it unenforceable at the election of the aggrieved party."  Bertram v. Beneficial Consumer Discount Co., 286 F. Supp. 2d 453, 458 (M.D. Pa. 2003).  "In contrast, a declaration that a contract is void nullifies all aspects of the agreement . . . giving neither party the power to ratify or disaffirm its provisions."  Id. (citing 6 Restatement (Second) of Contracts § 7 cmt. a ("[A void contract] is not a contract at all."); Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 107–09 (3d Cir. 2000)).  "Essential to this concept is the principle that a void contract lacks legal existence from inception, and that the subsequent judicial declaration merely clarifies, rather than alters, the legal relationship of the parties."  Id.  "The doctrine of contractual ratification is the enforcement of a promise to perform all or part of an antecedent contract of the promisor, previously *voidable* to him, but not avoided

prior to the making of the promise." Wamsley v. Champlin Ref. & Chems., Inc., 11 F.3d 534,

538 (5th Cir. 1993) (emphasis added) (citing Restatement (Second) of Contracts § 85 (1981)).

Thus, it is well settled that "a *voidable* contract may be ratified, while a *void* contract may not."

Allen v. Holiday Universal, 249 F.R.D. 166, 172 (E.D. Pa. 2008) (emphasis in original) (citing

Yannuzzi v. Commonwealth, 390 A.2d 331, 332 (Pa. Commw. 1978) ("It is true that there is an

important technical distinction between 'void' and 'voidable': The term 'void' is properly

applied to those contracts that are of no effect whatsoever, whereas a 'voidable' contract can be

cured by the act or confirmation of one of the parties.")).

The question then becomes whether Plaintiffs' challenges to the Release—aside from

their duress argument—would render the Release void, such that Plaintiffs could not have

ratified the Release.  First, Plaintiffs contend that the Release is void in inception as part and

parcel of an illegal scheme.  As this Court has previously noted, the "part and parcel" doctrine,

which had its inception and sole application in antitrust jurisprudence, holds that a release is

invalid if "the release itself was an integral part of a scheme to violate the antitrust laws." VKK

Corp. v. Nat'l Football League, 244 F.3d 114 (2d Cir. 2001) (quoting Redel's Inc. v. Gen. Elec.

Co., 498 F.2d 95, 100–01 (5th Cir. 1974)); Ingram Corp. v. J. Ray McDermott & Co., 698 F.2d

1295, 1315 (5th Cir. 1983) ("This language in Redel's reflects the concept that a release is not

valid if the release itself is 'part and parcel' of an antitrust conspiracy.").  The release must be

"an object of the combination or conspiracy" or "an integral part of the scheme in restraint of

trade." Dobbins v. Kawasaki Motors Corp., U.S.A., 362 F. Supp. 54, 58 (D. Or. 1973).  "[I]f the

release is merely an outgrowth, rather than a cause of the violation," it is not part and parcel of

the antitrust conspiracy.  N. Oil Co., Inc. v. Standard Oil Co., 761 F.2d 699, 706 (Temp. Emer.

Ct. App. 1985).  The "part and parcel" doctrine has been "'rarely discussed and more rarely applied.'"  <u>Fresh Made, Inc. v. Lifeway Foods, Inc.</u>, No. Civ.A.01–4254, 2002 WL 31246922, at *3 (E.D. Pa. Aug. 9, 2002) (quoting <u>VKK Corp.</u>, 244 F.3d at 125).

Notwithstanding the clarity of the sparse case law limiting this doctrine to an antitrust setting, Plaintiffs have yet to identify, in this case, any antitrust conspiracy or other illegal scheme in restraint of trade.  Moreover, Plaintiffs have not pointed to any jurisprudence applying the part and parcel doctrine outside the antitrust context, let alone in the specific context of an employment discrimination case.  Although the part and parcel theory inexplicably remains part of this case, it is abundantly obvious that this theory has no applicability and could not serve to render the Release void at law.  In turn, Plaintiffs cannot rely on this theory to avoid the ratification defense.

Second, Plaintiffs challenge the Release on a theory of unclean hands, which, according to them, renders the contract "'unenforceable,' not merely 'voidable.'"  (Pls.' Resp. Opp'n Mot. to Dismiss 10.)  Unclean hands is "a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."  <u>Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.</u>, 324 U.S. 806, 814 (1945).  It is an equitable doctrine which applies "when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation."  <u>Highmark, Inc. v. UPMC Health Plan, Inc.</u>, 276 F.3d 160, 174 (3d Cir. 2001).  In simpler terms, a claim is barred under the doctrine of unclean hands when "(1) a party seeking affirmative relief (2) is guilty of conduct involving fraud, deceit, unconscionability, or bad faith (3) directly related to the matter in issue (4) that

16

injures the other party and (5) affects the balance of equities between the litigants." Imprisoned Citizens Union v. Shapp, 11 F. Supp. 2d 586, 608 (E.D. Pa. 1998) (citation and internal quotation marks omitted), aff'd, 169 F.3d 178 (3d Cir. 1999); see also Lucey v. Workmen's Comp. Appeal Bd., 732 A.2d 1201, 1204 (Pa. 1999) (stating the doctrine of unclean heads "closes the doors of a court of equity to one tainted with inequity or bad faith relative to the matter in which he seeks relief"). The doctrine is to be applied "'only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.'" Ne. Women's Ctr., Inc. v. McMonagle, 868 F.2d 1342, 1354 (3d Cir. 1989) (quoting Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 245–46 (1933)). The unclean hands doctrine renders a contract or agreement unenforceable. Mente Chevrolet Oldsmobile, Inc. v. GMAC, 451 F. App'x 214 (3d Cir. 2011).

Plaintiffs' present argument—that a contract that is unenforceable under the unclean hands doctrine is, thus, void—rests on an improper conflation of the terms "void" and "unenforceable." As noted above, "[a] voidable contract is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance." Restatement (Second) Contracts § 7 (1981). A "void" contract, on the other hand, is "[a] promise for breach of which the law neither gives a remedy nor otherwise recognizes a duty of performance by the promisor." Id. § 7 cmt. a. An unenforceable contract is "one for the breach of which neither the remedy of damages nor the remedy of specific performance is available, but which is recognized in some other way as creating a duty of performance, though there has been no ratification." Id. § 8. The Restatement goes on to clarify the distinction between "voidable" and "unenforceable,"

17

as follows:

> Just as a contract may be voidable by one party or by either party, so it may be enforceable by one and not by the other or it may be unenforceable by either. Similarly, one party to an unenforceable contract may have a power to make the contract enforceable by all the usual remedies, and both voidable and unenforceable contracts may have collateral consequences. Voidable contracts might be defined as one type of unenforceable contract. As defined here, however, the term unenforceable contract refers to rules under which the duty of performance does not depend solely on the election of one party. In the transactions here classified as unenforceable, some legal consequences other than the creation of a power of ratification follow without further action by either party.

Id. § 8 cmt. a. Notably, "the statements 'one party to an unenforceable contract may have a power to make the contract enforceable by all the usual remedies' and 'some legal consequences other than the creation of a power of ratification follow without further action by either party' indicate that unenforceable contracts may be ratified through the actions of one of the parties." Fumai v. Levy, No. Civ.A.95-1674, 1998 WL 42297, at *3 (E.D. Pa. Jan. 16, 1998). In addition, comment a of the Restatement describes a voidable contract as a type of unenforceable contract. Id. As such, the Court finds that Plaintiffs' theory of unclean hands would simply render the Release unenforceable and not clearly void, meaning that ratification could apply.[2]

---

[2] Plaintiffs argue that "[c]onsistent with Third Circuit precedent, if Allstate acted with unclean hands, then the Release is 'unenforeable,' not merely 'voidable'—and while a voidable contract 'may be adopted by ratification, . . . [an unenforceable contract] may not.'" (Pls.' Resp. Opp'n Summ. J. 10 (citing Mente Chevrolet Oldsmobile, Inc. v. GMAC, 728 F. Supp. 2d 662, 675–76 (E.D. Pa. 2010). As a preliminary matter, the case to which Plaintiffs cite is from the Eastern District of Pennsylvania, not from the Third Circuit, and therefore is not "Third Circuit precedent." Although the case was affirmed on appeal, the Third Circuit did not opine on the issue of ratification since the District Court deemed the issue waived. Mente Chevrolet Oldsmobile, Inc. v. GMAC, 451 F. App'x 214 (3d Cir. 2011).

As to the District Court's opinion, it held that ratification only applied if the agreement at issue was voidable on the basis of duress or fraud, which the jury found were not present. Id. at 675. By way of a footnote, the court explained:

> Instead, the jury found the Forbearance Agreement was unenforceable based on the doctrine of unclean hands. An "unenforceable contract" differs from a "voidable

Moreover, and perhaps more importantly, the nature of Plaintiffs' specific unclean hands defense is contrary to a ruling that Plaintiffs could not ratify the Release as it concerns their state law claims.  As noted above, the unclean hands doctrine is to be applied "only where some unconscionable act of one coming for relief has *immediate and necessary relation to the equity that he seeks* in respect of the matter in litigation."  Ne. Women's Ctr. v. McMonagle, 868 F.2d 1342, 1354 (3d Cir. 1989) (emphasis added).  The Third Amended Complaint, in this case, asserts that, "[i]n conditioning the continuance of their service and agency relationship with Allstate on the waiver by class members of their rights under federal remedial statutes such as the ADEA and ERISA, the Release is in violation of public policy and, hence, invalid and unenforceable."  (Third Am. Compl. ¶ 525.)  In other words, the Third Amended Complaint asserts that it is precisely the waiver of *federal* statutory rights that constitutes the basis of the unclean hands defense.  Such an argument does not constitute unclean hands per se, but rather merely reiterates the now well-established principle that state law doctrines of tender-back and ratification do not apply to releases that purport to waive federal claims—particularly claims under the ADEA and ERISA—because a release that does not satisfy those statutes is void as against public policy and not voidable.  See Oubre v. Entergy Operations, 422 U.S. 422, 428 (1998); Jakimas v. Hoffman-La Roche, 485 F.3d 770, 784 (3d Cir. 2007).  Defendants concede this principle and contend that only the state common law claims are barred by Plaintiffs' failure

_____

contract." The latter may be adopted by ratification, while the former may not. Restatement (Second) of Contracts § 85, cmt. a (2010). Because any subsequent action by a party does not erase the opposing party's wrongful conduct, the doctrine of unclean hands cannot be defeated by ratification.

Id. at 676 n.31.  This ruling appears to confuse the terms "void" and "unenforceable" by assuming they bear the same meaning and legal consequences.  While § 85 of the Restatement, cited by the Court, seems to suggest that an "unenforceable" contract is not subject to ratification, that provision stands directly in conflict with the dictates of § 8.

to tender back the consideration received.  At no point do Plaintiffs suggest that Defendants acted

with unclean hand by requiring Plaintiffs to sign a Release that waived their state law claims.  As

such, and in turn, Defendants have not committed any unconscionable act that has "immediate

and necessary relation" to their requested relief of barring the state law claims under the Release.

Thus, it would transgress the bounds of logic to determine that Plaintiffs could not ratify the

Release as to the state law claims when Plaintiffs have never asserted that Defendants have acted

with unclean hands with respect to those claims.

Third and finally, Plaintiffs assert that their challenge to the Release under the doctrine of

unconscionability would render the Release unenforceable and, thus, not subject to ratification.

As described in a leading treatise, "while freedom of contract has been regarded as part of the

common-law heritage so that absent an invalidating cause of action such as mistake, fraud, or

duress, parties who make a contract are bound to it even though the contract may be unwise and

even foolish, courts of equity have often refused to enforce some agreements when, in their

sound discretion, the agreements have been deemed unconscionable."  8 Williston on Contracts §

18:1 (4th ed.)  Such unconscionable agreements, however, may only "be said to be voidable or

unenforceable by the party imposed upon, but not void, and are therefore subject to ratification,

or, if they are not avoided, may give rise to an estoppel."  Id.; see also King v. Fox, 851 N.E.2d

1184, 1193 (N.Y. 2006) ("Where a fully informed client with equal bargaining power knowingly

and voluntarily affirms an existing fee arrangement that might otherwise be considered voidable

as unconscionable, ratification can occur so long as the client has both a full understanding of the

facts that made the agreement voidable and knowledge of his or her rights as a client."); James

River Mgmt. Co., Inc. v. Kehoe, No. Civ.A.09-387, 2010 WL 431473, at *3 (E.D. Va. Feb. 5,

2010).[3]  As such, given this clear principle of law, Plaintiffs' unconscionability defense does not

bar the applicability of the ratification defense.

In sum, Plaintiffs incorrectly suggest that their part-and-parcel, unclean hands, and

unconscionability claims defeat Defendants' reliance on the ratification defense to dismiss

Plaintiffs' state law claims.  As indicated in detail above, Plaintiffs have failed to establish that

their part-and-parcel doctrine claim has any bearing on this case and could ever defeat the

Release in these circumstances.  Moreover, Plaintiffs' unclean hands and unconscionability

claims would only render the Release unenforceable, but would not necessarily defeat the

application of the tender-back and ratification principles.  Therefore, the Court rejects Plaintiffs'

argument to the extent it relies on these grounds.

> **b.**     **Whether Equitable Principles Preclude the Use of the Tender-Back and Ratification Doctrines**

Alternatively, Plaintiffs aver that dismissing Plaintiffs' claims pursuant to the tender-back

and ratification rules would be inequitable because: (1) tender back should not be required at the

outset of litigation when the value of consideration could be set off against a monetary recovery;

(2) the tender-back rule should not be applied in cases involving multiple claims, some of which

are not subject to tender-back and some of which are; and (3) requiring tender back in this case

creates a practical impossibility.  The Court takes these challenges individually.

First, Plaintiffs assert that, under well-settled law, tender back should not be required at

---

[3]  Plaintiffs cite Sams v. Sams, 808 A.2d 206, 213 (Pa. Super. Ct. 2002) for the proposition that an unconscionable contract may not be ratified.  A closer look at Sams, however, reveals that the court only held that the contract in that case had not been ratified because the money that the allegedly ratifying party failed to return was not given in consideration for the contract; she had simply retained benefits to which she was already entitled without the contract. It never held that an unconscionable contract could not be ratified.

the outset of the litigation "where it would be inequitable to do so or where the underlying action is for money damages against which the value of the consideration could be set off against a recovery.'"  (Pls.' Resp. Opp'n Mot. to Dismiss 12 (quoting Oubre, 522 U.S. at 426).)  They suggest that the wealth of jurisprudence indicates that the tender-back rule , although well established in state law, should be reserved for the close of litigation to be offset against monetary damages.

None of Plaintiffs' cited cases, however, either support the proposition that tender back should be delayed until the end of this litigation, or dispel the principle that ratification occurs when consideration is not returned when litigation otherwise barred by the release has commenced.  See Stilwell v. Hertz Drivurself Stations, 174 F.2d 714, 717 (3d Cir. 1949) (rejecting, in one short sentence, a post-litigation tender-back/ratification argument, made on appeal after a jury had already awarded the plaintiff money and defendant paid the judgment with a credit for the amount of consideration that the plaintiff had received); Woods v. City of Hobbs, 408 P.2d 508, 510–11 (N.M. 1965) (declining, on appeal, to find ratification where the defendant had already been given credit by the judgment for the consideration paid for the release); Collins v. Hughes & Riddle, 278 N.W. 888, 894 (Neb. 1938) (finding that where the plaintiff sustained significant damages in a car accident caused by defendants and purportedly entered into a settlement agreement and release for fifteen dollars, the plaintiff's failure to return consideration did not preclude his action where the action was not seeking recission of the agreement–which only addressed property damage not personal injury—but was suing on his original demand, and where jury had already awarded the plaintiff $15,000 against which the consideration could be credited); Am. Life Ins. Co. v. Parra, 187 F. Supp. 2d 203, 211–12 (D. Del. 2002)

22

(acknowledging that, as a general rule, the law should not allow a party to appropriate the benefits of a contract while avoiding its attending obligations, but, in the "peculiar" circumstances of that case, including the fact that the contract was already deemed by a jury to have been procured as a result of fraud, the plaintiff could allow the arbitration to proceed so long as "proper safeguards" were put in place to ensure that the defendant's claim for the money owed to it would be preserved), aff'd, 50 F. App'x 538 (3d Cir. 2002).

Unlike the foregoing cases, Plaintiffs, in this case, have neither an existing judgment nor a guaranteed future judgment against which the consideration they have taken may be offset.  Nor have Plaintiffs ever offered to pay back the consideration during the course of this litigation.  Rather, Plaintiffs here are seeking to avoid the obligations attendant to the Release without tendering back the consideration they received, thereby gaining the benefit of two remedies.  See Williams v. Phillips Petroleum Co., 23 F.3d 930, 937 (5th Cir. 1994) ("A person who signs a release, then sues his or her employer for matters covered under the release, is obligated to return the consideration.  Offering to tender back the consideration after obtaining relief in the lawsuit would be insufficient to avoid a finding of ratification.") (quotations omitted).[4]

Second, Plaintiffs assert that the tender-back rule is inappropriate in this case because some of their claims are subject to tender back, while others are not.  According to Plaintiffs, courts have declined to apply the tender-back rule in cases involving multiple claims, only some of which are not subject to tender-back, allowing the defendant to instead recoup the monies paid

---

[4]  Plaintiffs argue that "[n]otably, since at least 2003, Plaintiffs have been offering to return whatever ascertained value, if any, ultimately is placed on the 'consideration' for the Release (to the extent it is only adjudged 'voidable') through an offset to any damages award. (Pls' Resp. Opp'n Mot. to Dismiss 15 n.14.)  This offer to return the consideration at the close of litigation as an offset to an award of damages is not equivalent to an offer to return consideration immediately, or at least at some point during the course of the litigation.

for an invalidated release through an offset to any damages award.

In support of this argument, Plaintiffs cite to Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 782 (3d Cir. 2007). That case, however, did not directly address whether the tender-back rule should be disregarded in cases involving both federal claims not subject to tender-back and state law claims that would be subject to tender-back. Rather, without expressly addressing the state law claims at issue in that case, the Court rejected the application of the tender-back rule to the plaintiffs' claims under § 510 of ERISA on the same grounds that the tender-back rule has been rejected with respect to other federal statutory claims under the ADEA and FELA. Id. at 783–84. Nothing in that decision suggested that state law tender-back/ratification rules should not apply to state law claims even when such rules did not apply to federal law claims brought in the same action.

Likewise, the other cases that Plaintiffs cite do not support their argument. For example, in Blackwell v. Cole Taylor Bank, No. Civ.A.96-902, 1997 WL 156483 (N.D. Ill. Mar. 31, 1997), the plaintiff had asserted claims under both Title VII and the ADEA, as well as under various state common laws. Id. at *3. At the time that case was decided, federal common law provided that Title VII claims were still subject to state tender-back requirements, but ADEA claims were not. Id. The court determined that because allocation of consideration between the two types of federal claims was not possible, tender back would not be required at the outset of the litigation, but rather would be reserved for an offset against any judgment. Id. at *3–4. Notably, however, the court had already declined to exercise supplemental jurisdiction over the state law claims and, therefore, did not need to consider whether tender-back and ratification principles applied to the state law claims. Id. at *2.

Similarly, in <u>Rangel v. El Paso Natural Gas Co.</u>, 996 F. Supp. 1093 (D.N.M. 1998), the court again faced an uncertain legal landscape where it was unclear whether tender back was required for the assertion of Title VII claims.  <u>Id.</u> at 1098–99.  The plaintiff had asserted both Title VII and ADEA claims, and the court simply held that, rather than attempting to allocate the consideration between the two types of claims, it would simply require tender back as an offset against any recovery.  <u>Id.</u> at 1099.  The court then separately addressed whether tender back was required for the state law claims—thereby suggesting that the state law claims were not subject to the same analysis—and noted that because the New Mexico Supreme Court had explicitly allowed for flexible application of the tender-back rule and because the equities in that case suggested that the plaintiff was unable to pay back consideration, the court would not require immediate tender back.  <u>Id.</u>

Finally, in <u>Wahsner v. Am. Motor Sales Corp.</u>, 597 F. Supp. 991 (E.D. Pa. 1984), the plaintiff brought suit under the federal Automobile Dealers' Day Act.  <u>Id.</u> at 995–96.  No state law claims were at issue.  <u>Id.</u> The court simply found that state law principles of tender-back and ratification were "incongruous" with a federal statute and should not be applied to defeat its benefits.  <u>Id.</u> at 997–98.  The court never declined to apply the state law doctrines to state law claims.

On the other hand, and contrary to Plaintiffs' argument, numerous cases have found that a plaintiff's failure to tender back consideration can act as a ratification of the contract/release as to the state law claims without acting as a ratification of the contract/release as to the federal law claims.  <u>See, e.g.</u>, <u>Bennett v. Coors Brewing Co.</u>, 189 F.3d 1221, 1234 (10th Cir. 1999) (holding that while the appellants' failure to tender back their severance benefits had no effect on their

ability to challenge the waivers of their ADEA claims under the OWBPA, their retention of

severance benefits acted as a ratification with respect to their state law claims); Long v. Sears

Roebuck & Co., 105 F.3d 1529, 1545 (3d Cir. 1997) (recognizing that although the tender-

back/ratification doctrines do not apply to releases challenged under the ADEA, they do apply to

the state law claims); Duval v. Callaway Golf Ball Operations, Inc., 501 F. Supp. 2d 254, 263–65

(D. Mass. 2007) (dismissing state law claim because the plaintiff's failure to tender back

consideration constituted ratification of an agreement, but declining to similarly dismiss the

ADEA claim given the dictates of Oubre); Loden v. Blue Cross & Blue Shield of Okla., No.

Civ.A.11-673, 2013 WL 5207238, at *7 (N.D. Okla. Sept. 13, 2013) (finding that the tender-back

requirement was a condition precedent for plaintiff to avoid enforcement of the waiver provision

of a separation agreement and to bring state law claims for wrongful termination, even though

tender-back did not apply to federal law claims under the ADEA); Larkins v. Reg'l Elite Airline

Servs., LLC, No. Civ.A.12-139, 2013 WL 1818528, at *5–6 (S.D. Ohio Apr. 29, 2013)

("Because Larkins failed to tender back the payment he received as part of his signing of the

Release, he is barred from bringing his claims for race discrimination, fraud, intentional infliction

of emotional distress, negligent infliction of emotional distress, and conspiracy.  However,

Larkins is not barred from bringing his claim under the ADEA."); Gascho. v. Scheurer, 589 F.

Supp. 2d 884, 891 (E.D. Mich. 2008) (finding state law claims ratified for failure to tender back

consideration prior to bringing suit, but allowing Title VII claims to proceed because tender-back

rules did not foreclose such claims); Halstead v. Am. Int'l Grp., Inc., No. Civ.A.04-815, 2005

WL 885200, at *2 (D. Del. Mar. 11, 2005) ("[A]lthough plaintiff may challenge the validity of

the release because it is voidable as executed unknowingly and involuntarily under duress, he can

only do so in the context of his ADEA claim unless he tenders back or puts in escrow the consideration he was paid in securing the release.").

"A federal court under Erie is bound to follow state law as announced by the highest state court" when applying the state's common law or statutory law.  Edwards v. HOVENSA, LLC, 497 F.3d 355, 361 (3d Cir. 2007); see also DeRasmi v. McDonnell Douglas Truck Servs., Inc., No. Civ.A.87-1332, 1989 WL 201013, at *1 (D.N.J. Jan. 30, 1989) ("When exercising pendant [or diversity] jurisdiction over a state common law claim, a federal court must generally follow the substantive state law of the state in which it sits.")  Thus, while federal courts are free to determine that state tender-back and/or ratification doctrines do not apply to a plaintiff's attempt to avoid a release that waives federal law claims, that discretion does not exist when determining whether those doctrines apply to a plaintiff's attempt to avoid a release that waives state law claims.  Defendants have adequately demonstrated—and Plaintiffs have not disputed—that the applicable state laws in this case require tender back of consideration where a plaintiff seeks to bring state law claims that are otherwise barred by a release.  They have also established that the state laws will generally find ratification where the plaintiff has failed to return or offer to return that consideration in a timely manner.  Simply because federal law does not require Plaintiffs, in this case, to return the consideration associated with the waiver of their ADEA and ERISA claims does not mean this Court can freely disregard the tender-back requirement with respect to Plaintiffs' state law claims.

Third, and finally, Plaintiffs claim that a "consideration conundrum" exists in this case since there is no available method of getting the parties to agree on what the appropriate amount of tender back should be.  Plaintiffs go on to explain that, for the terminated agents who took the

27

Enhanced Severance Option, the severance pay they received was consideration not just for the Release, but also for the new restrictive covenants contained in the Agent Transition Severance Plan.  Moreover, for the other Release options, the consideration included the ability of the agent to convert to the R3001 contract and the right of the agent to sell the agency to an Allstate-approved third party.  Such consideration, according to Plaintiffs, is incapable of being tendered back and makes it impossible to restore the parties to the *status quo ante*.

While this argument would have had significantly more merit had it been raised previously, it does not hold muster at this juncture.  This case clearly raises complex issues of consideration.  Depending on which Program option a Plaintiff took, he or she received consideration in one or more of the following forms: enhanced severance payments, conversion bonuses, an economic interest in a book of business which could be sold, an opportunity to convert to an R3001 contract, and forgiveness of OEA advances.  Nonetheless, "[w]hether the tender must always precede the institution of the suit, or whether, as courts now hold in equity cases . . . it is enough that the complaint contains an offer to restore the consideration, an offer that the court could enforce by a conditional judgment."  Fleming v. U.S. Postal Serv. AMF O'Hare, 27 F.3d 259, 261 (7th Cir. 1994)  (citing 1 E. Allan Farnsworth, Farnsworth on Contracts § 4.15, 429–30 (1990)).  Yet, at no point did Plaintiffs make any offer to tender back any portion of the consideration.  Had they done so, the Court could have either obtained an agreement between the parties regarding what portion of the foregoing consideration would be sufficient to satisfy tender-back or, alternatively, determined that pre-judgment tender-back was unworkable in the context of the case.  Plaintiffs, however, deprived both Defendants and the Court of that opportunity.

Having completely disregarded the tender-back requirement, Plaintiffs must now be deemed to have ratified the agreement with respect to their state law claims. Notably, this ratification has no impact on Plaintiffs' federal law claims under the ADEA or ERISA given the unequivocal principles that tender-back and ratification cannot apply to releases that purport to waive such claims. Plaintiffs' state law claims of breach of contract and breach of fiduciary duty, however, have indeed been forfeited by Plaintiffs' ratification of the Release.[5]

### B.      Whether Plaintiffs' Retaliation Claims Under the ADEA and ERISA Fail as Matter of Law

In their Third Amended Complaint, Plaintiffs allege that "[i]n threatening to terminate the agency relationships of its employee agents and to confiscate their capital investments in the company unless they signed the Release waiving their rights to pursue their claims under the ADEA and ERISA and refrained from bringing such claims, Allstate has engaged in retaliatory conduct in violation of 29 U.S.C. §§ 623(d) and 1140." (Third Am. Compl. ¶ 527.) Plaintiffs originally moved for summary judgment on this claim back in April 2013, but deferred entirely to arguments presented by the EEOC in the consolidated litigation of EEOC v. Allstate Ins. Co., No. Civ.A.01-7042. Upon consideration of the EEOC's arguments, the Court rejected this retaliation theory and entered summary judgment in favor of Defendants on this claim. Romero v. Allstate Ins. Co., 3 F. Supp. 3d 313 (E.D. Pa. 2014). On appeal, the Third Circuit affirmed this Court's ruling, holding that Allstate did not violate the federal anti-retaliation laws by requiring that employee agents sign the Release in order to avail themselves of the benefits of the Program. EEOC v. Allstate Ins. Co., 778 F.3d 444 (3d Cir. 2015). Defendants now contend

---

[5] Having dismissed all the state law claims on grounds of ratification, the Court need not address Defendants' multiple other challenges to those claims.

that the retaliation claims asserted by Plaintiffs are precisely the same claims that this Court and the Third Circuit have already rejected and, as such, they must fail here.

Plaintiffs do not dispute this argument.  Indeed, the Third Amended Complaint explicitly noted by footnote to their retaliation argument that "[t]his allegation is retained for appeal purposes.  Plaintiffs acknowledge the Court has rejected their argument."  (Third Am. Compl. ¶ 527 n.5.)  Moreover, in their Response in Opposition to the Motion to Dismiss, Plaintiffs further explained that they included this allegation in their Third Amended Complaint because this Court's—and the Third Circuit's—previous rulings were only in the consolidated action of EEOC v. Allstate, No. Civ.A.01-7042.  There has yet to be any final ruling on this issue in the present action under Civil Action Number 01-3894.  In light of the Third Circuit's rejection of Plaintiffs' precise retaliation argument, and in light of Plaintiffs' apparent concession that those claims are now subject to dismissal in this action, the Court will grant Defendants' Motion to Dismiss these claims.

## IV.    CONCLUSION

In short, the Court grants both Allstate's and Liddy's Partial Motions to Dismiss in their entirety.  Plaintiffs' state law claims are unequivocally barred by the principles of tender-back and ratification in light of Plaintiffs' failure to offer to return any of the consideration they received in exchange for their execution of the Release.  In addition, Plaintiffs' retaliation claims have been explicitly rejected by both this Court and the Third Circuit.  Accordingly, such claims shall be dismissed from this matter.

An appropriate Order follows.