**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GENE R. ROMERO, et al.,** | : | **NO. 01-3894** |
| | : | |
| **Plaintiffs,** | : | **CONSOLIDATED WITH:** |
| | : | **Nos. 01-6764, 03-6872, 15-1017, 15-1049,** |
| **v.** | : | **15-1190, 15-2602, 15-2961, 15-3047** |
| | : | |
| | : | |
| **ALLSTATE INSURANCE COMPANY,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM

**KEARNEY, J.**                                             **May 3, 2016**

In this case involving both legal and equitable defenses to an insurer employer enforcing a release against its insurance agents, the jury found eight of the first-filed ten agent-plaintiffs established their legal defenses of not knowingly and voluntarily signing their former employer's release.   Judge Ronald L. Buckwalter then entered findings of fact and conclusions of law upholding the employer's equitable defenses. Following Judge Buckwalter's well-deserved retirement, Judge Gerard J. Pappert entered an Amended Judgment Order based on the jury's verdict on the agents' legal defenses and Judge Buckwalter's findings on the agents' equitable defenses.  Plaintiffs then moved to amend both Judge Buckwalter's Findings and Judge Pappert's Amended Judgment Order.  In the accompanying Order, we deny Plaintiffs' motion as to Judge Buckwalter's Findings and grant their motion as to one aspect of Judge Pappert's Amended Judgment Order to confirm counsel's agreement regarding the effect of the jury verdict on Plaintiffs' federal and state law claims remaining to be resolved along with the remaining agent-plaintiffs.

**I.    Facts relating to this Motion.**

Judge Buckwalter presided over a jury trial on whether the first-filed ten of the over four hundred agent-plaintiffs knowingly and voluntarily signed a release of claims (the "Release") prepared by their former employer Defendant Allstate Insurance Company ("Allstate") when it terminated their employment contracts under its Preparing for the Future Group Reorganization Program (the "Program").[1]  The jury reviewed Plaintiffs' legal defenses to the Release and found eight of the Plaintiffs (the "Prevailing Plaintiffs") did not knowingly and voluntarily sign the Release, but two Plaintiffs knowingly and voluntarily signed the Release.

Aside from their legal defenses to the Release resolved by the jury, Plaintiffs posited two equitable Release defenses at trial: unclean hands and unconscionability.  Judge Buckwalter addressed these equitable defenses in his Findings of Fact and Conclusions of Law and a Judgment Order declining to invalidate the Release on grounds of either unclean hands or unconscionability.  On February 10, 2016, following reassignment to Judge Gerald J. Pappert, the Court entered an Amended Judgment Order to reflect both the jury's verdict and Judge Buckwalter's ruling on the equitable defenses.

**II.   Analysis**

Plaintiffs seek two amendments to Judge Buckwalter's Findings of Fact and Conclusions of Law and one amendment to Judge Pappert's Amended Judgment Order under Fed.R.Civ.P. 52.[2]

   **A.    *Dicta* regarding evidence at trial does not constitute a finding Allstate implemented the Program for valid business reasons or complied with federal law.**

In reviewing Plaintiffs' unclean hands equitable defense, Judge Buckwalter commented:

[T]he Court finds a great deal of evidence on both sides of this issue.  On one hand, Allstate established that *the Program and Release were business-related*

> ***decisions that complied fully with federal statutory law and which made an
> effort to effectuate valid cost-savings measures*** while simultaneously offering
> employee agents alternative choices to preserve their financial futures.  On the
> other hand, Plaintiffs presented some proof that Allstate acted out of an
> unscrupulous and objectionable desire to preserve its profits, substantially cut the
> costs of remunerating its workforce, and then attempted to insulate itself from
> liability by way of the Release.  When placed on a scale, the parties' evidence
> balances somewhat evenly and, at times, tips ever so slightly in favor of Plaintiffs
> in terms of shocking the Court's moral sensibilities.   Under the clear and
> convincing standard, however, that is not enough to persuade the Court that
> enforcement of the Release will undermine this Court's integrity.  *See Gaudiosi v.
> Mellon*, 269 F.2d 873, 882 (3d Cir. 1959) (noting that the unclean hands doctrine
> is primarily intended to protect the Court's integrity where the conduct of a party
> shocks the judge's moral sensibilities; it has nothing to do with the rights or
> liabilities of the parties).   As such, the Court must find that Allstate is entitled to
> judgment on Plaintiffs' unclean hands defense.[3]

Plaintiffs now argue the highlighted passage reflects an improper adjudication of a question not
at issue in the trial.

We do not share Plaintiffs' concerns.  Before and during trial, despite Allstate's
objections, Plaintiffs asserted Allstate's reasons for implementing the Program and the cost-
savings it would enjoy were relevant to their unclean hands defense.  Plaintiffs vehemently
opposed Allstate's efforts to exclude evidence regarding their rationale for implementing the
Program and Release, arguing "[i]n order to present the jury with a complete picture of how
Allstate structured the Program, Plaintiffs must be able to present evidence of the creation and
design of the Program around the Release, why it developed the Program around the Release and
its internal materials and analysis relating to the development of the Program 'options.'"[4]  They
went on, "[l]ogically, this same evidence was relevant to whether Allstate had unclean hands in
seeking to enforce the Release."[5]  During trial, Plaintiff addressed this evidence to argue the
manner in which Allstate structured and implemented the Program involved a "bad faith and
inequitable attempt to deny the 6,200 employee agents terminated under the Program with a *de*

*facto* opportunity to challenge the legality of their termination."[6] Plaintiffs placed Allstate's reasons for the Program and Release directly at issue.

Following trial, Judge Buckwalter addressed whether Allstate's alleged efforts to insulate itself from significant liability for conduct it purportedly knew to be unlawful rendered the Release unenforceable under the unclean hands doctrine. Judge Buckwalter recognized, in contrast to Plaintiffs' abundant evidence of the oppressive and unscrupulous intent behind the Program and Release, Allstate offered similarly significant evidence of designing the Program as a valid, cost-saving measure, which it partially implemented through a Release satisfying the statutory elements of the Older Workers Benefit Protection Act ("OWBPA").[7] Contrary to Plaintiffs' current argument, Judge Buckwalter did not find the Program complied with either the Employee Retirement Income Security Act ("ERISA") or the Age Discrimination in Employment Act ("ADEA"). Ultimately, Judge Buckwalter declined to expressly credit either party's evidentiary submissions, but instead found, "[w]hen placed on a scale, the parties' evidence balances somewhat evenly and, at times, tips ever so slightly in favor of Plaintiffs in terms of shocking the Court's moral sensibilities."[8] Judge Buckwalter made no finding as to Allstate's compliance with federal law.

But we also recognize Plaintiffs' concern with the potential future impact of the statement "the Program and Release were business-related decisions that fully complied with federal statutory law and which made an effort to effectuate valid cost-savings measures."[9] To avoid any unfortunate reliance on *dicta*, we confirm the Court used the highlighted language only to acknowledge both Allstate's evidentiary submissions and the Court's prior finding the Release satisfied the OWBPA. There is no basis to now construe the Court's decision as ruling on the substance of Plaintiffs' underlying claims or the Program's propriety. While bordering on

4

the obvious, no party may argue, based on the Findings of Fact and Conclusions of Law, the

Program complies with ERISA and the ADEA.

**B.     The procedural unconscionability ruling is not inconsistent with the Jury's verdict on the legal defense.**

Plaintiffs argue the Court's conclusion on procedural unconscionability is inconsistent

with the jury's verdict.  The jury determined eight of the ten Trial Plaintiffs did not knowingly

and voluntarily sign the Release.    Judge Buckwalter then issued Findings of Fact and

Conclusions of Law holding "[h]aving considered all of the testimony and evidence at trial, . . .

Plaintiffs have [not] met their burden of proving that the Release was procedurally

unconscionable, even as to those Plaintiffs deemed by the jury to have not signed the Release

knowingly and voluntarily."[10]   Plaintiffs now assert Seventh Amendment principles preclude the

Court from entering a judgment on the procedural unconscionability claim contrary to the jury's

verdict.

The Plaintiffs' request lacks merit. The questions decided by the jury did not constrain

the Court's procedural unconscionability finding.   Under the Seventh Amendment, "[w]hen

litigation involves both legal and equitable claims, even if it is the plaintiff that joins such claims,

the right to a jury trial on the legal claim, including all issues common to both claims, must be

preserved by trying the legal claim to a jury first, or at least simultaneously with the equitable

claim, and by accepting the jury's findings on common facts for all purposes."[11]   "A district

court is bound both by a jury's explicit findings of fact and those findings that are necessarily

implicit in the jury's verdict."[12] Where the standards of proving the legal and equitable claims

differ or the precise basis of the jury's verdict is unclear, a judge and jury can reach divergent

conclusions.[13]

Nothing in the Findings of Fact and Conclusions of Law contravenes these principles.  At trial, the Court asked the jury to determine whether the Trial Plaintiffs signed the Release knowingly and voluntarily under the federal "totality of the circumstances" test.  The Court instructed the jury on the meaning of both "knowingly" and "voluntarily" and directed the jury of Allstate's burden of proving both elements.[14] The jury verdict form then asked only whether Allstate had "proven by a preponderance of the evidence that [the Trial Plaintiffs] signed the Release knowingly and voluntarily?"[15] As to the eight prevailing Trial Plaintiffs, the jury checked "no," with no further elaboration as to whether it believed that Allstate failed on the "knowing" prong, the "voluntary" prong, or both.[16]

By contrast, under the procedural unconscionability standard, Plaintiffs bore the burden of proving a lack of meaningful choice in light of all the circumstances surrounding the transaction.[17] The issues of "knowingly" before the jury at trial played no part in the Court's analysis.  The Court did not reject the jury's determination, but simply declined to find that "Plaintiffs ha[d] met their burden of proving that the Release was procedurally unconscionable."[18] Given the differing burdens of proof, as well as the lack of specificity regarding the basis for the jury's verdict, the Court's ruling as to procedural unconscionability does not reflect an improper disregard of factual findings by the jury on issues common to both claims.

Alternatively, Plaintiffs' argument constitutes an improper attempt to advance a new theory contrary to an earlier argument.  In their Reply in support of their proposed Findings of Fact and Conclusions of Law, Plaintiffs made precisely the opposite assertion: "[i]n deciding Plaintiffs' equitable defenses, the Court is not bound by the jury's verdict."[19] They also asserted "[b]ecause the jury was not allowed to address the ten Plaintiffs' unclean hands and

unconscionability defenses in the June 2015 trial, this Court now has the 'exclusive function of appraising credibility, determining the weight to be given the testimony, drawing inferences from the facts established, and resolving conflicts in the evidence' concerning the two [equitable] defenses." [20] Having taken one position in an apparent effort to avoid the unfavorable verdict as to the two non-prevailing Trial Plaintiffs, Plaintiffs may not now adopt a starkly contrasting position in a Rule 52 motion to avoid an undesirable court ruling on their equitable defenses.

Finally, even assuming *arguendo* Plaintiffs are correct, any error is harmless and amending the judgment would have no effect on the Trial Plaintiffs. The jury found eight of the ten Trial Plaintiffs did not sign their Releases knowingly and voluntarily. As to those eight Plaintiffs, the Releases have been invalidated regardless of the Court's ruling on the unconscionability claim. As to the two non-prevailing Plaintiffs, the laws of their home states require them to show *both* procedural and substantive unconscionability to invalidate the Release.[21] In the Findings of Fact and Conclusions of Law, however, the Court found the Releases not substantively unconscionable. This ruling remains unchallenged by Plaintiffs. As such, even under Plaintiffs' Seventh Amendment argument, the Releases still could not be invalidated on unconscionability grounds for these two non-prevailing Plaintiffs.[22] We find no reason to amend the Findings of Fact and Conclusions of Law.

**C.     We amend the Amended Judgment Order to reflect the Release is no longer a valid defense against any claims asserted by the Prevailing Plaintiffs.**

Plaintiffs argue the February 16, 2016 Amended Judgment Order only renders the Release unenforceable as to the federal claims and does not reflect Allstate's trial stipulation admitting the Judgment also renders the Release unenforceable as to Prevailing Plaintiffs' state law claims.

7

Plaintiffs originally intended to adduce a duress defense at trial. Before trial, the parties agreed:

> MR. QUINN [Counsel for Plaintiffs]: Rather than make an objection, I want to confirm an understanding that I believe was reached among the parties in Chambers last week. And it related to whether the court was going to charge jury on the state law defense of duress and whether the issue—whether the question of whether the Plaintiffs signed the Release under duress was going to be included in the verdict form. And Your Honor sure remembers the colloquy, and I think we reached an understanding under which we will withdraw our position that duress needs to be in the case, if you will, in the respects that I just meant it, on the understanding that Allstate agrees, for purposes of this trial, that if it fails to prevail on the question of whether the Release was signed knowingly and voluntarily, it will agree that the Release is unenforceable not just as to federal claims, but as to state claims as well.
> I will allow Mr. Godfrey to tell me whether he says I got it right or I got it wrong.
>
> MR. GODFREY [counsel for Allstate]: For purposes of this trial only, I think Mr. Quinn has it correct. If we lose under the totality of the circumstances test and the jury says for a particular plaintiff, or all of them, that it was not knowing and voluntary, then the Release is no longer a valid defense to assert for any other claims that Mr. Quinn is pursuing with respect to these ten Plaintiffs.
> I think we are on the same page.[23]

Ultimately, the jury found the Prevailing Plaintiffs did not sign the Release knowingly and voluntarily. Under the Parties' agreement, the Release is rendered unenforceable as to all federal and state law claims raised by the Prevailing Plaintiffs.

Allstate now argues it agreed to this stipulation only to prevent unnecessary duplication in the jury instructions and verdict form, and not to waive its independent ratification defense by a jury verdict finding the Prevailing Plaintiffs did not knowingly and voluntarily sign the Release. Allstate now argues simply because the Prevailing Plaintiffs did not knowingly and voluntarily sign the Release has nothing to do with ratification because the Release is only voidable not void.

The Court disagrees. We enforce counsels' agreement.[24] Had Allstate wished to preserve its tender-back/ratification argument as to these eight Plaintiffs, it should have said so at

8

the time.  Instead, Allstate's counsel agreed if it lost under the totality of the circumstances test

for a particular Plaintiff, "then the Release is no longer a valid defense to assert for any other

claims" being pursued by the same winning Plaintiff.  Allstate never argued the Release would

no longer be a valid defense so long as the Plaintiff tendered back the consideration received.

Holding Allstate at its word, we amend the February 10, 2016 Judgment Order to reflect

the Release is no longer a valid defense to any of the federal or state law claims asserted by

Prevailing Plaintiffs Boyd, Crease, Harper, Kearney, Kelly, Lawson, Peterson, or Reinerio.

## IV.    CONCLUSION

We find no basis to amend Judge Buckwalter's Findings of Fact but remind counsel as to

our inability to rely upon *dicta.*    We also enforce the Parties' agreement as to the effect of the

jury's verdict on the Trial Plaintiffs' federal and state claims.    In the accompanying Order, we

amend the February 10, 2016 Amended Judgment Order to reflect the Parties' agreement.

---

[1] Upon consent, Judge Buckwalter agreed to a trial on the validity of the Release for ten of the first filed Plaintiffs: Roger Boyd, Craig Crease, Ronald Harper, Mike Kearney, Sylvia Kelly, David Lawson, Ed Murray, Christopher Perkins, Rick Peterson, and Paula Reinerio (collectively, "Trial Plaintiffs").

[2] Federal Rule of Civil Procedure 52(b) provides "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." A Rule 52(b) motion allows an appellate court to draw from the record a "correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and the judgment entered thereon." 9C Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2582, at 352–53 (3d 2008) The motion is "not a vehicle for relitigation of issues previously adjudicated," *Wound Care Ctrs., Inc. v. Catalane*, No.10-336, 2011 WL 3476612, at *2–3 (W.D. Pa. Aug. 9, 2011). It may not "be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." *Allegheny Coupling Co. v. Betts Indus., Inc.,* No. 06-76, 2012 WL 4478309, at *2 (W.D. Pa. Sept. 27, 2012) (citing *Fontenot v. Mesa Petrol. Co.,* 791 F.2d 1207, 1219 (5th Cir. 1986)). "Rather, the purpose of such a motion is to 'correct manifest errors of law or fact' contained in findings or conclusions

arising from such proceedings." *Id.* The standard is similar to a motion for reconsideration or to alter judgment under Rule 59(e). *See N. River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995) (holding that a proper motion to alter or amend judgment must rely on one of three major grounds" "(1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; or (3) the need to correct clear error [of law] or prevent manifest injustice").

[3] (Findings of Fact & Conclusions of Law, ECF No. 813, at 12 (Jan. 26, 2012) (emphasis added).)

[4] (Pls.' Resp. Opp'n Defs.' Mot. in Limine 1, ECF No. 539, at 6 (Apr. 6, 2015).)

[5] (*Id.* at 7.)

[6] (Pls.' Proposed Findings of Fact & Conclusions of Law, ECF No. 667, ¶ 215 (Aug. 19, 2015).)

[7] The Court's February 27, 2014 Memorandum Opinion addressed the Release's compliance with OWBPA. *Romero v. Allstate Ins. Co.,* 1 F. Supp. 3d 319 (E.D. Pa. 2014).

[8] (Findings of Fact and Conclusions of Law, ECF No. 813, at 12 (Jan. 26, 2016).)

[9] (*Id.*)

[10] (Findings of Fact and Conclusions of Law, ECF No. 813, at 12 (Jan. 26, 2016).)

[11] *AstenJohnson Inc. v. Columbia Cas. Co.,* 562 F.3d 213, 228 (3d Cir.), *cert. denied,* 558 U.S. 591 (2009).

[12] *Bartee v. Michelin N. Am., Inc.,* 374 F.3d 906, 912–13 (10th Cir. 2004).

[13] See, e.g., *Caben-Wheeler v. Elsea,* 71 F.3d 837, 844 (11th Cir. 1996) (finding district court did not fail to abide by jury's findings regarding § 1983 claim when deciding Title VII claim because judge's findings on Title VII claim did not directly conflict with jury's finding on § 1983 claim); *Perdon Bros., Inc. v. Concrete Sys., Inc.,* 35 F.3d 1, 5 (1st Cir. 1994) (holding judge and jury sitting as independent triers of fact may reach conflicting conclusions on different claims); *Fowler v. Land Mgmt. Grps., Inc.,* 978 F.2d 158, 163 (4th Cir. 1992) (noting divergent conclusions by judge and jury on issues of "willfulness" and "good faith" did not impermissibly infringe on parties' right to a jury trial).

[14] (6/16/15 Trial Tr., ECF No. 681, at 193:7–195:21).

[15] (Verdict Sheets, ECF No. 638 (June 18, 2015).)

[16] Plaintiffs contend "given the evidence and arguments, the verdict in favor of the prevailing Plaintiffs clearly reflects a finding that they had no meaningful choice . . . . While Allstate speculates that the jury might have found that the prevailing Plaintiffs did have a meaningful

choice, but might have rendered a verdict in their favor based on ***another*** finding, Allstate has not even attempted to substantiate this alternative explanation of the verdict." (Pls.' Reply Supp. Mot. to Amend, ECF No. 824, at 7–8 (Mar. 7, 2016) (emphasis in original).)   Plaintiffs' argument, however, is guilty of the precise conduct of which Plaintiffs' accuse Allstate: speculation as to the basis for the jury's verdict.   At trial, Plaintiffs offered multiple arguments to rebut Allstate's attempt to prove that the Release was signed both knowingly and voluntarily. The jury's acceptance of any one of these arguments could have resulted in a verdict in favor of Plaintiffs.   Not all of these arguments, however, are relevant to a procedural unconscionability analysis.

[17] *See generally Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 181 (3d Cir. 1999).

[18] (Findings of Fact and Conclusions of Law, ECF No. 813, at 18 (Jan. 26, 2016).)

[19] (Pls.' Mem. Supp. Reply Supp. Proposed Findings of Fact & Conclusions of Law, ECF No. 740-1, at 1 (Oct 15, 2015).) Plaintiffs claim they made this argument only with respect to the jury's verdict related to their unclean hands defense.   While this statement was within the section of Plaintiffs' brief discussing the unclean hands defense, Plaintiffs specifically applied it to "Plaintiffs' equitable defenses," suggesting they intended this argument to address more than just the unclean hands defense.

[20] (Pls.' Reply Supp. Proposed Findings of Fact & Conclusions of Law, ECF No. 740, ¶ 28 (Oct. 15, 2015).)

[21] *Quilloin v. Tenet HealthSystem Phila., Inc.,* 673 F.3d 221, 230 (3d Cir. 2012) (applying Pennsylvania law); *Mullis v. Speight Seed Farms, Inc.,* 505 S.E.2d 818, 820 (Ga. App. 1998) (applying Georgia law).

[22] If the Court were to completely defer to the jury's verdict on the knowing and voluntary standard, Plaintiffs Perkins and Murray would not benefit.   The jury found these Plaintiffs signed the Release knowingly and voluntarily, meaning we would have to find the Release as to those Plaintiffs was not procedurally unconscionable.

[23] (6/15/15 Trial Tr., ECF No. 681, 244:1–245:4).

[24] "In general, courts encourage parties to enter into stipulations to promote judicial economy by narrowing he issues in dispute during litigation." *Waldorf v. Shuta,* 142 F.3d 601, 616 (3d Cir. 1998).   "Allowing parties easily to set aside or modify stipulations would defeat this purpose, wasting judicial resources and undermining future confidence in such agreements." *Id.* "'It is a well-recognized rule of law that valid stipulations entered into freely and fairly, and approved by the court, should not be lightly set aside." *Id.* (quoting *Kohn v. Am. Metal Climax, Kershner v. Mazurkiewicz,* 670 F.2d 440, 448 (3d Cir. 1982)).   Although we can grant relief from stipulations, there are generally "severe limitations" placed on withdrawing them. *Id.* Allstate has not asked to withdraw its stipulation *per se,* but rather to limit its stipulation to avoid waiver of its tender-back ratification defense. Allstate has not shown it misunderstood its rights or some manifest injustice would result. *See Waldorf,* 142 F.3d at 617 (holding that "[i]n exceptional

11

circumstances" courts will free a party from a stipulation to prevent a manifest injustice.)  Had Allstate truly meant to retain the ability to invoke the tender-back/ratification defenses to the Trial Plaintiffs' challenges to the Release, it should have so indicated at the time.