**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GENE R. ROMERO, et al.,** | : | **NO. 01-3894** |
| | : | |
| **Plaintiffs,** | : | **CONSOLIDATED WITH:** |
| | : | **Nos. 01-6764, 03-6872, 15-1017, 15-1049,** |
| **v.** | : | **15-1190, 15-2602, 15-2961, 15-3047** |
| | : | |
| | : | |
| **ALLSTATE INSURANCE COMPANY,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                              **May 4, 2016**

After the parties finished litigating pre-trial issues on whether former Allstate agents knowingly and voluntarily released claims against their former employer Allstate, Judge Ronald L. Buckwalter empaneled a jury which found eight Allstate agents had not knowingly and voluntarily released claims. Reassigned this case, we are separated from the heat of the lawyers' pre-trial and trial arguments. Upon review of the detailed record, we find Allstate's motion for Judgment as a matter of law or, alternatively, for a new trial repeats several arguments denied by Judge Buckwalter or challenges the jury's province. As we find the jury verdict is proper and no prejudicial error, we deny the post-trial motion in the accompanying Order.

## I.    BACKGROUND

Judge Buckwalter presided over a jury trial on whether ten of the first-filed of the over four hundred agent-plaintiffs knowingly and voluntarily signed a release of claims (the "Release") prepared by their former employer Defendant Allstate Insurance Company

("Allstate") when it terminated their employment contracts under its Preparing for the Future Group Reorganization Program (the "Program").[1]  The jury reviewed Plaintiffs' legal defenses to the Release and found eight of the Plaintiffs (the "Prevailing Plaintiffs") did not knowingly and voluntarily sign the Release, but two Plaintiffs knowingly and voluntarily signed the Release.

## II.     DENIAL OF RENEWED MOTION FOR JUDGMENT.

Allstate renews its Motion for Judgment as a Matter of Law arguing we should overturn the jury's verdict and validate the Releases signed by the eight Prevailing Plaintiffs.[2] Allstate now argues the jury erred because: (1) most of the enumerated "totality of the circumstances" factors support the conclusion each of the eight Prevailing Plaintiffs knowingly and voluntarily signed the Release; and (2) the Prevailing Plaintiffs presented no proof at trial of other circumstances capable of overcoming the overwhelming evidence and admissions each of them knowingly and voluntarily signed the Release.  Having reviewed the record in the light most favorable to the Prevailing Plaintiffs, we find no basis for disturbing the jury's verdict.

As this Court previously noted, an employee may validly waive claims of discrimination against an employer if the waiver is made knowingly and willfully.[3]  In determining the validity of a release purporting to waive claims of employment discrimination under statutes such as the Age Discrimination in Employment Act (ADEA), "a review of the totality of the circumstances, considerate of the particular individual who has executed the release, is . . . necessary."[4]  This totality of the circumstances inquiry includes consideration of:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time the plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the

2

agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.[5]

"This list, however, is intended to be illustrative rather than exhaustive."[6]  We "may also consider 'whether there is evidence of fraud or undue influence, or whether enforcement of the agreement would be against the public interest.'"[7] These considerations supplement the minimum statutory requirements under the Older Workers Benefit Protection Act's ("OWBPA") for a waiver of ADEA claims.[8]

Allstate argues six of the seven enumerated "totality of the circumstances" factors confirm each of the Prevailing Plaintiffs knowingly and voluntarily signed the Release.  Allstate painstakingly details (1) the language of the Release is clear and specific; (2) Plaintiffs were educated, intelligent, experienced business people; (3) Allstate gave Plaintiffs substantial time to consider the Release; (4) each Plaintiff knew his or her rights before signing the Release; (5) Allstate advised each Plaintiff to seek the advice of lawyers and other professionals prior to signing the Release; and (6) Allstate paid valuable consideration to each Plaintiff in exchange for the Release.

Allstate misconstrues both the nature of the totality of the circumstances test and our Rule 50 authority.  Allstate adopts an inflexible reading of the seven factors without examining the purpose underlying their inclusion or the nuances in their interpretation.  "[A]ny attempt to establish a checklist of all applicable factors or to insist on rigid adherence to such a list is foreclosed by the very nature of the inquiry.  The essential question is a pragmatic one: whether in the totality of the circumstances, the individual's waiver of his right can be characterized as 'knowing and voluntary.'"[9]  Indeed, as became abundantly obvious at trial, the question of

3

whether a Plaintiff knowingly and voluntarily signed the Release involved a far more complex balancing of factors than simply ticking off boxes in a formulaic analysis.[10]  By way of example, although Allstate undisputedly gave Plaintiffs time to consider the Release and consult with attorneys, ample evidence revealed those opportunities may have been effectively meaningless since Allstate drafted the non-negotiable Release and Allstate would not accept a marked-up or altered Release form.

Allstate assumes the seven enumerated factors comprise an all-encompassing test entitled to controlling weight to the exclusion of any other factor.[11]  These factors are merely illustrative guideposts, rather than an all-inclusive totality analysis.[12]  Allstate pays little regard to other considerations such as whether Plaintiffs faced a "Hobson's choice" in signing the Release.[13] Although reasonable minds could have differed, the evidence allowed a jury to conclude the Prevailing Plaintiffs did not have a true choice in deciding whether to sign the Release. Allstate's contrary assertions are, at base, akin to a closing argument seeking to convince the trier of fact why its interpretation of the evidence is correct.  Wrong time and venue for this argument.

Our review confirms ample evidence from which the jury could have found the Prevailing Plaintiffs signing the Release due to an overly coercive scenario creating an improper "Hobson's choice" depriving them of volitional action including:

- Multiple Plaintiffs testified, throughout their employment with Allstate, Allstate encouraged them to invest their own money into their agencies with the promise of job security and returns on their investments.  As a result, when Allstate implemented the Program, many Plaintiffs had tied up substantial personal monies in their agencies with

4

no ability to recoup those costs other than accepting one of the Release-based options under the Program.     Allstate responds Plaintiffs: investments were not actually "investments" under the Tax Code[14]; had no contractual expectation of future investment returns because they did not own their books of business; had no expectation of a "job-for-life" because they were at-will employees; and, deducted business expenses on their tax bills and earned returns.  In the face of the conflicting evidence the jury evaluating credibility could find Plaintiffs had a well-founded belief their investments would be protected, and Allstate's sudden termination of their contracts left them in a financially precarious position under which they had to sign the Release.

- Plaintiffs consistently testified they lost their jobs, books of business and agencies if they did not sign the Release.  Allstate challenges the credibility of their testimony because Plaintiffs had no right to their jobs or books of businesses and Plaintiffs actually had four choices: three involved accepting valuable consideration worth millions of dollars in exchange for signing the Release, while the fourth was to not sign the Release and take base severance.  The jury, however, could rationally accept Plaintiffs essentially faced only two options: (a) sign the Release and avoid financial ruin by either converting to an independent agent, selling the book of business, or obtaining enhanced severance; or (b) not sign the Release and walk away after many years with a meager base severance payment, multiple non-compete restrictions, and lost investments in an agency.

- Plaintiffs presented evidence Allstate made "eleventh hour revisions" to the Program and to pre-existing severance plans effectively precluding Plaintiffs from receiving severance under the pre-existing plans and forcing them into signing Releases.  Allstate argues the

5

testimony and Plan documents did not entitle them to payments under these severance plans because Plaintiffs were part of a "group reorganization" program, which it specifically exempted from the Allstate Severance Pay Plan. Plaintiffs showed Allstate amended the Severance Pay Plan to exclude those terminated under a "group reorganization" program only a year and a half before the announcement of the Program, while Allstate actively planned the Program. A jury could infer Allstate amended the Plan to eliminate any incentive for an employee to not sign the Release.

- Plaintiffs offered evidence Allstate subjected agents to additional non-compete and confidentiality requirements if they chose to accept only base severance and not sign the Release. Allstate contends "Plaintiffs ignore the fact that these were merely eligibility requirements for receiving severance—the only consequence of violating them was that severance payments would stop."[15] As the jury learned at trial, base severance equaled thirteen weeks of pay made over six months. The jury could conclude Allstate's imposing stringent non-compete restrictions on non-signing employees for approximately twenty-six weeks, while remunerating them for only thirteen weeks of pay, constituted another form of unfair economic pressure to dissuade them from not signing the Release.

Beyond the evidence regarding the voluntariness aspect of the totality of the circumstances test, Plaintiffs produced ample evidence of Allstate's misstatements to its employees. The jury could have logically found these misstatements, if believed, could have both deprived Plaintiffs of a knowing decision and exacerbated the already-existing financial pressures to sign the Release. Again, by way of example:

6

- Four of the Trial Plaintiffs testified Allstate represented the base severance option precluded them from contacting former customers for any commercial reason, even for businesses entirely unrelated to Allstate's business.[16]   Although Allstate contends no Plaintiff testified he or she relied on such a statement, Allstate failed to meet its burden of eliciting testimony the Plaintiffs did not consider these statements.[17]

- Plaintiffs offered evidence, contrary to a November 10, 1999 press release, Allstate imposed a hiring freeze in September 2000.  Plaintiffs further produced evidence Allstate knew it would impose this freeze before November 1999 and falsely stated otherwise. The jury could credit Plaintiffs' testimony and find Allstate's alleged misrepresentation significantly affected some of the Prevailing Plaintiffs' decisions to sign the Release and convert to independent contractor status in the hopes of being rehired as an employee.

- Plaintiffs presented evidence, following the Program announcement, Allstate represented it had no plans to change Exclusive Agent commission rates, thereby making the Conversion Option of the Program more enticing.  Plaintiffs showed Allstate changed the rates in September 2002 under previously-approved internal plans to reduce such commissions.    While the evidence conflicted on this issue, the jury could accept Plaintiffs' version.

Allstate's Motion asks us to do precisely what Rule 50 prohibits: weighing the evidence, determining the credibility of witnesses, and substituting the Court's version of facts for the jury's version. Both Plaintiffs and Allstate produced testimony and documents allowing a jury to draw inferences in favor of either side.  Allstate's current effort to undermine the credibility of Plaintiffs' evidence does nothing more than highlight the overwhelming number of factual

7

issues. This evidentiary conflict precluded the Court from issuing a definitive ruling on summary judgment, and it is precisely this conflict which we now cannot resolve.[18] We require the jury, not the Court, to decide credibility and draw reasonable inferences to determine whether Allstate met its burden of proving, by a preponderance of the evidence, the Trial Plaintiffs knowingly and voluntarily signed the Release. The jury concluded Allstate had not met its burden as to the Prevailing Plaintiffs.[19] Viewing the record and all logical inferences in a light most favorable to Plaintiffs, we find the Prevailing Plaintiffs met the minimum quantum of evidence supporting the jury's verdict. We deny Allstate's Rule 50 Motion in the accompanying Order.

## III.   DENIAL OF RULE 59 NEW TRIAL MOTION[20]

Allstate raises three points, but supports only two, in seeking a new trial: verdict against the weight of the evidence;  error in allowing parol evidence to vary the unambiguous terms of Plaintiffs' integrated employment agreements; and, legally erroneous and prejudicial jury instructions. Allstate does not brief the weight of the evidence issue, supply the appropriate standard, or otherwise develop its argument. As such, we decline to consider this abandoned point[21] and will address the arguments on parol evidence and jury instructions.

### 1.   The Court properly permitted parol evidence.

Allstate first suggests the Court erred by permitting Plaintiffs to introduce parol evidence of job security or a "job for life," allegedly contrary to unambiguous termination provisions in the employment agreements. Allstate claims it hired each Plaintiff under an employment agreement which identified Plaintiffs as at-will employees.

We disagree. The parol evidence rule is a substantive rule of state law.[22] It "bar[s]

8

consideration of prior representations concerning matters covered in [a] written contract, even those alleged to have been made fraudulently, unless the representations were fraudulently omitted from the contract."[23]  "[P]arol evidence rule would, therefore, bar the admission of evidence with respect to negotiations, conversations, and agreements to explain or vary the terms of the employment contract made prior to its execution."[24]

  This trial did not involve Plaintiffs' state law breach of contract claims, which will be resolved in an appropriate forum under our May 2, 2016 Order.  Rather, the jury only considered whether the Trial Plaintiffs knowingly and voluntarily signed the Release based on examining the totality of the circumstances.  Parol evidence is admissible for this purpose:

> The inquiry into whether a waiver of ADEA rights was knowing and voluntary is, at bottom, an inquiry into the mental state of the party who is purported to have waived those rights. This is the rationale behind our rejection of pure contract analysis in favor of the totality approach. In order to protect truly voluntary bargains, we do not permit claims of subjective misunderstanding, standing alone, to defeat an otherwise valid release; but the totality approach permits the introduction of evidence, beyond that which could be considered for the purposes of interpreting a contract, from which the jury may infer that the releasor did not, in fact, understand the legal consequences of his actions.[25]

"Careful evaluation of the release form itself, and of *the complete circumstances in which it was executed*, is necessary to assure that the goals of the ADEA are preserved."[26]  "The majority of circuits . . . explicitly look beyond the contract language and consider all relevant factors in assessing a plaintiff's knowledge and the voluntariness of the waiver."[27]

  The Court properly admitted this evidence.  Allstate asserted the two employment contracts at issue were at-will contracts allowing it to fire Plaintiffs at any time, with minimal administrative requirements.  Plaintiffs contended the contracts, by their plain terms, required (a) a "job-in-jeopardy notice" before termination and (b) an "Agent Review Board" process.  Many

Plaintiffs testified of being repeatedly told by Allstate managers, either in their initial interviews or during their employment, they would have a "job for life," "job security," or a job for "as long as you want it." Although this testimony technically constitutes parol evidence, the breach of contract claims were not before the jury and Plaintiffs' testimony did not vary express terms of a contract.[28] The evidence is relevant to the knowing and voluntary analysis at the center of trial. If Plaintiffs reasonably believed, based on Allstate's representations, they had job security and had consequently invested personal funds into their agencies in reliance, their signing of the Release to recoup their investments and maintain a business relationship with Allstate could be found involuntary. Further, the jury could conclude Allstate purposely exploited the vulnerabilities it created to coerce Plaintiffs into signing the Release.[29] Given the proper use of this evidence at trial, we find no reversible error.

### 2. No errors in the jury instructions.

Allstate seeks a new trial based on allegedly erroneous jury instructions: (1) a prejudicial instruction on voluntariness; (2) failure to instruct the jury as to its compliance with the OWBPA factors; and (3) a failure to instruct the jury on reliance as a necessary element of a misrepresentation claim. We view the instructions as a whole in determining whether jury charges are so misleading or inadequate as to be sufficiently prejudicial to warrant a new trial.[30] "No error is present where either: (1) the challenged instructions accurately state the law relating to the particular issue under scrutiny or (2) the instructions to which the moving party objects are practically identical to the proposed jury instructions submitted by the movant."[31] The terms used in jury instructions are left to the trial judge's sound discretion.[32] Ultimately, the trial court's jury instruction will not comprise reversible error if, "taken as a whole and viewed in the

light of the evidence, [the instruction] fairly and adequately submits the issues in the case to the jury [without confusing or misleading the jurors]."[33]

### a.   The voluntariness instruction

During the charging conference, Plaintiffs requested a modified jury instruction for the "totality of the circumstances" test including both (a) Allstate is required to prove each Plaintiff had a "meaningful choice" with respect to signing the Release; and (b) defining voluntariness as something you "want to do."  The following day, Allstate objected to word "meaningful" in the instruction.[34]  Allstate countered the Court should define "voluntarily" as meaning "the Release was product of a rational and deliberate choice by the Plaintiff to obtain the benefits offered by Allstate instead of preserving or pursuing the right to sue."[35]  Overruling Allstate's objections, the Court instructed the jury on the meaning of "voluntarily":

> Next, the definition of voluntarily.  An act is done voluntarily when it is something you want to do and not because you are forced to do.  It is an act done by choice.  In this case, Plaintiffs argues [sic] that they had no choice and were thus forced to sign the Release, that is to say that while there was an appearance of a choice, no meaningful choice in fact existed.  Defendant argues that Plaintiffs were not forced into signing the Release but rather made a voluntary choice to sign the Release in order to get what was being offered to them in Options 1, 2 or 3.  Defendant bears the burden of proving that the Release was voluntarily signed.[36]

When describing the "totality of the circumstances" test, the Court listed the seven enumerated factors from the case law and continued:

> Now, this list is not exhaustive.  And you may consider other factors that bear on the question of knowing and voluntariness.  That is just a suggestion that some of you ought to consider.  For example, that they were placed in a take it or leave it predicament that required them to either sign the Release or face financial ruin.  Now, there is always some financial pressure in an employment termination situation and that financial pressure standing alone is insufficient to prove involuntariness.  However, it is among the factors that may be considered by you in determining whether based on all the circumstances no meaningful choice

11

existed.[37]

Allstate now challenges the Court's inclusion of (a) "meaningful choice" and (b) "voluntary" means "something you want to do." Allstate claims "meaningful choice" is the standard for procedural unconscionability—an issue not before the jury—and is entirely unconnected to the "totality of the circumstances" test under Third Circuit precedent. Allstate ultimately contends inserting "meaningful choice" improperly expanded the OWBPA and is inconsistent with the concept of voluntariness defined in other well-developed areas of the Law.

Allstate does not cite, and we cannot find, courts holding, in the totality of the circumstances test under OWBPA, the term "voluntarily" is anything other than a "meaningful choice." Voluntariness cannot simply mean "choice" without modification. If so, a release could only be found to be involuntary if the employer physically forced the employee to sign. The question then is what type of choice is required before a release is deemed voluntary. Our Court of Appeals in *Coventry v. United States Steel* invalidated a release finding a lack of "voluntariness" or a decision not based on a volitional choice between real options when the plaintiff's only choice was a "Hobson's choice" between a lay-off of uncertain duration, bringing a certain cessation of his income, and an early retirement plan making pension benefits available to him only if he agreed to forego his ADEA rights.[38] Similarly, in *Torrez v. Public Service Company of New Mexico*, the Tenth Circuit found no voluntariness where the plaintiff was in the "unenviable position" of facing a "Hobson's choice" between "nearly-certain layoff with no retirement benefits or obtaining the future retirement benefits available only if he signed the release."[39] In both cases, while the courts did not include the word "meaningful," the terms "real options" or "unenviable position" suggest "voluntariness" means something more than mere

12

choice.

To the extent Allstate argues "meaningful choice" is required only for procedural unconscionability, which was not before the jury, its argument is likewise misplaced. While some courts of appeals apply "ordinary contract principles" in determining whether a waiver has been signed "knowingly and willfully," the Third Circuit applies a "totality of the circumstances" standard, "which is apparently more stringent."[40] If the ordinary contract principle of procedural unconscionability mandates a showing of "meaningful choice," it is logical the "more stringent" voluntariness standard under the totality of the circumstances test would have to meet, at  a minimum, the same standard.

Allstate's challenge to "something you want to do" does not warrant the grant of a new trial.[41]   When first introducing the concept of voluntariness, the Court stated "[a]n act is done voluntarily when it is something you want to do and not because you are forced to do.  It is an act done by choice."[42]  Had this portion of the jury instruction stood in isolation, we would face a different question.  Immediately following this instruction, however, the Court defined multiple factors considered in determining whether Plaintiffs signed the Release "by choice" or because Plaintiffs "want[ed] to," including: the clarity and specificity of the Release language, the Plaintiff's education and business experience, the amount of time the Plaintiff had for deliberation about the Release before signing it, whether the Plaintiff knew or should have known his or her rights upon execution of the Release, whether Plaintiff was encouraged to seek or in fact received the benefit of counsel, whether there was an opportunity for negotiation of the terms of the agreement, and whether the consideration given in exchange for the waiver and accepted by the employee exceeded the benefits to which the employee was already entitled by

13

contract or law.[43]  The Court further explained the jury could consider other factors bearing on the question of knowing and voluntariness, such as whether Allstate placed the Plaintiffs in "a take it or leave it predicament"—something more than mere financial pressure—"that required them to either sign the Release or face financial ruin."[44]  The Court appropriately clarified the meaning of "something you want to do," negating any possibility of prejudice.

We find no reversible error in the jury instruction on "voluntariness."  "A court's review of a jury instruction should be undertaken with an eye towards the instructions in their totality and 'not a particular sentence or paragraph in isolation.'"[45]  In addition to showing the Court committed legal error in giving a certain instruction, a party must also show that the error had a prejudicial effect, which exists where it "appears to the court [that the error is] inconsistent with substantial justice."[46]  Considering the voluntariness instruction as a whole, we find the instruction accurately conveyed the Law and resulted in no prejudicial error to Allstate.

### b.  Failure to instruct the jury on Allstate's compliance with the OWBPA factors.

Allstate next objects to the Court's failure to instruct the jury as to its compliance with the OWBPA factors when it instructed:

> An individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary . . . . [A] waiver may not be considered knowing and voluntary unless at a minimum—
>
> > (A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
> >
> > (B) the waiver specifically refers to rights or claims arising under this chapter;
> >
> > (C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

14

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual is already entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F)    (i) the individual is given a period of at least 21 days within which to consider the agreement; or

(ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

(H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to—

(i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and

(ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.[47]

In its Summary Judgment Opinion, the Court concluded "Allstate has satisfied its burden of affirmatively demonstrating that the Release at issue meets all eight of [the OWBPA] requirements."[48]

Before trial, Allstate requested the Court inform the jury about the foregoing statutory

15

OWBPA factors and the Court having determined Allstate met these requirements. The Court, however, declined to enumerate those factors for the jury, but included in the Established Facts the following statement: "[t]his Court has already found, as a matter of law, that the Release at issue in this case has complied with the minimum requirements under the Older Workers Benefit Protection Act."[49]   Allstate now contends most of the OWBPA requirements it satisfied as a matter of law are codifications of the "totality of the circumstances" factors and, therefore, the Court should have instructed the jury of Allstate's compliance with these specific factors. Allstate claims this omission is prejudicial.

The analysis is different. Congress enacted the OWBPA to "establish[ ] a floor, not a ceiling."[50]   The OWBPA plainly states its listed statutory requirements are *a minimum* for determining whether a waiver is knowing and voluntary.[51]  OWBPA's legislative history behind confirms this plain meaning interpretation.

> Title II of the [OWBPA] provides . . . that waivers not supervised by the EEOC may be valid and enforceable if they meet certain threshold requirements and are otherwise   shown   to   be   knowing   and   voluntary   .   .   .   .
> . . . The individual [waiving his rights] . . . *must have acted in the absence of fraud, duress, coercion, or mistake of material fact.* The Committee expects that courts reviewing the "knowing and voluntary" issue will scrutinize carefully the *complete   circumstances*   in   which   the   waiver   was   executed....
> The bill establishes *specified minimum requirements* that must be satisfied before a court may proceed to determine factually whether the execution of a waiver was "knowing and voluntary."[52]

Once a court determines a release satisfies the minimum statutory factors, the court must engage in a second and separate analysis of the "totality of the circumstances" to determine if the release of an employment discrimination claim is knowing and voluntary. This second analysis requires a court "explicitly look beyond the contract language and consider *all relevant factors* in assessing a plaintiff's knowledge and the voluntariness of the waiver."[53]   Repeatedly, appellate

courts have reversed decisions where the lower court, while addressing the OWBPA factors, did not conduct a "totality of the circumstances" analysis to ensure the signatory knowingly and voluntarily signed a release.[54]

Judge Buckwalter, after lengthy consideration, found Allstate's Releases sufficiently complied with the OWBPA factors and technical requirements. The Court looked strictly at the Release itself, without consideration of the individual Plaintiffs, and determined, standing alone, the Release satisfied the requisite baseline elements established by Congress in OWBPA. Judge Buckwalter then properly turned to the totality of the circumstances test and found multiple questions of material fact remained regarding whether the Trial Plaintiffs knowingly and voluntarily signed the Releases.

At trial, the jury only decided whether each individual Trial Plaintiff knowingly and voluntarily signed the Release under the totality of the circumstances test. The jury did not consider whether Allstate satisfied the statutory OWBPA factors. As such, the Court lacked a legal basis to instruct the jury on the specific OWBPA factors or how the Release met those factors. Although some of the OWBPA factors have minimal overlap with some of the considerations for the totality of the circumstances test, the overlap is far from identical. For example, OWBPA requires the release be written "in a manner calculated to be understood by such individual, or by the average individual eligible to participate," whereas the totality of the circumstances test inquires whether the *specific plaintiffs* understood the Release and the specific rights being released. While OWBPA mandates the individual be advised in writing to consult with an attorney prior to executing the agreement, the totality of the circumstances test asks whether the plaintiff in fact received the benefit of counsel and whether there was an opportunity

17

for negotiation.   The OWBPA factors are baseline checkpoints examined solely from the perspective of the written document alone;  the totality of the circumstances factors constitute individualized, fact-specific inquiries.

To properly engage in the fact-intensive totality of the circumstances inquiry, the jury must be aware of the actual totality of the circumstances.  We cannot short-cut this analysis by instructing the jury Allstate told Plaintiffs to consult with an attorney or gave the Plaintiffs at least forty-five days to consider the Release, or the Release is generally understandable to a person of average intelligence. These types of instructions would improperly withdraw evidentiary considerations from the jury and prevent a full analysis of the entirety of all the facts to determine whether each Trial Plaintiff knowingly and voluntarily signed the Release. Allstate explicitly recognizes this point when opposing Plaintiffs' motion to certify a class, arguing "Plaintiffs seek certification on four issues that constitute mere slivers of broader questions that require holistic analyses — *i.e.*, the 'totality' of factual circumstances;" that "the 'totality' of the circumstances test requires a broad examination of all relevant 'circumstances' and of *both* the voluntariness and knowledge factors;" and "the Court must consider Plaintiffs' individual circumstances *in addition to* how Allstate allegedly 'structured and implemented the Program.'"[55] Given its concessions, Allstate is now hard-pressed to argue the Court should have affirmatively removed some of these circumstances from the jury.

Finally, Allstate is mistaken to the extent it claims the Court already decided some of the facts underlying the totality of the circumstances test and should have so instructed the jury. In the summary judgment opinion, the Court reviewed six of the seven Court of Appeals' factors in a totality of the circumstances analysis and found those factors seemed to lean in favor of

18

Allstate's position.  The Court then clarified "limiting the analysis to such factors results in a

myopic view of what may have actually occurred in this case."  Ultimately, the Court concluded:

> At the core of this analysis, the Court is left with the task of drawing inferences
> from the evidence, weighing the credibility of witnesses, and affixing a
> characterization to the events that occurred.  On one hand, a methodical analysis
> under a strict application of the enumerated totality of the circumstances factors
> yields a finding that the Release, while not necessarily desirable, was supported
> by some consideration and was the product of the educated free will of the
> Plaintiffs upon being given ample opportunity to consult with counsel and
> carefully read the terms of the Program.  On the other hand, that methodical
> application of a defined set of factors offers a short-sighted view of what occurred
> in this matter.  Underneath the impression conveyed by the more rigid analysis
> lies an alternate—and very plausible— picture that Allstate forced its employees
> into signing a Release with no real option for them other than losing their
> investments, their livelihood, their health coverage, and their retirement benefits.
> While the Court is tempted to find as a matter of law that these circumstances
> deprived the Release of the requisite voluntariness, the competing stories offered
> by the parties, considered in the totality of the circumstances, create a genuine
> question of fact as to whether Plaintiffs voluntarily waived their rights to bring a
> federal claim.  Such a question is not properly decided by a Court as a matter of
> law, but rather is best resolved by a jury.
>
> . . .
> On one hand, Allstate seems to have technically abided by its legal duties by
> complying with OWBPA and satisfying most of the enumerated factors under the
> totality of the circumstances test.  On the other hand, the overall construction of
> the Program and Release requirement, together with the information—or lack
> thereof—disseminated by Allstate, seems to have eliminated any real choice or
> understanding.  As repeatedly emphasized above, the true story will only be
> revealed through live testimony, credibility determinations, and weighing of
> various pieces of documentary evidence.[56]

The Court recognized the jury must consider all of the circumstances surrounding the Plaintiffs'

signing of the Release and determine whether they knowingly and voluntarily signed.[57]  We find

the Court properly denied Allstate's request for a jury instruction the Release complied with the

OWBPA factors.

c.  **Failure to instruct jury on actual reliance for purposes of material misrepresentations or omissions.**

Over Allstate's objections, the Court instructed the jury on misrepresentation:

> If you find misrepresentations were made or facts were omitted by Allstate, then you must determine whether they were material. A fact or omission is material if a reasonable person in Plaintiffs' position would have considered it to be important in making his or her decision. Minor or inconsequential misrepresentations or omissions may occur and do not affect the validity of the release. Only if such misrepresentation of material acts were made by defendant and the particular plaintiff was aware of the misrepresentations or material omission occurred, then Plaintiff's decision about whether to sign the release was not knowing.[58]

Allstate now asserts this instruction failed to properly apprise the jury a Plaintiff must rely on a misrepresentation for it to be used as part of the jury's calculus under the totality of the circumstances test. Allstate argues the jury instruction is contrary to the Court's finding for summary judgment purposes "a material representation may affect whether a release was knowingly signed and may, in turn, invalidate the release *if there is evidence that the signers would have acted differently.*"[59]

Allstate is mistaken. After comment and rulemaking, the Equal Employment Opportunity Commission ("EEOC") adopted regulations explaining the "knowing and voluntary" requirement for waivers of ADEA claims. Without mentioning reliance, the EEOC continued "[o]ther facts and circumstances may bear on the question of whether the waiver is knowing and voluntary, as, for example, if there is a material mistake, omission, or misstatement in the information furnished by the employer to an employee in connection with the waiver."[60] The EEOC went on to clarify the intent of this omission: "EEOC does not accept the suggestion by one commentor that a material error will invalidate a waiver agreement only if an employee proves that the error was intentional and that he/she reasonably relied upon the misinformation.

20

Reliance is not an element of proof either in the statute or the regulation, and errors need not be intentional to be material."[61]

Given the EEOC's unequivocal interpretation of the OWBPA, we concur with Judge Buckwalter and find the element of reliance is not part of the knowing and voluntary standard.[62] To hold otherwise would shift the burden of proving the Trial Plaintiffs knowingly signed the Release from Allstate to the Trial Plaintiffs. The Court did not err in declining to specifically instruct the jury on the reliance element.

## IV.    CONCLUSION

We find no basis for granting judgment in favor of Allstate as a matter of law under Federal Rule of Civil Procedure 50 nor grounds for a new trial under Federal Rule of Civil Procedure 59. Viewing the jury instructions as a whole, the Court cannot conclude that they were so misleading or inadequate as to be sufficiently prejudicial to warrant a new trial. The instructions accurately stated the law relating the particular issue under scrutiny, and were not improperly confusing or misleading. We deny Allstate's Motion in the accompanying Order.

---

[1] Upon consent, Judge Buckwalter agreed to a trial on the validity of the Release for ten of the first filed Plaintiffs: Roger Boyd, Craig Crease, Ronald Harper, Mike Kearney, Sylvia Kelly, David Lawson, Ed Murray, Christopher Perkins, Rick Peterson, and Paula Reinerio (collectively, "Trial Plaintiffs").

[2] A renewed motion for judgment as a matter of law may be granted if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a), (b). The court should grant such a motion "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).In assessing the sufficiency of the

evidence, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of facts for the jury's version. "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson*, 530 U.S. 133, 151 (2000). Rule 50 motions should be granted "sparingly," and only where "the record is critically deficient of the minimum quantum of evidence" in support of the verdict. *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995).*Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 521–22 (3d Cir. 1988) (citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 (1974)); *Potoski v. Wilkes Univ.*, No. 06-2057, 2010 WL 3811973, at *13 (M.D. Pa. Sept. 22, 2010).

[3]   *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 521–22 (3d Cir. 1988) (citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 (1974)); *Potoski v. Wilkes Univ.*, No. 06-2057, 2010 WL 3811973, at *13 (M.D. Pa. Sept. 22, 2010).

[4]   *Coventry*, 856 F.2d at 522–23.

[5]   *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1988) (citing *Coventry*, 856 F.2d at 523), *superseded by statute as stated in Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1539 (3d Cir. 1997) (holding the Older Workers Benefit Protection Act supersedes *Cirillo* with respect to the Age Discrimination in Employment Act of 1967).

[6]   *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007).

[7]   *Cuchara v. Gai-Tronics Corp.*, 129 F. App'x 728, 731 (3d Cir. 2005) (quoting *W.B. v. Matula*, 67 F.3d 484, 497 (3d Cir. 1995)).

[8]   *See* 29 C.F.R. § 1625.22(a)(3) (2014) (noting in addition to the minimum requirements set out by the OWBPA, "other facts and circumstances may bear on the question of whether the waiver is knowing and voluntary."); *Long v. Sears Roebuck and Co.*, 105 F.3d 1529, 1539 (3d Cir. 1997) (holding OWBPA was enacted to "establish[] a floor, not a ceiling") (quotations omitted); *see also Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1228 (10th Cir. 1999) (holding the statutory factors of the OWBPA are not exclusive and other circumstances, in addition to the express statutory requirements, may impact whether a waiver under the OWBPA is knowing and voluntary). "[A]s the issue of the release is an affirmative defense, the burden of proving that it was knowingly accepted is on [the party seeking to enforce it.]" *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 782 (3d Cir. 2007). Ultimately—and crucially for purposes of this Motion— the knowingly and voluntary analysis is a highly fact-intensive inquiry. *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437–38 (2d Cir. 1998).

[9]   *Laniok v. Advisory Comm. of the Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1368 (2d Cir. 1991).

[10]   As this Court previously remarked in the February 2014 Memorandum and Order on the parties' cross-motions for summary judgment, "[w]hile, at first blush, these six factors, considered collectively, seem to suggest that the Release was signed voluntarily, limiting the analysis to such factors results in a myopic view of what may have actually occurred in this case." *Romero v. Allstate Ins. Co.*, 1 F. Supp. 3d 319, 406 (3d Cir. 2014).

[11]   Allstate contends it "is not aware of any case—and Plaintiffs have cited none—in which a Release satisfying the OWBPA was nevertheless found to be invalid under the 'totality of the circumstances' test. Were the Court to find the evidence sufficient here to uphold the verdicts, it would, as far as Allstate can tell, be the first court to invalidate a release meeting all the legal requirements of the OWBPA and six of the seven factors under the 'totality of the circumstances' test." (Allstate's Reply Br. 2–3.) This argument disregards the crucial principle the requirements of OWBPA are "a minimum" for ensuring that a release is knowing and voluntary. *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1228–29 (10th Cir. 1999). "[D]espite a waiver's compliance with the OWBPA's guidelines, it will not be deemed knowingly and voluntarily executed if the employee was under duress or otherwise intimidated into signing by the employer." *Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F. Supp. 2d 488, 492 (D. Md. 2002), *aff'd*, 63 F. App'x 169 (4th Cir. 2003). Moreover, it is well settled "[t]he validity of a release is a particularly fact-intensive inquiry." *McCormack v. IBM*, No. 14-3242, 2015 WL 6866300, at *14 (S.D.N.Y. Nov. 9, 2015) (internal quotations omitted).

[12]   *See Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007); Cirillo, 862 F.2d at 451.

[13]   As described by our Court of Appeals in *Coventry v. U.S. Steel Corporation*, 856 F.2d 514 (3d Cir. 1988), a decision between signing a release and obtaining benefits versus not signing a release and being left empty-handed can result in a "Hobson's choice" depriving the release of its voluntary nature. *See id.* ("'[Plaintiff's] choice,' therefore, after thirty-five years of service, was between a lay-off of uncertain duration, that would bring the certain cessation of his income, and an early retirement plan that would make pension benefits available to him only if he agreed to forego his rights under the ADEA. These circumstances illustrate that [plaintiff's] decision to sign the release was not the result of negotiation between him and his employer, and, further, that [plaintiff] was placed in precisely the 'take it or leave it' predicament that supports a finding that his decision was not knowingly and willfully made."); *see also Bittner v. Blackhawk Brewery and Casino, LLC*, No. 03-2274, 2005 WL 1924499, at *5 (D. Colo. Aug. 9, 2005) ("Although economic pressure is not a formal factor . . ., a jury could conclude that undue pressure placed on the Plaintiff by Defendant Stano prevented her from making an informed and voluntary waiver of her rights."). Citing *Coventry*, Allstate argues "under Third Circuit law governing the 'totality of the circumstances' test, a release can only be found involuntary if the effect of the offered consideration is to negatively impact benefits the employee otherwise would have been entitled to upon termination." (Allstate's Mem. Supp. Renewed Mot. for J. 18.) The Court finds no support for this restrictive interpretation of *Coventry*.

[14] The Court explicitly rejected this same argument in denying Allstate's motion *in limine*.

[15] (Defs.' Reply Supp. Renewed Mot for J. 10.)

[16] All of the Plaintiffs received a Program Information Booklet and eleven sets of Questions and Answers wherein Allstate represented "[t]he Allstate customer list is Allstate's property and cannot be used by a former agent for any purpose including marketing non-insurance products." (5/28/15 Order, ECF No. 603, Ex. A, Established Fact No. 77.)

[17] *See Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 782 (3d Cir. 2007) (suggesting because the party seeking to enforce the Release has the burden of proof, it is that party's burden to show that a misstatement or misrepresentation did not affect the signer's decision-making). Allstate argues none of its documents told Plaintiffs they would be forever contractually barred from soliciting their former customers (including family and friends) even for non-competing business purposes. Notably, however, the Program Booklet specifically posed the question of whether, if an agent ended his/her agency relationship and took employment selling a non-insurance product, "can the agent contact his/her prior Allstate customers regarding the product." (Pls.' Trial Ex. 19, P-21, at ARI 123575, at No. 20.) Allstate answered, "No. . . . it is a violation of the confidentiality provision. The Allstate customer list is Allstate's property and cannot be used by a former agent for any purpose including marketing non-insurance products." (*Id.*) These restrictions were in neither contract.

[18] We are not persuaded by Allstate's citation to multiple courts declining to invalidate releases based on allegations of a Hobson's choice. While these cases recognized the possibility extreme financial pressure, resulting in a Hobson's choice, could invalidate a Release, these cases involved distinct and factually distinguishable scenarios. *See Ponzoni v. Kraft Foods, Inc.*, 774 F. Supp. 299, 311 (D.N.J. 1991) (distinguishing *Coventry* because the plaintiff had the opportunity to negotiate and was still entitled to pension benefits and normal severance pay if he did not sign the release); *Pears v. Spang*, 718 F. Supp. 441, 447 (W.D. Pa. 1984) (distinguishing *Coventry* because there was no Hobson's choice requiring the plaintiff to choose between his ADEA claims and his pension); *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 10–11 (1st Cir. 2007) (finding no Hobson's choice where plaintiffs alleged they were forced to sign a release based on pressure, range, indignation, and depression caused by a hostile and discriminatory work environment); *Mullen v. N.J. Steel Corp.*, 773 F. Supp. 1534, 1545–46 (D.N.J. 1999) (distinguishing *Coventry* because plaintiff could receive unemployment compensation and benefits due him without signing the Release).

[19] Judge Buckwalter's well-reasoned conclusion on procedural unconscionability is of no moment. Our review found the parties' evidentiary submissions as to meaningful choice balanced rather evenly. Since Plaintiffs had the burden of proof on unconscionability, the Court simply could not find that they met their burden. Had the burden of proof been on Allstate, it is possible the Court would have ruled in Plaintiffs' favor.

[20] Rule 59(a) does not specify grounds on which we may grant a new trial. "The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court." *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992) (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)); *see also Coney v. NPR, Inc.*, 312 F. App'x 469, 471 n.5 (3d Cir. 2009). The court may order a new trial if it is required to prevent injustice or to correct a verdict contrary to the weight of the evidence. *Am. Bearing Co. v. Litton Indus., Inc.*, 729 F.2d 943, 948 (3d Cir. 1984). When the motion involves a matter within the sound discretion of the trial court, such as the court's evidentiary rulings, points for charge to the jury, or a prejudicial statement made by counsel, the court has wide latitude in ruling on the motion. *Dean v. Specialized Sec. Response*, 876 F. Supp. 2d 549, 552–53 (W.D. Pa. 2012). Requests for a new trial are disfavored by the law. *Price v. Trans Union, L.L.C.*, 839 F. Supp. 2d 785, 792 (E.D. Pa. 2012). A trial court will not grant a new trial on the basis of trial error unless the error resulted in prejudice. *Id.* "In other words, no injustice will be found in nonprejudicial trial errors." *Dean*, 876 F. Supp. 2d at 552–53.

[21] A court should order a new trial when, in its opinion, the verdict is contrary to the "great weight of the evidence." *Roebuck v. Drexel Univ.*, 852 F.2d 715, 736 (3d Cir. 1988). "[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir.1991); *see also Roebuck*, 852 F.2d at 736.

[22] *Mellon Bank Corp. v. First Union Real Estate Equity and Mortg. Invs.*, 951 F.2d 1399, 1405 (3d Cir. 1991).

[23] *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996) (emphasis omitted).

[24] *Haywood v. Univ. of Pittsburgh*, 976 F. Supp.2d 606, 636–37 (W.D. Pa. 2013).

[25] *Pierce v. Atchison Topeka and Santa Fe Ry. Co.*, 110 F.3d 431, 442 (7th Cir. 1997).

[26] *Coventry*, 856 F.2d at 523 (emphasis added).

[27] *Torrez v. Public Serv. Co. of New Mexico, Inc.*, 908 F.2d 687, 689 (10th Cir. 1990) (citing *Stroman v. W. Coast Grocery Co.*, 884 F.2d 458, 462 (9th Cir.1989); *Riley v. Am. Family Mut. Ins. Co.*, 881 F.2d 368, 373–74 (7th Cir.1989); *Bormann v. A T & T Commc'ns, Inc.*, 875 F.2d 399, 403 (2d Cir.), *cert. denied*, 493 U.S. 924 (1989); *Cirillo*, 862 F.2d at 451; *Coventry*, 856 F.2d at 522–23; *Rogers v. Gen. Elec. Co.*, 781 F.2d 452, 456 (5th Cir. 1986)).

[28] Allstate notes even if the Court properly admitted the evidence for the totality of the circumstances test, the Court should have instructed the jury such evidence does not vary the terms of Plaintiffs' employment agreements. It goes on to contend the Court's failure to give such an instruction, despite Allstate's request, constitutes error requiring a new trial. Such an instruction, however, was entirely unnecessary as the *only* issue at trial was whether the Trial

25

Plaintiffs knowingly and voluntarily signed the Releases. Even if the jury mistakenly believed the parol evidence could be used to alter the terms of the Plaintiffs' employment contracts, this mistaken belief would have no impact on any verdict it could render.

[29]   Alternatively, Allstate argues regardless of the parol evidence rule, none of Plaintiffs' evidence or argument contesting the at-will nature of their employment should have reached the jury because the meaning of an unambiguous contract is a question of law. Allstate contends the Court should have determined prior to trial, as a matter of law, the Allstate contracts were terminable at-will, and so instructed the jury. Such an instruction, however, would have been in error as the breach of contract issue was not before the Court. Repeatedly, this Court made clear the parties have been litigating only the validity of the Release under a federal standard, which does not depend on whether the contracts at issue were at-will.

[30]   *Savarese v. Agress*, 883 F.2d 1194, 1202 (3d Cir. 1989).

[31]   *Drames v. Sun River Inv., S.A.*, 820 F. Supp. 209, 215–16 (E.D. Pa. 1993), *aff'd*, 17 F.3d 1429 (3d Cir. 1994).

[32]   *United States v. Simon*, 995 F.2d 1236, 1243 n.11 (3d Cir. 1993).

[33]   *Id.* (quotations omitted).

[34]   (Allstate's Mot. for New Trial, Ex. 29.)

[35]   (*Id.*)

[36]   (6/16/15 Trial Tr., ECF No. 682, at 194:5–17.)

[37]   (*Id.* at 195:21–196:10.)

[38]   856 F.2d at 524.

[39]   908 F.2d at 690.

[40]   *Bormann v. AT&T Commc'ns.*, Inc., 875 F.2d 399, 403 (2d Cir. 1989) (citing *Coventry* and adopting the Third Circuit's "more stringent" totality of the circumstances test).

[41]   Plaintiffs assert Allstate should be estopped from making this argument because it introduced the concept of "want" into the voluntariness instructions and Allstate waived its objection to this portion of the instruction under Federal Rule of Civil Procedure 51. As the Court does not find error in the instruction, we need not address these arguments.

[42]   (6/16/15 Trial Tr., ECF No. 682, at 194:5–7.)

[43]  (6/16/16 Trial Tr., 194:18–195:20.)

[44]  (*Id.* at 195:21–196:10.)

[45]  *Agere Sys., Inc. v. Atmel Corp.*, No. 02-864, 2005 WL 2994702, at *2 (E.D. Pa. Aug. 17, 2005) (quoting *In re Braen*, 900 F.2d 621, 626 (3d Cir. 1990)).

[46]  *Advanced Displays Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1281 (Fed. Cir. 2000) (quotations omitted).

[47]  29 U.S.C. § 626(f)(1).

[48]  *Romero v. Allstate Ins. Co.*, 1 F. Supp. 3d 319, 404 (E.D. Pa. 2014).

[49]  (6/2/15 Trial Tr., ECF No. 672, at 52:5–8.)

[50]  *Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1539 (3d Cir. 1997) (quotations omitted).

[51]  29 U.S.C. § 626(f)(1) ("a waiver may not be considered knowing and voluntary unless at a minimum . . . [it complies with the listed statutory requirements.]").

[52]  S.Rep. No. 101-263, at 31–32 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1537 (emphasis added).

[53]  *Torrez*, 908 F.2d at 690 (emphasis added); *see also Ricciardi v. Elec. Data Sys. Corp.*, No. 03-5286, 2007 WL 576323, at *3 (E.D. Pa. Feb. 20, 2007) ("If a release meets the minimum standards set by the OWBPA, further inquiry is required to decide whether the release was executed knowingly and voluntarily . . . . once the minimum requirement has been met, a court may proceed to determine whether the execution of a waiver is 'knowing and voluntary." The 'totality of the circumstances' approach is used by the Third Circuit to make such a determination."); *Aylaian v. Town of Huntington*, 762 F. Supp. 2d 537, 540 (E.D.N.Y. 2011) ("Where, as here, a plaintiff's employment discrimination claims arise under the Age Discrimination in Employment Act (the "ADEA"), as well as other statutes, any release must comply with both the Older Workers' Benefit Protection Act of 1990 ("OWBPA") . . . as well as a 'totality of the circumstances' test."), *aff'd*, 459 F. App'x 25 (2d Cir. 2012); *see also Foster v. Mountain Coal Co., L.L.C.*, 61 F. Supp. 3d 993, 1002–03 (D. Colo. 2014) ("Since I find that the Agreement met the requirements of the OWBPA, I next analyze Plaintiff Fisk's ADEA claim to determine whether Plaintiff Fisk's waiver in the Agreement was 'knowing and voluntary' under the totality of the circumstances.").

[54]  *See Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1229 (10th Cir. 1999) (finding reversible error where district accurately determined that the release complied with the eight statutory OWBPA elements, but failed to address the totality of the circumstances surrounding the release

to discern whether it was knowing and voluntary); *Griffith v. Kraft Gen. Foods, Inc.*, 62 F.3d 368, 373–74 (11th Cir. 1995) (reversing where district court considered OWBPA factors, but failed to conduct a totality of the circumstances analysis).

[55]  (Allstate's Resp. Opp'n Class Cert, ECF No. 468, at 59, 63, 64 )

[56]  *Romero v. Allstate Ins. Co.*, 1 F. Supp. 3d 319, 411–12 (E.D. Pa. 2014).

[57]  Allstate's reliance on *Hayduk v. City of Johnstown*, 386 F. App'x 55 (3d Cir. 2010) is misplaced. The Third Circuit found plain error where the district court expressly determined, during summary judgment, as to notice under the Family and Medical Leave Act on two relevant dates, but then submitted those same actual issues to the jury even though the defendant relied on the summary judgment ruling and did not present any additional evidence on that issue. *Id.* at 61–62. Here, all of the facts found by the Court as undisputed on summary judgment, including facts underlying some of the enumerated "totality of the circumstances factors", were submitted to the jury through a reading of "Established Facts." The Court made no express finding the totality of the circumstances showed the Trial Plaintiffs knowingly and voluntarily signed the Release. As such, the same error found in *Hayduck* does not exist here.

[58]  (6/16/15 Trial Tr., ECF No. 692, at 193:14–194:1.)

[59]  *Romero*, 1 F. Supp. 3d at 412 (emphasis added) (citing *Jakimas*, 485 F.3d at 781–82).

[60]  29 C.F.R. § 1625.22(a)(3).

[61]  Waiver of Rights and Claims Under the Age Discrimination in Employment Act (ADEA), 63 Fed. Reg. 30624-01, 30626 (June 5, 1998). The cases Allstate cites in support of the proposition reliance is an element of a knowingly and voluntary analysis are inapposite and do not establish reliance as an element in the totality of the circumstances test. *See Jakimas*, 485 F.3d at 781–82 (holding only that "[g]enuine issues of material fact exist as to whether and when the Appellants . . . were informed or misinformed about their ability to roll-over their 401(k)s. [Appellants] assert that they would have acted differently had they known of the tax consequences." Noting, in any event, the burden falls on the party seeking to enforce the release that there is an absence of reliance); *Pierce v. Atchinson, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 569 (7th Cir. 1995) (discussing proof of reasonable reliance in the context of the Illinois defense of fraudulent inducement, not the federal totality of the circumstances standard); *Jordan v. SmithKline Beecham, Inc.*, 958 F. Supp. 1012, 1020 (E.D. Pa. 1997) (discussing justifiable reliance in the context of the Pennsylvania misrepresentation defense not the federal totality of the circumstances standard), *aff'd*, 142 F.3d 428 (3d Cir. 1998); *Martinez v. Nat'l Broad. Co.*, 877 F. Supp. 219, 227 (D.N.J. 1994) (mentioning only plaintiff testified he relied on fraudulent promises without indicating reliance was an actual element); *DePace v. Matsushita Elec. Corp. of Am.*, 257 F. Supp. 2d 543, 556–57 (E.D.N.Y. 2003) (discussing proof of reasonable reliance in the context of state law defense of fraudulent inducement); *Feret v. First Union Corp.*, No.

Civ.A.97-6759, 1999 WL 80374, at *8 (E.D. Pa. Jan. 25, 1999) (declining to find misrepresentations were material under federal totality of the circumstances test where *among multiple other factors*, plaintiffs failed to show how their lack of knowledge "did or could have influenced the decision-making of the plaintiffs.").

[62]   Allstate also argues this Court made several statements in its summary judgment Opinion regarding the need for Plaintiffs to show they would have acted differently had they known the truth about the misrepresentation. Allstate mischaracterizes the Court's Opinion. The Court found substantial evidence Allstate made misrepresentations, but declined to grant summary judgment in Plaintiffs' favor to allow Allstate to disprove the materiality of these statements by showing Plaintiffs would not have acted any differently. Nothing in the Court's Opinion establishes reliance as an element of the totality of the circumstances test, especially since, at all times, the burden rests on Allstate to show the Plaintiffs' knowing and voluntary signing of the Release. The Court made it abundantly clear Plaintiffs did not need to prove all six elements of common law fraud, which include reliance, to void the Release for a purported misrepresentation. *Romero*, 1 F. Supp. 3d at 412 n.54.