# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GENE R. ROMERO, ET AL.,** | : | **NO. 01-3894** |
| | : | |
| **Plaintiffs,** | : | **CONSOLIDATED with Nos.** |
| | : | **01-6764, 03-6872, 15-1017, 15-1049,** |
| **v.** | : | **15-1190, 15-2602, 15-2961, 15-3047** |
| | : | |
| **ALLSTATE INSURANCE COMPANY,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                      **July 6, 2016**

Over sixteen years ago, Allstate terminated employment contracts of approximately 6,200 employee-agents and offered four alternative post-Allstate futures. Since then, 499 individual agents have sued claiming Allstate's decision violates uniform federal law applying to all agents and in part violates the differing common law of the forty states where they reside. We directed the agents file a consolidated complaint to preserve all claims. We now proceed to resolve the common federal questions through trial later this year without prejudice to the later resolution of the wide variety of state law issues raised by the 499 plaintiffs in appropriate districts. As confirmed in the accompanying Order, we find the agents stated claims under ERISA and the ADEA in large part, but we grant Allstate's motion narrowing issues for discovery and resolution of the common federal questions.

I.     **Relevant Factual History**[1]

Before November 1999, Allstate employed the majority of its captive agents under contract entitled to a wide range of company-sponsored health, welfare, and retirement benefits. On November 10, 1999, Allstate announced, as part of a new business model, reorganizing its captive agency force into a single exclusive agency independent contractor program.  With few exceptions, Allstate terminated the employment contracts of the more than 6,200 employee agents effective no later than June 30, 2000.  Allstate offered the agents working under contracts four options.  Allstate conditioned the first three options upon the agents signing a release (the "Release").     Several employee agents brought age discrimination charges against Allstate with the Equal Employment Opportunity Commission ("EEOC").  On August 1, 2001, thirty-two (32) employee agents (the "*Romero I* Plaintiffs") began this Action by suing Allstate.[2]   After years of precedent Orders from this Court and our Court of Appeals as guideposts, we now review the final consolidated complaint brought by 499 agents seeking: declaratory relief invalidating the Release as it applies to ERISA and Age Discrimination in Employment Act (ADEA) claims; damages for interference and retaliation under Section 510 of ERISA; damages for discriminatory termination and retaliation under ADEA;  breach of contract;  breach of fiduciary duty under ERISA and common law;  interference with early retirement benefits under ERISA; and post-termination retaliation and interference under ERISA and ADEA.

II.    **Analysis**

Allstate seeks dismissal of (1) all of the agents' state law claims; (2) the agents' disparate impact claim under ADEA; (3) the ERISA § 510 claims of the *Tabor*, *Anzivine*, and *Siegfried* Plaintiffs; (4) the ERISA breach of fiduciary duty claims of the *Abell* Plaintiffs; (5) the retaliation

claims in Counts II, III, and IV; (6) the ADEA and ERISA retaliation claims of the *Romero III* Plaintiffs; and (7) most of the claims filed by Plaintiffs Edwin Murray and Christopher Perkins.[3]

### A.    Dismissal of state law claims is denied without prejudice.

Allstate seeks dismissal of the agents' state law claims under various theories, including the tender-back and ratification doctrines, statutes of limitations, and the at-will employee theory. Although previously addressed by Judges Buckwalter and Pappert, resolving these claims now would require us to delve into the nuances of approximately forty (40) different states' laws.  As defined in our May 2, 2016 scheduling order after our April 18, 2016  notice,  we are proceeding on "Phase I" involving common issues, subject to state law defenses resolved later, under ERISA §§ 510 and 204(g), breach of fiduciary duty under ERISA and age discrimination with either disparate impact or disparate treatment. The state law claims, and state-based defenses, not arising within the Eastern District of Pennsylvania are then subject to severance so they may be properly resolved in the judicial district with proper venue over the claims or defenses.  We recognize the agents' prophylactic reason for filing the state law claims, but they are not presently before the Court.  We deny Allstate's Motion to dismiss the state law claims without prejudice to analysis of these issues after Phase I.

### B.    The agents' ADEA claims will proceed through discovery.

Allstate challenges the agents' claim of disparate impact discrimination under the ADEA for failing to allege facts suggesting a statistical imbalance in older versus younger employee agents resulted from a specific facially age-neutral selection policy.  Under our May 2, 2016 Order, Allstate could move to dismiss "based on any grounds addressed by Judges Buckwalter or Pappert in 2015 and 2016."[4]  Despite the agents including the ADEA claims in both the original

*Romero I* case and in the various intervening 2015 complaints, Allstate did not seek dismissal of the ADEA claims in 2015. Allstate may not now move to dismiss a claim it failed to address then, but may raise arguments following discovery.

Facing the bar on raising issues from years ago, Allstate first claims it challenged the disparate impact claim in motions to dismiss filed in November 2001[5] and May 2005.[6] These arguments do not constitute "grounds addressed by Judges Buckwalter or Pappert in 2015 and 2016."[7] Allstate then argues the Consolidated Complaint pleads "revised and new allegations in support of the disparate impact claims."[8] It asserts an amended pleading with new allegations allows Allstate to raise new defenses.[9] The allegedly new factual allegations, however, do not alter the nature of the disparate impact claim alleged by the *Romero I* Plaintiffs, but simply inject additional background facts already included in other agents' complaints[10] gleaned from the years of discovery. The agents' new allegations have no impact on Allstate's current challenge to the disparate impact claim which simply asserts the agents fail to assert a statistical imbalance in older versus younger employees resulting from a facially age-neutral selection policy. Allstate could have argued this point in the 2015 and 2016 motions to dismiss but elected to proceed through discovery. Lastly, Allstate claims it did not "interpret the [Court's Case Management] Order as circumscribing the scope of its motion but as expressly permitting Allstate to reassert grounds for dismissal previously addressed by Judges Buckwalter and Pappert."[11] Allstate's reading of our Order is incorrect. If we wished to allow the full gamut of possible challenges to the Consolidated Complaint, many of which the parties litigated and resolved years ago, we would have simply stated "Defendants may move to dismiss" the Consolidated Complaint. We deliberately avoided reopening already-resolved issues by limiting motions to dismiss to "any

grounds addressed by Judges Buckwalter or Pappert in 2015 and 2016." As we justifiably believed the parties raised all issues before 2014 except as the additional agents' claims, we decided to preclude re-litigation of dismissal issues until after discovery unless raised before Judge Buckwalter or Judge Pappert in 2015 or 2016. Because Allstate failed to challenge the disparate impact claim in those motions, we will not consider these arguments on a motion to dismiss standard now.

### C.   ERISA § 510 claims are timely under equitable tolling.

Allstate next argues the ERISA § 510 claims of the *Tabor*, *Anzivine*, and *Siegfried* Plaintiffs are time-barred. Judge Buckwalter found the *Tabor* Plaintiffs' claims untimely:

> The parties agree that because ERISA does not have its own limitations period, the statute of limitations and applicable tolling rules are to be borrowed from the most analogous forum state law claim. Romero v. Allstate Corp., 404 F.3d 212, 220–21 (3d Cir. 2005). In this case, the most analogous state law claim to an ERISA Section 510 claim is wrongful discharge, which is subject to a two-year statute of limitations. See Anderson v. Consol. Rail Corp., 297 F.3d 242, 251–52 (3d Cir. 2002). That two-year period is tolled when a plaintiff is an eligible class member. Nelso v. Cnty. of Allegheny, 60 F.3d 1010, 1012–13 (3d Cir. 1995) (citing Allesandro v. State Farm Mut. Auto. Ins. Co., 409 A.2d 347, 350 n.9 (Pa. 1979)). Moreover, the parties agree that federal common law governs the date on which the statute of limitations began to run, which, for purposes of Plaintiffs' Section 510 claims, is when Plaintiffs received their notices of termination.[12] Jakimas, 485 F.3d at 778–80.

> Applying these rules, it is undisputed that the Tabor Plaintiffs received notice on November 10, 1999 that their employment with Allstate under their existing contracts would terminate.[13] (Compl. ¶¶ 87–89.) On August 1, 2001, following the passage of one year and 265 days, the Romero Complaint was filed, under which the Tabor Plaintiffs were eligible class members, thereby tolling the statue of limitations for those Plaintiffs. On October 6, 2014, the Court denied class certification with respect to Plaintiffs' challenges to the Complaint, but, notably, did not address the running of the statute of limitations as to the substantive claims of the non-party, former employee agents of Allstate. Shortly thereafter, on November 7, 2014, the Romero Plaintiffs filed a motion seeking clarification from the Court on this point. By way of Order dated December 11, 2014, the Court then explained that the October 6, 2014 Order restarted the running of the

statute of limitations for any current or former employee-agent of Allstate who wanted to challenge the validity of the Release in order to pursue substantive claims. On December 22, 2014, the Romero Plaintiffs filed a Motion for Reconsideration of the Court's ruling. During the pendency of that Motion, the Court put a stay in place on the statute of limitations. Finally, on January 6, 2015, the Court confirmed that the October 6, 2014 Order did, in fact, recommence the running of the statute of limitations because employee agents were put on clear notice that their rights were no longer protected by the class, but held that the stay would remain in place until March 2, 2015. On May 11, 2015, the Tabor Plaintiffs filed their Complaint.

Under purely mathematical calculations, the Tabor Plaintiffs' ERISA § 510 claims are indeed time-barred. As noted above, one year and 265 days passed from the day the Tabor Plaintiffs were put on notice about the termination of their contracts. The statute of limitations then resumed running on October 6, 2014, when the Court denied class certification as to the Release issues. Thereafter, another seventy-seven days elapsed between class certification denial on October 6, 2014 and the Court's December 22, 2014 Order staying the running of the statute of limitations, making it a total lapse of one year and 342 days. Subsequently, another seventy days elapsed between the resumption of the statute of limitations on March 2, 2015, and the filing of the Tabor Complaint on May 11, 2015, for a total of two years and forty-seven days—forty-seven days past the expiration of the statute of limitations.[14]

Nonetheless, Judge Buckwalter deemed it appropriate to exercise the Court's equitable

tolling powers:

> While the Court remains somewhat hesitant to apply equitable tolling given the lengthy history of this case, the Court finds that extraordinary circumstances weigh in favor of its application. As noted above, as of October 2014, the Romero case had been pending for over thirteen years, during which time the matter had been proceeding as a putative class action. Under mandate from the Third Circuit, the parties have been in the unusual procedural posture of litigating only the Release issues in this case, without any attention thus far being given to the substantive claims. On October 6, 2014, the Court denied the Romero Plaintiffs' Motion for Class Certification, which dealt solely with those issues regarding the validity of the Release. As the ruling was simply a denial of class certification as to the particular questions raised, the Court made no comment as to that ruling's effect on the statute of limitations with respect to non-parties who had signed a Release and wanted to pursue substantive claims. The Court acknowledges, in hindsight, that, given the already confusing legal landscape, neither current class counsel nor the Tabor Plaintiffs—who were as of yet unrepresented—would have necessarily understood that the October 6, 2014

6

Order meant that they were no longer under the protection of the class for purposes of their substantive claims.  Class counsel thus appropriately sought clarification from the Court as to whether the Order was intended to preclude later class certification on the substantive issues and whether the Order had any effect on the statute of limitations for non-party individuals.  At that juncture, the Court fully considered the legal impact of this Order in light of the American Pipe tolling rules for class actions.  On December 11, 2014, the Court issued an Order putting putative class members on unequivocal notice that "the Court's Order of October 6, 2014 restarted the running of the statute of limitations for any current or former employee-agent of Defendants who—between November 10, 1999 and June 30, 2000—signed the Release prepared by Defendants in connection with the Preparing for the Future Group Reorganization Program, and who now wishes to challenge the validity of that Release *by way of a Declaratory Judgment action* in order to pursue substantive claims against Defendants that would otherwise be contractually barred."  (Romero v. Allstate, No. Civ.A.01-3894, Docket No. 486 (emphasis in original).)  Upon receipt of that Order, the Tabor Plaintiffs acted with reasonable diligence to preserve their rights.  A necessary period of communication occurred between class counsel and the putative class members in order to inform them of the impact of the Court rulings, update them on motions for reconsideration, and indicate whether class counsel would take on more individual representations.  Thereafter, upon learning that current class counsel was taking on no new clients, the Tabor Plaintiffs faced the task of organizing themselves and finding counsel who then needed to inform themselves of the past thirteen years of litigation.  Given these extraordinary circumstances and Plaintiffs' diligence in bringing their claims, the Court finds that equitable tolling should apply to the closed period between October 6, 2014 and December 11, 2014.[15]

Allstate now asks we find Judge Buckwalter erred in applying equitable tolling because such a remedy is only appropriate "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum."[16]  Allstate then cursorily argues, "[t]he *Tabor, Anzivine,* and *Siegfried* Plaintiffs cannot show any of the three considerations sufficient for equitable tolling, and such tolling therefore cannot apply here."[17]

We disagree and uphold Judge Buckwalter's thorough analysis.  Extraordinary

circumstances created by the unusual procedural posture made basic calculation of the running of the statute of limitations difficult, if not impossible.  Through no fault of their own, the agents could not have clearly understood, without the Court's instruction, denial of class certification on the release-related issues would immediately restart the statute of limitations on the substantive claims.  Plaintiffs diligently sought guidance on the issue.  Judge Buckwalter recognized this dilemma and accounted for it by applying a reasonable sixty-six (66) day equitable tolling period. We agree equitable tolling applies to the period between October 6, 2014 and December 11, 2014.

The equitable tolling period preserves the *Tabor* Plaintiffs' ERISA § 510 claims. Plaintiff Siegfried also benefits from equitable tolling as he sued on May 26, 2015, two years and sixty-two days after the accrual of his claim and sixty-two days after the statute of limitations expired.  Removing the sixty-six days during which the Court equitably tolled the statute of limitations, Plaintiff Siegfried properly sued four days before the end of the statute of limitations. Allstate identifies no prejudice by allowing his ERISA claims to proceed.  We decline to dismiss the ERISA § 510 claims of either the *Tabor* Plaintiffs or Plaintiff Siegfried as time barred.

The *Anzivine* Plaintiffs, however, can claim no benefit from equitable tolling.  They sued on June 1, 2015, two years and sixty-eight days after accrual.  Even removing the sixty-six days of equitable tolling, the *Anzivine* Plaintiffs are still two days past the limitations period. Attempting to avoid this procedural obstacle, the *Anzivine* Plaintiffs assert, under the tolling of *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), the statute of limitations on Plaintiffs' substantive claims including the ERISA claims remains tolled until the Court decides whether such claims are amenable to class certification under Fed. R. Civ. P. 23.  On May 23,

2014, the *Romero* Plaintiffs filed a motion seeking class certification of certain issues relating to Allstate's affirmative defense and the validity of the Release, and, on October 6, 2014, the Court denied class certification of only those issues.   On December 10, 2014, the Court found the October 6, 2014 Order restarted the running of the statute of limitations for any current or former employee-agent who—between November 10, 1999 and June 30, 2000—signed the Release and who wished to challenge the validity of the Release to pursue substantive claims which would otherwise be contractually barred.   According to the *Anzivine* Plaintiffs, the denial of class certification only restarted the running of the statute of limitations as to individual declaratory judgment actions challenging the validity of the Release.

This reasoning is mistaken.  Following denial of class certification, the *Romero* Plaintiffs sought clarification and Judge Buckwalter held:

> It is further **CLARIFIED** that the Court's Order of October 6, 2014 restarted the running of the statute of limitations for any current or former employee-agent of Defendants who—between November 10, 1999 and June 30, 2000—signed the Release prepared by Defendants in connection with the Preparing for the Future Group Reorganization Program, and who now wishes to challenge the validity of that Release in order to pursue substantive claims against Defendants that would otherwise be contractually barred.   Plaintiffs' counsel is permitted to make reasonable efforts to communicate this ruling to potential class members.[18]

The *Romero I* Plaintiffs moved for reconsideration out of a concern "the Order could be read as stating that for those potential class members who signed the Release and wish to contest it . . . the statutes of limitations are no longer tolled."[19]   The Court subsequently explained the precise result reached by the Order:

> In American Pipe and Construction Co. v. Utah, 414 U.S. 538 (1974), the United States Supreme Court clarified the principle that the class action is a representative creature and that members of a putative class are treated as if they were parties to the action itself "until and unless they received notice thereof and chose not continue."   Id. at 550–51.   In turn, the filing of a class action causes the

courts to treat members of the asserted class as if they instituted their own actions and to give such members the benefit of tolling for as long as the class action purports to assert their claims. Id.

"Tolling, however, does not continue indefinitely. If the district court denies certification, or if it certifies the class but later decertifies it, tolling ceases." Odle v. Wal-Mart Stores, Inc., 747 F.3d 315, 320 (5th Cir. 2014) (footnotes omitted). "This is because 'the putative class members ha[ve] no reason to assume that their rights [a]re being protected.'" Id. (quoting Hall v. Variable Annuity Life Ins. Co., 727 F.3d 372 (5th Cir. 2013) (further quotations omitted)). Thus, "[i]f class certification is denied in whole or in part, the statute of limitations begins to run again as to those putative class members who were excluded from the class. In order to protect their rights, such individuals must seek to intervene in the pending action . . . or file a separate individual action . . . before the time remaining in the limitations period expires." Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1391 (11th Cir. 1998).

In the present case, the Court's Memorandum and Order of February 27, 2014 on the parties' Cross-motions for Summary Judgment, together with the Court's denial of class certification on October 6, 2014, made it abundantly clear to the putative class members who signed the Release that they were being excluded from any potential class bringing substantive claims against Allstate. In the February 27, 2014 Memorandum and Order, the Court engaged in a lengthy discussion of the scope of the Release and determined that if the Release, as signed by the individual employee-agents, was deemed valid, then it would clearly bar all of the substantive claims asserted by the putative employee agent class. Romero v. Allstate, 1 F. Supp. 3d 319, 361–75 (E.D. Pa. 2014). Thereafter, in the October 6, 2014 Memorandum and Order, the Court denied certification of a class that sought to challenge the validity of the Release on theories of involuntariness, unconscionability, unclean hands, or part and parcel of an illegal scheme. Romero v. Allstate, _____ F. Supp. 3d ___, 2014 WL 4966147 (E.D. Pa. Oct. 6, 2014). Ultimately, this Court found that "[t]he issues surrounding the validity of the Release . . . involve numerous individual inquiries that . . . are so inextricably intertwined with the common questions as to eliminate any benefit to certification." Id. at *19. Although the Court did not rule on whether Plaintiffs' substantive claims under ERISA and ADEA may be proper for class certification, the two Court Orders put putative class members on unequivocal notice that unless they invalidate their Release via an individual action, they will be unable to participate in any potential class action raising the substantive ERISA and ADEA claims. In other words, putative class members were given adequate warning that if they signed a Release and were not already part of the current action, the Release would bar them from asserting any further claims against Allstate with respect to the Preparing for the Future Group Reorganization Program. Having been put on notice by these Orders that their rights were no longer being

10

protected, the putative class members who signed the Release were no longer entitled to tolling of the statute of limitations.

To hold otherwise—*i.e.*, that the statute of limitations for employee agents who signed the Release remains tolled until a certification ruling on the substantive issues—would result in utter turmoil in this matter. Assuming the Releases of the thirty named Plaintiffs are invalidated, Plaintiffs will proceed to substantive discovery and presumably move for class certification on their substantive claims. Even if the Court certifies a class, such a class could not include individuals who remain contractually barred from bringing such suits because issues as to the validity of the individual Releases would predominate over questions common to the class. As such, the door would be opened for such individuals to file their own lawsuits, effectively restarting the entire litigation process—one that began over a decade ago—for a new group of plaintiffs. Certainly, the <u>American Pipe</u> tolling rule was not intended to cause such a result.[20]

Judge Buckwalter left no doubt the statute of limitations was no longer tolled for agents who signed the Release and would later seek to join a class action for substantive claims. Judge Buckwalter provided if these individuals signed a Release and were not already part of the current action, "the Release would bar them from asserting ***any further claims*** against Allstate with respect to the Preparing for the Future Group Reorganization Program" and "their rights were no longer being protected."[21]  Having been given such unequivocal notice, the *Anzivine* Plaintiffs still had close to five months (with the equitable tolling period included) to file an action but elected to sue after the statute of limitations expired. The *Anzivine* Plaintiffs' ERISA § 510 claim is time-barred.[22]

### D. *Abell* Plaintiffs may proceed on their ERISA breach of fiduciary duty claims.

The agents allege Allstate breached ERISA fiduciary duties by adopting various amendments to the Pension Plan in November 1991 and December 1994, as well as in the instituting the decision to terminate employee-agent contracts in November 1999. Allstate moves to dismiss the *Abell* Plaintiffs from this claim on statute of limitations grounds.

11

ERISA precludes filing a breach of fiduciary duty claim after the earlier of (1) six years after either the date of the last action which constituted a part of the breach or violation, or in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.[23]   Allstate reasons, as of the November 10, 1999 announcement terminating the agents' employment contracts, all agents had actual knowledge of the alleged breach of fiduciary duty.  The statute of limitations then tolled on two separate occasions: (1) from the filing of *Romero II* on December 20, 2001 to denial of class certification on October 6, 2014; and (2) from the temporary tolling of the limitations period by the Court from December 22, 2014, to the end of the Court-imposed tolling on March 2, 2015.  The *Abell* Plaintiffs filed on February 27, 2015, but did not serve the complaint on any Defendant.  On March 6, 2015, the *Abell* Plaintiffs filed a first amended complaint.  On February 11, 2016, 342 days after the filing of the amended complaint, the *Abell* Plaintiffs served their first amended complaint on Defendants.  Finally, on March 16, 2016, the *Abell* Plaintiffs filed and served a second amended complaint.  Not counting the two tolling periods, three years and 133 days elapsed between the announcement of the decision terminating the agents' contracts and the proper service of the *Abell* second amended complaint on March 16, 2016.  Allstate now argues neither the original nor first amended complaint tolled the statute of limitations since the agents failed to timely serve either under Federal Rule of Civil Procedure 4(m).  Because more than three years passed from the agents' actual knowledge of their cause of action, Allstate argues the *Abell* breach of fiduciary claim is time barred.

Assuming *arguendo* the *Abell* Plaintiffs had "actual knowledge" of the alleged breach by

12

November 10, 1999, we decline to find the claim time barred. The ERISA statute of limitations requires only that an action be "commenced" within the limitations period.[24] Under Federal Rule of Civil Procedure 3, "[a] civil action is commenced by filing a complaint with the court.[25] "Commence[ment]" of an action does not require that service be completed within the time established by Rule 4(m).[26]

Federal Rule of Civil Procedure 4(m) provides for service of a complaint: "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."[27] "It is a well-recognized principle that a statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice. As regards the statute of limitations, the original complaint is treated as if it never existed."[28]

The original *Abell* complaint tolled the statute of limitations on February 27, 2015. Although counsel did not serve Allstate immediately, Allstate did not ask to, and the Court did not, dismiss the complaint. Rather, the *Abell* Plaintiffs filed a first amended complaint on March 6, 2015. The *Abell* Plaintiffs should have served the first amended complaint by July 4, 2015, but Allstate elected not to move to dismiss for lack of service. The Court did not notify the *Abell* Plaintiffs of any possible dismissal until February 2, 2016, when Judge Pappert's Deputy Clerk sent the appropriate letter to *Abell* Plaintiffs' counsel requiring service of the Second Amended Complaint by February 9, 2016 or the Court would dismiss the Second Amended Complaint without prejudice.[29] On February 9, 2016, Plaintiffs wrote to the Court, inexplicably omitting a

copy to Allstate's counsel, confirming an earlier *ex parte* telephone conversation during which the Court agreed to give the *Abell* Plaintiffs an extension of time to serve the Second Amended Complaint.[30]  Plaintiffs then completed service of process within the next ten days.  Under the Federal Rules of Civil Procedure and the ERISA statute, the *Abell* cause of action for ERISA breach of fiduciary duty is timely.

### E.      We again dismiss the retaliation claims in Counts II, III, and IV.

The agents allege Allstate illegally retaliated under ERISA § 510 or the ADEA based on the Release in carrying out the decision to terminate contracts.  The agents originally moved for summary judgment on this claim in April 2013, but deferred entirely to arguments presented by the EEOC in the consolidated litigation of  *EEOC v. Allstate Ins. Co.*[31]  After considering the EEOC's arguments, the Court rejected this retaliation theory and entered summary judgment in Allstate's favor on this retaliation claim.[32]  Our Court of Appeals affirmed, holding Allstate did not violate the federal anti-retaliation laws by requiring agents sign the Release to avail themselves of the benefits of Allstate's decision to terminate the contracts.[33]

The agents now plead these same dismissed claims agreeing they plead retaliation claims "only for appeals purpose, as there has not been any appealable judgment entered in ***this*** litigation since the last remand from the Third Circuit."[34]  In light of both the Third Circuit's rejection of the basis underlying Plaintiffs' precise retaliation argument and Plaintiffs' apparent concession those claims are now subject to dismissal in this action, we grant Allstate's Motion to dismiss these retaliation claims in Counts II, III and IV.

**F.    The agents may proceed on retaliation claims under ADEA and ERISA based on Allstate's counterclaims.**

Allstate seeks dismissal of the agents' retaliation claims characterizing Allstate's post-July 2000 conduct as unlawful retaliation by filing a counterclaim.    Allstate pleads four counterclaims in its March 2002 answer to the *Romero I* complaint: breach of the covenant of good faith and fair dealing, unjust enrichment, negligent misrepresentation, and fraud.  Each of these counterclaims pleads the agents entered into the Release intending to breach the Release by suing Allstate.  As Allstate proceeded with discovery, they moved in May 2003 to amend their Answer and withdraw the counterclaims.  During the pendency of its motion to withdraw the counterclaims, the *Romero* Plaintiffs initiated a new action ("*Romero III*") alleging, in part, Allstate's counterclaims constituted unlawful retaliation under the ADEA and interference with protected rights under § 510 of ERISA.   Judge Fullam granted the agents' motion for summary judgment on the counterclaims in the *Romero I* action and dismissed as moot Allstate's still-pending motion to amend their Answer.   Thereafter, in June 2007, Judge Fullam granted summary judgment in Allstate's favor on the remainder of *Romero I*.[35]  The Court of Appeals reversed and remanded *Romero I* in July 2009, and the agents filed a second amended complaint. When answering that complaint, Allstate did not reassert their counterclaims.   Nonetheless, *Romero III*'s allegation of retaliation based on the former counterclaims remained pending. Those allegations of retaliation have now been re-pled in the Consolidated Complaint.   While Allstate asserts the claims lack merit, it moves to dismiss only the portion regarding Allstate's alleged retaliatory assertion of counterclaims.[36]

In *Burlington Northern & Santa Fe Ry. v. White*,[37] the United States Supreme Court concluded, "the anti-retaliation provision does not confine the actions and harms it forbids to

those that are related to employment or occur at the workplace," and "the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant."[38]  With respect to the latter category, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."[39]

Although the Third Circuit has yet to consider the issue, multiple district courts within the Third Circuit have relied on the foregoing standard to hold the filing of a counterclaim by an employer could dissuade a reasonable worker from engaging in protected activity, thus constituting unlawful retaliation.  For example, in *Nesselrotte v. Allegheny Energy, Inc.*,[40] the plaintiff brought an age discrimination and retaliation lawsuit against the defendants in connection with her termination from her position as a senior attorney.[41]  After the start of discovery, the defendants requested leave to amend their answer to assert counterclaims for breach of contract and breach of fiduciary duty, relating to the plaintiff's alleged removal of confidential, privileged, and proprietary documents before her last day of employment.[42]  The plaintiff then sought to add a new claim alleging the counterclaims were retaliatory in nature.[43] The court declined to find the new claim futile under a Rule 12(b)(6) standard, holding "when faced with counterclaims such as the ones at issue here, which directly attack the integrity of the plaintiff as well as her professional standing as an attorney, 'a reasonable employee facing the choice between [enduring said counterclaims and continuing to press her] discrimination complaint *might well* choose the former.'"[44]

In *Parry v. New Dominion Constr. Inc.*,[45] the plaintiff brought claims against the defendant under the Fair Labor Standards Act, and the defendant filed counterclaims for

recoupment and damage to equipment.[46]   Following discovery which called into question the

defendant's motivations for filing the counterclaims, the plaintiff moved to amend the complaint

to allege retaliation.[47]   Considering the reasoning of *Nesselrotte*, as well as the contrary opinion

from the Northern District of Illinois in *Ergo v. Int'l Merch. Servs.*,[48] the court permitted the

amendment to allege retaliation because the filing of the counterclaim, which subjected plaintiff

to "potential monetary damages," could "'well dissuade a reasonable worker from making or

supporting a charge of discrimination.'"[49]

In *Brown v. TD Bank, N.A.*,[50] the plaintiff brought claims of race discrimination and

retaliation against the defendant.[51]   As part of the complaint, the plaintiff alleged the defendant

retaliated against him by threatening to file a lawsuit and then actually suing the plaintiff for

conversion.[52]   The Court held:

> [W]e are persuaded that threat[en]ing to file a civil action and actually filing a
> civil action may be adverse employment actions in light of *Burlington Northern*'s
> broader perspective on what is materially adverse and based upon a common
> sense approach to what might deter a reasonable employee.   Threatening to file
> and then filing a lawsuit are beyond the petty slights, minor annoyances, and
> simple lack of good manners that are insufficient to deter the reasonable worker.
> Litigation is expensive, time-consuming, and emotionally draining.   So too is the
> mere threat of litigation, since the steps an individual must take when threatened
> with a lawsuit are often the same steps an individual must take when actually
> sued: locating and obtaining counsel, evaluating options for settlement or
> litigation, and spending time and treasure to resolve the prospective or filed claim.
> A reasonable worker, faced with the prospect or reality of a civil action, might
> well decide to abandon his charges of discrimination rather than move forward.
>
> We therefore find, in this procedural posture of a motion to dismiss, that the first
> amended complaint alleges sufficient factual matter, accepted as true, to make a
> prima facie showing under Section 1981, Title VII, and the PHRA that TD Bank
> took an adverse employment action against Brown when it threatened to file, and
> then filed, a civil action against him in the Court of Common Pleas of
> Philadelphia County.[53]

The court went on to consider the application of the Noerr-Pennington doctrine, which protects

those who petition for relief through the courts,[54] and held the doctrine does not protect "sham" litigation, or litigation that is "objectively baseless."[55]   Thus, if "the challenged litigation is objectively meritless, then the court may consider the litigant's subjective motivation."[56]

Finding no grounds on which our Court of Appeals would deviate from the reasoning adopted by these cases,[57] we must now determine whether the agents plead facts from which we can reasonably infer Allstate's counterclaims are objectively baseless, made in bad faith, or brought with a retaliatory motive.   The Consolidated Complaint alleges, in pertinent part:

> 1055.   On March 11, 2002, Allstate and its co-defendants filed their answer to the *Romero I* First Amended Complaint.   In the responsive pleading, Allstate attempted to state four purported counterclaims: unjust enrichment, fraud, negligent misrepresentation, and breach of the duty of good faith and fair dealing. Each purported counterclaim rested on the unfounded allegation that even though the *Romero III* Plaintiffs purportedly had made up their minds that they were going to sue Allstate and otherwise challenge the Release, they "represented" or otherwise promised they would not do so upon signing the Release.

> 1056.   Allstate had no evidentiary support whatsoever for these unfounded allegations as required by Federal Rule of Civil Procedure 11(b)(3).   To the contrary, the language of the Release did not contain any promise not to sue Allstate, as was determined in 2005 by the Seventh Circuit Court of Appeals. Even if the Release had contained a covenant not to sue the Company, Allstate and its attorneys knew that the *Romero III* Plaintiffs had a federally-protected right to challenge the scope and validity of the Release in good faith, including the statutory right to challenge whether it was knowing and voluntary and otherwise complied with the enumerated threshold requirements of the OWBPA.   Because Allstate and its attorneys thus knew that the plaintiffs had not "represented" or otherwise promised not to challenge the Release, the counterclaims were brought in reckless disregard for their lack of legal and factual merit and to retaliate against and otherwise harass and vex the plaintiffs.

> 1057.   Allstate and its attorneys also knew that the plaintiffs were required to assert all claims arising out of the same transaction or occurrence, or series of transactions or occurrences, or face the risk that such claims could be barred. Allstate and its attorneys therefore necessarily knew that the plaintiffs had not "represented" or otherwise promised not to assert claims arising out of the Program contingent on a judicial determination that the Release was invalid or otherwise unenforceable.

1058.  Moreover, as of March 11, 2002, Allstate and its attorneys knew and acted with reckless disregard of the fact that the state law counterclaims were meritless for myriad other reasons, such as the fact that they were preempted by the ADEA and ERISA and barred by the "gist of the action" and economic loss doctrines. Based on representations to the EEOC its attorneys made in May 2000, Allstate also knew that it could not satisfy critical elements of the counterclaims in addition to the element of a promise or false representation.  For example, Allstate knew and acted with reckless disregard of the fact that it could not possibly prove detrimental reliance under circumstances when it decided to proceed with the Program in the face of the EEOC's determination that the Release was invalid and request to suspend the Release requirement.

1059.  Allstate nevertheless asserted the purported counterclaims to retaliate against and punish the *Romero III* Plaintiffs for having engaged in protected activity.  Allstate also asserted the counterclaims for the equally improper purpose of deterring members of the proposed class from asserted their federally-protected rights by challenging the Release, assisting the EEOC and Pension and Welfare Benefits Administration and participating in *Romero I* and *Romero II*.

1060.  Allstate knowingly and intentionally chose to assert counterclaims with the most severe retaliatory impact—that is, counterclaims that were designed to inflict the greatest possible professional and reputational damage and raise the greatest possible economic threat to the plaintiffs.   Not surprisingly, Allstate has succeeded in adversely affecting the *Romero III* Plaintiffs, including shedding a negative light on their professionalism and ethics, marring their professional reputations and otherwise damaging them, all of which could have an adverse effect on prospective employment opportunities.   Subsequent to the date the purported counterclaims were brought by Allstate, at least one of the plaintiffs was turned down for a business loan essential to his ability to continue to operate his insurance agency in compliance with Allstate's sales quotas known as "expected results."   This plaintiff was informed by a prospective lender that the loan would have been advanced if the counterclaims had not been pending.  Other of the *Romero III* Plaintiffs have been forced to disclose to third parties such as mortgage lenders that they were currently being sued for fraud and punitive damages.  Yet others were deterred from seeking loans or otherwise engaging in transactions that would require them to disclose the purported counterclaims.

1061.  The bad faith assertion of frivolous counterclaims has caused other injury, including, but not limited to mental distress and anguish, to each of the *Romero III* Plaintiffs and their immediate families.  Indeed, even though they know the counterclaims were frivolous and brought in retaliation for filing a lawsuit and engaging in "other actions" that constitute protected activity, many of the plaintiffs nonetheless remain fearful that they stand at risk of losing everything,

including their businesses, homes and remaining life savings, for doing nothing more than engaging in protected activity.

1062.  Allstate refused to voluntarily withdraw the purported counterclaims with prejudice, even in the face of overwhelming evidence that they were not well-ground in fact or law.  Although Allstate later would ask for leave to amend the counterclaims, it did so only when threatened with the imposition of sanctions under Federal Rule of Civil Procedure 11.  Despite the fact that its claims were preempted, redundant and otherwise failed to state a claim upon which relief can be granted, Allstate asked for leave only to eliminate the three most egregious counterclaims, refusing to dismiss those counterclaims with prejudice, while at the same time wanting to assert new affirmative defenses and offensive counterclaims that it chose not to bring in the first place, thereby leaving the threat of reassertion of counterclaims hanging over the heads of the plaintiffs indefinitely.[58]

On the face of these allegations alone, the agents state a claim upon which relief can be granted.  The agents allege engaging in protected activity by filing both EEOC charges and the class action suit in *Romero I*.  They assert Allstate took adverse action by filing counterclaims in a bad faith effort to threaten the agents with harassing litigation to dissuade them from pursuing claims.  The agents then plead Allstate knew its counterclaims were objectively baseless.[59]  Finally, the agents enumerate specific damages allegedly suffered as a result of Allstate's counterclaims.  Taking the well-pled allegations of the Consolidated Complaint as true, we must decline to dismiss these retaliation claims as meritless under a Rule 12(b)(6) standard.

### G.    Uncontested dismissal of Murray's and Perkins' claims.

The agents do not contest dismissal of: (1) all of Plaintiff Edwin Murray's claims; and (2) all of Plaintiff Christopher Perkins's claims, except Counts XI and XII.    We grant Allstate's Motion on these claims.

## III.    Conclusion

In the accompanying Order, we grant Allstate's Motion to Dismiss (a) the *Anzivine*

20

Plaintiffs' ERISA § 510 claims, (b) the retaliation claims in Counts II, III, and IV, (c) all of

Plaintiff Edwin Murray's claims, and (d) all of Plaintiff Christopher Perkins's claims except

Counts XI and XII. We deny without prejudice the Motion to dismiss the state law claims. We

deny the Motion in all other respects.

---

[1] As Judges Buckwalter and Pappert detailed the underlying facts well known to the parties but immaterial to today's rulings, we will not repeat them but rather will address any material facts as part of our legal analysis.

[2] Over the next fourteen-plus years, the number of Plaintiffs expanded to 499. The Clerk of Court transferred this case to us on April 12, 2016. After providing notice of the issues of consolidation and severance (ECF Doc. No. 847), and following a lengthy hearing on April 28, 2016, we consolidated the 499 individual claims and issued a comprehensive scheduling order requiring all Plaintiffs to file a single consolidated complaint against Defendants. Plaintiffs filed a Consolidated Complaint on May 20, 2016.

[3] Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating the plaintiff's failure to state a claim upon which relief can be granted. The United States Supreme Court has recognized "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted)  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. *Id.* Our Court of Appeals has established a two-part analysis for review of a Rule 12(b)(6) motion. First, the well-pled factual allegations of the claim must be separated and accepted as true, while the legal conclusions are disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) Second, the court must make a common sense determination as to whether the facts alleged in the complaint are sufficient to state a plausible claim for relief. *Id.* at 211. If the court can only infer the possibility of misconduct, the complaint must be dismissed for failure to "show" an entitlement to relief. *Id.* A statute of limitations defense may be raised in a Rule 12(b)(6) motion, "[when] 'the time alleged in the statement of a claim shows that the action has not been brought within the statute of limitations.'" *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)).

[4] (Order, ECF Doc. No. 852, ¶ 5.)

[5] (ECF Doc. No. 13.)

[6] (ECF Doc. No. 24.)

[7] (ECF No. 852, ¶ 5.)

[8] (ECF Doc. No. 871, at 1–2.)

[9] The cases relied upon by Defendants are inapposite. Both cases involved situations wherein the plaintiff asserted that the defendant had not raised arguments in a prior motion to dismiss and were thus barred from raising them under Fed. R. Civ. P. 12(g). The courts allowed the new arguments because of the new factual averments in the amended complaints. *McSparran v. Pa.*, No. 13-1932, 2014 WL 1371594, at \*12 (M.D. Pa. Apr. 8, 2014); *Negron v. Sch. Dist. of Phila.*, 994 F. Supp. 2d 663, 666–67 (E.D. Pa. 2014). In this case, the Court limited proper arguments.

[10] The "new" factual allegations identified by Defendants are not actually new since they were included in almost verbatim fashion in the *Tabor* Complaint. (*Compare* Consol. Compl. ¶¶ 989–92 *with Tabor* Compl. ¶¶ 71–74; *compare* Consol. Compl. ¶¶ 1038–42 *with Tabor* Compl. ¶¶ 115–19.) Allstate moved to dismiss the *Tabor* Complaint in 2015, but did not challenge the disparate impact claim.

[11] (ECF Doc. No. 871, at 3.)

[12] Plaintiffs now assert the recent U.S. Supreme Court decision in *Green v. Brennan*, 136 S. Ct. 1769 (2016) held that the pertinent date for evaluating the timeliness of a wrongful termination claim is the date of actual discharge, not the date of the employer's last allegedly discriminatory act. In that case, however, the Supreme Court stated the statute of limitations in a constructive discharge claim under Title VII begins running only after the employee resigns. *Id.* at 1777. The current matter, on the other hand, involves an interference with employment claim under § 510 of ERISA based on the actual, not constructive, termination of Plaintiffs' employment. Under Third Circuit precedent—which remains intact after *Green*—if a section 510 claim stems from an allegedly unlawful termination of a plaintiff, "the claim accrues when the decision to terminate is made and the employee is informed of the pending termination." *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 780 (3d Cir. 2007); *see also Dupont v. Sklarsky*, No. Civ.A.08-1724, 2009 WL 776947, at \*9 (D.N.J. Mar. 20, 2009) (citing *Jakimas*); *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1140–41 (7th Cir. 1992) (holding that because the purpose of ERISA § 510 is to prevent an employer from terminating an employee for the purpose of avoiding payment of retirement benefits, "it is the [termination] decision and the participant's discovery of this decision that dictates accrual.").

[13] Plaintiffs make the cursory argument that the termination date is "outside the four corners of the CAC and cannot be determined until after the parties have engaged in additional discovery." (Pls.' Resp. Opp'n Mot. to Dismiss 12.) At all times during the course of this fifteen-year litigation, Plaintiffs have agreed that the Program was announced and the Plaintiffs were informed about the termination of their contracts on November 10, 1999. In fact, in Plaintiffs' responses to this argument raised in motions to dismiss the *Tabor*, *Anzivine*, and *Siegfried*

22

Complaints, Plaintiffs conceded the November 10, 1999 date. (Pls.' Resp. Opp'n *Tabor* Mot. to Dismiss, No. Civ.A.15-2602, ECF No. 18, at 10; Pls.' Resp. Opp'n *Anzivine/Siegfried* Mot. to Dismiss, No. Civ.A.01-3894, ECF. No. 811, at 16–17.) The Third Amended Complaint in the *Romero I* action also expressly pled that Plaintiffs were told on November 10, 1999 that their contracts would be terminated on June 30, 2000. (Third Am. Compl., No. Civ.A.01-3894, ¶¶ 442–43.) Plaintiffs may not now deny this already agreed-upon fact by simply excluding it from the Consolidated Complaint.

[14] (ECF Doc. No. 21, at 20-21.)

[15] (*Id.* at 21–24 (footnotes omitted).)

[16] *Najmola v. Women's Healthcare Grp. of Pa.*, No. Civ.A.13-6519, 2014 WL 3700260, at *4 (E.D. Pa. July 24, 2014) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994)).

[17] (ECF Doc. No. 866, at 22.)

[18] (ECF Doc. No. 486.)

[19] (ECF Doc. No. 489, at 3.)

[20] (ECF Doc. No. 491.)

[21] (*Id.* (emphasis added).) Notably, notwithstanding the *Anzivine* Plaintiffs' professed belief that they only had to file individual declaratory judgment actions challenging the validity of the Release, their own Amended Complaint includes all their substantive claims, suggesting they properly understood the Order to have restarted the statute of limitations for all substantive claims.

[22] Plaintiffs also make the cursory argument that the Consolidated Complaint relates back, under Federal Rule of Civil Procedure 15(c), to the filing of the original *Romero* Complaint in 2001. To take advantage of relation back where an amendment adds a plaintiff, courts must "inquire whether the defendants (A) received such notice that they will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought with the original claims." *Nelson v. Cnty. of Allegheny*, 60 F.3d 1010, 1014 (3d Cir. 1995). Where plaintiffs have had ample time in which to file suit—particularly where their statute of limitations has been tolled— but waited until after the statute of limitations expired in order to add their names to a complaint, relation-back does not apply. *See id.* at 1015 (holding that amended complaint did not "relate back" to earlier complaints where amended complaint named new plaintiffs after expiration of statute of limitations, and those new plaintiffs were not substituted and did not show mistake concerning identity). The *Anzivine* Plaintiffs sat on their rights after being put on notice the statute of limitations had resumed running for all those wishing to join the suit. Multiple other agents managed to either join in the Third Amended Complaint or file their own complaint. The

*Anzivine* Plaintiffs simply waited too long.  After notice and an opportunity to be heard by all counsel in an extensive status conference, we ordered the filing of a Consolidated Complaint for case management purposes, but not to allow delinquent Plaintiffs to end-run around the statute of limitations.

[23] 29 U.S.C. § 1113.

[24] *Id.*

[25] Fed. R. Civ. P. 3.

[26] *Henderson v. United States*, 517 U.S. 654, 659 & n.6 (1996); *see also Robinson v. Doe*, 272 F.3d 921, 922 (7th Cir. 2001) ("The statute of limitations in a suit based on federal law, as this one is, stops running when the complaint is filed.").

[27] Fed. R. Civ. P. 4(m).

[28] *Cardio-Medical Associates, Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 77 (3d Cir. 1983).

[29] (ECF Doc. No. 869, Ex. E.)

[30] (*Id.*, Ex. F.)  Allstate contests the validity of the Court's extension on several grounds.  First, they argue Judge Pappert could not have properly given the February 9, 2016 extension because of his later recusal.  The law is "[o]nce a judge has disqualified himself, he or she may enter no further orders in the case . . . . His power is limited to performing ministerial duties necessary to transfer the case to another judge (including the entering of 'housekeeping' orders)." *Moody v. Simmons*, 858 F.2d 137, 143 (3d Cir. 1988).  Allstate's counsel first sent a letter to Judge Pappert about the potential conflict on February 8, 2016, and Judge Pappert did not have a hearing on the issue until March 22, 2016, after which he recused himself.  At the time of the February 9, 2016 extension, no one could plausibly argue recusal already occurred.  Allstate also contests the *ex parte* communications between Plaintiffs' counsel and Judge Pappert's Deputy Clerk as violative of Judge Pappert's Policies.  Judge Pappert's Chambers, however, initiated the *ex parte* communications, required given Allstate's counsel had not yet entered an appearance in *Abell*.  While the agents' counsel should have, out of an abundance of caution, included Allstate's counsel on the February 9, 2016 confirmation letter, we decline to dismiss a substantive claim based on a non-prejudicial procedural technicality made while the Clerk of Court transferred the case upon Judge Buckwalter's retirement.

[31] No. 01-7042.

[32] *Romero v. Allstate Ins. Co.*, 3 F. Supp. 3d 313 (E.D. Pa. 2014).

[33] *EEOC v. Allstate Ins. Co.*, 778 F.3d 444 (3d Cir. 2015).

[34] (ECF Doc. No. 869, at 4 (emphasis in original).)

[35] Allstate argues Judge Fullam's June 20, 2007 Order vacated the March 2004 grant of summary judgment on the counterclaims. It appears to be mistaken. In the June 2007 Order, Judge Fullam vacated his 2004 Order only to the extent it declared the Releases voidable. ECF Doc. No. 183, at 2.)

[36] Allstate originally moved to dismiss *Romero III* in 2005, but the agents mooted its motion by filing an amended complaint. Based upon a stipulation of the parties, Judge Buckwalter stayed all proceedings in *Romero III* beginning on April 8, 2010, pending the resolution of the validity of the Release to be litigated in *Romero I*. The stay remained in effect until the most recent filing of the Consolidated Complaint, at which time the *Romero III* Plaintiffs included their claims. As Allstate never had the opportunity to litigate the dismissal of these claims prior to this time, and as the agents fully briefed the issue in their response to the Motion to Dismiss, we review the merits.

[37] 548 U.S. 53 (2006).

[38] *Id.* at 57.

[39] *Id.*

[40] No. 06-1390, 2007 WL 3147038, at *12 (W.D. Pa. Oct. 25, 2007).

[41] *Id.* at *1.

[42] *Id.* at *2.

[43] *Id.* at *11.

[44] *Id.* at *12 n.25 (quotations omitted; alterations and emphasis in original).

[45] No. 14-1115, 2015 WL 540155 (W.D. Pa. Feb. 10, 2015).

[46] *Id.* at *1.

[47] *Id.* at *6.

[48] 519 F. Supp. 2d 765, 781 (N.D. Ill. 2007). *Ergo* held "the only circumstances in which the filing of a compulsory counterclaim might constitute retaliation is where the counterclaim is totally baseless." *Id.* at 787. Courts within the Seventh Circuit, however, have "adopted a unique presumption against finding litigation conduct to be retaliatory." *Spencer v. Int'l Shoppes, Inc.,* 902 F. Supp. 2d 287, 289 (E.D. N.Y. 2012) (discussing *Ergo*).

[49] *Id.* at *8 (citing *Burlington Northern*, at 2408–09).

[50] No.15-5474, 2016 WL 1298973 (E.D. Pa. Apr. 4, 2016).

25

[51] *Id.* at *2.

[52] *Id.* at *5.

[53] *Id.* at *7.

[54] *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

[55] *Id.*

[56] *Id.* Numerous other cases outside of the Third Circuit have similarly declined to dismiss retaliation claims asserting that a counterclaim is retaliatory in nature. *See, e.g., Carr v. TransCanada USA Servs., Inc.*, No. Civ.A.14-1084, 2014 WL 6977651, at *2–3 (M.D. Tenn. Dec. 8, 2014) (citing cases and noting counterclaims brought by employers after a former employee files charges of discrimination may constitute retaliation where there are factual allegations showing that the counterclaims were filed in bad faith or with a retaliatory motive); *Spencer v. Int'l Shoppes, Inc.*, 902 F. Supp. 2d 287, 296–97 (E.D.N.Y. 2012) (declining to grant summary judgment on claim for retaliation based on state court litigation filed by the defendants against the plaintiff because a question of fact remained as to whether the damages sought in the state court suit were designed to deter the plaintiff from pursuing his discrimination claim); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472–73 (S.D.N.Y. 2008) (permitting retaliation claim to proceed in an FLSA action where the court found the counterclaims to be "completely baseless" and made in bad faith; *Orr v. James D. Julia, Inc.*, No. Civ.A.07-51, 2008 WL 2605569, at *16 (D. Me. June 27, 2008) (holding the assertion of a claim in litigation can constitute unlawful retaliation, but remarking when a claim qualifies as a compulsory counterclaim, it is actionable as retaliation only if it is totally baseless).

[57] Allstate suggests counterclaims may not, as a matter of law, constitute retaliation. None of the cases they cite, however, undermine the great weight of authority holding to the contrary. For example, Allstate refers us to a case from the Northern District of Iowa where the court held "ordinarily, a counterclaim may not [constitute retaliation]." *Earl v. Electro-Coatings of Iowa, Inc.*, No. Civ.A.02-0042, 2002 WL 32172298, at *2 (N.D. Iowa Oct. 29, 2002). In so holding, the court reasoned a counterclaim is not "an employment-related action," a principle abrogated by the subsequent Supreme Court decision in *Burlington Northern* which held "the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace." *Burlington Northern*, 548 U.S. at 57. Allstate also relies heavily on a Southern District of New York case to argue courts "have definitively held that an employer's post-termination counterclaim is not actionable retaliation." (Defs.' Reply Br. 14 (citing *Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 311 (S.D.N.Y. 2015).) All of the jurisprudence cited as support is pre-*Burlington Northern* and rests on legal theories rejected by *Burlington-Northern*. *Id.* (citing *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528 (5th Cir. 2003); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998)).

[58] (ECF Doc. No. 864, ¶¶ 1055–62.)

[59] Allstate argues "it is not legally possible for Plaintiffs to demonstrate that Allstate's counterclaims were 'completely baseless.'" (Defs.' Mem. Supp. Mot. to Dismiss 24.)  In doing so, it relies on multiple cases in which the court found counterclaims were not retaliation under the ADEA because the defendant had a good-faith belief the claims were valid.  Here, the Consolidated Complaint permits the plausible inference the counterclaims were objectively baseless and not filed with any good faith belief in their merits.  Any argument regarding Allstate's actual belief regarding the legal viability of these counterclaims and its purpose for bringing them must await discovery.  *See Spencer*, 902 F. Supp. 2d at 296–97, 299 (holding courts evaluating retaliatory litigation should conduct a fact-specific inquiry into the employer's intent, and declining to grant summary judgment because of genuine issues of material fact).