IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENE R. ROMERO, et al., | : | |
| | : | NO. 01-3894 |
| Plaintiffs, | : | |
| | : | CONSOLIDATED WITH: |
| v. | : | Nos. 01-6764, 03-6872, 15-1017, 15-1049, |
| | : | 15-1190, 15-2602, 15-2961, 15-3047 |
| ALLSTATE INSURANCE COMPANY, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM OPINION**

This matter has been referred to this Court for discovery purposes by the Honorable Mark A. Kearney. Presently before the Court are Plaintiffs' objections to Defendants Allstate Insurance Company, the Allstate Corporation, the Agent Pension Plan, and the Administrative Committee's (collectively, "Allstate") Second Amended Phase 1 Privilege Log (the "Privilege Log"). Plaintiffs object to the Privilege Log arguing that Allstate has: (1) rewritten certain entries in an attempt to avoid the fiduciary exception to the attorney-client privilege; (2) withheld as privileged documents relating to litigation to which neither Allstate nor the participants in the ERISA plan at issue are parties; (3) raised claims of work product protection for certain documents in an untimely fashion; and (4) potentially waived the attorney-client privilege with respect to documents for which Allstate has listed the source or custodian of the document as "Allstate." As discussed herein, the Court will set forth legal principles and procedures to guide the parties toward resolution of issues (1) and (2) and will rule on issues (3) and (4).

I.  **LEGAL STANDARDS REGARDING THE FIDUCIARY EXCEPTION TO THE ATTORNEY-CLIENT PRIVLEGE IN ERISA CASES**

"The fiduciary exception stems from the principle that an ERISA fiduciary has an obligation 'to provide full and accurate information to the plan beneficiaries regarding the administration of the plan' including the obligation to 'make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan.'"  O'Blenis v. Nat'l Elevator Indus. Pension Plan, No. 2:13-CV-05842 SRC, 2015 WL 3866229, at *4 (D.N.J. June 18, 2015) (quoting In re Long Island Lighting Co., 129 F.3d 268, 271-72 (2d Cir. 1997) (citations omitted)).  This exception to the attorney-client privilege applies "because, in the fiduciary context, it is the beneficiary, rather than the trustee, who is the client for purposes of the attorney-client privilege."  Id. (quoting Wachtel v. Health Net, Inc., 482 F.3d 225, 232 (3d Cir. 2007) (internal quotation marks omitted)).  There are two circumstances to which the fiduciary exception does not apply: (1) the "settlor exception," under which "courts distinguish between fiduciary acts," which involve plan administration, and acts involving "adoption, modification, or termination of an employee benefit plan"; and (2) the "liability exception," which applies when "a fiduciary, seek[s] the advice of counsel for its own personal defense in contemplation of adversarial proceedings against its beneficiaries."  Wachtel, 482 F.3d at 233.  The justification for both exceptions is that a trustee should retain the attorney-client privilege "when its interests diverge sufficiently from those of the beneficiaries that the justifications for the fiduciary exception no longer outweigh the policy underlying the attorney-client privilege."  Id. at 234.  In that instance, "[t]he beneficiaries are no longer the real clients."  Id.

Under the settlor exception, when an employer "seeks legal counsel regarding 'plan design'—e.g., forming, amending or terminating an employee benefit plan—the employer is not

acting as a fiduciary." Engers v. AT&T, No. CIV. A. 98-3660 JLL, 2004 WL 5902865, at *2 (D.N.J. Mar. 9, 2004) (citing Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996)).  Thus, legal advice concerning the advisability and consequences of potential plan amendments relates to settlor functions; however, advice regarding administration of a plan once amended relates to fiduciary functions.  See Hill v. State St. Corp., No. 09-12146-GAO, 2013 WL 6909524, at *5 (D. Mass. Dec. 30, 2013); In re JP Morgan Cash Balance Litig., No. 06 CIV 0732 HB DFE, 2007 WL 1280623, at *2-3 (S.D.N.Y. Apr. 30, 2007); Baker v. Kingsley, No. 03 C 1750, 2007 WL 7302630, at *5 (N.D. Ill. Feb. 5, 2007).  Advice relating to "legal compliance, alternatives, or strategy [regarding the operation of the plan] is part of the ordinary business of a trust and a trustee, and such legal communications and advice permit no claim of privilege." Cobell v. Norton, 212 F.R.D. 24, 29 (D.D.C. 2002).  Advice relating to communications with employees about benefits under an amended plan relates to a fiduciary function, Varity Corp. v. Howell, 516 U.S. 489, 502-03 (1996), and consequently, such advice, including drafts of communications or edits regarding such drafts, is subject to the fiduciary exception.  Cottillion v. United Mining Co., 279 F.R.D. 290, 304, 307 (W.D. Pa. 2011); Baker, 2007 WL 7302630, at *4; Fischel v. Equitable Life Assurance, 191 F.R.D. 606, 610 (N.D. Cal. 2000).  When employers act both as settlors and as administrators, they are subject to the fiduciary exception only with respect to legal advice sought in performance of their obligations as plan administrator.  Engers, 2004 WL 5902865, at *5; see Curcio v. John Hancock Mut. Life Ins. Co., 3 F.3d 226, 234 n.10 (3d Cir. 1994).

The "liability exception" applies "where a plan fiduciary retains counsel in order to defend [himself or] herself against the plan beneficiaries (or the government acting in their stead)."  United States v. Mett, 178 F.3d 1058, 1064 (9th Cir. 1999); accord Wachtel, 482 F.3d at 233.  When a plan fiduciary retains counsel to advise it with respect to its own potential liability

to plan beneficiaries, "'the legal fiction of trustee as representative of the beneficiaries is dispelled, notwithstanding the fact that the legal advice may relate to the trustee's administration of the trust.'" Cottillion, 279 F.R.D. at 301 (quoting Tatum v. R.J. Reynolds Tobacco Co., 247 F.R.D. 488, 493 (M.D.N.C. 2008) (internal quotation marks omitted)). The applicability of the liability exception turns on "whether the communication related to plan administration or generalized concern for liability, as opposed to concern for the fiduciaries' liability as a result of a specific threat of litigation." Tatum, 247 F.R.D. at 498 (citing Black v. Bowes, No. 05 Civ. 108(GEL), 2006 WL 3771097, at *2-4 (S.D.N.Y. Dec. 21, 2006)). In making this determination, "the mere prospect of post-decisional litigation against the plan by a disappointed beneficiary" is inadequate to trigger the liability exception because that "generalized concern" exists whenever a plan denies a claim. Id. at 497; accord Klein v. Nw. Mut. Life Ins. Co., 806 F. Supp. 2d 1120, 1132 (S.D. Cal. 2011); see also Black, 2006 WL 3771097, at *3  (applying liability exception based on distinction between "legal advice regarding the legal liability of plan administrators in imminent or pending litigation, as opposed to advice concerning a general fear of liability or advice concerning plan administration itself"). When a trustee obtains legal advice regarding litigation to which it is not a party, whether that advice is privileged depends on the purpose for which the advice is sought. Advice related to how to amend the plan in light of potential rulings in such cases in order to comply with relevant legal requirements relates to fiduciary activity and is not privileged. Cobell, 212 F.R.D. at 29. To the extent such advice is related to the trustee's own potential liability given the threat of litigation against it, the advice is privileged. Tatum, 247 F.R.D. at 498.

Communications relating to advice concerning potential liability that may arise as the result of potential plan amendments are privileged. Halbach v. Great-West Life and Annuity

Co., No. 4:05CV2399 ERW, 2006 WL 3803696, at *4 (E.D. Mo. Nov. 21, 2006); Fischel, 191 F.R.D. at 609-10; Hudson v. General Dynamics, 73 F. Supp. 2d 201, 203 (D. Conn. 1999). In contrast, advice relating to the administration of the plan once the amendment is adopted relates to fiduciary activities and is not privileged. See Hill, 2013 WL 6909524, at *5; In re JP Morgan Cash Balance Litig., 2007 WL 1280623, at *2-3; Baker, 2007 WL 1280623, at *5.

The Privilege Log contains several entries reflecting potential issues relating to application of the attorney-client privilege to tax-related documents. The formation of a plan as a tax-qualified plan is a settlor activity and thus, is not subject to the fiduciary exception. However, "implementation of this settlor decision [for the plan to be tax-qualified] may require plan fiduciaries to undertake activities relating to maintaining the plan's tax-qualified status, [which] might include drafting plan amendments required by changes in the tax law, nondiscrimination testing, and requesting IRS determination letters." DOL Advisory Opinion 2001-01A (Jan. 18, 2001), *available at* https://www.dol.gov/ebsa/programs/ori/advisory2001/2001-01A.htm. Such implementation activities are fiduciary functions. See id. However, analyzing options for potential plan amendments to comply with tax-qualified requirements is a settlor function to which the attorney-client privilege applies. See id.

## II.     DISCUSSION

### A.   Issues (1) and (2)

Plaintiffs initially challenged certain entries on Allstate's previous privilege log on the grounds that they believed the descriptions given suggested that the documents were covered by the fiduciary exception to the attorney-client privilege. Letter of Coleen Meehan, Esquire to the Honorable Marilyn Heffley (October 18, 2016) (Doc. No. 940-1) ("Meehan Letter") at 2-3. They assert that when Allstate submitted its current Privilege Log, it substantially altered the

descriptions of the documents to reflect that the legal advice the documents contained was given in relation to proposed plan amendments and, therefore, that the documents were privileged. Id. Although Plaintiffs find the changes in the descriptions of the documents in question suspicious, Allstate has represented that it clarified the entries to show that the legal advice they described was given in relation to evaluating potential plan amendments. Letter of Jordan M. Heinz, Esquire to the Honorable Marilyn Heffley at 6 (October 24, 2016) (Doc. No. 941-2) ("Heinz Letter"). In the example Plaintiffs cite to in their submission, the document description contained in the prior log was as follows:

> Confidential letter requesting legal advice from outside counsel J. Wald regarding Internal Revenue Code provisions, Exclusive Agent program and benefits.

Meehan Letter at 3. After Plaintiffs raised their claim that the documents fell within the fiduciary exception, Allstate agreed to provide additional information clarifying the nature of the legal advice sought. Heinz Letter at 3. In the Privilege Log, Allstate changed the description to the following:

> Confidential letter requesting legal advice from outside counsel J. Wald regarding proposed amendments to Agents Pension Plan, Allstate Retirement Plan, and Savings and Profit Sharing Fund of Sears Employees.

Id.

Allstate has provided a plausible explanation for its change in the description of this document and other similar changes to other document descriptions. The description "legal advice . . . regarding Internal Revenue Code provisions, Exclusive Agent program and benefits" is not necessarily inconsistent with the description indicating that Allstate was receiving legal advice on those subjects with respect to amendments it was considering making to the benefits plan. While it is understandable why Plaintiffs might be suspicious of changes in description that clearly reflect the challenged documents are privileged, the ultimate issue is whether or not

6

the revised descriptions are accurate. That is whether, under the legal principles set forth above, the advice related to the advisability and consequences of proposed plan amendments or related to implementation of amendments already made. As one court recently stated, "this Court [does not] believe it is appropriate to order the Defendant[s] to submit these redacted materials for *in camera* inspection simply because the Plaintiff does not trust counsel's representations. In the absence of any evidence that the statements made before this Court are fraudulent, we shall accept them as true." Lane v. State Farm Mut. Auto. Ins. Co., No. 3:14·CV·01045, 2015 WL 2380009, at *3 (M.D. Pa. May 18, 2015). Accepting that the revisions were made in good faith, however, does not resolve whether the revised descriptions provide adequate information to allow Plaintiffs to evaluate whether the documents themselves are privileged.

Here, the parties' submissions reference only the broadest general rules applicable to the fiduciary exception and the settlor and liability exceptions to that exception. It is plain from a review of the Privilege Log that some of the disputed documents are subject to the fiduciary exception, such as documents reflecting legal advice regarding communications with beneficiaries. The submissions and the descriptions in the Privilege Log alone do not provide sufficient information to allow this Court to fully resolve the Plaintiffs' objections. However, a good-faith application of the legal principles addressed above should permit the parties to significantly narrow the list of disputed documents. For these reasons, the parties are directed to proceed as follows. Allstate should review the documents for which Plaintiffs have challenged the applicability of the attorney-client privilege in light of the legal principles set forth in Section I, supra. To the extent that review indicates that some of the documents are not privileged, Allstate should produce them. The parties shall then meet and confer regarding the documents that remain in dispute and attempt to resolve any remaining disputes. To facilitate that meeting,

Allstate shall provide Plaintiffs with information regarding the disputed documents that is sufficiently specific to allow the Plaintiffs to determine the factual and legal bases on which Allstate asserts the documents are privileged.[1]  Should there remain a dispute regarding the legal significance of the circumstances and nature of the legal advice at issue as Allstate represents them to be, the Court will address the issue at that time, including the possibility of in camera review.

### B. Issue (3)

Plaintiffs contend that Allstate has waived its right to assert work product protection as to "at least 20 entries" in its most recent Privilege Log by failing to assert it in two earlier versions of the log.  Meehan Letter at 7.  Given the voluminous document production in these consolidated actions and the scope of Allstate's Privilege Log, the Court does not find that Allstate's delay in asserting work product protection regarding a relatively small number of documents warrants the ultimate sanction of waiver.  Accordingly, Plaintiffs' request that work product protection be deemed waived is denied.

### C. Issue (4)

Plaintiffs also argue that documents for which the source is listed only as "Allstate" may have lost their privileged status on the ground that Allstate may have disclosed them to employees who did not need to access them.  Meehan Letter at 7-8 (citing SmithKline Beecham Corp. v. Apotex Corp., 232 F.R.D. 467, 476 (E.D. Pa. 2005) (holding that certain documents for which the recipients were unknown were not privileged)).  Here, the authors and recipients of the

---

[1]  Plaintiffs are correct when they complain that the notation, "[d]ocument does not involve plan administration or fiduciary functions" provides no support or explanation for Allstate's privilege claim.  Allstate should revisit each document for which it has made that statement and ensure that it provides Plaintiffs with a sufficiently specific description of the factual basis for the assertion that a document does not involve fiduciary functions to enable Plaintiffs to determine whether they have a basis for disputing the privilege claim.

documents in question are known and provide ample basis for determining the applicability of privilege. Allstate has explained that the custodians of the documents are not known because no record of them was made when the documents initially were produced in 2000-2002. Plaintiffs' assertion that the documents may have been circulated widely enough to waive the privilege is nothing more than conjecture. In light of the scope of these consolidated cases and the passage of time since the initial production, this speculative possibility does not justify a waiver of the privilege. An appropriate Order follows.

Dated: November 4, 2016

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE