**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GENE R. ROMERO,** *et al.,* | : | |
| | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 01-3894** |
| | : | |
| | : | **CONSOLIDATED WITH** |
| **ALLSTATE  INSURANCE COMPANY,** | : | |
| *et al.,* | : | **NO. 01-6764 (Romero II)** |
| | : | **NO. 03-6872 (Romero III)** |
| **Defendants.** | : | **NO. 15-1017 (McLaughlin)** |
| | : | **NO. 15-1049 (Abell)** |
| | : | **NO. 15-1190 (Harris)** |
| | : | **NO. 15-2602 (Tabor)** |
| | : | **NO. 15-2961 (Siegfried)** |
| | : | **NO. 15-3047 (Anzivine)** |

<u>**MEMORANDUM**</u>

**KEARNEY, J.**                                                  **November 22, 2016**

Employees participating in an employer pension plan providing an early retirement subsidy "beef-up" have the right to grow into their pension benefit if they do not meet the terms of the subsidy when the employer stops providing this benefit prospectively. Employers phasing out the early retirement subsidy may try to provide some form of guarantee for the amount of the owed "beef-up" to their plan participants. When disputed, we analyze the pension plan as a contract and enforce the specified rights. Today, we face widely divergent theories developed by skilled counsel over fifteen years of litigation on whether the employer's guarantee protected the early retirement "beef-up" benefit.  Given diametrically opposed positions, we must proceed to trial to hear from a sampling of plaintiffs and other fact witnesses describing how the employer's phase-out program worked.  We can then determine if the employer improperly cutback the early

retirement "beef-up" subsidy. We also require fact finding on whether almost all of the 500 plaintiffs, notwithstanding being characterized as an independent contractor, remained an employee entitled to have their years of service after their employer characterized them as independent contractors credited to their early retirement benefit calculations.

We also find undisputed facts on two of the employees' claims requiring judgment as a matter of law.  For example, we dismiss as a matter of law the employees' claim the employer breached fiduciary duties by self-describing the legality of its actions leading some employees to elect being titled independent contractors and possibly remove themselves from the early retirement subsidy. We also find a 1993 amendment to a pension plan that defines the employees qualified for the early retirement subsidy did not cutback on earlier obligations.

In the accompanying Order, we grant the employer's motion for summary judgment on a fiduciary duty claim, a pension cutback claim relating to a 1993 amendment to the early retirement subsidy and a time barred cutback claim from one insurance agent, but require the remaining issues be resolved by a fact finder.

## I.   Background[1]

Almost five hundred Allstate[2] insurance agents seek relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), and claims under many states' laws.[3] Plaintiffs are former employee Allstate insurance agents. They are participants in the Allstate Agents Pension Plan (the "Plan"), a defined benefit plan.[4]

The only issue today is whether Allstate's 1991 amendments of the Plan phasing out an early retirement subsidy and 1993 amendments excluding "exclusive agent independent contractors" from earning "service" toward eligibility for the subsidy violated ERISA's anti-

cutback provision. The other common ERISA issue is whether Allstate's Administrative Committee breached its fiduciary duty to retired agents who left Allstate rather than converting to an "exclusive agent independent contractor" ("EA") based on an alleged misrepresentation an exclusive agent could not accrue additional benefits or earn additional service under the Plan. [5]

### A. Allstate's January 1, 1989 Plan included an early retirement subsidy known as the "beef-up."

Before 1990, Allstate sold its insurance products through its employee "Agents" employed under two form employment contracts.[6] All Agents automatically became Plan participants after completing one full year of "Credited Service" and other eligibility requirements.[7] Membership in the Plan "is mandatory and automatic" for all eligible Agents and "[e]very Agent who becomes a member in the Plan shall continue to be a member as long as he continues as an Agent."[8] Typical of benefit plans, an administrative committee consisting of a chairman and at least two other members appointed by the pension committee of Allstate's board of directors administered the Plan.[9] Allstate's Administrative Committee is the "named fiduciary" under ERISA with the "exclusive right to interpret the terms and provisions of the Plan and to determine any and all questions arising" under the Plan.[10]

Allstate's 1989 Plan provided an early retirement subsidy for eligible Agents referred to as the "beef-up." We now face disputes on many of the terms in Section 2.3 of the 1989 Plan providing the beef-up:

> If an Agent shall retire prior to his Normal Retirement Date after having attained age 55 and, at his actual retirement date, having completed 20 years of continuous service with the Employers and controlled group members, and in accordance with the Company's voluntary early retirement policy, he shall become entitled to receive Retirement Pay commencing of the first day of the month next following his actual retirement date.[11]

3

Assuming an Agent's eligibility for the early retirement subsidy, his "Retirement Pay" is "beefed-up" to include years of pay (based on his last year of pay) he would have received had he worked to age 63.[12] So, for example, an Agent who retired at age 55 with 20 years of service would receive eight years of "beef-up" added into the calculation of his "Retirement Pay."[13] The terms "retire," "continuous service," and "voluntary early retirement policy" contained in § 2.3(A) are not defined by the 1989 Plan.

### B. Allstate introduces an "Exclusive Agent independent contractor" program and determines "Exclusive Agents" do not "retire" for purposes of an early retirement Beef-Up subsidy.

In 1990, Allstate introduced its Exclusive Agent ("EA") program allowing an employee Allstate Agent to enter into a new agent contract as "an independent contractor for all purposes and not an employee of the Company."[14] Allstate contends an Agent operating as an independent contractor under an EA contract is not an employee and, consequently, not an "Agent" for purposes of the Plan.[15] An EA could not accrue additional amounts of, or eligibility for, benefits under the Plan including earning service toward the 20-year service requirement for the beef-up subsidy.[16]

Upon introducing the EA program, Allstate's Administrative Committee determined Agents who converted to an EA could not "retire" under the beef-up subsidy for early retirees under §2.3(A) of the Plan.[17] The term "retire" is not defined by the Plan. The Administrative Committee, authorized to interpret Plan terms and provisions, reasoned unless the Plan required complete separation from service with Allstate so as to "retire," the Internal Revenue Service could potentially disqualify the Plan. There are no documents evidencing the Administrative Committee's determination in 1990. We do know by September 14, 1992, the Administrative Committee "codified" its interpretation of the terms "retire" and "retirement" through

"Administrative Rule 28" purporting to clarify, *inter alia*, an Agent shall be considered to have retired for purposes of the early retirement subsidy "only if he has incurred both a termination of employment and a separation from the service" and an Agent who converts to EA status "has incurred a termination of employment, but has not incurred a separation of service."   "Such an Agent shall not be considered to have retired for purposes of" the early retirement subsidy and instead is entitled to a pension benefit before the normal retirement age, but without the "beef-up" subsidy.[18]

### C.   Allstate phases out the early retirement beef-up subsidy.

On November 15, 1991, the Pension Committee adopted "formal Plan language" retroactive to January 1, 1989 ("1991 Amendments").[19] The 1991 Amendments: (1) changed the benefit formula to eliminate the Social Security offset and applied a straight 2% of compensation per year of service calculation; (2) increased the normal retirement age from 63 to 65; and (3) prospectively phased out the beef-up subsidy.[20]   Our issue is the phase out of the beef-up subsidy.

For benefits accrued after the effective date of the Plan amendment, January 1, 1989, "Agents" who retired before their normal retirement date, having reached age 55 with 20 years of service with Allstate, are eligible for beef-up to the earlier of age 63 or December 31, 1999.[21]

The 1991 Amendments included a Special Minimum Benefit Provision (also referred to as the "Voluntary Early Retirement guarantee" or "VER guarantee") which Allstate claims protects participants' beef-up subsidy accrued before the effective date of January 1, 1989.[22]  The Special Minimum Benefit Provision provided:

> In no event shall the amount of such Retirement Allowance be less than the Agent's Early Retirement Benefit, computed under the terms of the Plan as in effect on December 31, 1988 as though the

Agent had retired on that date, but commencing at his Early Retirement Date.[23]

Allstate asserts this Special Minimum Benefit Provision guaranteed a minimum beef-up determined as though the participant retired early as of December 31, 1988 even if the participant is not yet eligible for early retirement.[24] The Special Minimum Benefit Provision worked as follows: Agents who are participants as of December 31, 1988 and who subsequently took an early retirement under § 2.3 would receive the greater of (1) the early retirement benefit calculated on the participant's actual date of retirement under the terms of the amended Plan or (2) the early retirement benefit calculated as though the participant retired on December 31, 1988 under the terms of the pre-amended Plan.[25] Allstate characterizes this as a "safe harbor provision" ensuring a participant who satisfied the Plan's pre-amendment conditions for early retirement either before or after amendment would never get less than the amount of benefits he would have received upon early retirement on December 31, 1988.[26] Plaintiffs dispute the effect of the Special Minimum Benefit Provision, asserting it did not protect against the phase out of the beef-up subsidy.[27]

**D.  In 1994, Allstate re-adopts the 1991 Amendments as a "precautionary measure."**

Sometime in 1994, Allstate's Pension Committee "re-adopted" the 1991 Amendments as a "precautionary measure" in response to the then-pending *Scott* litigation in the United States District Court for the Middle District of Florida.[28] In the *Scott* litigation, several plaintiffs challenged the retroactive application of the 1991 Amendments changing the Plan's benefit formula and normal retirement age.[29] Allstate contends it "could not know for certain" whether the district court in *Scott* would find the 1991 Amendments properly retroactive, so its Pension Committee re-adopted the Amendments to ensure compliance with tax law.[30] Allstate contends the court of appeals later affirmed the district court's decision in *Scott* "approving" Allstate's

amendment of the Plan (albeit not relating to the beef-up), obviating the need for the 1994 re-adoption of the 1991 Amendments, and the 1994 Amendments made no change to the Plan.[31] Plaintiffs dispute the relevance of the *Scott* case because it did not involve the phase out of the beef-up.

### E.  Allstate's "Preparing for the Future" Program

In November 1999, Allstate announced its "Preparing for the Future" Program.[32]  Under this Program, effective July 1, 2000, Allstate terminated all employee agents who had not previously converted to EA status, forcing them to: convert to EA status; leave Allstate by selling their agency; or, take a severance arrangement.[33]

### F.  The Agents sued for, among other things, ERISA cutback violations and breach of fiduciary duty.

In 2001, the Agents sued Allstate. We now face a somewhat unmanageable collection of 498 plaintiffs from at least 42 states with individual claims but who also share a common issue challenging Allstate's conduct under ERISA and the ADEA.  To efficiently address both the common and individual issues, we required a consolidated complaint earlier this year. On the anti-cutback claims, some unidentified Plaintiffs contend Allstate's Plan amendments phasing out and eliminating the beef-up, an accrued benefit under ERISA (the "Beef-Up claim"), and limiting the term "Credited Service" to exclude those agents who converted to EA (the "Credited Service" claim), violate the anti-cutback prohibitions of §204(g) of ERISA, 29 U.S.C. §1054(g). Unidentified Plaintiffs on the Credited Service claim alternatively allege they remained employees under the governing control test and we should set aside the "independent contractor" title.[34]  On the breach of fiduciary duty claim, another group of presently unidentified Plaintiffs contend Allstate misrepresented they would be "independent contractors" and unable to accumulate additional service in violation of §404(a) of ERISA, 29 U.S.C. §1104(a).

## II.  Analysis

Allstate moves for summary judgment on Plaintiffs' ERISA anti-cutback claims and breach of fiduciary duty claim. Applying the well-settled summary judgment standard,[35] we grant summary judgment for Allstate on the breach of fiduciary duty claim as we do not find Allstate breached a fiduciary duty by fully disclosing its legal position. Plaintiffs disagree with Allstate's legal position but we do not see how Allstate's position breaches a fiduciary duty.

We deny summary judgment for Allstate on the Beef-Up claim. We find Plaintiffs "converted" to EA status cannot succeed as a matter of law on the Credited Service claim but may later argue, on a case by case basis, they remained employees, and not independent contractors, under the law. As a result, they may succeed at a later proceeding in showing they remained employees entitled to have their years of service credited to their subsidy.

### A.  ERISA's anti-cutback rule.

ERISA is a remedial statute and "should be liberally construed in favor of protecting the participants in employee benefit plans."[36] Our Court of Appeals consistently recognizes protection of retirement benefits "reflects the underlying policy goals of ERISA," and "Congress's chief purpose in enacting the statute was to ensure that workers receive promised pension benefits on retirement."[37] In 1984, Congress amended ERISA by adding §204(g)(2) to protect early retirement benefits and retirement-type subsidies from reduction or elimination by plan amendment. Section 204(g), known as the anti-cutback rule, provides in relevant part:

> (1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan  . . .
>
> (2) For purposes of paragraph (1), a plan amendment which has the effect of – (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or (B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued

benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy. . . .[38]

To state a claim for a violation of the anti-cutback rule, Plaintiffs must show (1) a plan amendment and (2) the amendment decreased an accrued benefit.[39] Our Court of Appeals takes a broad view in determining what constitutes an "amendment" to a pension plan so as "to protect pension recipients."[40] A plan administrator's "erroneous interpretation of a plan provision" resulting in an improper denial of benefits constitutes an "amendment" for purposes of §204(g).[41]

Under the law of this Circuit, "[t]here is no question but that a standard early retirement benefit, provided exclusively upon the satisfaction of certain age and/or service requirements, is an accrued benefit" protected by §204(g).[42] The anti-cutback rule protects participants who satisfy - *either before or after the amendment* - the pre-amendment conditions for the benefit. This means a participant must be permitted to "grow into" the early retirement benefit; the anti-cutback rule protects the benefit as long as an employee satisfies, or will be able to satisfy, the eligibility requirements of the early retirement benefit in effect prior to the amendment.[43]

The anti-cutback rule does not mean, however, the Plan could never be amended. It is well-settled "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate" both welfare and pension plans.[44] When employers or plan sponsors modify or terminate a plan, they do not act as fiduciaries and, therefore, cannot breach a fiduciary duty under ERISA.[45] While a plan sponsor may eliminate prospectively an early retirement benefit by amendment, it cannot "adversely affect that portion of an *early retirement benefit* that already accrued to *a plan participant who satisfied the pre-amendment conditions for the benefit either before or after the amendment.*"[46] Our Court of Appeals is clear the legislative history of § 204(g) anti-cutback rule "is consistent with our precedent and reveals

9

Congress' intent that section 204(g) protect only those benefits – whether classified as early retirement benefits or retirement-type subsidies - for which a participant meets the plan requirements." Against this backdrop we examine whether Allstate's amendments eliminating the beef-up provision and modifying the definition of "Credited Service" violates the anti-cutback rule.

### B. Plaintiffs may proceed on one of two anti-cutback claims.

The anti-cutback claims involved two groups of Allstate agents.  Plaintiffs in the Beef-Up claim are those who remained in the service of Allstate as employee agents after December 31, 1991 and who had not attained the age of 55 as of December 31, 1991.[47] These Plaintiffs claim the 1991 Amendment phasing out, and then eliminating, the beef-up as of December 31, 1999 constitutes an impermissible cutback to an accrued benefit.

Plaintiffs in the Credited Service claim are those who, because of the "forced conversion," had less than 20 years of continuous service as of July 1, 2000 when Allstate terminated their employment contracts.[48] These Plaintiffs contend Allstate's 1993 Amendment narrowing the definition of "Credited Service" excludes EA service for purposes of accumulating the 20-years of service requirement for the beef-up subsidy and thus violates the anti-cutback rule. These Plaintiffs also alternatively claim they are not independent contractors under the governing control factor test and they have been Allstate employees entitled to a credit for their years of service.

### 1. Fact questions preclude summary judgment on the Beef-Up claim, with the exception of Plaintiff Neal Brooks' time-barred claim.

There is no dispute the early retirement beef-up is an accrued benefit protected by § 204(g). Allstate readily admits an early retirement benefit subsidy like the beef-up is treated as an accrued benefit for purposes of the anti-cutback rule.[49] Allstate argues its 1991 Amendments

added a "Special Minimum Benefit Provision" protecting the beef-up subsidy, and did not decrease the accrued benefit for those Plaintiffs eligible for it. Plaintiffs dispute the Special Minimum Benefit Provision protected the beef-up subsidy and dispute Allstate's assertion of the number of Plaintiffs eligible for the benefit.[50]

We are unable to find an undisputed material fact concerning whether these Plaintiffs lost any benefits. Each party vigorously asserts a theory which results in diametrically opposed conclusions. We credit good lawyering possibly combined with our mortal inability to cut through lawyers' linguistics honed over 15 years of refining legal points. We need to hear from non-lawyer witnesses and evaluate evidence in the adversarial process. We cannot determine from our present record whether the 1991 Amendments phasing out the beef-up affected an impermissible cutback, and both sides present different calculations on how the Special Minimum Benefit Provision affected Plaintiffs. We do not understand how both versions could be true, but we also cannot summarily discount one version based on disputed facts. We find genuine issues of material fact, including how the Special Minimum Benefit Provision worked, whether it affected a decrease in the accrued benefit, and how it protected against a cutback after December 31, 1999.

Aside from the substantive merits of the Beef-Up claim, Allstate argues it is entitled to summary judgment because Plaintiffs' claims are barred by the six-year statute of limitations. ERISA does not contain a statute of limitations for non-fiduciary duty claims such as the anti-cutback claims. Our Court of Appeals applies Pennsylvania's general six-year statute of limitations.[51]

In *Romero*, our Court of Appeals addressed the question of when an ERISA non-fiduciary duty claim accrues for purposes of the limitations period.[52] Under the federal discovery

11

rule generally, "a claim will accrue when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim."[53] The federal discovery rule developed in the "more specific" context of an ERISA non-fiduciary duty claim, and provides such a claim "will accrue after a claim for benefits due under an ERISA plan has been made and formally denied."[54] Our Court of Appeals recognized, however, an ERISA non-fiduciary duty claim may "occasionally" accrue "before a formal application is made and/or before benefits are formally denied, such as 'when there has been a repudiation [of the benefits] by the fiduciary which is *clear* and made known to the beneficiar[y].'"[55] The court found the "clear repudiation" rule consistent with the federal discovery rule and, in the specific context of ERISA, "avoids a myriad of ills that would accompany any rule that required the denial of a formal application for benefits before a claim accrues."[56] Recognizing its previous application of the "clear repudiation" concept in ERISA cases, our Court of Appeals in *Romero* held: "when an ERISA plan is amended but the fact that the amendment actually affects a particular employee or group of employees cannot be known until some later event, the cause of action of the employee will not accrue until such time as the employee knew or should have known that the amendment has brought about a clear repudiation of certain rights that the employee believed he or she had under the plan."[57]

Our Court of Appeals rejected "[a] rule that unwaveringly ties the date of accrual to the date of amendment" as having the "undesirable effect of requiring plan participants and beneficiaries 'likely unfamiliar with the intricacies of pension plan formals and the technical requirements of ERISA, to become watchdogs over potential [p]lan errors and abuses.'"[58] Such a rule, our Court of Appeals found, "would impose an unfair duty of clairvoyance on employees, such as those in this case, who allege that an amendment's detrimental effect on them was

triggered not at the time of its adoption, but rather at some later time by a subsequent event" and undermine the "underlying purposes of ERISA and its disclosure requirements."[59]

Under the "clear repudiation" rule, a claim will accrue before a formal denial of benefits when there is a "repudiation of the benefits by the fiduciary which was *clear* and made known [to] the beneficiary."[60] Allstate points to four written notices it contends it sent to employees between 1989 and 1990 - before the 1991 Amendments - to alert them of imminent Plan changes.[61] A review of these notices reveals no "clear repudiation" of any accrued benefit; in fact, there is no mention about phasing out and eliminating the beef-up benefit. Allstate also points to a booklet it contends it sent to Plan participants following the Pension Committee's October 1990 resolution to amend the Plan, focusing on a paragraph stating "[T]he current "beef-up" feature in the Pension Plan will continue until 1999. Prior eligible compensation and service beef-up provisions will continue until 1) you turn age 63, or 2) December 31, 1999, whichever occurs first."[62] At oral argument, and in its briefing, Allstate highlights the 1992 and 1994 Summary Plan Descriptions ("SPD") and September 1992 communications to Plan participants.[63] The 1992 and 1994 SPDs contain similar language regarding the beef-up, and the September 1992 communications make reference to the phase out of the beef-up by the end of 1999.[64]

Allstate fails to demonstrate its cited notices "made known" the 1991 Amendments clearly repudiated the beef-up subsidy to all Plaintiffs. Allstate moves for summary judgment on statute of limitations grounds, an affirmative defense, and it has the burden of demonstrating there are no genuine issues of material fact.[65] Allstate has not established the Plaintiffs knew any specifics based its notices and SPDs. Allstate has not established whether all Plaintiffs received

notice of a clear repudiation. This issue may also await individual trials but we cannot bar all claims on this record.

There is one exception.  Allstate met its burden of showing the statute of limitations bars Plaintiff Neal Swank Brooks' beef-up claim. Brooks swears he understood in 1990 the phase out of the beef-up meant "That I would not be eligible for it."[66] We reviewed every other cited witness and Mr. Brooks is the only Agent knowing the effect of the beef-up. We recognize others may have received the notices, but we have no evidence Allstate "made known" the clear repudiation of the beef-up. We grant Allstate summary judgment as to Mr. Brooks' beef-up claim but no others as Allstate failed to meet its burden on summary judgment the statute of limitations bars Plaintiffs' claims.

**2.  The 1993 Amendments to the definition of "Credited Service" is not a cutback.**

Allstate again amended the Plan effective January 1, 1993 ("1993 Amendments").[67] The 1993 Amendments replaced the word "service" in various sections of the Plan with the words "employ" and "employment." The 1993 Amendments included changes to §2.1 "Upon Normal Retirement" and the definitions of the terms "Credited Service" and "Eligible Annual Compensation":

> ● § 2.1(A) An Agent who retires from the ~~service~~ <u>employ</u> of an Employer on his Normal Retirement Date shall become entitled to receive a Retirement Allowance. …[68]
>
> ● § 9.6 "Credited Service" means the completed years and months of an Agent's ~~service~~ <u>employment</u> with an Employer which shall be counted in determining his Retirement Allowance. All ~~service with~~ <u>of an Agent's employment</u> by an Employer <u>as an employee</u> shall count as Credited Service ….[69]
>
> ● § 9.7 Eligible Annual Compensation" means the total cash compensation paid to an Agent in the aggregate by all of the Employers <u>for services rendered as an employee</u> during any calendar year of employment. . . .[70]

In December 1996, Allstate amended the Plan's definition of "Agent" by adding: "The term 'Agent' shall not include: (i) any individual who is classified by an Employer as an independent contractor or as a leased employee, regardless of whether such individual is classified as a common law employee for any Employer for tax purposes; . . . ."[71]

Plaintiffs claim the 1993 Amendments limiting "Credited Service" to *employee* service, rather than "*all service* with an Employer" as defined in the 1989 Plan constitutes a cutback. Plaintiffs contend "all service," including service as an EA, must be counted toward earning credited service for beef-up eligibility and nothing in the 1989 Plan conditioned or limited "service" on service as an employee Agent.

Allstate seeks summary judgment arguing the Plan always required an Agent be an employee to participate in the Plan and the 1993 Amendments to the term "Credited Service" merely "reaffirmed" a rule that had always been in place.[72] To determine whether the amendment to the definition of "Credited Service" constitute a cutback, we must examine the pre-1993 Amendment conditions on the 1989 Plan.

Section 1 of the 1989 Plan provides eligibility requirements for an Agent's participation in the Plan; an Agent "shall become a member of the Plan" upon meeting certain requirements including "[h]e shall be in the *employ* of an *Employer as an Agent* . . . ."[73] The 1989 Plan defines "Credited Service" as "an *Agent*'s *service* with an *Employer* which shall be counted in determining his Retirement Pay. *All service* with an *Employer* shall count as Credited Service . . . ."[74] The term "Agent" is defined as "any *employee* classified as an Agent under the Company's human resources policy."[75] The term "Employer" is defined as "individually or collectively as the context may indicate, *the Company*, and any subsidiary or affiliated corporation which may become a party to this Plan . . . ."[76] The term "Company" is defined as

"Allstate Insurance Company . . . ."[77] The terms "employ" and "employee" are not defined by the Plan.

We find as a matter of law the 1993 Amendments did not cutback the beef-up subsidy. The 1989 Plan based an Agent's eligibility for participation in the Plan on, among other factors, being "in the *employ* of an Employer as *an Agent.*"  An "Agent" means "any *employee* who is classified as an Agent under the Company's human resource policy." Plaintiffs argue *all* service whether in the capacity of an employee or an independent contractor counts as "Credited Service."  But this ignores the Plan's requirement an Agent must be "in the employ" of Allstate to be eligible for participation in the first place, and the definition of "Agent" which means "any *employee*" Allstate's human resource policy classifies as an "Agent."[78]

It is important to remember the relief Plaintiffs seek here: "to have their EA service counted toward the years of service required for early retirement benefits." To do so, we must find the 1989 Plan permitted "any service" regardless of employment status to count as "Credited Service" toward earning 20 years of "continuous service" for eligibility for the beef-up subsidy in § 2.3(A). We disagree with Plaintiffs' assertion the 1989 Plan "undeniably counted as 'service' a participant's non-agent service with Allstate or any company within the 'controlled group' toward vesting and the 20-years required for early retirement benefits." Plaintiffs point to §2.3(A) and §2.4(B) as evidence the 1989 Plan counted not only service with Allstate as an agent but also all on-agent service with Allstate or any other company within the controlled group.[79]

We do not read §2.3(A) and §2.4(B) to count any service, without condition of employment, toward the 20-year requirement.  Section 2.3(A) speaks of an "Agent" retiring after reaching age 55 and having completed 20 years of "continuous service" to be eligible for the beef-up subsidy. As discussed above, we read the 1989 Plan's definition of "Agent" to first mean

an "employee." Section 2.4(B), providing an early retirement benefit without the beef-up subsidy, pertains to "an Agent entitled to deferred Retirement Pay under Section 2.4(A) . . . ."[80] Section 2.4(A)(1) in the 1989 Plan provides: "An Agent, *whose employment terminates* before Normal Retirement Date for reasons other than death, and who does not qualify for Early Retirement under the provisions of Section 2.3 hereof . . .."[81] Section 2.4(A)(2), providing the conditions for an Agent's qualification for deferred Retirement Pay under §2.4(A), refers to years of "Credited Service."

For example, in §2.4(A)(2)(i), an Agent with ten full years of "Credited Service" qualifies for deferred Retirement Pay under §2.4(A). The ten full years of Credited Service specifically provides: "for purposes of this subparagraph, Credited Service shall also include a period of employment with another corporation which qualifies as a member of a controlled group of corporations containing an Employer within the meaning of" the Internal Revenue Code, "if such period of employment with such controlled group member immediately precedes, or immediately follows, a period of service with an Employer."[82] Significantly, the language modifying the term "Credited Service" in §2.4(A)(2)(i) is not contained in §2.3. Similarly, an Agent with five full years of Credited Service "and his termination for service results from disability which . . . is deemed permanent or of prolonged duration and sufficient to render him incapable of *continuing in employment with his Employer*" may also qualify for deferred Retirement Pay in §2.4(A).[83] In construing the terms of the Plan, we apply principles of contract law.[84] We construe the Plan, like a contract, as a whole to give effect to all its provisions and render them consistent with each other, and conclude the 1989 Plan did not permit "any service" by an Agent who is not an employee to count as "Credited Service."

Plaintiffs' citation to *Adams v. Bowater, Inc.*[85] is distinguishable. There, Bowater amended its plan in connection with the sale of its subsidiary which employed plaintiffs. At the time of the sale, employees remained employed by the subsidiary and remained covered by the same plan in effect before the sale.[86] Bowater then amended its plan to no longer "count" continuous service at the subsidiary toward eligibility for the subsidized early retirement plan.[87] The court found a prohibited cutback of accrued benefits because the amendment prevented plaintiffs from "aging into their accrued benefits through continued service" with the subsidiary.[88] The court based its decision on the language of the pre-amended plan under which plaintiffs continued to qualify as participants and continued to qualify for continuous service credit, even after the sale.[89] There, the court found "it is precisely because of Plaintiffs' continued ability to meet the Plan's participant prerequisites that Bowater sought to cut off their accrued benefits by means of a plan amendment."[90] Here, there is nothing in the 1989 Plan permitting non-employee independent contractors from accruing "Credited Service." Because we do not read the language of the 1989 Plan to entitle non-employees to earn "Credited Service" towards the beef-up benefit, Plaintiffs did not suffer a cutback of a benefit.

### 3. Fact questions concerning treatment as employees or independent contractors preclude summary judgment in a later proceeding.

Our conclusion regarding the 1993 amendment does not end our inquiry as Plaintiffs raise fact issues as to whether they are employees of Allstate and not independent contractors.[91] Plaintiffs seek "to have their EA service counted toward the years of service required for early retirement benefits." While we find the 1993 Amendment is not a cutback, these Plaintiffs alternatively argue they remained *de facto* employees as a matter of law subject to applying ERISA's control test.

18

The Supreme Court applies a common-law test for determining who qualifies as an "employee" under ERISA.[92] The *Darden* test applies principles of the general common law of agency and considers "the hiring party's right to control the manner and means by which the product is accomplished" and includes factors such as: the skill required; source of the instrumentalities and tools; location of the work; duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; provision of employee benefits; and the tax treatment of the hired party.[93]

Allstate's reply is nothing in Plaintiffs' declarations is new or already rejected by other courts finding a handful of Allstate's EAs are independent contractors, not employees. We are aware of the cases from other courts around the country on this issue. While these cases appear foreboding to Plaintiffs' argument, we do not find those cases involving different plaintiffs contesting their status as independent contractors have preclusive effect here.[94] Under the summary judgment standard, considering the facts and reasonable inferences in the light most favorable to Plaintiffs, we cannot find Allstate is entitled to judgment as a matter of law.

### C.   We grant Allstate summary judgment on the fiduciary duty claim.

Plaintiffs allege Allstate and the Administrative Committee breached their fiduciary duty by misrepresenting the effect of converting to EA.  Plaintiffs in this claim are retired agents who allege they relied on Allstate's misrepresentations and retired from Allstate rather than converting to EA around the time of the "forced conversions" in November 1999.[95] Plaintiffs allege Allstate, in connection with the forced conversion, told employed agents they would no

longer be eligible to accumulate "service" for eligibility of early retirement benefits and beef-up early retirement benefits under the Plan when they converted to EA.[96]  Plaintiffs' allege this is materially false and misleading.[97]

To prove a breach of fiduciary duty based on misrepresentations, Plaintiffs must establish: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation by the defendant; (3) materiality of the misrepresentation; and (4) detrimental reliance on the misrepresentation.[98] The fiduciary duty requires "not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful."[99]  Thus, "when a fiduciary speaks, it must speak truthfully, and when it communicates with plan participants and beneficiaries it must convey complete and accurate information that is material to their circumstance."[100]

Allstate seeks summary judgment arguing Plaintiffs cannot prove a misrepresentation, the alleged misrepresentation is not material, and, to the extent Plaintiffs' breach of fiduciary duty claim is based on the Plan amendments themselves, Allstate acted as a plan sponsor not an ERISA fiduciary.  Plaintiffs argue their breach of fiduciary claim is dependent on the disposition of their anti-cutback claims, and Allstate's representation to employee agents EA service would not be counted towards eligibility for the beef-up benefit is an incorrect statement of the law.

We find there is no genuine issue of material fact the complained of statements are true and are not misrepresentations. Allstate did not breach fiduciary duties in representing its understanding of the law and Plaintiff cannot otherwise establish reliance or causation for breach of fiduciary duty.

### III.   Conclusion

In the accompanying order, we grant summary judgment in favor of Allstate on Plaintiffs' breach of fiduciary duty claim (Count X) and on the argument the 1993 Amendments to the term "Credited Service" constituted an impermissible ERISA cutback. We also grant summary judgment in favor of Allstate on Plaintiff Brooks' time-barred Beef-Up claim. We deny summary judgment, finding fact issues, on the remaining Plaintiffs' Beef-Up claim and, to the extent unidentified Plaintiffs claim they should receive credit for service as an employee regardless of their forced conversion to an EA contract, those Plaintiffs may proceed to an eventual individual resolution.

---

[1] We require parties filing a Fed. R. Civ. P. 56 motion to include a Statement of Undisputed Material Facts ("SUMF") as well as an appendix of exhibits or affidavits.  Defendants filed the SUMF at ECF Doc. No. 923 ("Allstate SUMF").  Defendants' Appendix is filed at ECF Doc. No. 921. Plaintiffs responded to Allstate's SUMF and, within that response, included additional facts in support of its opposition to Defendants' motion for summary judgment at ECF Doc. No. 933-1 ("Plaintiffs SUMF"). Plaintiffs supplemented Defendants' appendix at ECF Doc. No. 934. References to exhibits in the appendices shall be referred to by Bates number, for example, "Appx 1."

[2] Defendants Allstate Insurance Company, The Allstate Corporation, the Agents Pension Plan, and the Administrative Committee are collectively referred to as "Allstate."

[3] Consolidated Amended Complaint at ECF Doc. No. 864 ("Complaint"). Under our May 2, 2016 Scheduling Order (ECF Doc. No. 852), we now address Plaintiffs' ERISA's anti-cutback and breach of fiduciary duty claims (Counts VIII, IX, and X) in "Phase I" of this resolution. Absent class treatment, we cannot manage the wide variety of individual issues and defenses including enforcing releases in one case. Instead, we elected to address common federal law themes derived from Allstate's uniform conduct in the ERISA and ADEA claims and we will work with counsel as to options resolving the hundreds of individual claims and damages including through time trials, Rule 53 or transferring venue of the individual ADEA and state law issues to the district courts with proper venue after setting the ERISA law of the case on the common claims.  In Phase I of the common claims, only Plaintiffs' ERISA §204(g) anti-cutback claims and §404(a) breach of fiduciary duty claims are before us today.

[4] Allstate SUMF at ¶¶ 5, 11, 23.

[5] The Clerk of Court randomly assigned this matter to us in April 2016. (ECF Doc. No. 841). The procedural and factual background of this fifteen-year old case is lengthy and we only address the issues raised by Allstate's summary judgment motion. For further background, we refer to the Honorable Ronald L. Buckwalter's 2014 memorandum at *Romero v. Allstate Ins. Co.,* 1 F.Supp. 3d 319 (E.D. Pa. 2014) and our July 6, 2016 memorandum granting in part and denying in part Allstate's motion to dismiss the Consolidated Amended Complaint, 2016 WL 3654265.

[6] Allstate SUMF at ¶¶ 7-8.

[7] Allstate SUMF at ¶¶ 10, 33, 35.

[8] 1989 Plan at ¶¶ 1.1(B), 1.2 (Appx 56).

[9] 1989 Plan at § 4.1(A) (Appx 75); Allstate SUMF ¶¶ 25-26.

[10] 1989 Plan at § 4.1(A), (B) (Appx 75); Allstate SUMF ¶ 27.

[11] 1989 Plan at § 2.3 (Appx 62).

[12] 1989 Plan at §2.3(A) (Appx 62).

[13] Plaintiffs SUMF ¶¶ 55-56.

[14] *See* Allstate R3001S Exclusive Agency Agreement (Appx 158); Allstate SUMF ¶¶ 13-14. Plaintiffs SUMF ¶ 14. As shown, Plaintiffs claim they were not independent contractors as a matter of law but should be treated as employees. While courts may have ruled on whether one or more individual agents should be classified as employees or independent contractors, the parties have not shown us a class-wide ruling and find this issue is fact sensitive. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992). Unless the parties agree otherwise, this individualized determination will be resolved on an agent-by-agent basis along with the release enforceability, ADEA disparate impact and damages.

[15] Allstate SUMF ¶ 36. Plaintiffs converted to EA dispute their characterization as independent contractors.

[16] *Id.*

[17] Allstate SUMF ¶¶ 64-67.

[18] Plaintiffs SUMF ¶ 68; Administrative Rule 28 (Appx. 1225-1227).

[19] Allstate SUMF ¶¶ 107-109.

[20] Allstate SUMF ¶ 108; October 1990 Resolution (Appx1391-1394); 1991 Amendments (Appx 2128-2142).

[21] Allstate SUMF ¶ 111.

[22] Allstate SUMF ¶¶ 113-114.

[23] 1991 Amendments §2.3(C) (Appx 2133); 1992 Plan §2.3(c) (Appx 697).

[24] Allstate SUMF ¶¶ 117-118.

[25] Allstate SUMF ¶¶ 119-123.

[26] Allstate Brief at p. 8; Allstate SUMF ¶¶ 113-118.

[27] Plaintiffs SUMF ¶¶ 113-118.

[28] Allstate SUMF ¶¶142-145.  *Scott v. Admin. Comm. of the Allstate Agents Pension Plan*, No. 93-1419, 1995 WL 661096 (Sept. 19, 1995), *rev'd*, 113 F.3d 1193 (11th Cir. 1997).

[29] Allstate SUMF ¶ 142.

[30] Allstate SUMF ¶ 144.

[31] Allstate SUMF ¶ 145.

[32] Plaintiffs' Additional SUMF ¶ 2.

[33] *Id.*

[34]  Complaint at ¶¶ 5, 978, 1-33, 1041, 1042 and 1217.  Allstate denies these allegations (ECF Doc. No. 880).

[35] Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. US. Postal Serv*., 409 F.3d 584, 594 (3d Cir. 2005)

(citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

[36] *Einhorn v. M.L. Ruberton Const. Co.*, 632 F.3d 89, 98 (3d Cir. 2011) (quoting *IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 127 (3d Cir. 1986)).

[37] *Bellas v. CBS, Inc.*, 221 F.3d 517, 522 (3d Cir. 2000) (citations omitted).

[38] 29 U.S.C. §1054(g).

[39] *Battoni v. IBEW Local Union No. 102 Employee Pension Plan*, 594 F.3d 230, 233 (3d Cir. 2010).

[40] *Id.* at 234.

[41] *Cottillion v. United Refining Co.*, 781 F.3d 47, 58 (3d Cir. 2015) (quoting *Hein v. F.D.I.C.*, 88 F.3d 210, 216 (3d Cir. 1996)) (footnote omitted).

[42] *Cottillion,* 781 F.3d at 57-58 (quoting *Bellas*, 221 F.3d at 524) (footnote omitted).

[43] *Bellas*, 221 F.3d at 524; *see also, Alcantara v. Bakery and Confectionery Union and Industry Int'l Pension Fund Pension Plan*, 751 F.3d 71, 78 (2nd Cir. 2014); *Ahng v. Allsteel, Inc.*, 96 F.3d 1033, 1036-37 (7th Cir. 1996).   In reviewing an earlier Allsate motion to dismiss, Judge Buckwalter addressed the "grow into" requirement:

> In November 1991, and again in December 1994, however, Allstate decided to phase out and ultimately eliminate the "beefed up" early retirement benefits by December 31, 1999. While Plaintiffs may not have been eligible to receive the "beefed up" benefits until they completed twenty years of service with Allstate and reached the age of 55, that fact did not mean that their entitlement to those benefits had not accrued over time relative to their age and years of service. Thus, while Allstate could have phased out and eliminated those benefits for agents who had not yet begun working for Allstate as of the time of the November 1991 amendment, they could not deny Plaintiffs, who were employed before and remained employed after the amendments, the opportunity to "grow into" those benefits. Accordingly, Count VII survives Rule 12(b)(6) scrutiny.

*Tabor v. Allstate Ins. Co.*, No. 15-2602, 2015 WL 7756188, at *14 (E.D. Pa. Dec. 1, 2015).

[44] *Lockheed Corp. v. Spink*, 517 U.S. 882, 980 (1996) (extending the rule of *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) to pension benefit plans).   At oral argument,

Allstate relied heavily on *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999) and Model Amendment 4 to Internal Revenue Service Notice 88-131 to argue it could have abolished the Plan going forward. To the extent Allstate cites *Jacobson* for the general proposition ERISA permits an employer to amend a plan, such a proposition is not in dispute. As noted, under *Spink* and *Curtiss-Wright*, employers and plan sponsors may modify or terminate a plan. But *Jacobson* did not address the anti-cutback rule and the requirement a participant be permitted to "grow into" an accrued benefit. At oral argument, Allstate argued *Jacobson* and Model Amendment 4 draws a distinction between accrued benefits a participant may "grow into" and crediting the participants' service after the Plan amendments for purposes of new benefits to which participants were not entitled. As set forth, we find ERISA's anti-cutback rule clear; §204(g) protects participants who satisfy - *either before or after the amendment* - the pre-amendment conditions for the benefit. We do not read *Jacobson* or Model Amendment 4 as departing from the anti-cutback rule. The issue for trial will be whether Allstate's 1991 Amendments cutback the "Beef-up."

[45] *Id.* at 980-981.

[46] *Shaver v. Siemens Corp.*, 670 F.3d 462, 486 (3d Cir. 2012) (quoting *Bellas,* 221 F.3d at 524) (emphasis added).

[47] Complaint at ¶¶ 32; 1205-1208.

[48] Complaint at ¶¶ 1209-1218.

[49] Allstate's brief at 13 (ECF Doc. No. 917-1).

[50] Plaintiff SUMF ¶¶ 113-126; Plaintiff Additional SUMF ¶¶ 54-55.

[51] *Romero v. Allstate Corp.*, 404 F.3d 212, 220-21 (3d Cir. 2005) (citing *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1181-82 (3d Cir. 1992)).

[52] *Id.* at 222.

[53] *Id.*

[54] *Id.* (citations omitted).

[55] *Id.* at 223 (citation omitted).

[56] *Id.* (citations omitted).

[57] *Id.* at 223-24.

[58] *Id.* at 224 (citation omitted).

---

[59] *Id.* (citations omitted).

[60] *Dix v. Total Petrochemicals USA, Inc., Pension Plan*, 540 F.App'x 130, 133 (3d Cir. 2013) (quoting *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 210-21 (3d Cir. 2007)). In *Keen v. Lockheed Martin Corp.*, 486 F.Supp. 2d 481, 487 (E.D. Pa. 2007), Judge Brody applied *Romero* and *Miller*, finding the clear repudiation rule does not require a formal claim or denial of a claim to trigger the statute of limitations; it requires (1) a repudiation; (2) that is clear and made known to the beneficiary. *Keen* at 487 (citing *Miller*, 475 F.3d at 521). Consistent with *Romero*, Judge Brody identified "a plaintiff's knowledge or ability to know of his or her injury that triggers the statute of limitations, not the plaintiff's knowledge that the injury violates his or her legal rights." *Id.* at 488 (citing *Romero*, 404 F.3d at 215).

[61] Allstate SUMF ¶¶ 89-101.

[62] Allstate SUMF ¶¶ 86, 102-03.

[63] Allstate SUMF ¶¶ 132-135

[64] For example, a September 18, 1992 notice entitled "Amendment to Pension/Retirement Plan" summarizes Plan changes "governing the timing and payment of pension benefits to employees who terminate their employment relationship with the company, including those employees converting to EA independent contractor status" (Appx 1159). Later in the notice, in bold print, is the heading "The amendment – what's not changing . . ." In a bracketed sentence at the end of that paragraph, Allstate provides: "(The 'beef-up', which, under an earlier Plan amendment, will be phased out by the end of 1999, is an early retirement subsidy designed to encourage early retirement.)" (Appx 1159).

[65] *Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co.*, 311 F.3d 581, 585 (3d Cir. 2002); *U.S. ex rel. Bauchwitz v. Holloman*, 671 F.Supp.2d 674, 683 (E.D. Pa. 2009).

[66] *See* Allstate SUMF ¶ 137.

[67] Agents Pension Plan as Amended Effective January 1, 1993 (Appx 727-764); Allstate SUMF ¶ 162.

[68] 1993 Plan at § 2.1(A) (Appx 732).

[69] 1993 Plan at § 9.6 (Appx 759).

[70] 1993 Plan at § 9.7 (Appx 759-760).

[71] 1996 Plan (Appx 860).

[72] Because we find the 1993 Amendments do not improperly cutback "Beef-up" benefits, we do not address Allstate's additional arguments federal tax regulations prohibit EAs from accruing

additional benefits and even if EAs could earn additional service, they would still be ineligible for the beef-up because EAs do not "retire" from Allstate, a requirement for beef-up eligibility.

[73] 1989 Plan at § 1.1(B)(4) (Appx 56) (emphasis added).

[74] 1989 Plan at § 9.7 (Appx 89) (emphasis added).

[75] 1989 Plan at § 9.2 (Appx 88) (emphasis added).

[76] 1989 Plan at § 9.8 (Appx 89) (emphasis added).

[77] 1989 Plan at § 9.6 (Appx 89).

[78] We cannot find in the record, and the parties do not cite, any document purporting to be "the Company's human resource policy" classifying an employee as an "Agent." *See* Allstate SUMF ¶ 32.

[79] Plaintiffs Additional SUMF ¶ 21, citing §2.3(A) and §2.4(B) of 1989 Plan (Appx 62, 64).

[80] Appx 64.

[81] Appx 63 (emphasis added).

[82] Appx 64.

[83] *Id.* (emphasis added).

[84] *Romero*, 1 F.Supp. 3d at 365-66 (citing *Kemmerer v. ICI Ams., Inc.*, 70 F.3d 281, 288 (3d Cir. 1995)); *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 572 (3d Cir. 2006).

[85] 292 F.Supp.2d 191 (D. Me. 2003).

[86] *See Adams v. Bowater Inc.,* No. 00-12, 2003 WL 21262450, at *4 (D. Me. May 30, 2003).

[87] *Id.*

[88] *Id.* at *5.

[89] *Id.*

[90] *Id.*

[91] Plaintiffs Additional SUMF ¶¶ 58-70.

[92] *Darden*, 503 U.S. at 323.

[93] *Id.* at 323-324 (quoting *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751-52 (1989) (footnotes omitted).

[94] Allstate cites numerous cases from various federal courts challenging an EA's status as an independent contractor, including *Daskam v. Allstate Corp.*, No. 11-131, 2012 WL 4420069 (W.D. Wash. Sept. 24, 2012). Plaintiff Hal Daskam challenged his employment status in the context of an FLSA claim. Analyzing the "economic realty" of the relationship between Daskam and Allstate, the court applied six factors, noting evaluation of the facts and "ascertaining the true nature of a particular situation must be accomplished on a case-by-case basis." *Daskam*, at *1. The court found Daskam an independent contractor. *Id.* at *2-*3. We note a Harold E. Daskam of Puyallup, WA is a Plaintiff in the instant matter (*see* Complaint at ¶ 261). We are not presently aware of the preclusive impact of the September 24, 2012 order on this case but it will be addressed before individual proceedings.

[95] Complaint ¶¶ 1224-1230.

[96] Complaint ¶ 1226; *see also* Plaintiffs' Additional SUMF at ¶¶ 56-57; Booklet at Ex. 206 (Appx 4030).

[97] Complaint ¶ 1226.

[98] *Burstein v. Ret. Account Plan for Emp. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 384 (3d Cir. 2003).

[99] *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) (quoting *Bixler v. Central Pa. Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1300 (3d Cir. 1992)).

[100] *Id.* (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 442 (3d Cir. 1996)).