# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GENE R. ROMERO,** *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 01-3894** |
| | : | |
| | : | **CONSOLIDATED WITH** |
| **ALLSTATE INSURANCE COMPANY,** | : | |
| *et al.*, | : | **NO. 01-6764 (Romero II)** |
| | : | **NO. 03-6872 (Romero III)** |
| **Defendants.** | : | **NO. 15-1049 (Abell)** |
| | : | **NO. 15-2602 (Tabor)** |
| | : | **NO. 15-3047 (Anzivine)** |

## MEMORANDUM

**KEARNEY, J.**                                                                              **September 5, 2017**

Citizens petitioning the court for redress are immune from being sued for filing their claim unless it is objectively baseless. This well-established expansive principle arising from two Supreme Court cases decided over fifty years ago allows citizens to file claims and protect their interests in good faith. When, as here, we have no evidence withdrawn counterclaims based on state law theories are objectively baseless, the defendants are immune from liability arising the filing of their counterclaim. We must enter the accompanying Order granting the Defendants' motion for summary judgment dismissing Plaintiffs' claim the Defendants filed state law counterclaims in retaliation for Plaintiffs filing their complaint.

## I.     Undisputed Facts[1]

Allstate Insurance Company sells insurance and related products and services.[2] Craig A. Millison is a former Allstate insurance agent who worked for Allstate as a captive sales agent under an employee agreement for more than thirteen years.[3] In November 1999, Allstate

announced the Preparing for the Future Program reorganizing its sales force.[4] Under the Program, Allstate represented it would transition approximately 6,500 of its captive sales agents to one independent contractor exclusive agency program.[5]

Allstate told its agents they would have four options going forward.[6] First, agents could sign a release (the "Release") and continue as an Exclusive Agent independent contractor with no benefits or job security.[7] Second, agents could sign the Release, continue as an Exclusive Agent independent contractor for thirty days, and afterward they could sell their book of business to an Allstate-approved buyer.[8] Under the first and second options, agents had to agree to work for Allstate under independent contractor exclusive agent contracts.[9] Third, agents could sign the Release, leave Allstate, and receive an enhanced severance of a year's worth of salary.[10] Fourth, agents could leave Allstate without signing the Release and receive a base severance of up to thirteen weeks' commission.[11]

Under the Release, agents waived all claims relating to termination under their earlier employment agreements and their transition to Exclusive Agents under the Program:

> In return for the consideration that I am receiving under the Program, I hereby release, waive, and forever discharge Allstate Insurance Company, its agents, parent, subsidiaries, affiliates, employees, officers, shareholders, successors, assigns, benefit plans, plan administrators, representatives, trustees and plan agents ("Allstate"), from any and all liability, actions, charges, causes of action, demands, damages, entitlements or claims for relief or remuneration of any kind whatsoever, whether known or unknown, or whether previously asserted or unasserted, stated or unstated, arising out of, connected with, or related to, my employment and/or the termination of my employment and my R830 or R1500 Agent Agreement with Allstate, or my transition to independent contractor status, including, but not limited to, all matters in law, in equity, in contract, or in tort, or pursuant to statute, including any claim for age or other types of discrimination prohibited under the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Employee Retirement Income Security Act ("ERISA"), the Illinois

2

> Human Rights Act, and the West Virginia Human Rights Act as those acts have been amended, or any other federal, state, or local law or ordinance or the common law. I further agree that if any claim is made in my behalf with respect to any matter released and waived above, I hereby waive any rights I may have with respect thereto and agree not to take any payments or other benefits from such claim. I understand that this release and waiver does not apply to any future claims that may arise after I sign this Release or to any benefits to which I am entitled in accordance with any Allstate plan subject to ERISA by virtue of my employment with Allstate prior to my employment termination date.[12]

The Release acknowledged the agent both executed the Release voluntarily after having the opportunity to seek legal advice and understood its legal and binding effect.[13] The Release did not expressly contain a covenant not to sue. Allstate gave agents until June 2000 - six months - to decide their preferred option.[14]

On May 15, 2000, Mr. Millison signed the Release with Allstate, after which he served as an Exclusive Agent with Allstate from July 1, 2000 until 2004.[15] In exchange for signing the Release, Allstate paid Mr. Millison a $5,000 conversion bonus and forgave his office expense allowance of $136.95.[16] Despite Mr. Millison's representation by signing the Release he understood its legal and binding effect, he later testified when he signed the Release he "just knew that this had to be something that wasn't legal or binding."[17]

On August 1, 2001, twenty-seven Plaintiffs including Mr. Millison sued Allstate, alleging the Program violated the Age Discrimination in Employment Act ("ADEA")[18] and the Employee Retirement Income Security Act ("ERISA"),[19] and sought a declaratory judgment invalidating the Release.[20] On October 18, 2001, Plaintiffs filed an Amended Complaint adding two more Plaintiffs but retaining the core claims.[21] Plaintiffs alleged many agents executed the Release believing it to be unlawful and not having the effect of waiving their rights.[22]

Allstate pleaded the affirmative defense of release, arguing Mr. Millison's and most of

the remaining Plaintiffs' claims were barred.[23] Allstate also counterclaimed against Plaintiffs for unjust enrichment, fraud, negligent misrepresentation, and breach of the duty of good faith and fair dealing.[24] Allstate based its unjust enrichment counterclaim on Plaintiffs' retaining the benefits of signing the Release "[d]espite plaintiffs' breach of the release."[25] Allstate based its remaining counterclaims on Plaintiffs' purported representation they would not sue Allstate for the released claims.[26] Allstate based each of its counterclaims on state law.

In December 2003, twenty-five Plaintiffs filed a separate lawsuit alleging Allstate's counterclaims constituted unlawful retaliation under the ADEA and ERISA.[27] Years later, Plaintiffs filed a Second Amended Complaint.[28] In its Answer to the Second Amended Complaint, Allstate did not replead its counterclaims.[29] Following our May 5, 2016 Order consolidating the parties' lawsuits, Plaintiffs filed a Consolidated Amended Complaint maintaining their ADEA and ERISA retaliation claims in Counts XI and XII.[30] Allstate again did not file counterclaims. We are now preparing for two First Quarter 2018 trials on the individual claims for the agents domiciled in this District, including Mr. Millison who continued to proceed on his ADEA and ERISA retaliation claims.[31]

**II.   Analysis**

Allstate moves for partial summary judgment, arguing Mr. Millison's retaliation claims fail as a matter of law.[32] We agree and grant summary judgment in favor of Allstate and against Mr. Millison on the retaliation claims because Mr. Millison fails to meet his burden of showing Allstate's withdrawn counterclaims are objectively baseless.

In the 1960s, the Supreme Court decided two cases recognizing a First Amendment immunity to petition government entities including the courts, commonly referred to as *Noerr-Pennington* immunity.[33] Although the two decisions involved antitrust claims, the Supreme

4

Court and our court of appeals have extended *Noerr-Pennington* immunity to other contexts, including state law tort claims.[34] "The immunity conferred by the *Noerr–Pennington* doctrine embraces all forms of government petitioning, and expressly reaches the petitioning activity of filing, pursuing and participating in a civil lawsuit. Thus, '[a]s a general matter, ..., the filing of a lawsuit is itself petitioning conduct protected by the First Amendment and may not be the basis for liability under the *Noerr–Pennington* doctrine.'" [35]

But this immunity is not absolute. Under the *Noerr-Pennington* doctrine, individuals shed their immunity if the litigation is a sham.[36] The "sham" exception strips away immunity where the claim is (1) "objectively baseless," meaning "no reasonable litigant could realistically expect success on the merits," and (2) "subjectively motivated by an unlawful purpose."[37] As to the first element, a claim is objectively baseless if controlling case law clearly prohibits the claim.[38]

Allstate argues Mr. Millison's ADEA and ERISA retaliation claims based on its counterclaims should be dismissed because Mr. Millison cannot prove Allstate's 2001 counterclaims are a sham. The parties agree Mr. Millison has the burden of proving Allstate's counterclaims are a sham.[39]

### a. Allstate mischaracterizes its withdrawn counterclaims.

Mr. Millison correctly points out Allstate, in its briefing, mischaracterizes its counterclaims. Allstate's counterclaims for fraud, negligent misrepresentation, and breach of duty of good faith and fair dealing were predicated upon Mr. Millison's purported representation, in signing the Release, he would not sue Allstate for the released claims. Allstate's unjust enrichment counterclaim, however, appears to be predicated upon Mr. Millison's breach of the Release. In its briefing, however, Allstate describes its counterclaims as seeking "to recover the consideration Allstate provided Millison in exchange for a Release in the event that Millison

5

prevailed in his efforts to invalidate the release."[40] Allstate also describes its counterclaims as being based on Mr. Millison's misrepresentation the Release was "legal and binding."[41] Allstate is bound by its pleaded characterization of its counterclaims; it may not change the substance of its claims through briefing.[42]

### b. Mr. Millison fails to meet his burden of showing Allstate's counterclaims are objectively baseless.

Upon review of Allstate's pleaded characterization of its withdrawn counterclaims which are largely based on Ms. Millison's false representation he would not sue for the released claims, we find Mr. Millison fails to satisfy his burden Allstate's counterclaims are objectively baseless. We begin by noting Mr. Millison fails to cite case law specifically prohibiting Allstate's counterclaims. Nor does Mr. Millison identify which state's law applies to Allstate's state-law counterclaims. These deficiencies alone suggest Mr. Millison fails to meet his burden.

The thrust of Mr. Millison's arguments is Allstate's counterclaims are shams because they are based on his purported agreement or covenant not to sue Allstate, yet the rRelease, he contends, does not constitute a covenant not to sue. While we agree the Release does not expressly contain a covenant not to sue, Mr. Millison fails to demonstrate the Release does not *implicitly* contain a covenant not to sue.

### i. There is a nonfrivolous argument suggesting the Release includes a covenant not to sue.

Mr. Millison makes five core arguments. First, Mr. Millison argues the court of appeals for the Seventh Circuit in *Isbell v. Allstate Insurance Company* found the same Release we review today does not contain a covenant not to sue.[43] Despite this finding, the court in *Isbell* did not discuss the governing body of law requiring such a construction of the Release, and we are not bound by the Seventh Circuit's decision. The district court in *Isbell* construed the

Release as a covenant not to sue, which at least suggests Allstate's counterclaims might not be objectively baseless.[44]

While the Release does not expressly contain a covenant not to sue, we believe this omission does not end the analysis. There is persuasive authority suggesting a release may implicitly contain a covenant not to sue when the release relates to a future right. For example, Pennsylvania Supreme Court cited a treatise by contract law scholar Samuel Williston stating: "[T]here is no doubt in modern times that an attempted release of a future right must be construed as amounting at least to a covenant not to enforce the right whenever it arises."[45] Similarly, the Ohio and Georgia Court of Appeals explained a release could imply a covenant not to sue if the release "speaks in terms of a future or contingent claim."[46]

Mr. Millison's Release could be construed as releasing a future claim. His Release applies to claims related to Mr. Millison's termination as captive agent and transition to an independent contractor. Both of these events occurred *after* Mr. Millison signed the Release, meaning the Release had the practical effect of releasing future claims. Without deciding the ultimate question of whether the Release constituted a covenant not to sue for the released claims, we find there is at least a nonfrivolous argument the Release implicitly contained a covenant not to sue to enforce a future right. We cannot conclude no reasonable litigant could realistically expect success on the merits of Allstate's counterclaims.

### ii. Allstate did not admit its counterclaims are objectively baseless when it suggested Plaintiffs could challenge the validity of the Release.

Mr. Millison's second argument is Allstate admitted the Release did not bar him from suing Allstate. Although Allstate represented on several occasions the Release does not bar an agent from challenging its validity, this admission does not go so far as to constitute an admission its counterclaims are objectively baseless. To the extent the Release constitutes a

7

covenant not to sue, such an agreement would only prohibit an agent from suing for the claims purportedly released. It would not bar an agent from suing to challenge the Release's validity. As Judge Buckwalter found, "[t]he Release does not purport to bar claims challenging the validity of the Release itself."[47]

We reject Mr. Millison's third argument for the same reason. Mr. Millison argues EEOC regulations prohibited Allstate from precluding the agents from challenging the validity of the Release. But even assuming the regulations contain such a prohibition, Allstate does not argue the Release barred challenges to its validity. This argument is meritless.

### iii. Mr. Millison's remaining arguments lack merit.

Mr. Millison's fourth argument is Allstate's counterclaims "are not the type of claims courts allow to recover the consideration provided in exchange for a challenged release."[48] Mr. Millison appears to suggest the only appropriate claims in this context are for restitution, recoupment, or set-off. He fails, however, to cite applicable authority specifically prohibiting Allstate's counterclaims. While restitution, recoupment, or set-off may be appropriate counterclaims, we lack authority enabling us to conclude as a matter of law these are the only permissible claims in this context.

Mr. Millison's fifth argument is the case law cited by Allstate does not establish an objective basis. Even if this is true, this argument ignores the allocation of the burden of proof. While the cases cited by Allstate may not affirmatively demonstrate its counterclaims have an objective basis, it is Mr. Millison's burden to demonstrate Allstate's counterclaims are objectively baseless. He has failed to do so.

### III. Conclusion

In the accompanying Order, we grant Allstate's motion for summary judgment as to Mr. Millison's ADEA and ERISA retaliation claims based on Allstate's allegedly retaliatory state law counterclaims because Mr. Millison does not satisfy his burden of showing Allstate's withdrawn counterclaims are objectively baseless.

---

[1] Our Policies require a Statement of Undisputed Material Facts be filed in support of a Rule 56 motion, as well as an appendix of exhibits. Allstate filed its Statement of Undisputed Material Facts at ECF Doc. No. 1173. Allstate filed an appendix at ECF Doc. Nos. 1173-1 through 1173-52. Mr. Millison responded to Allstate's Statement of Undisputed Material Facts at ECF Doc. No. 1181. Mr. Millison added documents to the Appendix at ECF Doc. Nos. 1181-1 through 1181-45. Mr. Millison provided its own Statement of Additional Facts at ECF Doc. No. 1181 (starting on page 48). Allstate responded to Mr. Millison's Statement of Additional Facts at ECF Doc. No. 1191. References to the exhibits in the appendices shall be referred to by bates number, for example, "Appx. 1."

[2] ECF Doc. No. 1181 at ¶ 1.

[3] *Id.* at ¶¶ 3–4. The employee agreement is also referred to as an R1500 contract.

[4] Appx. 1202, at pp. 9:07–11:02.

[5] Appx. 811.

[6] Appx. 1202, at pp. 9:07–11:02. Mr. Millison disputes whether he had a free, meaningful, viable choice.

[7] Appx. 1202, at pp. 9:07–11:02; ECF Doc. No. 1181 at ¶ 10. Mr. Millison disputes Allstate's characterization of Exclusive Agents as independent contractors.

[8] Appx. 1202, at pp. 9:07–11:02; ECF Doc. No. 1181 at ¶ 11.

[9] Appx. 1097 at ¶ 19. This contract is also referred to as an R3001 agreement.

[10] Appx. 1202, at pp. 9:07–11:02.

[11] ECF Doc. No. 1181 at ¶ 13.

[12] Appx. 14.

[13] *Id.*

<sup>14</sup> ECF Doc. No. 1181 at ¶ 17.

<sup>15</sup> *Id.* at ¶¶ 4, 22.

<sup>16</sup> *Id.* at ¶¶ 23–24.

<sup>17</sup> *Id.* at ¶ 52.

<sup>18</sup> 29 U.S.C. § 621 *et seq.*

<sup>19</sup> 29 U.S.C. § 1001 *et seq.*

<sup>20</sup> ECF Doc. No. 1.

<sup>21</sup> ECF Doc. No. 9.

<sup>22</sup> ECF Doc. No. 1181 at ¶ 30.

<sup>23</sup> ECF Doc. No. 49at 24.

<sup>24</sup> ECF Doc. No. 1181 at ¶ 33.

<sup>25</sup> ECF Doc. No. 49 at 30.

<sup>26</sup> *Id.* at 31–37.

<sup>27</sup> ECF Doc. No. 1181 at ¶ 67.

<sup>28</sup> *Id.* at ¶ 83.

<sup>29</sup> *Id.* at ¶ 84.

<sup>30</sup> ECF Doc. Nos. 851, 864.

<sup>31</sup> ECF Doc. No. 1156.

<sup>32</sup> Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, "we view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Mancini v. Northampton Cnty.*, 836 F.3d 308, 313 (3d Cir. 2016) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir.

2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their care for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[33] *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 159 (3d Cir. 2001); *see generally Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

[34] *Barnes Found.*, 242 F.3d at 159.

[35] *Klatch-Maynard v. Sugarloaf Twp.*, No. 06-845, 2010 WL 5789390, at *6 (M.D. Pa. Nov. 8, 2010) (quoting *Schneck v. Saucon Valley School District*, 340 F.Supp.2d 558, 572–573 (E.D. Pa. 2004) (internal citations omitted)), *objections overruled*, 2011 WL 532168, at *5 (M.D. Pa. Feb. 8, 2011).

[36] *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 130 (3d Cir. 1999); *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983) ("Just as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition.").

[37] *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 531 (2002); *Cheminor Drugs, Ltd.*, 168 F.3d at 122–23.

[38] *See Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 834 (N.D. Ill. 2006).

[39] ECF Doc. No. 1172-1 at 13; ECF Doc. No. 1180 at 12.

[40] ECF Doc. No. 1172 at 1.

[41] ECF Doc. No. 1190 at 7.

[42] *See Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 503 n.6 (3d Cir. 2014) ("A fact asserted in a pleading, which is both unequivocal and which would normally require evidentiary proof, constitutes a judicial admission."); *cf. Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[T]he legal theories set forth in [a claimant's] brief are helpful only to the extent that they find support in the allegations set forth in the complaint.").

[43] *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 797 (7th Cir. 2005).

[44] *Id.*

[45] *Caplan v. City of Pittsburgh*, 100 A.2d 380, 383 (Pa. 1953) (quoting 6 WILLISTON ON CONTRACTS § 1823, p. 5164 (undated)).

[46] *Zivich v. Mentor Soccer Club, Inc.*, No. 95-L-184, 1997 WL 203646, at *8 (Ohio Ct. App. Apr. 18, 1997) (citation omitted); *Cash v. St. & Trail, Inc.*, 221 S.E.2d 640, 641 (Ga. App. 1975) (citation omitted).

[47] *Romero v. Allstate Ins. Co.*, 1 F. Supp. 3d 319, 396 (E.D. Pa. 2014).

[48] ECF Doc. No. 1180 at 15.