# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GENE R. ROMERO**, *et al.*, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : | NO. 01-3894 |
| | : | CONSOLIDATED WITH |
| **ALLSTATE INSURANCE COMPANY**, *et al.*, | : | NO. 01-6764 (Romero II) |
| | : | NO. 03-6872 (Romero III) |
| Defendants. | : | NO. 15-1049 (Abell) |
| | : | NO. 15-2602 (Tabor) |
| | : | NO. 15-3047 (Anzivine) |

## MEMORANDUM

**KEARNEY, J.**                                                                                  **September 5, 2017**

An employee signing a release of all claims against his employer in exchange for consideration cannot both later sue his employer for pre-release conduct and keep the consideration paid to him for the release. He must pay back, or "tender-back", the consideration he accepted for the release or the law will require a finding he ratified the release by keeping the consideration. This principle is relatively straightforward when the release defines the dollar amount paid in exchange for the release: for example, pay back the $1,000 for the release before you can proceed. A more difficult issue arises when the employee adduces evidence he either did not receive consideration for his release or, due to its intangible nature, he cannot tender it back. We today face this difficult issue. The employee genuinely disputes the amount of consideration for his release but still wants to pursue his breach of contract and breach of fiduciary duty claims if we invalidate his release. In this unique situation, we need the jury to decide the consideration to be tendered back to the former employer before the employee recovers any money. The jury is

well equipped, as in any contract dispute, to balance competing claims and, if warranted, set-off recovery to the former employee by the amount of consideration they find he received for his release. Consistent with bedrock contract principles, the employee will not receive both the consideration and the recovery for breach of contract or breach of fiduciary duty. But absent a contract penalty in the release or other clear evidence of the consideration paid for the release, we cannot dismiss claims for failing to tender back an unknown amount of consideration. In the accompanying Order, we deny the former employer's motion for summary judgment seeking to dismiss claims for breach of contract and breach of fiduciary duty as there are several genuine issues of material fact.

## I. Background[1]

Insurance agents formerly employed by Allstate are challenging its November 1999 Preparing for the Future Group Reorganization Program (the "Program") through which Allstate terminated the employment contracts of its employee agents by June 30, 2000. Allstate offered the agents four options: the "Exclusive Agent ("EA") Option"; "Sale Option"; "Enhanced Severance Option"; and "Base Severance Option."[2] There is no dispute the first three options required the agents to sign a release and waiver ("Release") of all claims against Allstate.[3] Allstate contends agents received substantial consideration in exchange for signing the Release. For those who selected the EA Option, Allstate provided a conversion bonus of at least $5,000; a "new, transferable" economic interest in the agent's book of business which could be sold after two years as an EA; and debt forgiveness.[4] For those who selected the Sale Option, Allstate provided a conversion bonus of at least $5,000; a "new, transferable" economic interest in the agent's book of business which could be sold after thirty days as an EA with the agent retaining the sale proceeds; and debt forgiveness.[5] Agents dispute these terms constitute consideration for

2

signing the Release, contending Allstate offered the $5,000 bonus to help agents transition to the independent contractor role and in exchange for entering the EA contract, not the Release; Allstate did not offer the economic interest in the book of business in exchange for entering the Release; and some agents testified they could not remember whether their agencies owed money to Allstate.[6]

On August 1, 2001, twenty-seven agents from around the country selected this District in which to file suit in 2001 asserting federal question jurisdiction under the Employment Retirement Income Security Act ("ERISA") and the Age Discrimination in Employment Act ("ADEA"). The agents also sued for damages for breach of their employment contracts and breach of fiduciary duty under a wide variety of state laws. Allstate argued, among other things, the agents released their claims and then ratified the Releases by failing to tender-back the consideration paid to them in exchange for the Releases.

In 2004, Senior Judge Fullam ordered the tender back of the consideration for the Releases but did not describe how, or for what amount, the agents should tender. As Judge Pappert described in his March 17, 2016 Opinion, the parties received no further guidance.[7]

After years of litigation in this Court and our court of appeals, the parties again addressed Allstate's ratification-of-the-Release defense in 2015. By this time, the Clerk of Court reassigned the case to Senior Judge Buckwalter. Judge Buckwalter addressed Allstate's ratification defense to the agents' state law claims. On November 12, 2015, Judge Buckwalter granted Allstate's motion to dismiss the state law claims in the Third Amended Complaint.[8] Judge Buckwalter held the doctrines of tender-back and ratification barred the state law claims because the agents failed to timely offer or return any consideration received in exchange for signing the Release.[9] Judge

3

Buckwalter found the agents never offered tender-back and could not find grounds for the agents' delay in tendering back the consideration.

Upon reassignment following Judge Buckwalter's retirement, Judge Pappert granted the agents' motion for reconsideration of Judge Buckwalter's November 12, 2015 dismissal of the state law claims.[10] Judge Pappert, relying on cases from a variety of states, found the tender-back rule as applied in this unique procedural quagmire created a "consideration conundrum" depriving the agents of their ability to tender back or offer to tender back consideration because there is no way to determine, or reach agreement among the parties, as to the amount the agents must tender back to Allstate. Judge Pappert detailed the history of the "consideration conundrum" issue raised by the agents at the beginning of this litigation in 2001. Although he found the agents inexplicably failed to explain the history of their "consideration conundrum" argument to Judge Buckwalter, normally a ground for denying a motion for reconsideration, Judge Pappert found "[t]he record shows that when faced with a court order in 2004 requiring [agents] to tender back consideration, [agents] sought guidance on how to do so in order to satisfy their legal obligations. The subsequent procedural twists in this case thwarted their efforts, leaving [agents] unable to tender back consideration and avoid ratification of the Release."[11]

Judge Pappert held the agents' offer of tender back is sufficient to avoid ratification and tender-back and a specific award of tender-back will set-off damages awarded to the agents if the Releases they signed are found invalid. A week after granting reconsideration, Judge Pappert vacated his order after finding he must recuse. The Clerk of Court then randomly reassigned this case to our docket with the agents' pending motion for reconsideration of Judge Buckwalter's November 12, 2015 Order.

4

Following a trial scheduling conference on the nine related cases involving approximately 500 plaintiffs, we granted the agents leave to file a consolidated amended complaint through one lead counsel.[12] On May 3, 2016, we entered an order denying as moot the agents' motion for reconsideration of Judge Buckwalter's November 12, 2015 Order (the same motion granted by Judge Pappert), granting leave to all parties to timely renew good faith arguments based on any grounds addressed by Judge Buckwalter and Judge Pappert.[13]

Approximately 500 former Allstate employee-agents filed a Consolidated Amended Complaint on May 20, 2016.[14] They alleged the tender-back doctrine does not preclude them from challenging the Release, including a substantial part of the purported consideration received were intangible benefits not capable of being returned to Allstate.[15] Allstate moved to dismiss arguing, among other things, the breach of contract and breach of fiduciary duty claims should be dismissed based on ratification absent a timely tender-back of the consideration paid for the Release.[16] We denied Allstate's motion to dismiss the state law claims without prejudice to resolve the issue after resolving the common federal questions under ERISA and ADEA.[17]

The parties recently finished litigating the common federal questions in our Court. On June 16, 2017, we organized the remaining individualized trial issues beginning with the claims of eight Plaintiff-citizens of this District.[18] All eight Plaintiffs signed the Release. We are now preparing for the jury trial on the individual issues arising from the eight agents' claims seeking a declaration as to the invalidity of the Release and for damages for breach of contract and breach of fiduciary duty along with Allstate's defenses including ratification of a Release signed by the agents.

## II. Analysis[19]

Allstate now moves for summary judgment on the breach of contract and breach of fiduciary duty claims of the eight agents residing in this District scheduled for trial in the First Quarter 2018. Allstate makes three arguments: by failing to tender back consideration, the agents ratified the Release; there is no merit to the agents' argument it is impossible to tender back; and, Judge Buckwalter's November 12, 2015 decision dismissing the state law claims plead in the Third Amended Complaint is law of the case. We find fact issues surrounding tender-back preclude summary judgment.

### A. Fact issues on whether the eight agents could have or did fail to tender back the consideration paid for the Releases precludes summary judgment.

Allstate first argues the eight agents never returned, or offered to return, the consideration paid to them and, consequently, ratified the Release barring as a matter of Pennsylvania law their state law claims for breach of contract and breach of fiduciary duty. The agents oppose summary judgment arguing exceptions to Pennsylvania's tender-back rule apply here because it is impossible to restore the parties to the *status quo ante* and because Allstate refused to accept the return of any consideration; Allstate has not been deprived of the benefit of its bargain because the Release does not bar agents from filing suit; Allstate's unclean hands bars the ratification doctrine; agents disavowed the Release from the beginning of this litigation; and, Allstate waived its ratification defense.

Under the doctrine of ratification, "a promise can be enforced even though the underlying contract is voidable if it is ratified by the promisor."[20] "Tender back is a related concept, which provides that if the promisor does not return the consideration received under the contract this is effectively ratification."[21]

6

Courts recognize an exception to the tender-back rule where it is impractical or impossible to tender back. Given the multiple state laws involved in Judge Buckwalter's and Judge Pappert's review, they did not need to specifically address Pennsylvania law. Judge Pappert correctly found several courts have applied other state laws on the "impractical or impossible" exception to the tender back rule.[22]

We must now address whether the eight agents can argue the consideration conundrum creates issues of fact. The parties do not dispute Pennsylvania law applies to these issues. Instead, Allstate argues the Pennsylvania case law cited by the agents is inapposite because the cases were decided in the context of specific performance on the sale of real estate, rescission, or dismissal of federal claims, and none involved ratification.

Allstate is seemingly correct as to the present absence of Pennsylvania appellate guidance in this unique context of ratifying a release by failing to tender-back the consideration at or before filing suit. But this absence is a distinction without a difference particularly in light of developing case law and the procedural uncertainty faced by the agents after the 2004 decision directing them to tender back an unknown sum in an unknown manner. As in the cases cited by Judge Pappert, we see no reason (and Allstate offers none) as to why we should require pre-suit set-off through tender-back in this contractual context especially when the set-off obligation and certainly the amount of set-off is vigorously disputed. Allstate's theory may make some sense in a simple transaction involving a defined dollar payment in exchange for a release, such as in a contract for sale or where the release recites the exact consideration to be tendered-back should the party wish to invalidate the release. We do not have this clarity.

But we have the benefit of analogous concepts throughout contract litigation. In today's commercial litigation, set-off in a contract dispute is a standard procedure for resolving

7

conflicting claims. We find no reason to distinguish this release contract from other contracts. All agree the agents cannot both invalidate the release and keep the consideration given to them for the release. The question is *when* we should calibrate these obligations. We cannot discern why the agents would need to guess on a down-payment deposit on the returned consideration without the value of a jury's balancing of the disputed facts. Outside of unique situations or insolvency, we do not generally require other contracting parties to place their potential liability in escrow when suing on a contract. The same principal applies here.

We are persuaded by the sound reasoning of a leading commentator on contracts who describes the development of this area of the law:

> Traditionally in an action at law, courts hold that tendering back of the consideration received or restoring the other party to status quo is a condition precedent to maintaining an action for avoidance. However, merger of law and equity in most jurisdictions and the recognition of numerous exceptions to the tendering requirement suggest the existence of a trend towards the adoption of the rule in equity. There, tendering of the consideration is not a condition to commencing an action but rather a condition of the granting of relief. The court in its discretion fashions a decree that adjusts the equities between the parties or that imposes conditions on the plaintiff. ***If tendering back is required***, this conditional offer of the consideration to the wrongdoer must occur within a reasonable time after the release is executed but not later than the commencement of the action to avoid the release. If avoidance is asserted in response to the release being raised as an affirmative defense, tendering of the consideration can await the assertion of the defense. The aggrieved party seeking to avoid the release may bring an action to set aside the release and enforce the previously released claim. Several alternatives are available to the aggrieved party in addition to avoidance, especially if the consideration has been dissipated. The aggrieved party may affirm the transaction or settlement that gave rise to the release and sue for damages for misrepresentation or fraud but only if the claim is not within the scope of the release previously given; or, when appropriate, the aggrieved party may have the release reformed to conform to the mutual understanding or intent of the parties.[23]

The issue, as articulated by both Judge Buckwalter and Judge Pappert, is one of timing of the tender-back. We disagree with Judge Buckwalter as to the agents somehow waiving their breach of contract and breach of fiduciary duty claims by not guessing at their tender-back

8

liability at some earlier point between 2001 and 2015 and then placing a deposit on their guess. The evidence is disputed as to who offered to tender-back, for how much, and whether such a tender-back is possible at all. We agree with Judge Pappert's reasoning as to the agents' inability to tender back when directed to do so in 2004.

We accordingly find the "impossibility/impracticability" exception to the tender-back rule on the "consideration conundrum" applies to this unique situation. While the issue has apparently been in this case since 2001, there are genuine disputes as to when the eight agents offered to tender back, if at all. The parties have been without judicial guidance as to how tender-back would work. It is fundamentally unfair to bar claims because the agent did not do something when he had no idea what to do. For good reason. We still cannot figure out who owes what. These issues require individualized treatment. Some agents received dollars; others, a share in a book of business. Some agents claim Allstate paid nothing.

This is the prototypical issue of fact for a jury. Issues of material fact preclude summary judgment. These disputes include the amount and terms of the consideration exchanged for signing the Release. The agents concede those who converted under the Program "were supposed to receive" a $5,000 conversion bonus, but dispute it was paid in exchange for signing the Release[24] and dispute Messrs. Metcalfe and Smith ever received it.[25] The record contains Declarations from Messrs. Eckert, Gregg, Metcalf, Smith, and Suwala, and Ms. Schott swearing they are willing to return the $5,000 payment "and any other monies Allstate proves it provided to me in exchange for the Release if and when Allstate agrees, or a court finally determines that the Release is invalid and/or unenforceable against me."[26]

Allstate asserts the agents received additional, substantial consideration including debt forgiveness and the "economic interest" in their book of business.[27] For example, Allstate

contends Mr. Eckert, who elected the EA Option, received an economic interest in the book of business he wrote as an employee agent that vested and became transferrable after two years.[28] Mr. Erkert disagrees, contending the economic interest in the book of business did not confer any consideration him for the Release because Allstate provided the same interest to former employee agents who voluntarily converted to EA without signing a Release.[29] We find these and other disputed facts preclude the entry of summary judgment in favor of Allstate.[30]

These issues, arising in the unique context of this tortured case, warrant the jury's determination. The jury will need to decide as to each of the eight agents: whether a Release is invalid as to him; if so, whether he must tender-back consideration allegedly paid to him; and, if so, how much must be tendered back.

### B. The November 12, 2015 Order addressing a different Complaint is not law of the case precluding our finding.

Judge Buckwalter's November 12, 2015 opinion is not the law of the case. The law of the case doctrine is "a judicial rule of practice meant to 'maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'"[31] It "does not limit the power of trial judges to reconsider their [own] prior decisions" or "from reconsidering issues previously decided by a predecessor judgment from the same court," and interlocutory orders "remain open to trial court reconsideration."[32]

The law of the case doctrine does not apply here. First, Judge Buckwalter issued his opinion in the context of Allstate's motion to dismiss the Third Amended Complaint, no longer the operative complaint. Before us is Allstate's summary judgment motion on the Consolidated Amended Complaint, not the Third Amended Complaint. Second, it "is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work manifest injustice."[33] As explained, we agree with Judge Pappert's reasoned conclusions and, in reviewing

10

a different complaint and further review of the agents' evidence, we do not find the agents have waived their ability to pursue breach of contract and breach of fiduciary duty claims.

### III. Conclusion

The eight agents have shown genuine issues of material fact concerning their ability or need to tender-back. We appreciate the facial attractiveness of Allstate's argument of ratification simply because the agents failed to tender back consideration given to each for their signatures on the Release. But this argument presumes consideration paid in a known amount which can be returned. We do not find the agents waived claims by ratifying a Release because they failed to pay an unknown amount in an unknown manner as a condition precedent to avoiding the Release. If the Release is found invalid, the agents will be required to pay back the amount found by the jury. In the accompanying Order, we deny Allstate's motion for summary judgment seeking to dismiss the eight agents' claims for breach of contract and breach of fiduciary duty.

---

[1] Our Policies require a Statement of Undisputed Material Facts be filed in support of a Rule 56 motion, as well as an appendix of exhibits. Allstate filed its Statement of Undisputed Material Facts at ECF Doc. No. 1183 ("Allstate SUMF"). Allstate filed an appendix at ECF Doc. Nos. 1183-1 through 1183-45. Plaintiffs responded to Allstate's SUMF and added a statement of additional material facts at ECF Doc. No. 1202 ("Plaintiffs response to SUMF"). Plaintiffs added documents to the appendix at ECF Doc. Nos. 1203-1 through 1203-67. Allstate responded to Plaintiffs' SUMF at ECF Doc. No. 1208. References to the exhibits in the appendices shall be referred to by Bates number, for example, "Appx. 1."

[2] Allstate SUMF at ¶¶ 20-23. Agents dispute Allstate's characterization and description of the "options," including to the use of the word "option," as agents contend they had no meaningful choice to participate in the Program and sign the Release. *See* Plaintiffs' response to SUMF at ¶¶ 20-23.

[3] Allstate SUMF at ¶ 24.

[4] Allstate SUMF at ¶ 20. Messrs. Eckert, Evans, Gregg, Metcalf, Millison, and Suwala elected the EA Option. Allstate SUMF at ¶¶ 34, 38, 41, 45, 48, 59.

[5] Allstate SUM F at ¶ 21. Ms. Schott and Mr. Smith elected the Sale Option. Allstate SUMF at ¶¶ 52, 56.

11

⁶ Plaintiff SUMF at ¶¶ 35-61. As to debt forgiveness for those who elected the EA Option, Mr. Eckert testified he did not "remember specifically" whether his agency owed money to Allstate for expenses at the time he converted to EA (Plaintiffs SUMF at ¶ 36), while agents admit Messrs. Gregg and Millison received debt forgiveness (Plaintiffs SUMF at ¶¶ 43, 50). Ms. Schott, who selected the Sale Option, testified she does not recall whether she received debt forgiveness (Plaintiff SUMF at ¶ 54).

⁷ ECF Doc. No. 829.

⁸ ECF Doc. No. 772.

⁹ ECF Doc. No. 772.

¹⁰ On January 25, 2016, following Judge Buckwalter's retirement, the Clerk of Court randomly reassigned this case to Judge Pappert. ECF Doc. No. 810.

¹¹ ECF Doc. No. 829 at 13-14.

¹² ECF Doc. No. 851.

¹³ ECF Doc. No. 854.

¹⁴ ECF Doc. No. 864.

¹⁵ ECF Doc. No. 864 at ¶¶ 1138-1160.

¹⁶ ECF Doc. No. 866 at 4-12.

¹⁷ ECF Doc. Nos. 875, 876.

¹⁸ ECF Doc. No. 1156. The eight Plaintiff-citizens of this District are: Joseph Eckert, Steven Evans, James Gregg, Philip Metcalfe, Craig Millison, Paula Schott, Dennis Z. Smith, and Stanley Suwala.

¹⁹ Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, "we view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Mancini v. Northampton Cnty.*, 836 F.3d 308, 313 (3d Cir. 2016) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient

showing on essential elements of their care for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322–23).

[20] *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 782 (3d Cir. 2007) (citing *Wamsley v. Champlin Refining & Chems., Inc.*, 11 F.3d 534, 538 (5th Cir. 1993)).

[21] *Jakimas*, 485 F.3d at 782 (citing *Raczak v. Ameritech Corp.*, 103 F.3d 1257, 1265 (6th Cir. 1997)).

[22] ECF Doc. No. 829 at 14-16. Judge Pappert cited cases from various states recognizing an exception to the rule tender-back must be made before or at the outset of litigation where tender-back is impractical or impossible. Judge Pappert found because the parties' "divergent positions on what must be tendered back for [agents] to continue challenging the Release" as well as the "torturous and convoluted history of this litigation," tender back is impossible.

[23] 13-67 Corbin on Contracts § 67.9 (2017) (emphasis added).

[24] Plaintiffs' response to SUMF at ¶¶ 35, 39, 42, 46, 49, 53, 57, 60.

[25] Appx. 953, 968.

[26] *See* Appx.937-938, 951-970.

[27] Allstate SUMF at ¶¶ 34-61.

[28] Allstate SUMF at ¶ 37.

[29] Plaintiffs' response to SUMF at ¶ 37.

[30] We need not reach the agents' additional arguments in opposition to summary judgment.

[31] *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017) (citing 18 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 4478 (2d Ed.)).

[32] *Petratos*, 855 F.3d at 493 (citations omitted).

[33] *In re Engel*, 124 F.3d 567, 584 (3d Cir. 1997) (quoting *Arizona v. California*, 406 U.S. 605, 619 n.8 (1983)).